LEXSEE 2005 U.S. DIST. LEXIS 36393

TOSIN ADEGBUJI, Plaintiff, v. MICHAEL T. ABODE, EDWARD CICCHI, SERGEANT REDDING, SERGEANT DeMATTEO, OFFICER LUCK, OLDHAM & HAGE, Defendants

Civil Action No. 03-CV-4537 (JLL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2005 U.S. Dist. LEXIS 36393

December 20, 2005, Decided
December 22, 2005, Filed

NOTICE: [*1] NOT FOR PUBLICATION

COUNSEL: TOSIN ADEGBUJI, Plaintiff, Pro se, LAWRENCEVILLE, GA.

For MICHAEL T. ABODE, Warden, EDWARD CICCHI, Deputy Warden, Defendants: LORI A. DVORAK, LYNCH, KEEFE, & BARTELS, ESQS., SHREWSBURY, NJ.

For Sergent REDDING, LUCK, Officer, OFFICE OLDHAM, Officer, Defendants: JOHN ROBERT PARKER, FLEMINGTON, NJ.

For Sergent DIMATEO, Officer HAGE, Defendants: PETER J. BARNES, III, JORGENSEN & BARNES ESQ., ISELIN, NJ.

JUDGES: Jose L. Linares, United States District Judge.

OPINION BY: Jose L. Linares

OPINION: LINARES, District Judge

This matter comes before the Court on three motions for summary judgment filed by Defendants Former Warden Michael Abode ("Abode") and Warden Edward Cicchi ("Cicchi"), Sergeant F.J. Redding ("Redding"), Officer Jerome T. Oldham ("Oldham") and Officer Kent Luck ("Luck"), and Sergeant DeMatteo n1 ("DeMatteo") and Officer Zyad Hage ("Hage") (collectively, "Defendants") pursuant to Fed. R. Civ. P. 56. Plaintiff Tosin Adegbuji ("Plaintiff" or "Adegbuji") alleges that Defendants participated in or sanctioned various violations of his civil rights, allegedly suffered while Plaintiff was an immigration detainee [*2] at the Middlesex County Adult Correction Center (hereinafter "MCACC"). These motions are resolved without oral argument. Fed. R. Civ. P. 78. For the reasons stated herein, Defendants' motions are GRANTED in part and DENIED in part.

n1 It does not appear that the Record contains this Defendant's first name. As such, the Court will refer to him by his last name only. Further, the record contains various spellings of Defendant's name. To ensure consistency, the Court will employ the spelling "DeMatteo."

Background

A. Factual Background

For the purpose of the instant motions, the relevant facts are as follows. Plaintiff filed this Complaint on March 27, 2004, during which time he was detained by the Bureau of Immigration and Customs Enforcement ("BICE"), an agency of the Department of Homeland Security, formerly the Immigration and Naturalization Services ("INS"). Plaintiff was housed at the MCACC when the alleged violations occurred but has since been [*3] released. All Defendants were affiliated with MCACC.

This action stems from several incidents that took place during Plaintiff's detainment at MCACC. On June 20, 2003 and June 21, 2003 Plaintiff allegedly asked an MCACC nurse "for Tylenon [sic] to ease his pounding migraine headache," and complained of stomach cramps and diarrhea. (Compl. Stmt. of Claims, # 6). Plaintiff alleges that the nurse denied his request for Tylenol and that his request to see a doctor was never met. This condition persisted and sometime during the night between June 21 and June 22, Plaintiff allegedly collapsed.

EXHIBIT
A-39

2005 U.S. Dist. LEXIS 36393, *

The morning of June 22, 2003, Oldham was notified that a prisoner had become ill during the night. Plaintiff claims that Oldham then "polled" the detainees to see whether all would agree to forego attendance at the morning's mandatory recreational time. The inmates declined. When MCACC officers came to Adegbuji's cell the morning of June 22, 2003 to summon him to that day's mandatory recreational activity, Plaintiff refused to attend, citing his medical condition. Then, Plaintiff alleges that "six huge officers ... grabbed me by my feet, arm, and neck and forcefully throw [sic] me in a malicious [*4] manner, unconsciously from my top bunk bed so badly that, I landed in a free-fall to the concrete floor." (Compl. Appeal of Courtline Decision, p. 4). Additionally, Plaintiff alleges that the officers continued to kick him in his head, bottom and back until he began to excrete blood from his rectum. (Id.). While cuffed, Plaintiff was allegedly dragged by his feet along the floor and later hoisted by his arms by two officers and dragged down the stairs to the medical clinic. Upon returning to his cell from the clinic, Plaintiff states that he excreted a large blood clot from his rectum and was returned to the clinic. As a result of the day's incidents, Plaintiff alleges that he suffers continuous head, body, lower back and buttock pain, pain upon urination and headaches.

Plaintiff further alleges that he received no additional medical care for his injuries until June 24, even as he continued to bleed from his rectum. At the conclusion of his June 24 medical visit, Plaintiff alleges that he received only pain medication for his headache and no treatment for his remaining injuries. The Complaint also includes allegations that a MCACC dentist denied Adegbuji proper medical care since [*5] the dentist noted that Plaintiffs' gums were bleeding but refused to provide comprehensive treatment.

