LEXSEE 2005 U.S. DIST. LEXIS 32238

CLYNT CROSBY, Plaintiff, v. DEMETRIOS G. GEORGAKOPOULOS, DHS DISTRICT DIRECTOR, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT - "BICE," WARDEN RALPH GREEN - HCCC, HUDSON COUNTY, KEEFE COMMISARY NETWORK SALES, ATTORNEY GENERAL JOHN ASHCROFT, Defendant(s).

Civ. No. 03-5232 (WGB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2005 U.S. Dist. LEXIS 32238

June 24, 2005, Decided
June 24, 2005, Filed

NOTICE: [*1] NOT FOR PUBLICATION

COUNSEL: For CLYNT CROSBY, Plaintiff, Pro se, MIDDLESEX COUNTY ADULT CORRECTIONAL CENTER, NEW BRUNSWICK, NJ.

For DEMETRIOS G. GEORGAKOPOULOS, DHS District Director BICE, ATTY GEN. JOHN ASHCROFT, Defendants: ANTHONY J. LABRUNA, JR., US ATTORNEY'S OFFICE, NEWARK, NJ.

For WARDEN RALPH GREEN, H.C.C.C., HUDSON COUNTY CORRECTIONAL CENTER, Defendants: CHARLES M. D'AMICO, OFFICE OF THE HUDSON COUNTY COUNSEL, JERSEY CITY, NJ.

For KEEFE COMMISSARY NETWORK SALES, Defendant: DAVID J. COONER, MCCARTER & ENGLISH, LLP, NEWARK, NJ; CHARLES M. D'AMICO, OFFICE OF THE HUDSON COUNTY COUNSEL, JERSEY CITY, NJ.

For HUDSON COUNTY, Defendant: MICHAEL L. DERMODY, OFFICE OF THE HUDSON COUNTY COUNSEL, JERSEY CITY, NJ.

JUDGES: BASSLER, SENIOR DISTRICT JUDGE.

OPINION BY: William G. Bassler

OPINION:

OPINION

BASSLER, SENIOR DISTRICT JUDGE:

Plaintiff Clynt Crosby ("Crosby") is an immigration detainee at the Hudson County Correctional Center ("HCCC"). Crosby claims to be suffering from various prison conditions including second-hand smoke, extreme cold, gang activity and unsanitary food trays in violation of his Eighth Amendment rights. He brings his action against both federal [*2] and state defendants in their official and individual capacities.

There are two pending motions in the above-titled action to dismiss Crosby's Amended Complaint. First, there is a motion to dismiss and/or for summary judgment brought by defendants Warden Ralph Green ("Warden Green") and Hudson County. Second, there is a motion to dismiss and/or for summary judgment brought by defendants Demetrios G. Georgakopoulos ("Georgakopoulos"), District Director of the Bureau of Immigration and Customs Enforcement, and John Ashcroft ("Ashcroft"), United States Attorney General.

This Court has subject matter jurisdiction under 42 U.S.C. § 1981, 28 U.S.C. § 1331, and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed. 2d 619 (1971). Venue is proper under 28 U.S.C. § 1391(b),(e).

For the following reasons, the motion to dismiss by Georgakopoulos and Ashcroft, in their official and individual capacities, is **granted**. The motion to dismiss by Hudson County is **granted**. The motion to dismiss by Warden Green in his official capacity is granted. The [*3] motion to dismiss by Warden Green in his individual capacity on Crosby's claims of gang activity, poor air ventilation, unsanitary food trays, spoiled food, and high cost telephone calls is **granted**. The motion to dismiss by Warden Green in his individual capacity on Crosby's

EXHIBIT

A-40

claims of second-hand smoke exposure and cold temperature is **denied**.

