LEXSEE 2004 U.S. DIST. LEXIS 29094

NIGEL MACCADO v. NICOLE JOLLEY DOUGLAS C. DEVENYNS ROSALIND ROBERTS DOCTOR SHARMA

CIVIL ACTION NO. AW-04-73

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

2004 U.S. Dist. LEXIS 29094

August 25, 2004, Decided

**SUBSEQUENT HISTORY:** Affirmed by MacCado v. Jolley, 124 Fed. Appx. 788, 2005 U.S. App. LEXIS 5009 (2005)

**COUNSEL:** [*1] For Nigel MacCado, Plaintiff: Pro se, Snow Hill, MD.

For Nicole, Library Clerk, Douglas C. Denenyns, Director (Warden), Rosalind Roberts, Deputy Director, Nicole Jolley, Defendants: Matthew Douglas Peter, Kevin Bock Karpinski, Allen Karpinski Bryant and Karp PA, Baltimore, MD.

**JUDGES:** Alexander Williams, Jr., United States District Judge.

**OPINION BY:** Alexander Williams, Jr.

**OPINION:**

MEMORANDUM

On January 9, 2004, this 42 U.S.C. § 1983 complaint for damages was received for filing from Nigel Maccado ("Maccado"), who was at that time confined at the Wicomico County Detention Center ("WCDC"). Maccado is a detainee of the Department of Homeland Security ("DHS").

Plaintiff presents a number of claims related to his confinement at the WCDC from December 3, 2003 to February 19, 2004. The allegations focus on access-to-courts, medical care, and WCDC visitation policy issues. Plaintiff asserts that:

. He has only been provided limited access to the WCDC law library, which contains inadequate resources and an antiquated photocopier.

. The library clerk refused to make more than 2 copies of each document. [*2]

. He was denied adequate postage stamps to mail out legal documents.

. He was denied access to telephones to contact his attorneys and others so as to prepare for his immigration proceedings.

. His medical conditions, as well as his prescription regimen, were ignored upon his December 3, 2003 arrival at WCDC. As a result he only received four of his twelve prescribed medications and he did not received proper treatment and/or surgeries for his cardiovascular, back, eye, kidney, prostate, and ear problems.

. His family visits are limited in number and time.

On May 3, 2004, defendants Devenyns, Roberts, and Jolley ("WCDC defendants") filed a motion to dismiss or, alternative, motion for summary judgment, treated as one for summary judgment. n1 (Paper No. 12.) On July 6, 2004, plaintiff filed an opposition response. (Pape No. 18.) The case may be determined on the pending dispositive motion. Oral hearing is deemed unnecessary. *See* Local Rule 105.6. (D.Md. 2001).

n1 Summons and complaint were issued as to Dr. Sharma on March 25, 2004. (Paper No. 10.) On April 6, 2004, the Clerk's Office received a return receipt which seemingly indicates that on March 29, 2004, staff at WCDC signed a certified mail receipt. (Paper No. 11.) It is not clear whether this person has authority to accept service on behalf of Dr. Sharma or whether Dr.

EXHIBIT
A-41

2004 U.S. Dist. LEXIS 29094, *

Sharma in fact received the summons and complaint. In any event, Dr. Sharma has not filed an answer to the complaint.

[*3]

I. *Standard of Review*

A. *Motion to Dismiss*

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B. *Motion for Summary Judgment*

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled [*4] to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor [*5] of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

*In* Celotex, *the Supreme Court stated:*

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving [*6] party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

II. *Analysis*

*Medical Care*

The gravamen of Maccado's medical complaints is that his prior prescription regimen was not followed upon his December 2003 arrival at WCDC; that his heart, back, kidney, prostate, and ear problems were ignored; and that he did not receive necessary surgeries for clogged arteries and cataracts, [*7] as well as his spinal, prostate and kidney problems.

In order to state a constitutional claim for denial of medical care a prisoner must demonstrate that the defendants' acts (or failures to act) amounted to deliberate in-

difference to his serious medical needs. n2 *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Thus, a defendant must have actual knowledge of a serious condition, [*8] not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

> n2 This court will evaluate Maccado's right to medical care under the Due Process Clause of the Fourteenth Amendment, given his status as a detainee of the DHS, Immigration & Customs Enforcement, formerly housed at WCDC from December 2003 to February 2004. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). This Circuit has routinely applied the deliberate indifference standard in such cases, affirming that a detainee's due process rights are at least coextensive with the Eighth Amendment rights of convicted prisoners. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Martin v. Gentile*, 849 F.2d 863, 870-71 (4th Cir. 1988). Therefore, the Eighth Amendment criteria set out in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) shall be applied to constitutional medical claims presented by Maccado. *Grayson*, 195 F.3d at 695; *Martin*, 849 F.2d at 870-71; *see also Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).

[*9]

"'Because society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is serious'". *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). "An injury or condition is serious' only if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)).

The records indicate that plaintiff was received at the WCDC on December 3, 2003. He had previously been detained at local jail facilities in New Jersey. During the reception process, Maccado was examined by Dr. Sharma. (Paper No. 12, Ex. C.) As a result of the examination, plaintiff was prescribed various drugs. (*Id.*) On December 16, 2003, Maccado filed medical requests asking to see a cardiologist, urologist, bone [*10] specialist, ear specialist, and eye doctor. (*Id.*) He additionally complained about the receipt of medication. (*Id.*, Ex. B.)

