Page 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-377-WDM-BNB

MOISES CARRANZA-REYES,

    Plaintiff,

v.

PARK COUNTY, a public entity of the State of Colorado and its governing board;
THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
PARK COUNTY SHERIFF'S OFFICE, a public entity of the State of Colorado;
FRED WEGENER, individually and in his capacity as sheriff of Park County, Colorado;
MONTE GORE, individually and in his capacity as captain of Park County Sheriff's Department;
VICKI PAULSEN, individually and in her official capacity as registered nurse for Park County, Colorado; and

    Defendants.

## AFFIDAVIT OF VICKI PAULSEN

    Vicki Paulsen (Affiant), being of lawful age and duly sworn upon oath, deposes and states upon personal knowledge as follows:

    1.    I have been a nurse for 45 years. In January 2003, I became employed by Park County as a registered nurse at the Park County Jail (the "Jail").

    2.    On March 6, 7 and 8, 2003, I saw Moises Carranza-Reyes, an INS detainee at the Jail. A true and accurate copy of the notes I made detailing my involvement in Mr. Carranza-Reyes' care on March 6, 7 and 8, 2003 are attached to this affidavit.

    3.    On March 8, 2003, I was informed by Deputy Fikejs at approximately 3:45 a.m. that Mr. Carranza-Reyes had experienced shortness of breath and had been given oxygen. Deputy Fikejs also informed me that Mr. Carranza-Reyes was feeling better after receiving the

Exhibit A-4

12/14/2006  09:19   7198363475                SOUTHPARKGRAPHICS!"                              PAGE  03

oxygen; accordingly, I did not feel it was necessary to go to the Jail right away, but I decided to go in later that morning to check on Mr. Carranza-Reyes.

4. I left instructions with Deputy Fikejs to give Mr. Carranza-Reyes Motrin 800mg and Pepto Bismol, and to contact me if his condition changed. I planned to arrive at the Jail at approximately 8:00 a.m. to check on Mr. Carranza-Reyes unless I was informed earlier that his condition had worsened.

5. Although the Jail staff did not call me again regarding Mr. Carranza-Reyes, I called the Jail at approximately 6:00 a.m. from home to check on him and was told that he was resting and had used the bathroom once. Based on that information, my plan to arrive at the Jail at around 8:00 a.m. did not change.

6. When I arrived at the Jail at approximately 7:45 a.m., I was informed that Mr. Carranza-Reyes had fallen in the upper tier of D pod. I went directly to the pod, and Mr. Carranza-Reyes informed me, through an interpreter, that he had pain in the kidney area radiating around to his groin.

7. Because of this new symptom and the fact that Mr. Carranza-Reyes was not improving, I decided at that point that he needed to be seen by a physician. Accordingly, I informed Corporal Crawford that Mr. Carranza-Reyes needed to be transported to Summit Medical Center.

8. Although I felt Mr. Carranza-Reyes should be seen by a physician, I did not believe, based on his symptoms, that Mr. Carranza-Reyes required emergency treatment. Had it been a weekday, I would have made arrangements to have him transported by Jail staff to Dr.

Bachman's office for evaluation. Because it was a Saturday, and Dr. Bachman was on vacation, Mr. Carranza-Reyes would have to go to Summit Medical Center to be seen by a physician.

9. When I told Corporal Crawford that Mr. Carranza-Reyes should be transported, he replied that we had to call and get permission from the INS before transporting. Had I felt there was an emergency, I would have bypassed the INS and simply called an ambulance. However, because I did not believe Mr. Carranza-Reyes required emergency treatment, I called Ben Baca at the INS to tell him about Mr. Carranza-Reyes's condition and to tell him that Mr. Carranza-Reyes needed to be transported to a hospital to be seen by a physician.

10. Mr. Baca informed me that it could be up to three hours before the INS would be able to transport Mr. Carranza-Reyes, but that the Jail staff could transport him sooner if his condition worsened. I called Summit Medical Center to notify them that we would be transporting Mr. Carranza-Reyes to their facility for evaluation.

11. Based on my conversations with Mr. Baca and Corporal Crawford, my understanding when I left the Jail at approximately 9:00 a.m. was that the INS would be arriving within three hours of the time I spoke to Mr. Baca to transport Mr. Carranza-Reyes, and that Jail staff would be transporting him earlier than that if his condition worsened before the INS arrived. Accordingly, I instructed the Jail staff to call me at home if Mr. Carranza-Reyes's condition worsened before the INS arrived.

12. When I left the Jail at approximately 9:00 a.m., Mr. Carranza-Reyes was stable; he did not appear to be in distress, and I did not believe he required emergency treatment. Based on Mr. Carranza-Reyes's condition at that time, I did not believe it was necessary to remain at the Jail pending Mr. Carranza-Reyes's transport to the hospital.

12/14/2006  09:19    7198363475                SOUTHPARKGRAPHICS!"                    PAGE  05

13. I called the Jail from home at approximately 10:30 a.m. to check on Mr. Carranza-Reyes and to find out whether he had been transported yet.

14. Corporal Crawford informed me that Mr. Carranza-Reyes had not yet been transported and that the Jail staff had not even heard back from the INS regarding when they would be arriving. He also informed me that Mr. Carranza-Reyes had vomited some more and was unable to keep fluids down.

15. Based on what Corporal Crawford told me, I instructed him not to wait for the INS and to go ahead and transport Mr. Carranza-Reyes. I made this decision because: (1) I was concerned that the INS had not called back yet with any arrangements for transport, leaving it uncertain when they would arrive; (2) I was concerned about Mr. Carranza-Reyes becoming dehydrated, as he vomited more and could not keep any fluids down; and (3) Mr. Carranza-Reyes's condition was not improving.

