**IVOR GARLICK, M.D., P.C.**

INTERNAL MEDICINE
ADDICTION MEDICINE

SEP 1 5 2006

1211 SOUTH PARKER ROAD
SUITE 100
DENVER, COLORADO 80231
TELEPHONE (303) 873-6990
FAX (303) 873-6937

Member, Society of Correctional Physicians
Member, Certified by National Commission on Correctional Health Care
Regional Medical Director, Western Region, Prison Health Services
Medical Director, GEO/ICE, Aurora CO

September 13, 2006

Craig A. Sargent, Esq.
Johnson, McConaty & Sargent, P.C.
400 South Colorado Boulevard
Suite 900
Glendale, Colorado 80246

Dear Mr. Sargent:

Having reviewed the documents and deposition transcripts relating to Carranza-Reyes v. Park County et al, it is my considered opinion that:

1. Dr. Bachman was contracted to work at Park County Jail on two (2) separate occasions (every two weeks), for a session of about four (4) hours each time. During this time he was expected by the Sheriff of Park County to see patients placed on his sick call list by the nurse who worked at the facility on a full time basis. He was required by the Sheriff to take care of the patients on the list.

2. According to Dr. Bachman's contract, for which he was paid a minimal amount, he was the medical director in name only. His duties as required by the Sheriff were never insisted to be those of a 'hands on" medical director. By this there was absolutely NO insistence by the Sheriff or his deputies for Dr. Bachman to function on an infection control committee, a quality improvement committee or to monitor environmental conditions in the jail.

3. The title of Medical Director does not always carry with it the expected duties as outlined in the contract. The performance of the duties is directly related to the demand for carrying out those duties by the Sheriff or his assignees. To fully comply with all the contractual stipulations, Dr. Bachman would have had to work at least two (2) to three (3) times the number of hours that were allotted to him. He was not requested to spend that amount of time working in the jail. He was not required to attend or conduct meetings nor to do anything more than he did. The depositions of the Park County Jail employees support this. Therefore, the time he was present at the jail was to do what was required and expected of him to do, i.e. see and treat patients who were brought to his attention by the nursing staff.

4. Park County Jail had adopted policies and procedures that satisfied state and national standards. Dr. Bachman reasonably and appropriately carried out his responsibilities as set forth in his contract as Medical Director and as set forth in the policies and procedures as relate to this case.

Exhibit A-14

5. Dr. Bachman testified in his deposition that he did periodically tour the jail, three or four times per year. He never observed any overcrowding or unsanitary conditions. He was not involved in any of the day to day operations of the jail and was not required by the Sheriff or his staff to be involved. This was never required of him during his tenure at Park County. His opinion about how the pods should be filled was never asked of him and he was never expected to comment. Even if he did feel the pods were e.g. unhygienic or overfilled, and if he did express concerns, it is doubtful that his opinion would have made an impact on the running of the facility.

6. As far as being a monitor of protocol, Dr. Bachman would evaluate each chart when he saw the patients. He would indeed be carrying out his duty of monitoring and supervising the nurses every time he read a patient's chart that had an entry in it, including that of the nurse. In this way, he would directly evaluate each entry and would be carrying out his function as supervisor, teacher, and monitor. This function does not have to be performed at a meeting. Chart reviews are done every time a physician examines a chart when seeing a patient.

7. Dr. Bachman had confidence in the ability of Nurse Paulsen and although there were no formal protocols, he trusted her judgment to call him if she felt that was necessary. In the case of Mr. Carranza-Reyes, she did not call him. There were no state or national standards requiring medical or nursing protocols at that time that would have required Dr. Bachman to have any written medical protocols in place at the Park County Jail. Instead, the need for written medical protocols is dependent on the education and experience of the nurse in providing direct healthcare to patients and also dependent on the level of interaction that Dr. Bachman, as physician and Medical Director, had with Nurse Paulsen during the time that they worked together at the Park County Jail. Dr. Bachman and Nurse Paulsen had open lines of communication. Nurse Paulsen knew and understood when she should contact Dr. Bachman for either medical questions related to inmate care or to refer inmates to Dr. Bachman's office for evaluation. Dr. Bachman regularly reviewed and discussed with Nurse Paulsen the charts of those inmates seen by Nurse Paulsen and in so doing, properly supervised and trained her. It is also evident from these depositions that Dr. Bachman spent a significant amount of time when he was at the jail conversing with Nurse Paulsen, directly supervising her and providing training to her with regard to various medical conditions. Nurse Paulsen was a very experienced nurse with a number of years of clinical care experience and was well qualified to provide initial patient care and treatment to inmates. Nurse Paulsen knew the scope of her responsibilities in terms of her abilities, limitations and restrictions as a nurse. Nurse Paulsen recognized these restrictions and limitations and had, on a number of occasions, made telephone calls to Dr. Bachman to involve Dr. Bachman in medical decision making for inmates. Dr. Bachman's level of supervision as Medical Director was appropriate and reasonable, and consistent with physicians and medical directors in his position when supervising a registered nurse at smaller, non-urban, correctional facilities like the Park County Jail.

8. Dr. Bachman performed in service training for the jail staff on a regular basis. In this way he carried out his duty to educate the staff to identify medical problems for which he would need to be called on an immediate or urgent basis. It appears from the documents that Mr. Carranza –Reyes was being monitored on a very frequent basis

2

on March 6, 7, and 8, 2003. The deputies and the nurse had been well trained and knew their responsibilities. This sequence of events shows that Mr. Carranza-Reyes had access to medical care and was receiving medical evaluations and care on a frequent basis throughout this time frame.

