# ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street  
Denver, Colorado 80210  

Office: 303.758.2452  
Cell:   303.895.7242  

Email: ekraft@medicalcareconsultants.com

Mr. Sargent,

At your request, I have prepared the following assessments as related to the Reyes Bachman case. Based upon my experience in the areas of utilization and quality management, and utilization and quality policies and procedures, the issues are outlined below. During the time I worked at Colorado Access, I had oversight responsibilities for administrative and medical policies and procedures of their managed correctional care program. Recently, I have performed audits of city and state correctional facilities as related to quality of care and utilization.

Contract Issues

The "Agreement for Professional Services" between Park County and Dr Bachman outlines the scope of duties; the payment structure more typically reflects a capitated clinical contractual arrangement- a specific set fee on a monthly basis to cover seeing patients, regardless of how many or how often:
- "Exhibit A" Section 1 (1.1) speaks to Dr Bachman's responsibilities to keep his medical license current. (1.3) speaks to medical decisions. "Exhibit A" Section I (1.4) speaks to advising the nurse or supervisor regarding availability but not any specific administrative oversight responsibilities nor any description of responsibilities of oversight/performance review of the health services administrator (HSA);
- An administrative contract typically states financial arrangements as specifically describing what percentage of time is dedicated to administrative duties, specifically state what percentage of hours are set aside for administrative duties, define a specific number of hours, or state a different administrative reimbursement per hour that would separate administrative duties from clinical duties.
- The Park County Policies and Procedures (Park 0555) states the "RESPONSIBLE PHYSICIAN: a physician who supervises the medical judgments regarding the care provided to patients at the facility. The role is also known as the medical director." "When the responsible health authority is other than a physician, all final medical judgments will rest with a single designated, licensed responsible physician." "The HSA in cooperation with the responsible physician is responsible for the development and implementation of all programs and practices related to jail medical services."
    - The policy limits the physician role to an advisory one related to administrative duties but direct for medical oversight.
    - The HSA (per PARK 0555) is routinely on site at least 40 hours per week. This would exclude Dr Bachman from being defined as the HSA.



MEDICAL CARE  
CONSULTANTS

Exhibit A-15

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street
Denver, Colorado 80210

Office: 303.758.2452
Cell:   303.895.7242

Email: ekraft@medicalcareconsultants.com

---

The oversight and management of the HSA does not appear to be included in the job description of the Medical Director.
- The Agreement for Professional Services Exhibit A Section 1 (1.4) speaks to advising the nurse or supervisor regarding availability ("whenever CONTRACTOR is not available for on-call consultation") but not any specific administrative oversight responsibilities nor any description of responsibilities of oversight/performance review of the HSA.

There are no state or national standards for medical protocols that would have required Dr. Bachman to have any written medical protocols in place at the Park County Jail. The education and experience of the nurse in providing direct healthcare to patients and the level of interaction that Dr. Bachman, as physician and Medical Director, had with Nurse Paulsen during the time that they worked together at the Park County Jail could, and in this case, did obviate the need for specific medical protocols. It is evident from the depositions of both Dr. Bachman and Nurse Paulsen, that they had open lines of communication, where Nurse Paulsen knew and understood under what circumstances she should contact Dr. Bachman for either medical questions related to inmate care or to refer inmates to Dr. Bachman's office for evaluation. Dr. Bachman was personally present at the Jail every other week and would review medical charts of patients seen by Nurse Paulsen. This frequency is above and beyond any standards required for chart review. It is also evident from these depositions that Dr. Bachman spent a significant amount of time when he was at the jail conversing with Nurse Paulsen, reviewing medical charts, directly supervising her and providing training to her with regard to various medical conditions. It is clear from Nurse Paulsen's deposition that she was a very experienced nurse with a number of years of clinical care experience and was well qualified to provide initial patient care and available treatments to inmates. Further, Nurse Paulsen was more than qualified to know what the scope of her responsibilities were in terms of her abilities, limitations and restrictions as a nurse. It is clear from the depositions of both Nurse Paulsen and Dr. Bachman that Nurse Paulsen recognized these restrictions and limitations and that she had, on a number of occasions in the past, made telephone calls to Dr. Bachman to involve Dr. Bachman in medical decision making for inmates. From this history and practice and routine, it is clear that Dr. Bachman's level of supervision and training as Medical Director was appropriate and reasonable, and consistent with physicians and medical directors in his position when supervising a registered nurse at correctional facilities like the Park County Jail.

It is also evident from this information that Dr. Bachman did not need to have written medical protocols or written nursing protocols in place with regard to specific medical conditions that may arise at the Park County Jail. Here again, Nurse Paulsen was more than experienced enough to know and understand initial triage, care and evaluation of patients presenting with various medical conditions. Written medical protocols or nursing protocols are not required by any state or national standard and in fact the Park

2


MEDICAL CARE CONSULTANTS

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street  
Denver, Colorado 80210

Office: 303.758.2452  
Cell:    303.895.7242

Email: ekraft@medicalcareconsultants.com

---

County Jail Policies and procedures do not require any written medical protocols or nursing protocols be established. Instead, the Policies and Procedures refer to either written or verbal orders based on the level of supervision and nurse experience. In this case Nurse Paulsen testified that she did not need any additional policies, procedures or protocol to advise her how to evaluate Mr. Carranza-Reyes. She was a very experienced nurse who was exercising her nursing judgment in evaluating and determining the most appropriate level of care and available treatment options for Mr. Carranza-Reyes.