**B. Procedural Background**

Plaintiff's Complaint requests $ 75 million in punitive damages and $ 15 million in compensatory damages. He alleges that Warden (now former Warden) Abode is liable because he "instituted [sic] unconstitutional policy of 7 days a week mandatory recreational activities for every INS detainee." Plaintiff also alleges that Abode and Deputy Warden (now Warden) Cicchi are liable for having authorized the actions of the officers involved and having failed to resolve Plaintiff's grievances and appeals. (Compl. Question 5). Plaintiff alleges that Oldham is liable for his role in polling the detainees regarding the otherwise mandatory recreational time and for denying Plaintiff's request for medical treatment. n2 (Compl., Question 5). Plaintiff premises the liability of the remaining Defendants, Oldham, Redding, Luck, DeMatteo and Hage, on their alleged involvement in removing Plaintiff from his cell and taking him to the medical clinic as well as their involvement in the alleged denial of medical care. Specifically, Plaintiff alleges that Luck dragged [*6] him out of the top bunk, Redding kicked him several times in his "bottom area," DeMatteo "kicked the plaintiff severally on the head and with his hands" and Hage dragged the Plaintiff out of his bed and "beat and curffed [sic] plaintiff before dragging plaintiff on the floor to the stairs." (Compl. Question 5).

> n2 The Court notes that Oldham's name is mentioned only once in Plaintiff's Complaint.

By Opinion and Order of this Court, issued May 27, 2004, the Court liberally construed the Plaintiff's allegations contained in his Complaint and found four potential claims: (1) excessive force; (2) denial of medical care; (3) interference with his legal and other mail; and (4) denial of equal protection in violation of the Fourteenth Amendment. Pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed Plaintiff's claims of interference with his mail and denial of equal protection for failure to state a claim. At this juncture, the only claims which remain are Plaintiff's claims alleging excessive [*7] force and denial of medical care by Defendants, in violation of Plaintiff's Fourteenth Amendment due process rights. n3

> n3 To the extent that Plaintiff has made subsequent allegations involving state law tort claims in his later submissions to the Court, these will not be considered by the Court since they were not originally pled in the Complaint. Plaintiff never requested leave to amend his Complaint, nor did Plaintiff object to this Court's May 27, 2004 Opinion delineating the contents of the Complaint. Inasmuch as these claims were never properly alleged, the Court will disregard all arguments of the parties which relate to these claims.

In his Complaint, Plaintiff does not specify the capacity in which the Defendants shall be sued. However, in his Pretrial Statement that was incorporated into this Court's Final Pretrial Order, Plaintiff claims that the Defendants are liable in their individual *and* official capacities. (Pl. Pretrial Statement, Cover & p. 9). However, since Plaintiff included a demand [*8] for punitive damages, available only in individual capacity suits, and has never included MCACC or Middlesex County as a named defendant, this Court will treat Plaintiff's claims as ones against the Defendants in their individual capacities only. See Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988) (discussing how a court shall analyze a

complaint that fails to specify official versus individual capacity); see also Mantz v. Chain, 239 F. Supp. 2d 486, 506-07 (D.N.J. 2002).

Defendants Cicchi and Abode moved for summary judgment on March 18, 2005, Defendants Oldham, Redding, and Luck on March 18, 2005 and Defendants DeMatteo and Hage on March 20, 2005. Plaintiff made a motion for continuance of the summary judgment motions which was denied and he filed his opposition with the Court on November 14, 2005.

### Legal Standard

Summary judgment eliminates baseless claims without resorting to a costly and lengthy trial. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A party is entitled to summary judgment when it demonstrates that there is no genuine issue of material fact and that the evidence establishes its entitlement [*9] to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex 477 U.S. at 322-23; Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Put another way, summary judgment will be granted when the evidence on the record "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Nevertheless, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; [*10] there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999). If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex, 477 U.S. at 321.

The Court's present task is to determine whether genuine issues of material fact exist and whether pursuant to the standards set forth above Defendants are entitled to judgment as a matter of law.

### Discussion

#### A. Plaintiff's Section 1983 Claims Against Defendants

In his Complaint, Plaintiff makes two federal claims under 42 U.S.C. § 1983 for violation of his Constitutional rights based upon the alleged use of excessive force and denial of medical care. Section 1983 of Title 42 of the United States Code authorizes a person to seek redress for a violation [*11] of his federal constitutional rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create substantive rights; but rather "it provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). A section 1983 claim has two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Powell v. Ridge, 189 F.3d 387, 400 (3d Cir. 1999); [*12] see also Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Given that the parties do not dispute that the Defendants were acting under color of state law, the Court will focus entirely on whether Defendants' actions deprived Plaintiff of a right that is actionable under Section 1983. Accordingly, the Court must next "identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

#### B. Qualified Immunity

All Defendants assert that summary judgment is proper in their favor on the basis of qualified immunity. Since qualified immunity is "an immunity *from suit,* rather than a mere defense to liability, it is imperative to resolve immunity questions at the earliest possible stage in litigation." Under the qualified immunity doctrine, this

Court must first ask whether "the facts alleged, [when] viewed in the light most favorable to the party asserting the injury, show that the officers conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). [*13] If the facts alleged are sufficient to demonstrate a constitutional violation, the court must then determine whether the right asserted was "clearly established" at the time of the officer's allegedly unlawful conduct. Id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 194. Defendants are entitled to qualified immunity only if the Court can conclude, based on the undisputed facts in the record, that Defendants reasonably, though perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation. Mantz, 239 F. Supp. 2d at 496.