## I. BACKGROUND

Crosby, proceeding pro se, filed the initial Complaint against six defendants: (1) the Department of Homeland Security ("DHS"); (2) Georgakopoulos; (3) Ashcroft; (4) Warden Green; (5) HCCC; and (6) Keefe Commisary Network, L.L.C. ("Keefe"). On December 9, 2003, this Court dismissed with prejudice all claims against the DHS and dismissed without prejudice all claims against Ashcroft and Georgakopoulos. In addition, the Court held that HCCC could not be sued for constitutional violations pursuant to Monell v. Dept. of Social Services of New York City, 436 U.S. 658, 688-690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Nevertheless, this Court allowed those claims against HCCC to survive by construing claims brought against HCCC as claims against Hudson County.

On January 29, 2004, Crosby filed an Amended Complaint. The defendants [*4] named in the Amended Complaint were: (1) Keefe; (2) Warden Green; (3) Hudson County; (4) Ashcroft; and (5) Georgakopoulos. Crosby alleged cruel and unusual punishment in violation of the Eighth Amendment by these defendants, including dirty and dangerous prison conditions and exposure to second-hand smoke. Keefe subsequently filed a motion to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), which this Court granted on August 17, 2004. The United States Attorney, on behalf of Georgakopoulos and Ashcroft ("Federal Defendants"), moved to dismiss on August 17, 2004. Hudson County Counsel, on behalf of Warden Green and Hudson County ("State Defendants"), moved to dismiss on January 7, 2005.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for a dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); [*5] United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Dismissal is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 215 (3d Cir. 2002) (internal citations omitted). The Court need not, however, credit a pro se plaintiff's "bald assertations" or "legal conclusions." Id.

Typically courts only look to the face of the pleadings in considering motions made under Rule 12(b)(6). However, courts may examine a "document integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted). [*6]

### B. Constitutional Claims

#### 1. Eighth Amendment Standard

Plaintiff asserts that the prison conditions of the HCCC violate his Eighth Amendment protections against cruel and unusual punishment. Section 1983 of the Civil Rights Act of 1871 provides "a federal remedy against any person who, acting under color of state law, deprives another of constitutional rights." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). In Bivens, the Supreme Court recognized an implied right of action for damages in federal court where a federal agent acting under color of federal authority deprived the plaintiff of constitutional rights. 403 U.S. at 397, 91 S.Ct. at 2005. "A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors." Brown v. Philip Morris, 250 F.3d 789, 800 (3d Cir. 2001).

The Eighth Amendment's "Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes . . . ." Fuentes v. Wagner, 206 F.3d 335, 344 n.11 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L. Ed. 2d 251 (1986)). Thus, [*7] Eighth Amendment protections apply only after a formal adjudication of guilt. Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S.Ct. 1401, 1412 n.40, 51 L. Ed. 2d 711 (1977); see also City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983) (holding that Eighth Amendment has no application to a person who had not yet been convicted at the time he required medical care). Pre-trial detainees whose imprisonment did not result from the conviction of a crime cannot assert the Eighth Amendment in protecting their constitutional rights. Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005).

Crosby is an immigration detainee. He is not confined at the HCCC as a result of the conviction of a crime. "As a person detained for deportation, plaintiff's status is equivalent to a pretrial detainee, whose constitu-

tional claims are considered under the due process clause . . . instead of the Eighth Amendment." Gonzalez-Cifuentes v. United States Dep't of Homeland Sec., 04-4855(WHW), 2005 U.S. Dist. LEXIS 33072, 2005 WL 1106562, at *6 (D.N.J. May 3, 2005) (citing Hubbard, 399 F.3d at 158); see also Despaigne v. Crolew, 89 F. Supp. 2d 582, 585 (E.D. Pa. 2000) [*8] (finding that an immigration detainee is analogous to a pre-trial detainee). Crosby, as a detainee who has not been convicted of any crime, may not assert an Eighth Amendment violation against defendants.