Medical records from plaintiff's prior places of DHS detention indicate that Maccado had undergone surgery to open up his right coronary artery and to repair a right inguinal hernia. In response to outside complaints regarding Maccado's health care, an immigration officer visited WCDC and determined that plaintiff was being provided with all of the necessary medications. (*Id.*, Ex. B.) On January 12, 2004, Head Nurse N. Jean Murray submitted a letter to the U.S. Public Health Service related to plaintiff's cardiac care. (*Id.*) The letter indicated that Maccado was being provided with treatment, but he did not find the treatment satisfactory. (*Id.*) Murray requested that plaintiff be transported to another facility. (*Id.*)

Plaintiff has a history of hypertension and coronary heart disease. While confined in local New Jersey detention facilities in 2003, he underwent coronary angioplasty to the mid-circumflex artery with a stent to the artery. Attempts to open a total occlusion of the right coronary artery were unsuccessful. Upon his arrival [*11] at WCDC his medical history was examined. He was prescribed a number of medications, including Imdur, Flomax, Lopressor, Aspirin, Metoprolol, Colbenemid, and Hytrin to treat his coronary artery disease and other problems. n3 His vital signs were checked and he was provided an extra mattress and recommended for a bottom bunk. While plaintiff filed written medical requests related to his medication, medical problems, and his need to visit off-site physicians, the record shows that Maccado was provided prescription medications. There is no indication from his prior medical record that surgeries or follow-up care was needed or that plaintiff required off-site treatment from the specialists he was requesting to see.

> n3 It is not pellucidly clear from the pharmacies whether Maccado did receive Plavix for conservative treatment of his coronary artery disease. Head Nurse Murray did indicate that such medi-

cation, along with Aspirin, could be prescribed for said condition.

In addition, plaintiff has failed to establish [*12] that the WCDC defendants were personally involved in the alleged deprivation of proper treatment for his medical problems. Prison administrators are entitled to rely on the medical care decisions reached by healthcare personnel. For these reasons, I conclude that plaintiff has failed to meet his burden of showing an unconstitutional deprivation of medical care. n4

> n4 In light of this finding, the complaint against Dr. Sharma shall be dismissed.

*Access-to-Courts*

Plaintiff base file records indicate that he submitted approximately five requests to have documents copied at the WCDC law library. (*Id.*) According to the record, it appears that on four of the five occasions, the requests were granted. (*Id.*) WCDC defendants state that during Maccado's detention, the law library was open for five hours every Friday n5 and, in addition, an inmate could request that he be permitted to use the library on other occasions. (*Id.* Ex. D.) They assert that the request would be granted when circumstances permitted [*13] it and that one of the request slips submitted by plaintiff for library access outside the ordinary law library hours on December 16, 2003, was granted. (*Id.*, Exs B & D.)

> n5 In his opposition response, plaintiff indicates that a change to the WCDC law library schedule for DHS detainees was made after DHS detainees went on a three-day hunger strike in March 2004.

Maccado has not established that his alleged limited assess to the law library and the alleged denial of adequate postage stamps, photocopying and telephone access affected his ability to litigate his cases. Plaintiff indicates that he was represented by counsel during his immigration proceedings. There is no information that Maccado did not receive incoming legal mail or was unable to have attorney visits and use the telephone while confined at WCDC. Further, it remains unrefuted that Maccado was provided some access to the WCDC law library. Finally, although plaintiff complains about being provided limited copies of his materials and postage, there [*14] is no showing that he was unable to file petitions and pleadings in this federal court or was otherwise prejudiced by these alleged limitations for the two and one-half months he was detained at WCDC. Maccado has failed to show that he was deprived of a colorable constitutional interest. His claim is without merit. *Lewis v. Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)(access to courts denied when circumstances adversely effect a prisoner's ability to actively proceed with litigation).

*Family Visitation*

Plaintiff complains that the limitations placed on visits with his grandchildren while confined at WCDC were constitutionally impermissible. WCDC defendants acknowledge that the visitation policy at WCDC limits minor children to visits on the first Saturday of each month. The court finds that said prison policy does not violate First Amendment rights. *Overton v. Bazzetta*, 539 U.S. 126, 133, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003).

For the foregoing reasons, WCDC defendants' motion for summary judgment shall be granted. A separate Order follows. n6

> n6 WCDC defendants make reference to a First Amendment access to religious service claim. This contention is not raised in this complaint.

[*15]

Date: August 25, 2004

Alexander Williams, Jr.

United States District Judge

**ORDER**

In accordance with the foregoing Memorandum, IT IS this 25th day of August, 2004, hereby ORDERED that:

> 1. Defendants Jolley, Devenyns, and Roberts's motion to dismiss or, in the alternative, for summary judgment, treated as one for summary judgment (Paper No. 12) IS GRANTED;
>
> 2. Judgment IS ENTERED in favor of defendants Jolley, Devenyns, and Roberts and against the plaintiff;
>
> 3. The complaint against defendant Sharma IS DISMISSED;

4. The Clerk of the Court shall CLOSE this case;

5. The Clerk shall MAIL a copy of this Order, together with the foregoing Memorandum, to the plaintiff and to Matthew Peter, Esquire.

Alexander Williams, Jr.

United States District Judge