16. Although I decided that the Jail staff should go ahead and transport Mr. Carranza-Reyes, I did not believe that Mr. Carranza-Reyes's condition was emergent or that he required emergency transport. Had I concluded that emergency transport was necessary, I would have instructed Corporal Crawford to call an ambulance immediately.

17. I was deposed on January 18, 2006. During my deposition, I was never asked to explain the distinction between my decision around 8:00 a.m. to wait for the INS to arrive to transport Mr. Carranza-Reyes, which could take up to three hours, and my later decision at approximately 10:30 a.m. that the jail staff should transport. This affidavit provides that explanation.

4

Further Affiant sayeth not.

Dated this 14 day of December, 2006.

*Vicki Paulsen*
Vicki Paulsen

STATE OF COLORADO  )
                   ) ss.
COUNTY OF PARK     )

Sworn and subscribed to me this 14 day of December, 2006 by Vicki Paulsen.

My commission expires: 06/29/2010

*[signature]*
Notary Public

[Notary seal: NOTARY PUBLIC, STATE OF COLORADO]

5

3-6-03                          Park Co. Jail

Re: INS hold Carranza, Moises

S: Brought to medical with interpreter c/o body aches, headache, nausea, and diarrhea. States he has nasal cingestion and sore throat.

O: T 100.2 P:88 R:24

A: Skin warm and dry to touch. Abdomen non rigid and slightly tender over stomach. Lungs clear bilaterally, with clear breath sounds and without wheezes. Heart sounds normal and regular. Denies any history of heart, stomach or gastrointestinal problems. Denies any history of ashma or lung problems. Neck non tender.

P: Motrin 400mg for body aches and headache, CTM for nasal congestion, Pepto Bismal for upset nausea. Told through interpreter to drink fluids to keep himself hydrated. Asked inerpreter to to tell him to let medical know if he is not improving.

James Bachman MD                          Vicki Paulsen RN

PARK 3525
REYES

3-7-03                  Park Co. Jail

Re: Ins hold Carranza, Moises

S: Brought to medical with interpreter with c/o headache, nausea vomiting, body aches and diarrhea. Still has nasal congestion.

O: Afebrile T. 97.4 P.92 R. 24

A: Skin warm and dry to touch. Lung sounds clear bilaterally, Clear breath sounds without wheezes. Heart sounds normal and regular. Abdomen slightly tender over stomach.

P: Continue Motrin 400mg, CTM for nasal congestion, and Pepto Bismal for nausea and diarrhea. To contact medical if there are worsening of symptoms.

James Bachman MD                  Vicki Paulsen RN

PARK 3528
REYES

nurse report

3-8-03

0345: Received a call rom Deputy Fikjas at Park Co. Jailreguarding INS hold Carranza,who was having
trouble breathing and was c/o vomiting and nausea.He stated that they had placed Mr. Carranza on
oxygen and he was feeling better. Deputy Fikjas was told he could give Mr.Carranza Motrin 800mg
for aches and headache,and to give Pepto Bismal for his nausea. and diarrhea. I asked Deputy Fikjas
to call me if there was any change in Mr. Carranzas condition.

0600: Called Deputy Fikjas to see how Mr. Carranza was . He stated he had used the bathroom once
in the last two hours and appeared to be resting.

0750 Arrived at Park Co. Jail to assess Mr. Carranza. Shortly after arriving I was told he had just fallen
in the tier. I went to the upper D Pod tier and Corp. Crawford was with Mr. Carranza.Through an
interpreter I assessed he was coherent and c/o right side pain. On assesssment Mr.Carrnaza had
minimal abdominal discomfort but had developed acute right side pain. He had pain over his right
kidney, radiaating to his right flank and down into tha right lower abdomen slightly above his groin.
Mr. Carranza was then moved to the lower tier for his safety and protection.I asked that INS be called
as I felt that Mr. Carranza needed to be transported to Summit Medical for evaluation by a physician.
I talked to Ben at INS and appraised him of the situation with Mr. Carranza.He stated it would be at
least three hours before they could get someone here to transport Mr. Carranza, and he gave us
permission to transport if his condition worsened. Ben asked me what I thought was the problem and
I axplained that it could be anything from possibly kidney stones ,to gall bladder or something else.
Stated I felt he needed to be evaluated by a physician.

1030: Called for an udate on Mr. Carranza and was told by Deputy T

Page 1

PARK 3542
REYES

nurse report

heobold that he was vomiting more frequently. Being concerned about Mr. Carranza becoming dehydrated, and concerned about his right side pain, I asked that he be transported to Summit Medical for evaluation.

1130: Called and talked with Corp. Crawford and he stated that Sgt. Muldoon was on his way in to transport Mr. Carranza to Summit Medical.

1330: Called Corp. Crawford for an update on Mr. Carranza and was told he had not heard anything from Summit Medical, but he would call and inform me as soon as he heard anything,

1430: Corp. Crawford called and stated that Mr. Carranza was in route to Denver General with a dianosis of pneumonia.

2300: Called by Capt. Gore and was told that Mr. Carranza was in critical condition and had become septic. Capt. Gore asked if Mr.Carranza had been treated medically by us and was told yes, That I had seen him on 3-6-03 and 3-7-03 for flu like symptoms. I wasthen called in AM of 3-8-03 that his symptoms had become worse.

Vicki Paulsen Rn

Page 2

PARK 3543
REYES