9. It is clear from the depositions of the Sheriff's staff that the Sheriff was entirely satisfied with Dr. Bachman's performance of his duties according to their requirements. At no time was any expression of dissatisfaction uttered by the Sheriff's staff or the Sheriff himself.

10. Dr. Bachman practiced excellent medicine at Park County Jail. He saw inmates appropriately and with due care. As for Mr. Carranza-Reyes, Dr. Bachman had absolutely no knowledge of Mr. Carranza-Reyes until he was called when Mr. Carranza-Reyes was transferred to the emergency department at Summit Medical Center. He thereby cannot be liable for any medical malpractice or misjudgments, having never seen the patient, and having never been consulted about the patient by telephone. His level of supervision of the nurse was reasonable and appropriate.

11. Dr. Bachman did not exhibit a deliberate indifference to a serious medical need. Dr. Bachman did not know that Mr. Carranza-Reyes was at the Park County Jail. He did not now that Mr. Carranza-Reyes had requested medical care or that he had been seen by Nurse Paulsen and did not know what medical evaluation or care Nurse Paulsen had provided. He cannot be said to have been aware of Mr. Carranza-Reyes serious medical need and cannot be said to have been deliberately indifferent to a serious medical need. More generally, Dr. Bachman testified that he was not aware of any over-crowding or of any unsanitary conditions in Pod D. It was not within his duties to monitor or ensure inmate population. There is no evidence of prior incidents or an epidemic where inmates got sick that may provide notice that the systems in place were faulty or created a risk for the health of the inmates. Without such knowledge, Dr. Bachman cannot be said to be deliberately indifferent to a serious medical need. Further, the inspection reports conducted by the INS and the Colorado Department of Corrections, all suggest that the medical care and medical services provided by Dr. Bachman as Medical Director were acceptable and satisfactory. There is no information that would suggest a system wide problem with the medical or health care services that would put Dr. Bachman on notice of a risk to the health of the inmates. Dr. Bachman was not deliberately indifferent to a serious medical need.

12. Dr. Bachman was never asked to participate in committee meetings and never refused to participate in any such committees. Dr. Bachman's reviewing of charts and frequent discussion of cases (including infectious cases) is evidence of him being involved with overall infection concerns in the jail pertaining to patient care. At no time did he demonstrate being unconcerned about conditions in the jail pertaining to patient care and it cannot be construed that he was deliberately indifferent to the inmates in general or to Mr. Carranza-Reyes in particular. In any event, it is clear from the inspection reports that from a systems standpoint, the medical services aspect of the jail complied with INS and Colorado Department of Corrections standards and requirements. These inspection reports indicate that Dr. Bachman was doing a good job as Medical Director. There was no system-wide deficiency or breakdown in the system.

13. Unfortunately in this case, Mr. Carranza-Reyes contracted streptococcus pneumonia. Inmates and prisoners can and do become sick, some seriously sick, requiring emergency medical attention, even though the health care providers in the correctional facilities do everything appropriately. The fact that Mr. Carranza-Reyes got sick, required transportation to Summit Medical Center, eventually to Denver Health Medical Center, and ultimately had to have his leg amputated, does not indicate that Dr. Bachman as Medical Director was deliberately indifferent to a serious medical need. Mr. Carranza-Reyes simply got sick with a disease that can begin in a relatively benign fashion, and present with symptoms that look like the common cold or the flu. Streptococcal pharyngitis is a self-limiting disease in a high percent of cases and even without treatment may result spontaneously. Streptococcal pneumonia is often difficult to diagnose until such time as it has progressed and declared itself as an urgent or emergent condition. Once Mr. Carranza-Reyes' symptoms were severe enough to alert the health care provider that more urgent care was needed, Nurse Paulsen reasonably and appropriately made arrangements to transfer Mr. Carranza-Reyes to Summit Medical Center. Any time frame between her initial request for transfer and the ultimate transfer, were not the result of Dr. Bachman or any policies or procedures that Dr. Bachman had in place in his role as Medical Director. Also it is important to note that the patient was not thought by the health care providers at Summit Medical Center to be in need of critically emergent care. In fact, the deposition of Dr. Keeling indicates that even though Mr. Carranza-Reyes was ill, he did not appreciate a sense of emergency or even urgency when transferring Mr. Carranza-Reyes from Summit Medical Center in Frisco, Colorado, down to Denver Health Medical Center in Denver, Colorado. In fact, Dr. Keeling chose to simply transfer Mr. Carranza-Reyes by ambulance without lights and without sirens, and did not feel the emergency or the urgency to transfer Mr. Carranza-Reyes by Flight for Life helicopter. This supports the conclusion that the transfer of Mr. Carranza-Reyes from Park County Jail to Summit Medical Center was made in a timely manner, and that the medical service system in place at Park County Jail reasonably and appropriately did its job to obtain the needed health care for Mr. Carranza-Reyes in a reasonable, appropriate and timely manner.

14. I feel that under the verbal, written and unwritten expectations of Park County Officials, Dr. Bachman conducted himself in a proper manner. Furthermore he did not, at any time, display an attitude of deliberate indifference towards the inmates of Park County Jail. Therefore in my opinion, Dr. Bachman should not be held culpable for the unfortunate problems suffered by Mr. Carranza-Reyes.

Yours truly,

Ivor Garlick MD, CCHP