Dr. Bachman did not know that Mr. Carranza-Reyes was an inmate at the Park County Jail. He did not know that Mr. Carranza-Reyes had requested medical care. Dr. Bachman did not know that Mr. Carranza-Reyes had been seen by Nurse Paulsen and did not know what medical evaluation or care Nurse Paulsen had provided. As a result, it is clear that Dr. Bachman did not exhibit a deliberate indifference to a serious medical need. Clearly, if Dr. Bachman was not aware that Mr. Carranza-Reyes was even in the Park County Jail and was not aware that he had requested medical care and was not aware of any medical need by Mr. Carranza-Reyes, it is clear that Dr. Bachman was not aware of any serious medical need and therefore, could not be deliberately indifferent to any serious medical need of Mr. Carranza-Reyes.

More generally, Dr. Bachman testified that he is not aware of any over-crowding in Pod D. Dr. Bachman testified that he was not aware of any unsanitary conditions at the Park County Jail, including specifically Pod D, where Mr. Carranza-Reyes was being held. Because Dr. Bachman had no information that would allow him to conclude that there was overcrowding, or that there was unsanitary conditions within the jail, he can not be said to have been deliberately indifferent to a serious medical need.

In addition, the inspection reports conducted by the INS and the Colorado Department of Corrections, all suggest that the medical care and medical services provided by Dr. Bachman as Medical Director at the Park County Jail, all received acceptable and satisfactory evaluations indicating that Dr. Bachman was appropriately doing his job as the Medical Director. It is clear from the inspection reports that from a systems standpoint, the medical services aspect of the jail appeared to running very smoothly and complied with INS and Department of Corrections standards and requirements. These inspection reports are very telling of the job Dr. Bachman was doing as Medical Director because they involve a more system-wide review, which would directly evaluate Dr. Bachman's job as Medical Director. Clearly there was no system-wide deficiency or breakdown in the system. From a system wide stand point, there is no evidence that would allow anyone to conclude that Dr. Bachman was showing a deliberate indifference to a serious medical need.

The policies and procedures do call for the Health Services Administrator, Nurse Paulsen in the case, to conduct various periodic meetings of the Quality Control Committee and the Infectious Disease Committee. Dr. Bachman was never asked to

3


MEDICAL CARE CONSULTANTS

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street
Denver, Colorado 80210

Office: 303.758.2452
Cell: 303.895.7242

Email: ekraft@medicalcareconsultants.com

---

participate in these committees and certainly never refused to participate in any such committees. In any event, the fact that Dr. Bachman did not participate in any of these committee meetings or in various internal reporting policies and procedures, did not cause or contribute to the injuries or damages claimed by Mr. Carranza-Reyes in ther case. Participation in an infectious disease committee or a quality control committee, would not have prevented Mr. Carranza-Reyes from contracting streptococcus pneumonia.

Unfortunately in this case, Mr. Carranza-Reyes contracted streptococcus pneumonia. Unfortunately inmates and prisoners in correctional facilities can and do become sick, some seriously sick, requiring emergency medical attention, and even some inmates and prisoners go on to die even though the health care providers in the correctional facilities themselves, do everything appropriately. The fact that Mr. Carranza-Reyes got sick, required transportation to Summit Medical Center, eventually to Denver Health Medical Center, and ultimately had to have his leg amputated, does not indicate that Dr. Bachman as Medical Director was negligent in his role or duties as Medical Director. Mr. Carranza-Reyes simply got sick with a disease that can begin in a relatively benign fashion that can and does present as a common cold or with flu-like symptoms, until it progresses to a more emergent level. Diseases such as streptococcus pneumonia are often difficult to diagnose and appreciate until such time as the disease has progressed sufficiently in order to declare itself as an urgent or emergent condition. Unfortunately, often times by that time, the patient is critically ill simply as a result of the natural progression of the disease. The fact that Mr. Carranza-Reyes did not die from his illness, speaks to the efficiency and experience of Nurse Paulsen. From the timeline of events on March 7 and March 8, 2003, it is evident that the deputies and the nurse were aware of and appreciated the fact that Mr. Carranza-Reyes needed medical attention. The timeline shows multiple contacts with Mr. Reyes throughout this time frame and supports the conclusion that the policies and procedures in place resulted in Mr. Carranza-Reyes receiving access to medical care. These multiple contacts with Mr. Carranza-Reyes also show that the health care providers were not deliberately indifferent to a serious medical need, and that the medical service system in place at Park County Jail, reasonably and appropriately did its' job to obtain the needed health care for Mr. Carranza-Reyes in a reasonable, appropriate and timely manner.

Mr. Sargent, thank you for the opportunity to comment on the circumstances in this case. Should you have additional questions, please do not hesitate to contact me.

Cordially,

*Elizabeth Kraft*

Elizabeth Kraft, MD

4

MEDICAL CARE
CONSULTANTS