#### 1. Defendants Abode and Cicchi

Defendants Abode and Cicchi move for judgment on the grounds that they are entitled to qualified immunity, a fact that, if true, would completely immunize these parties from suit. The burden is placed on them to establish that they are entitled to qualified immunity. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n. 15 (3d Cir. 2001) (citation omitted). However, in their [*14] brief, while Defendants set forth the standard for a determination of qualified immunity, they do not apply the standard to facts contained within the record. (Br. Abode & Cicchi, p. 7-10). They do not analyze: (1) whether under the proper standard, Adegbuji has alleged a violation of a constitutional right; (2) whether that right was clearly established at the time of the acts; or (3) whether a reasonable person in Abode and/or Cicchi's position would have known his conduct to violate that right. Rather, Defendants argue that Plaintiff has not demonstrated a causal link between these Defendants and the incident of June 22, 2003. This argument, and the ones that follow, address whether there was supervisory liability, not whether Abode and Cicchi are entitled to qualified immunity. For the foregoing reasons, the Court will not continue with its analysis of whether or not Abode and Cicchi are entitled to qualified immunity. n4 Without an actual briefing of the issue, it is inappropriate for the Court to rule on this issue at this time. Abode's and Cicchi's motion for summary judgment on this issue is denied without prejudice.

---

n4 For support of this approach, see Rosenberg v. Vangelo, 2002 U.S. Dist. LEXIS 6654, 2002 WL 576109, *2 (E.D.Pa. 2002), aff'd, 93 Fed.Appx. 373 (3d Cir. 2004).

---

[*15]

#### 2. Defendants Oldham, Redding and Luck

Defendants Oldham, Redding and Luck move for summary judgment on the grounds that they are entitled to qualified immunity. These Defendants appear to incorporate the arguments from Defendants Abode and Cicchi's brief on the same point and raise additional ones. (Br. Oldham, Redding & Luck, p. 5). The full extent of the Defendants' arguments follows:

> Oldham, Redding and Luck used force in the face of plaintiff's non-compliance with a lawful directive. While the plaintiff claims the amount of force used was excessive, I do not discern an argument that force was not justified.

(Id.) In a fashion similar to their co-defendants, Abode and Cicchi, Oldham, Redding and Luck do not adequately brief the issue of whether they are entitled to qualified immunity. Although the Brief references the legal standard set forth by Abode and Cicchi, it too fails to apply the legal standard to the facts contained in the record. There are no arguments regarding whether one of Adegbuji's constitutional rights was violated, nor whether his rights were clearly established at the time of the violation. As discussed above, without any analysis [*16] of this issue, it is inappropriate for the Court to rule on this issue at this time. The motion of Redding, Oldham and Luck for summary judgment is denied without prejudice on the issue of qualified immunity.

#### 3. Defendants DeMatteo and Hage

Defendants DeMatteo and Hage move for summary judgment on the grounds that they are entitled to qualified immunity. In the legal argument section of their moving brief, the Defendants argue that they are immune from liability. However, similarly to Defendants Abode and Cicchi, DeMatteo and Hage merely set forth the standard of qualified immunity and never apply it to the relevant facts. To prove that they are entitled to qualified immunity, Defendants make the following argument:

> In this case, Adegbuji is unable to prove any excessive harm, assault or denial of medical treatment ... Plaintiff has failed to produce any medical records or expert reports which substantiate any harm. The facts on record demonstrate that Adegbuji was simply removed from his bunk and

escorted to the clinic. He was never struck or harmed in any way.

(Br. Hage & DeMatteo). Defendants do not discuss whether Plaintiff has alleged a deprivation of a [*17] constitutional right and do not include an analysis of whether such a right, if in existence, was clearly established at the time of incident. As discussed above, without any further analysis, the Court determines that this issue is improper for summary judgment. Therefore, the motion of Hage and DeMatteo for summary judgment is denied without prejudice on the issue of qualified immunity.

## C. Claim of Excessive Force

Having previously determined that none of the Defendants are entitled to qualified immunity at this juncture, the Court will address the remainder of Defendants' arguments.

Adegbuji alleges that Defendants used excessive force in violation of his constitutional rights when they removed him from his cell the morning of June 22, 2003 and took him to the medical clinic. In excessive force cases involving a person in police custody and/or pretrial detention, a Court must analyze the claim using a Fourteenth Amendment substantive due process analysis. Graham v. Connor, 490 U.S. 386, 392-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Since Adegbuji was a BICE detainee while confined at MCACC, the Court will examine the excessive force claim under the Fourteenth Amendment substantive [*18] due process standard.

In Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), the Supreme Court set forth the standard to be applied in analyzing whether a detainee has been deprived of liberty without due process of law. The accepted standard is whether "those conditions amount to punishment of the detainee," a standard which does not recognize de minimis punishment. Id. As part of this analysis, a court must also "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. By way of example, it is accepted that retribution and deterrence do not amount to legitimate non-punitive governmental objectives. Id. at 539, n. 20, 561-62.

A court must examine, subjectively, "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (citation omitted); see Fuentes v. Wagner, 206 F.3d 335, 347-48 (3d Cir. 2000) (extending standard to a pretrial detainee's excessive force claim *arising* [*19] *in the context of a prison disturbance*) (emphasis original). Not all use of force is "excessive" and will rise to the level of a constitutional violation. To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> [1] the need of the application of force; [2] the relationship between the need and the amount of force that was used; [3] the extent of injury inflicted; [4] the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and [5] any efforts made to temper the severity of a forceful response.