Considering Crosby's claims all rely on Eighth Amendment violations, the Court need not address their merits. Nevertheless, because a pro se plaintiff's complaint is construed more liberally, the Court will proceed to address Crosby's claims as though he asserted them properly under the Due Process Clause of the Fifth Amendment against Federal Defendants and under the Due Process Clause of the Fourteenth Amendment against State Defendants. Failing to plead claims under due process does no lasting damage. The Supreme Court has concluded that the rights of pre-trial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, at 244, 103 S. Ct. 2979, at 2983, 77 L. Ed. 2d 605.) The Third Circuit Court of Appeals has recognized that "pretrial detainees are entitled to greater constitutional protection than that provided by [*9] the Eighth Amendment." Hubbard, 399 F.3d at 167 n.23 (internal citations omitted).

2. Due Process Standard

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process . . . the proper inquiry is whether those conditions amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979). To determine whether the conditions amount to punishment, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." Id. at 538, 99 S.Ct. at 1873. The Eighth Amendment standard of "deliberate indifference" to inmate health and safety by prison officials does "seem to establish a floor of sorts" for the due process inquiry into Crosby's claims. Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993). In evaluating a pre-trial detainee's claims, the Third Circuit Court of Appeals has "found no reason to apply a different standard than that set forth in Estelle (pertaining [*10] to prisoners' claims of inadequate medical care under the Eighth Amendment) . . . ." Natale, 318 F.3d at 581 (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976) (holding that the Eighth Amendment prohibits deliberate indifference to prisoners' serious medical needs)). "'Deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm." Gonzalez-Cifuentes, 2005 U.S. Dist. LEXIS 33072, 2005 WL 1106562, at *7 (citing Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994)).

C. Claims Against State Defendants

From Crosby's Amended Complaint, it appears that Crosby alleges the following claims against Warden Green: (1) exposure to second-hand smoke; (2) cold temperatures in cells and gym; (3) gang activity; (4) spoiled food; (5) poor air ventilation; (6) unsanitary food trays; and (7) high cost telephone calls. Am. Compl. 7-9. Crosby alleges that Warden Green, in his official and personal capacity, ignored Crosby's multiple grievances as well as the many problems in the prison. Id. at 8. Crosby further alleges [*11] that Hudson County is liable as the location where the violations occurred. Id. at 6.

1. Eleventh Amendment Immunity

The Eleventh Amendment bars Crosby from bringing suit against Warden Green in his official capacity. The Eleventh Amendment precludes federal jurisdiction over a state absent the state's consent to suit. Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1997). State agencies and state officers who act on behalf of the state are also protected by Eleventh Amendment immunity. Natural Resources Defense Council v. California DOT, 96 F.3d 420 (9th Cir. 1996) (citing P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-46, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) and Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). "An official capacity suit 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Hafer v. Melo, 502 U.S. 21, 26, 112 S.Ct. 358, 362, 116 L. Ed. 2d 301 (1991) (quoting Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 109 S.Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989)). Under § 1983, state officials [*12] acting in their official capacities like Warden Green, are not "persons." Id. Therefore, the Court dismisses Warden Green in his official capacity from Crosby's action.

"Personal capacity suits on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." Id. at 25, 112 S.Ct. at 362. Since "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," the Eleventh Amendment does not bar suit. Id. at

2005 U.S. Dist. LEXIS 32238, *

31, 112 S.Ct. at 365. Rather, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel J.M.K. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Therefore, the Eleventh Amendment does not bar Crosby's suit against Warden Green in his individual capacity.

2. Qualified Immunity

Although not explicitly stated in the State Defendants' brief, it appears that the State Defendants bring a qualified immunity defense with respect to Warden Green's liability [*13] as the ultimate supervisor of the HCCC.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but allegations must be made with "appropriate particularity." Id. Crosby alleges that Warden Green, by "failing to oversee or properly supervise officer [sic] under his charge, became personally involved in the wrongdoing." Am. Compl. 8. Therefore, to the extent that Crosby attempts to place liability on Warden Green on the basis of respondeat superior for the actions of his subordinates, Crosby's claims lack merit. The Court dismisses all claims by Crosby against Warden Green solely as the supervisor of the officers who are personally involved in the action.

3. Claim of Second-Hand Smoke Exposure

A valid cause of action under the Eighth Amendment exists when an inmate alleges that prison officials have exposed the inmate to levels of environmental [*14] tobacco smoke ("ETS") that "pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 113 S.Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993). Deliberate indifference by prison authorities is determined in light of prison officials' current attitudes and conduct. Id.