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000). Here, Adegbuji alleges that Defendants used excessive force against him without provocation when they badly beat and dragged him down he hall and stairs which allegedly resulted in permanent injuries to the Plaintiff.

### 1. Defendants Abode and Cicchi

In their motion for summary judgment, Defendants Abode and Cicchi argue that they are entitled to judgment on Plaintiff's Section 1983 claims. Specifically, Abode and Cicchi [*20] assert that Plaintiff has not proven the elements of a Section 1983 violation. n5

---

n5 Cicchi and Abode alternatively argue that they are entitled to qualified immunity. However, since the Court has previously determined that these parties have not fully briefed this issue, the Court will not consider arguments regarding this issue further.

---

Local government units and supervisors may not be held liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690-91, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "A defendant in a civil rights action must have *personal involvement* in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal discretion or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations [*21]

omitted) (emphasis added). Another theory of supervisory liability holds individual defendants liable if it is shown that such defendants "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).

In its prior Opinion issued May 27, 2004, this Court reviewed Plaintiff's pleadings and determined that Plaintiff's allegations against Abode and Cicchi, if true, could establish liability under Section 1983. After reviewing Plaintiff's Complaint and subsequent submissions to the Court, the Court is unable to determine whether Plaintiff makes out a Section 1983 claim against these Defendants under the personal involvement theory set forth in Dellarciprete, the harm-causing policy theory in Stoneking, or both. Since Plaintiff is pro se, the Court will address Defendants arguments as if Plaintiff has made a claim under both theories.

After review of the entire record, including Plaintiff's opposition to the motions addressed herein, the Court can find no evidence that Abode or Cicchi had personal [*22] knowledge of, or acquiesced in, the alleged use of excessive force, nor that Abode or Cicchi, with deliberate indifference to the consequences, established any policy, practice or custom which directly caused Plaintiff's constitutional harms.

In his pretrial submission, Plaintiff asserts that since the wardens instituted a mandatory recreational policy for those detained in MCACC, they are liable for the violations of his constitutional rights. Plaintiff alleges that:

> Defendants Abode and Cicchi are both personally involved by acting or failing to act with deliberate or reckless disregard of Plaintiff's constitutional rights, or action of their subordinates that violated Plaintiff's rights which occurred at their discretion or with their knowledge or consent, when they instituted an unlawful recreation policy or custom which caused Plaintiff's constitutional right to be violated and the proximate cause of the injuries sustained.

(Pl. Pretrial Statement, p. 9). Cicchi and Abode argue that this policy had "no viable causal connection to the alleged incidents of June 22, 2003." (Cicchi & Abode Br. Summ. J., p.8). Instead, the defendants characterize Plaintiff's claim [*23] as unsustainable since it holds them liable for being "in charge" at the time of the incident which constitutes an impermissible claim under a respondeat superior theory. (Id.).

Although Plaintiff employs the language from a leading Third Circuit case in the allegations of his Complaint (Dellarciprete, 845 F.2d at 1207) he fails to substantiate his allegations. A plaintiff can show personal involvement of a defendant through allegations of personal direction or of actual knowledge and acquiescence, but a plaintiff must make his allegations with "appropriate particularity." Id. Here, Plaintiff does not offer any evidence to demonstrate that Abode and/or Cicchi personally directed the officers to use excessive force against him. Nor does Adegbuji introduce or point to the existence of evidence which could demonstrate that Abode and/or Cicchi had actual knowledge of or acquiesced in the officers' behavior. The simple fact that Adegbuji submitted grievances to Abode and Cicchi *after* the June 22, 2003 which complained of the use of excessive force does not go to prove that either had knowledge of the officers' actions at the time of the incident. In the [*24] absence of such evidentiary support for Plaintiff's allegations, the Court determines that Plaintiff has not demonstrated a prima facie case of supervisory liability as set forth in Dellarciprete.

To the extent that Plaintiff alleges that Abode and Cicchi are liable for his injuries because the officers were acting pursuant to a policy instituted by these Defendants, the Plaintiff has failed to demonstrate that the MCACC recreational policy caused his injuries. Assuming arguendo, that Abode and Cicchi were responsible for instituting and administering a mandatory attendance policy at the recreation activity, Plaintiff does not establish that this policy directly caused his injuries. In terms of causation, Plaintiff alleges that since Abode and Cicchi made it mandatory for all detainees, even those who were sick, to attend the recreation activity, they are liable for his injuries. Although City of Canton v. Harris, 489 U.S. 378, 391, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989), involves allegations of supervisory liability premised on failure to train which are not present here, its requirement that a plaintiff establish a causal connection between a complained-of policy and the plaintiff's harm [*25] still controls. See Sample v. Diecks, 885 F.2d 1099, 1117 (3d Cir. 1989). Even assuming all facts as alleged by Plaintiff to be true, he has not demonstrated a prima facie case of supervisory liability as set forth in Stoneking. Plaintiff has not pointed to any evidence that may establish that in creating and administering the recreational policy, Abode and Cicchi were deliberately indifferent to its consequences, nor that the policy directly caused Adegbuji's constitutional harm.

For the foregoing reasons, even upon viewing the evidence in a light most favorable to Plaintiff, the non-moving party, the Court concludes that Cicchi or Abode,

as a matter of law, cannot be held liable for Plaintiff's Section 1983 claims based upon the use of excessive force. Abode's and Cicchi's motion for summary judgment is granted in part and Plaintiff's claim of excessive force against Abode and Cicchi is dismissed with prejudice.