Crosby alleges that although the HCCC has a no smoking policy, the policy is continuously violated by both officers of the HCCC and inmates. In Crosby's Amended Complaint, he notes that "on an [sic] average . . . 34 of the 55 [inmates] are active smokers, from morning till night, in the cells, day room, constantly smoking." Am. Compl. 8. Crosby alleges the constant smoking causes risk of emphysema as well as "daily headaches, [for which] the only medical solution is Motrin . . ." Am. Compl. 9, 14. Taking Crosby's allegations to be true, any smoking in the HCCC in violation of the no-smoking policy would be unreasonable and considered a form of punishment against pre-trial detainees. The Court cannot conceive of any legitimate government purpose in violating a facility policy, nor is it rationally related to the purpose of detaining inmates. There is also a factual dispute [*15] over whether Crosby filed a second-hand smoke grievance with Warden Green. Discovery may reveal relevant information as to whether Warden Green acted with deliberate indifference. In analyzing the merits of Crosby's claim, adoption of a smoking policy will "bear heavily on the inquiry into deliberate indifference." Id. At this juncture, it would be premature to grant dismissal of Crosby's ETS claim because discovery has not commenced.

The State Defendants point the Court to Steading v. Thompson, 941 F.2d 498 (7th Cir. 1991), which holds that prison authorities do not violate the Eighth Amendment by failing to provide a smoke-free environment. The State Defendants' reliance on Steading is misplaced. The prison in Steading did not have a smoke-free policy. Id. at 499. Absent any existing smoke-free policy, prison authorities who decide in favor of permitting smoking in their buildings do not violate the Eighth Amendment. Id. at 500. If indeed the prison officials at HCCC are ignoring Crosby's exposure to high levels of ETS in an environment where smoking is prohibited, Crosby states a valid claim for relief. n1 "It would [*16] be unreasonable for prison officials to believe that they were not violating the prisoners' Eighth Amendment rights . . . [where] 'plaintiff's allegations, if believed, overwhelmingly describe a prison environment permeated with smoke resulting from inter alia, under-enforcement of inadequate smoking rules, overcrowding of inmates, and poor ventilation." Atkinson v. Taylor, 316 F.3d 257, 264 (3d Cir. 2003) (quoting Warren v. Keane, 196 F.3d 330, 333 (2d Cir. 1999)). The Court denies the State Defendants' motion to dismiss Plaintiff's second-hand smoke inhalation claim.

---

n1 The State Defendants also argue that according to the Prison Litigation Reform Act, 42 U.S.C.A. § 1997e(a), Crosby cannot bring suit until he has exhausted all his administrative remedies. The State Defendants maintain that Crosby never filed a grievance for second-hand smoke. The Court declines to convert this motion to dismiss into one for summary judgment by looking beyond the pleadings. Nevertheless, the Court observes that Crosby's Statement of Material Fact alleges that he did file a specific grievance for second-hand smoke, copies of which have been confiscated. These disputed facts

would be sufficient to overcome summary judgment, particularly where, as here, the parties have yet to engage in discovery.

[*17]

4. Claim of Cold Temperature

"Prisoners have a right under the Eighth Amendment to be free from extreme hot and cold temperatures." Freeman v. Berge, 2003 U.S. Dist. LEXIS 26763, 2003 WL 23272395 at *12 (W.D.Wis. Dec. 17, 2003) (internal citations omitted). "The same Eighth Amendment standard applies to cell temperatures as to other conditions of confinement: whether the temperatures subject the inmate to a substantial risk of serious harm." Id. In Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), the Supreme Court noted,

> some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise - for example, a low cell temperature at night combined with a failure to issue blankets.