### 2. Defendants Oldham, Redding, Luck, DeMatteo and Hage

#### a. Defendant Oldham

With respect to the alleged use of excessive force, Plaintiff alleges that Oldham, Redding, Luck, DeMatteo and Hage "brutally assaulted Plaintiff without provocation [*26] by using excessive force." (Pl. Pretrial Submission, p. 3). However, the Court finds no indicia in the record or the submissions of parties to support Plaintiff's claim that Oldham had personal involvement in the incident as required for Section 1983 liability. A § 1983 plaintiff must assert and prove some causal connection between a defendant and the alleged wrongdoing in order to recover against that defendant. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); Lee-Patterson v. New Jersey Transit Bus Operations, Inc., 957 F. Supp. 1391, 1401-02 (D.N.J. 1997). A causal connection is shown where a defendant (1) participated in violating a plaintiff's rights; (2) directed others to violate them; (3) as the person in charge, had knowledge of and acquiesced in his subordinates' violations; or (4) tolerated past or ongoing misbehavior. Friedland v. Fauver, 6 F. Supp. 2d 292, 302-03 (D.N.J. 1998). Beyond bare allegations, Plaintiff has not shown a causal connection between any actions taken by Oldham and his Section 1983 excessive force claim. After reviewing the record, the Court does not determine that there [*27] is any dispute regarding Oldham's involvement. There are no facts that point to Oldham's presence, encouragement or involvement in the alleged use of excessive force. Thus, the Court hereby grants Oldham's motion for summary judgment on the issue of Plaintiff's claim of excessive force. Plaintiff's Section 1983 claim for excessive force is hereby dismissed with prejudice as alleged against Oldham.

#### b. Defendants Redding and Luck

Defendants Redding and Luck move for summary judgment on Adegbuji's claim that they applied excessive force in violation of the detainee's Fourteenth Amendment rights the morning of June 22, 2003. Specifically, Plaintiff alleges that Redding kicked him several times in his "bottom area" and that Luck dragged him out of the top bunk, causing him to fall on the floor. Redding and Luck admit that "force was required to get him to leave his cell and be transported to the infirmary," so the question for the Court is whether this force was excessive. (Br. Redding, Oldham & Luck, p. 2). Defendants claim that since Plaintiff has been unable to introduce any evidence of physical injuries, he is unable to prove that the officers used excessive force. Defendants [*28] point to evidence showing that Adegbuji admitted he was having intestinal problems which pre-dated the incident and claim that photographs taken of the detainee after the incident show no visible signs of injury and that he did not need stitches or even a band-aid. (Br. Redding, Oldham & Luck, p. 2). The Court has reviewed the entire record, including the allegations of the Plaintiff, photographic evidence and medical records. Although the Court does not find that there is evidence of *serious* injury, this alone is not sufficient to grant summary judgment to the Defendants.

Plaintiff alleges that officers forcefully pulled him out of the top bunk, causing him to land hard on the floor and injure himself. They then allegedly proceeded to kick Plaintiff before cuffing him and dragging him down the hallway and later the stairs, on the way to the clinic. Defendants however, present a different set of facts. In a report dated the day of the incident, Redding describes the incident in the following manner:

> I than [sic] ordered him off his top bunk so he could be cuffed and brought to lock up. He again refused. Ofc. Hage and myself removed I/M Adegbuji from the top bunk and [*29] placed him on the floor so he could be cuffed safely. He struggled and refused to be cuffed, I threatened to use O.C. spray if he didn't comply. Finally he was cuffed and escorted to medical ...

(Adegbuji Cert., Exh. 2-A).

A court may only grant summary judgment if the moving party demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). Defendants argue that there is none since Plaintiff has not demonstrated any injury suffered at the hands of Redding or Luck. But, in a medical write-up completed by a nurse a short time after the incident, the nurse states that Plaintiff's abdomen was tender to the touch, as well as his back and bottom area. She also states that Adegbuji complained of a headache. Although the report also states that Plaintiff had suffered abdominal pains the night before the alleged attack, whether or not they worsened following the incident with the officers is not for resolution at the summary judgment stage. Defendants do not argue that the force used does not amount to "punishment" under the standard in Bell. Rather, Redding and Luck argue that since Adegbuji has not proven injury, [*30] he has no claim. The Court disagrees. As emphasized in an Eighth

Amendment case, Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000), the absence of a serious injury does not automatically mean that an officer has not used excessive force.

After viewing the evidence in the light most favorable to the Plaintiff, the non-moving party, the Court determines that there are genuine issues of material fact as to whether the Defendants' use of force against Plaintiff actually occurred and if it occurred, whether it amounted to "punishment" in violation of his Fourteenth Amendment rights. Since the Court has previously determined that Redding and Luck are not entitled to qualified immunity at this juncture, the Court denies with prejudice their motion for summary judgment on the issue of whether they used excessive force against Plaintiff.

### c. Defendants Hage and DeMatteo

Defendants Hage and DeMatteo move for summary judgment on Adegbuji's claim that they applied excessive force in violation of the detainee's Fourteenth Amendment rights the morning of June 22, 2003. Specifically, Plaintiff alleges that Hage dragged him out of his bed and "beat and curffed [sic] plaintiff [*31] before dragging plaintiff on the floor to the stairs." (Compl. Question 5). Plaintiff alleges that DeMatteo "kicked the plaintiff severally on the head and with his hands." (Id.).