Crosby alleges the same combination of conditions as in the example provided by the Supreme Court in Wilson. Crosby states that there is no heat in the cells or the gym. Am. Compl. 7. Night temperatures are "sub-zero," and the officers refuse to provide extra blankets. [*18] Id. Moreover, Crosby alleges that the cold is causing the joints in his hand to swell. Id. at 13. This combination of allegations describing Crosby's deprivation of warmth potentially amount to punishment.

In terms of Warden Green's liability, a supervisor can be found personally involved in the deprivation of a plaintiff's rights when, "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong . . . ." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal citations omitted). Crosby filed a specific grievance regarding cold temperatures, addressed to Warden Green. Because Crosby alleges that Warden Green received notice of the cold temperatures and "failed to remedy the wrong," the Court denies Warden Green's motion to dismiss with respect to Crosby's cold temperature claim.

5. Claim of Gang Activity

Crosby alleges that Warden Green failed to protect inmates from known gang members who act violently against other inmates. Am. Compl. 7. He makes general allegations that federal inmates constantly get into fights with gang members and that there has been no response to his grievances. [*19] Id. at 8. The State Defendants assert, and the Court agrees, that Crosby is only generally concerned about gang activity due to the fact that both prisoners and detainees are housed together. Crosby does not allege that he is under any specific threat from any other inmate or that Warden Green "participated in violating the plaintiff's rights, directed others to violate them" or "had knowledge of and acquiesced in his subordinates' violations" of failing to protect Crosby. A.M. ex rel J.M.K., 372 F.3d at 586. Based on such general allegations by Crosby, the Court cannot find Warden Green to be deliberately indifferent, objectively or subjectively, to any substantial risk of harm. Rather, "prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547, 99 S.Ct. at 1878. Because Crosby does not allege activity amounting to any sort of punishment against him, the Court dismisses Crosby's claim regarding gang activity.

6. Claims of Poor Air Ventilation, [*20] Unsanitary Food Trays, Spoiled Food, and High Cost Calls.

Crosby alleges various other prison conditions violations regarding poor air ventilation, the unsanitary use of food trays, spoiled food, and prohibitively high costs for telephone calls. The State Defendants properly direct the Court to Marnin v. Pinto, 463 F.2d 583, 584 (3d Cir. 1972), in which the appellant made "blanket statements" alleging bad food and miserable living conditions. The Third Circuit Court of Appeals stated that "naked statements such as this do not ordinarily merit Federal court intervention." Id. Likewise, Crosby's claims are conclusory and do not merit a cause of action under § 1983. The Court notes that, in evaluating prison conditions cases, "the Eighth Amendment is not a basis for broad prison reform . . . Any needed prison reform is an executive and legislative responsibility." Doty v. County of Lassen, 37 F.3d 540, 543 (9th Cir. 1994) (internal quotes omitted). Crosby's claims are not sufficient to allege any form of punishment. Instead they appear to be incident to the governmental purpose of detainment. "The fact that harm is inflicted by governmental authority [*21] does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed." Bell, 441 U.S. at 539 n.19, 99 S.Ct. at 1874 n.19. Thus, the Court dismisses Crosby's claims with respect to poor air ventilation, the unsanitary use of food trays, spoiled food, and prohibitively high costs for telephone calls.

7. Hudson County's Liability

In Monell, the Supreme Court held that municipalities, such as Hudson County, may be held liable under § 1983. 436 U.S. at 690, 98 S.Ct. at 2035. Municipalities, however, cannot be held liable for § 1983 claims under a theory of respondeat superior. Id. at 691, 98 S.Ct. at 2036. "Instead, it is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [local] government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037-38. In order to hold Hudson County liable for any constitutional violations, "there must be an affirmative link between [*22] the policy and the particular violation alleged." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985).

Crosby merely alleges that Hudson County is where the "illegal/wrongful policies are made . . . ." Am. Compl. 6. He does not allege any specific policies implemented by Hudson County that are in violation of his rights. Because Crosby does not state an adequate claim against Hudson County, the Court dismisses Hudson County from Crosby's action.