In their motion for summary judgment Hage and DeMatteo request the Court to apply the reasonableness standard of the Fourth Amendment in the analysis of Adegbuji's claims of excessive force. However, as previously stated, the correct standard to apply is the Fourteenth Amendment substantive due process standard since Adegbuji is an immigration detainee. The Fourth Amendment standard is only used in cases involving the use of force to effectuate an arrest. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). In cases involving the use of force against a person in pretrial detention, the court shall analyze it under the Fourteenth Amendment substantive due process standard. Id. Although the Defendants have incorrectly cited the standard, the Court will consider their arguments in the context of a Fourteenth Amendment analysis.

Defendants maintain that there "was no use of force whatsoever in this case" and that "Plaintiff's 'proofs' do not reveal any injuries." (Br. Hage & DeMatteo n6). However, [*32] Redding states in a self-written report that he and Hage removed Adegbuji from his bunk and that Plaintiff struggled and refused to be cuffed. (Adegbuji Cert. Exh. 2-A). Further, Hage wrote up his own report of the incident in which he states that Adegbuji "refused again ... he was being non compliant when asked to be handcuffed." (Adegbuji Cert. Exh. 2-C-2). These reports are inconsistent with Defendants' assertions and raise genuine issues of material fact regarding the circumstances surrounding Plaintiff's cuffing and removal. To conduct a Fourteenth Amendment analysis of Hage and DeMatteo's actions that morning, the Court will utilize the factors set forth in Brooks. However, since the application of these factors hinge upon the facts surrounding June 22, 2003 which are disputed by the Plaintiff and Defendants, the Court does not deem it necessary to continue with the analysis at the summary judgment stage.

n6 The Defendants' Brief does not contain page numbers. As such, the Court is unable to provide a pinpoint cite.

[*33]

After viewing the evidence in a light most favorable to Plaintiff, the non-moving party, the Court determines that there are genuine issues of material fact as to whether the Defendants' use of force against Plaintiff actually occurred and if it occurred, whether it amounted to "punishment" in violation of his Fourteenth Amendment rights. Since the Court has previously determined that Hage and DeMatteo are not entitled to qualified immunity at this juncture, the Court denies with prejudice their motion for summary judgment on the issue of whether they used excessive force against Plaintiff.

### C. Claim of Denial of Medical Care

Adegbuji alleges that Defendants denied him proper medical care in violation of his constitutional rights. The Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to detainees. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983). However, a detainee's due process rights should be "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere, 463 U.S. at 244. [*34] The Supreme Court in Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), held that a prisoner may state a cause of action under § 1983 upon showing that a prison official was deliberately indifferent to his serious illness or injury. The Third Circuit agrees that the "deliberate indifference" standard employed in Eighth Amendment cases also applies to detainees. See Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Thus, in this context, the Fourteenth Amendment incorporates the protections of the Eighth Amendment. Accordingly, the Court will apply the both the Eighth

and Fourteenth Amendment standards of deliberate indifference in evaluating Plaintiff's denial of medical care claim. See Gonzalez-Cifuentes v. United States Dep't of Homeland Sec., 2005 U.S. Dist. LEXIS 33072, 2005 WL 1106562, *8 (D.N.J. 2005).

To prove a violation of his right to adequate medical care, a plaintiff must make a two-part showing. First, Adegbuji must allege that he had a serious medical need and second, he must allege behavior on the part of the prison officials that constitutes deliberate indifference [*35] to that need. Estelle, 429 U.S. at 106. A medical need is "serious" where it has been diagnosed by a physician as requiring treatment, is "so obvious that a lay person would recognize the necessity for a doctor's attention," or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006, 108 S. Ct. 1731, 100 L. Ed. 2d 195 (1988). Factors to consider in this analysis are: "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." Maldonado v. Terhune, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

The second element of the Estelle test requires Adegbuji to show that Defendants acted with deliberate indifference to his serious medical need. As previously noted by this Court in its prior Opinion, "deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk or harm. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). [*36] The Court also notes that a prisoner's subjective dissatisfaction with his medical treatment does not in itself indicate deliberate indifference. Andrews v. Camden Cty, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). The Third Circuit has delineated three circumstances where deliberate indifference exists. First, "where prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to 'undue suffering or the threat of tangible residual injury." Monmouth Cty Corr., 834 F.2d at 346. Second, "where knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care." Id. (citation omitted). Third, "when ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Id. (citation omitted).

Plaintiff alleges that he was denied proper medical care in various instances in violation of his Fourteenth Amendment rights. n7 On June 20 and 21, 2003 Plaintiff states that he approached a nurse requesting medicine to help a headache and to complain of stomach [*37] cramps and diarrhea. Allegedly, the nurse denied his request for Tylenol and the Plaintiff was forced to borrow and later buy his own. On June 21, Plaintiff claims that he suffered from stomach cramps and diarrhea. Plaintiff alleges that he notified a guard of his condition and filled out a sick call slip that day but was not seen by a doctor until after the incident with the officers the morning of June 22. After the alleged use of excessive force, Plaintiff admits that he was taken to the medical clinic. However, Plaintiff claims that he was not treated for his cramps, diarrhea, rectal bleeding and bleeding gums.

> n7 To the extent that Plaintiff introduces instances where he was denied medical treatment prior to June 20, 2003 in his opposition to the summary judgment motions, the Court will disregard all allegations relating to prior dates. Plaintiff is limited to the allegations made in his pleadings and may not improperly amend his Complaint via subsequent submissions to the Court.