8. Products Liability Claim

To the extent that any claims against Hudson County remain, the Court construes the remainder as claims brought under a theory of products liability. Counsel for Hudson County refers to this Court's August 17, 2004 Opinion dismissing Keefe to assert that Hudson County should be dismissed under the same products liability theory construed from Crosby's second-hand smoke allegations. The New Jersey Products Liability Act relieves "product sellers" from liability after filing an affidavit identifying the manufacturer of the product unless the seller (1) exercised significant control over the design, manufacture, packaging or labeling of the product; (2) knew or should [*23] have known about the product defect; or (3) created the product defect. N.J.S.A. 2A:58C-9(a)-(b), (d). The Court agrees that Hudson County, which contracted with Keefe to sell products in the HCCC Commissary, is further removed than Keefe as a product seller. Hudson County is not a manufacturer of any sort, let alone a manufacturer of any products that cause harm from second-hand smoke. Thus, Hudson County cannot be held liable under the statute and is dismissed from any products liability claim on the same grounds as Keefe. (See Aug. 17, 2004 Op.)

D. Claims against Federal Defendants

Crosby alleges that Georgakopoulos, in his official and individual capacity, failed to respond to Crosby's grievances and to secure a healthy environment for immigration detainees. Am. Compl. 12-13. Crosby further alleges that Ashcroft, in his official and individual capacity, is responsible for the actions of his subordinates and failed to properly inspect the facilities prior to approving them for use by immigration detainees. Id. at 14-15. The claims against the Federal Defendants in their official capacity are dismissed under the doctrine of sovereign immunity. [*24] The claims against the Federal Defendants in their individual capacity are dismissed under the doctrine of qualified immunity.

1. Sovereign Immunity

It is well-settled that in the absence of an express waiver of immunity by Congress, the United States, its agencies, or officers are immune from suit. Dep't of Army v. Blue Fox, Inc. 525 U.S. 255, 260, 119 S.Ct. 687, 690, 142 L. Ed. 2d 718 (1999); Beneficial Consumer Disc. Co. v. Poltonowicz, 47 F.3d 91, 93-94 (3d Cir. 1995) (internal citations omitted). Therefore, when a federal agency's officer is named in an action, Congress must have consented to the action because the United States is the real party in the suit. Terrill Manor Assocs. v. United States Dep't of Housing & Urban Dev., 496 F. Supp. 1118, 1121 n.5 (D.C.N.J. 1980). See Hafer, 502 U.S. at 25, 112 S.Ct. at 361 ("real party in interest in an official-capacity suit is the governmental entity and not the named official"). "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their role in the litigation." Hafer, 502 U.S. at 25, 112 S.Ct. at 361.

The Federal [*25] Tort Claims Act ("FTCA") partially waives sovereign immunity for injuries "caused by the negligent or wrongful act or omission of any employee of the Government, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). This waiver, however, does not subject the United States to liability for constitutional tort claims. FDIC v. Meyer, 510 U.S. 471, 478 114 S.Ct. 996, 1001, 127 L. Ed. 2d 308 (1994); Biase v. Kaplan, 852 F. Supp. 268, 279 (D.N.J. 1994). Under the FTCA, the "law of the place where the act or omission occurred" is state law. Id. "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a constitutional right." Id. In this case, Crosby has only sued for alleged violations of his constitutional right to be free from cruel and unusual punishment. Federal and not state law applies to this case.

Sovereign immunity is a jurisdictional issue. Meyer 510 U.S. at 475, 114 S.Ct. at 1000. Because constitutional claims are not [*26] cognizable under the FTCA, and the United States has not waived its sovereign immunity, this Court lacks jurisdiction to hear Crosby's claims against Federal Defendants. n2 The Court therefore dismisses Crosby's claims against Federal Defen-

dants in their official capacity pursuant to Fed. R. Civ. P. 12(b)(1).