During the afternoon of [*38] June 22, Plaintiff claims that he began to experience significant rectal bleeding. In response, officers brought in a stretcher which was accompanied by a nurse. n8 From June 22 on, Plaintiff claims that he continued to suffer from stomach cramps and diarrhea and also experienced bleeding gums and rectal bleeding as a result of the alleged use of excessive force. He was taken to the clinic again on June 24 but was allegedly provided only with pain medication for his headache. On June 25 Plaintiff visited a dentist for his bleeding gums. Since the dentist allegedly offered only to clean and x-ray one tooth, Plaintiff claims that this constituted medical malpractice and is further proof of denial of medical care. Plaintiff claims that as of the date he drafted his Complaint, n9 he had not received medical care for the aforementioned afflictions.

> n8 From the Plaintiff's Complaint, it is not clear to the Court what happened following the entrance of the stretcher. The Court is unable to determine whether the nurse provided medical treatment or if Adegbuji was taken to the medical clinic.

> n9 September 12, 2003.

[*39]

### 1. Serious Medical Need

Since Plaintiff makes no allegation of supervisory liability with respect to his claim for denial of medical

care, the Court does not deem it necessary to address Defendants' arguments separately. Further, it appears to the Court that only Defendants Abode, Cicchi, Oldham, Redding and Luck have moved for summary judgment on the basis of liability for the denial of medical care. n10 However, after examination of the arguments contained within the moving brief of Defendants Oldham, Redding and Luck, the Court determines that only Oldham moves for summary judgment on the denial of medical care claim. n11 Thus, the Court will address only the arguments of Defendants Abode, Cicchi and Oldham with respect to this claim. n12

> n10 In their brief for summary judgment, Defendants Hage and DeMatteo make no specific argument concerning their liability for Plaintiff's denial of medical care claim.

> n11 To the extent that the Redding, Luck and Oldham moving Brief also contains arguments relating to medical care in Point I, the Court does not determine that these arguments are directed towards Plaintiff's denial of medical care claim. Rather, the arguments in this section apply more appropriately to Plaintiff's excessive force claim.

[*40]

> n12 Since Defendants Redding, Luck, Hage and DeMatteo have not properly briefed this issue, the Court will deny without prejudice their motions for summary judgment with respect to this issue.

Pursuant to the Estelle standard, Plaintiff must first show that he had a serious medical need. Plaintiff claims that starting June 21 he suffered inter alia, from stomach cramps, diarrhea, rectal bleeding and bleeding gums. A medical need is "serious" where it has been diagnosed by a physician as requiring treatment, is "so obvious that a lay person would recognize the necessity for a doctor's attention," or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." Monmouth Cty. Corr., 834 F.2d at 347.

Plaintiff alleges that he experienced rectal bleeding on several occasions between June 22 and the date his Complaint was filed. Defendants argue however, that the bleeding was caused by hemorrhoids, a non-serious medical need. But Plaintiff also alleges that he suffered repeatedly from diarrhea and bleeding gums, allegations which Defendants do [*41] not deny. The Court determines that, as a matter of law, under the standard set forth in Monmouth Cty Corr., a person experiencing visible bleeding from his or her rectum, recurring diarrhea or bleeding gums undoubtedly qualifies as a need "so obvious that a lay person would recognize the necessity for a doctor's attention." Id. at 347. As a result, the Court determines that Plaintiff has satisfied the first prong of the Estelle standard.

### 2. Deliberate Indifference

The second prong of the Estelle inquiry requires Plaintiff to demonstrate that Defendants acted with deliberate indifference to his serious medical needs. Plaintiff must allege that prison officials denied his reasonable requests for treatment which caused him undue suffering, that the Defendants knew of his need for treatment but intentionally refused to provide it or that Defendants denied Plaintiff access to a physician. Monmouth Cty Corr., 834 F.2d at 346. Although Plaintiff has provided the Court with documentation of various requests for medical treatment submitted during his time at MCACC, the record does not indicate the existence of a Monmouth Cty Corr. demonstration [*42] of deliberate indifference. Rather, the Court notes that the record contains evidence which demonstrates that Plaintiff was examined multiple times by prison medical staff for his complaints, including two examinations conducted June 22, 2003 and one June 24, 2003. On June 22, 2003, after examining Adegbuji at 11:00AM, a prison doctor diagnosed Plaintiff as experiencing diarrhea and a bleeding hemorrhoid. (Adegbuji Cert. Exh. 2-G). An anti-spasmodic stomach medication was prescribed for Plaintiff's stomach cramps with the recommendation that Plaintiff avoid future constipation and take baths for his hemorrhoid. (Id.). On June 23, 2003 Plaintiff requested medical attention for the same maladies and was seen by a nurse the next day who made the same diagnoses. Plaintiff also visited a dentist on June 25, 2003 for his bleeding gums. Significantly, Plaintiff is unable to point to any subsequent request for medical attention during the remainder of his detention at MCACC which was not addressed by a member of the facility's medical staff. n13

> n13 In Adegbuji's opposition to the summary judgment motions, he includes documentation of medical request forms he submitted to MCACC at various times during his detention. Each request for medical attention that was provided to the Court sets forth symptoms and medical complaints, but each also indicates that Plaintiff was subsequently examined by a member of the MCACC medical staff. (Adegbuji Cert. Exhs. 3-A-K). As such, the Court does not consider these forms as evidence of deliberate indifference to Adegbuji's medical needs.