> n2 Crosby's argument that his action is not a tort against the United States because the Federal Defendants' actions are "not one of discretion but mandated through the administrative process" is unfounded. The scope of the Federal Defendants' discretionary or administrative duties is irrelevant to whether sovereign immunity applies to them. There is a discretionary function exception to the waiver of sovereign immunity by the FTCA. See 28 U.S.C. § 2680(a). But whether or not the Federal Defendants' actions were discretionary, the FTCA does not apply to Crosby's constitutional tort claims. Crosby's reference to the Foreign Sovereign Immunities Act ("FSIA") in his reply brief is likewise irrelevant. The FSIA only applies to foreign states claiming immunity.

[*27]

2. Qualified Immunity

Sovereign immunity does not bar Plaintiff from bringing a constitutional tort claim against the Federal Defendants in their individual capacities. Hines v. Irvington Counseling Ctr., 933 F. Supp. 382, 388 (D.N.J. 1996). Nevertheless, the Federal Defendants assert a valid qualified immunity defense. Government officials such as the Federal Defendants are generally shielded from liability for civil damages in their individual capacity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person should have known." Smith v. Marasco, 318 F.3d 497, 510 (3d Cir. 2003) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

Just as respondeat superior cannot be the basis of liability in a § 1983 action, Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990), "the Courts of Appeals have unanimously rejected the contention . . . that the doctrine of respondeat superior is available against a municipal entity under a Bivens-type action implied directly from the Fourteenth Amendment." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S.Ct. 2702, 2722, 105 L. Ed. 2d 598 (1989) [*28] (internal citations omitted).

Crosby's allegations demonstrate that he is attempting to hold the Federal Defendants liable for the actions of others in failing to respond to grievances. He explicitly alleges that Ashcroft "is responsible for the action [sic] of his subordinates." Am. Compl. 15. Moreover, Crosby claims that Georgakopoulos, "through the deliberate indifference of prison official [sic] to my rights failed to respond to my cries for help." Id. at 12. As the Federal Defendants point out, neither of them are directly responsible for, or in direct control of, the conditions at the HCCC, which is a Hudson County, New Jersey facility, contracted by the United States to hold immigration detainees. Crosby cannot hold the Federal Defendants responsible for the actions of officials within the HCCC because Bivens liability requires proof of direct personal responsibility. See Pellegrino v. United States, 73 F.3d 934, 936 (9th Cir. 1996). Therefore, any claims by Crosby against the Federal Defendants under a theory of respondeat superior are dismissed.

Crosby's claims are similar to those of the plaintiff in Rode v. Dellarciprete. In Rode, [*29] the plaintiff filed grievances with the Governor's office of administration and alleged that the Governor and Attorney General had personal knowledge because they had the power to review and approve agency regulations. 845 F.2d at 1208. The Third Circuit Court of Appeals, however, dismissed plaintiff's claims against the Governor and Attorney General as insufficiently alleging personal involvement. Id. The Third Circuit Court of Appeals held that "the power to review and approve a departmental regulation for form and legality, however, does by no means charge the Governor and Attorney General with the duty to enforce that regulation." Id. Moreover, "a contrary holding would subject the Governor to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office." Id. Likewise, although Crosby alleges that Ashcroft is responsible for ensuring that "all facilities are to standard . . . before approval for use is given," Am. Compl. 15, this power does not charge Ashcroft with the duty to enforce the regulation. Crosby's claim that Georgakopoulos' office [*30] failed to respond to Crosby's letters and complaint are insufficient to show that Georgakopoulos had actual knowledge of Crosby's complaints as well. Crosby's reply brief, which further elaborates on conditions at the HCCC, fails to support personal involvement by Federal Defendants. Thus, the Federal Defendants have not violated any recognized constitutional rights. The Supreme Court admonishes against permitting "insubstantial lawsuits" against high government officials to proceed to trial because they "undermine the effectiveness of government. . . ." Harlow, 457 U.S. at 819 n.35, 102 S.Ct. at 2739. In light of such considerations, the Federal Defendants' qualified immunity defense stands, and the Court dismisses the claims against the Federal Defendants in their individual capacities.