[*43]

It is not the position of the Court to second-guess the adequacy of provided medical treatment. Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Neither does a prisoner's subjective dissatisfaction with his treatment necessarily indicate that officials exhibited deliberate indifference to his needs. Andrews v. Camden Cty, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Defendants argue that Plaintiff has failed to demonstrate a prima facie case of denial of medical care in violation of his Fourteenth Amendment rights. The Court agrees.

At the summary judgment stage, if the nonmoving party fails to make a sufficient showing regarding an essential element of his case upon which he will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 321, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Plaintiff has not provided evidence to the Court demonstrating that Abode, Cicchi or Oldham acted with deliberate indifference. Since Plaintiff has not satisfied the second prong of the Estelle standard, Plaintiffs' claim for denial of medical care necessarily fails. [*44] After viewing the evidence in a light favorable to Plaintiff, the non-moving party, the Court determines that as a matter of law, Defendants Abode, Cicchi and Oldham are entitled to summary judgment on Plaintiff's claim of denial of medical care. For the foregoing reasons, the motions for summary judgment of Defendants Abode, Cicchi and Oldham on the issue of denial of medical care are hereby granted. Plaintiffs' claims of denial of medical care against these Defendants are dismissed with prejudice.

### C. Punitive Damages

Defendants Hage and DeMatteo n14 move for summary judgment on the issue of punitive damages and argue that Plaintiff is unable to prove that he is entitled to punitive damages. Plaintiff demands punitive damages of $ 75 million for "willful, wanton, malicious and retaliatory conducts [sic] intentionally carried out by officials to cause mental pain and suffering, and disregard for the plaintiff's clearly established constitutional and civil rights." (Compl. P9). Defendants claim that Plaintiff's request for punitive damages should be dismissed with respect to these parties since Plaintiff cannot demonstrate that these officers acted wantonly or maliciously. [*45] (Br. Hage & DeMatteo).

n14 The Court does not discern from the submissions of Defendants Abode, Cicchi, Oldham, Redding and Luck that these parties move for summary judgment on the issue of punitive damages.

In Section 1983 actions, a jury may be permitted to assess punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983); See Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000).

In the present case, there are a great number of disputed facts that are inappropriate for resolution at the summary judgment stage. Plaintiff's allegations, if proven true, could permit a reasonable juror to determine that these Defendants acted with reckless indifference to his Fourteenth Amendment rights. Thus, a reasonable juror could also determine that Plaintiff is entitled to an award of punitive damages. For the foregoing [*46] reasons, the Court denies with prejudice Defendants Hage and DeMatteo's motion for summary judgment on this issue.

### Conclusion

For the foregoing reasons, Defendants' motions are GRANTED in part and DENIED in part. An appropriate order follows.

DATED: December 20, 2005

/s/ Jose L. Linares

United States District Judge

### ORDER

LINARES, District Judge

This matter comes before the Court by way of the motions of Defendants Warden Michael Abode ("Abode"), Deputy Warden Edward Cicchi ("Cicchi"), Sergeant F.J. Redding ("Redding"), Officer Jerome T. Oldham ("Oldham"), Officer Kent Luck ("Luck"), Sergeant DeMatteo ("DeMatteo") and Officer Zyad Hage ("Hage") (collectively, "Defendants") for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff Tosin Adegbuji ("Plaintiff") commenced this action against Defendants alleging, inter alia, violations of his civil rights, use of excessive force and denial of medical care. The Court has considered the submissions in support of and in opposition to this motion. For the reasons set forth in the accompanying opinion dated December 20, 2005,

IT IS, this 22nd day of December, [*47] 2005, hereby

ORDERED that all Defendants' motions for summary judgment [51, 52, 54] are DENIED WITHOUT PREJUDICE on the issue of qualified immunity; and it is further

ORDERED that Defendants Abode and Cicchi's motion for summary judgment [51] is GRANTED on the issue of excessive force; and it is further

ORDERED that Plaintiff's claim of excessive force, alleged against Abode and Cicchi, is DISMISSED WITH PREJUDICE; and it is further

ORDERED that Defendants' Abode and Cicchi's motion for summary judgment [51] is GRANTED on the issue of denial of medical care; and it is further

ORDERED that Plaintiff's claim of denial of medical care, alleged against Abode and Cicchi, is DISMISSED WITH PREJUDICE; and it is further

ORDERED that Defendant Oldham's motion for summary judgment [52] is GRANTED on the issues of excessive force and denial of medical care; and it is further

ORDERED that Plaintiff's claims against Oldham alleging use of excessive force and denial of medical care are DISMISSED WITH PREJUDICE; and it is further

ORDERED that Defendants Redding and Luck's motion for summary judgment [52] is DENIED WITH PREJUDICE on [*48] the issue of excessive force; and it is further

ORDERED that Defendants Redding and Luck's motion for summary judgment [52] is DENIED WITHOUT PREJUDICE on the issue of denial of medical care; and it is further.

ORDERED that Defendants Hage and DeMatteo's motion for summary judgment [54] is DENIED WITH PREJUDICE on the issue of excessive force; and it is further

ORDERED that Defendants Hage and DeMatteo's motion for summary judgment [54] is DENIED WITHOUT PREJUDICE on the issue of denial of medical care; and it is further

ORDERED that Defendants Hage and DeMatteo's motion for summary judgment [54] is DENIED WITH PREJUDICE on the issue of punitive damages.

It is so ordered.

DATED: December 22nd, 2005

Jose L. Linares

United States District Judge