E. Request to Amend the Amended Complaint

In Crosby's September 9, 2004 reply to Federal Defendants' motion to dismiss, Crosby requests leave to amend his Amended Complaint to include retaliatory

conduct. The Court denies Crosby's request as deficient. Request to amend a complaint should be made through a proper motion and not within a reply brief.

F. Motion and Demand for [*31] Jury Trial by Crosby

Crosby also filed a "Motion and Demand for Jury Trial" on September 2, 2004, requesting the following: (1) a schedule to proceed to trial by jury pursuant to Fed. R. Civ. P. 38(b); (2) issuance of a discovery plan pursuant to Fed. R. Civ. P. 26.1; (3) issuance of a scheduling order pursuant to Fed. R. Civ. P. 16; (4) default judgment against all defendants; (5) a temporary injunction voiding the Federal Defendants' contract with HCCC to house immigration detainees; and (6) summary judgment pursuant to Fed. R. Civ. P. 56.1.

The Court denies Crosby's "Motion and Demand for Jury Trial." Crosby's request for issuance of a trial date, discovery plan, and scheduling order are premature. Magistrate Judge Madeline Cox Arleo will issue the proper scheduling orders in due time. Furthermore, there is no basis for default judgment against any defendants. All defendants have answered Crosby's Amended Complaint with dispositive motions. Crosby's request for a temporary injunction is likewise denied. Crosby has not provided sufficient information to weigh the immediate necessity of a temporary [*32] injunction. Crosby's request for summary judgment is also premature. Because discovery has not occurred yet and the Court has denied Warden Green's motion to dismiss for Crosby's claims of exposure to second-hand smoke and cold temperature, the request for summary judgment is denied.

## III. CONCLUSION

For the reasons stated above, Federal Defendants' motion to dismiss is **granted**. Hudson County's motion to dismiss is **granted**. In his official capacity, Warden Green's motion to dismiss is **granted**. In his individual capacity, Warden Green's motion to dismiss on Crosby's claims of gang activity, poor air ventilation, unsanitary food trays, spoiled food, and high cost telephone calls is **granted**. In his individual capacity, Warden Green's motion to dismiss on Crosby's claims of second-hand smoke exposure and cold temperature is **denied**.

The Court **denies** the various relief requested in Crosby's "Motion and Demand for Jury Trial."

An appropriate order follows.

/s/ William G. Bassler

William G. Bassler, U.S.S.D.J.

DATED: June 24, 2005

**ORDER**

This matter having come before the Court on the motions to dismiss and/or for summary [*33] judgment by defendants Bureau of Immigration and Customs Enforcement Director Demetrios G. Georgakopoulos ("Georgakopoulos") and Attorney General John Ashcroft ("Ashcroft"), the motion to dismiss and/or for summary judgment by defendants Warden Ralph Green ("Warden Green") and Hudson County, and the "Motion and Demand for Jury Trial" by plaintiff Clynt Crosby ("Crosby"); and

The Court having decided this matter without oral argument pursuant to Fed. R. Civ. P. 78; and

For the reasons set forth in the Court's Opinion filed this day; and

For good cause shown;

It is on this 24th day of June, 2005, hereby ORDERED that the motion to dismiss by Georgakopoulos and Ashcroft in their official and individual capacity is **GRANTED**;

IT IS FURTHER ORDERED that the motion to dismiss by Hudson County is **GRANTED**;

IT IS FURTHER ORDERED that the motion to dismiss by Warden Green is **GRANTED** with respect to the claims brought against him in his official capacity;

IT IS FURTHER ORDERED that the motion to dismiss by Warden Green is **GRANTED** with respect to the claims brought against him in his individual capacity and alleging gang activity, [*34] poor air ventilation, unsanitary food trays, spoiled food, and high cost telephone calls;

IT IS FURTHER ORDERED that the motion to dismiss by Warden Green is **DENIED** with respect to the claims brought against him in his individual capacity and alleging second-hand smoke and cold temperatures.

IT IS FURTHER ORDERED that Crosby's "Motion and Demand for Jury Trial" is **DENIED**.

/s/ William G. Bassler

William G. Bassler, U.S.S.D.J.