

EXHIBIT 10

### WINTHROP University Hospital

*Care without compromise.*

*Michael S. Niederman, M.D., F.A.C.P., F.C.C.P., F.C.C.M.*
Chairman, Department of Medicine

Tel: 516-663-4876
Tel: 516-663-2381
Fax: 516-663-8796
E-mail: mniederman@winthrop.org

Professor of Medicine
School of Medicine
Health Sciences Center
State University of New York at Stony Brook
Vice Chairman
Department of Medicine
State University of New York at Stony Brook

June 8, 2006

William A. Trine
Law Offices
TRINE & METCALF, PC
1435 Arapahoe Avenue
Boulder, Colorado 80302-6390

EXHIBIT A-2

RE: Moises Carranza-Reyes

Dear Mr. Trine:

I have reviewed the material you have sent me regarding Moises Carranza-Reyes and am prepared to give a medical opinion regarding the care he received at the Park County Jail in Fairplay, Colorado, and the relationship of this care to his development of a severe necrotizing pneumonia complicated by septic shock.

In preparing my report, I have reviewed the material sent to me, which includes medical records from the Park County Jail; records from the Consulate General of Mexico in Denver, Colorado; medical records from the Summit Medical Center; medical records from Denver Health Medical Center and deposition outlines of James Bachman, M.D., Abraham Carranza-Reyes, Moises Carranza-Reyes, Vicki Ann Paulsen and also a copy of the ambulance records of Moises Carranza-Reyes.

After my review of the above stated material, it is my medical opinion that Mr. Carranza-Reyes developed Group A beta-hemolytic streptococcal pneumonia as a consequence of his incarceration in the Park County Jail. His deposition and the information from the Park County Jail indicate that he arrived at the jail completely healthy and was housed in a jail cell that was overcrowded and several of the inmates of the overcrowded jail cell were individuals with respiratory illness, including cough and sore throat. The bacteria that was isolated from the claimant's blood cultures is Group A beta-hemolytic strep. This is a very unusual cause of pneumonia, but one that has been described as a cause of infection in outbreaks among individuals who are in close contact with one another. It is my opinion that if Mr. Reyes has been put in a better maintained holding cell, with less crowding, he would have been much less likely to have acquired this communicable respiratory illness. In addition, if sick individuals had been removed from the cell, and placed in a proper medical facility, he would have never been exposed to them to the extent that he could have developed his infection and subsequent pneumonia.

-2-

It is also my opinion, that Mr. Carranza-Reyes first became ill while he was an inmate in the Park County Jail. It appears that he was first symptomatically ill from at least March 5th onward, and was not transferred to a hospital for definitive medical care until March 8th. The deposition of Mr. Carranza-Reyes and his brother Abraham establish that he first became symptomatically ill with fever on approximately March 5th, and had ongoing other symptoms, including malaise, weakness and vomiting. Mr. Carranza-Reyes states in his own deposition, that he may have been ill as early as March 4th, and that he wanted to be seen by a nurse as early as March 5th, when he was unable to eat breakfast because of malaise and anorexia. He was not apparently granted his request to see a nurse until March 6th, and according to him, he became progressively ill from March 6th to March 8th, at which time he was severely ill and ultimately transferred to the hospital.

Review of the medical records form the Park County Jail does establish that Mr. Carranza-Reyes was first seen by Vicki Paulsen on March 6th. At that time he had a temperature of 100.2 °F a pulse of 88, and respirations of 24/min. The nurse reported that his lungs were clear bilaterally. He was treated symptomatically with analgesics and told to drink fluids. He did not improve and on March 7th was brought once again to the nurse, complaining of headache, nausea, vomiting and body aches. At this time he was afebrile and reportedly his lungs were clear. He then became much worse on March 8th.

Vicki Paulsen has written a summary of the events of March 8th. The summary states that at 3:45 a.m. she received a call from a deputy at the jail stating that Mr. Carranza-Reyes was having trouble breathing, along with vomiting and nausea and required oxygen therapy. Nurse Paulsen advised continuing symptomatic therapy and did call to assess the progress of the patient at 6:00 a.m. She arrived to see the patient at 7:50 a.m. and was told that Mr. Carranza-Reyes had fallen, and complained of right-sided pain, apparently over his lower chest or upper abdomen. He was then assessed as needing transport, but ultimately that transport did not occur in a timely fashion and there was a delay in his transport to medical care, during which time he continued to become progressively more septic and his condition deteriorated. Nurse Paulsen states in her deposition that she believes he needed transport, but that she left his side and did not administer to his needs and initiate the transport process in an urgent fashion. Her notes state that she was concerned that he was becoming dehydrated. Ultimately he was transported to the Summit Medical Center, but did not arrive there until 12:45 pm.

It is my opinion that Mr. Carranza-Reyes had a severe pneumonia, which was rapidly progressive and associated with septic shock that was readily diagnosable and evident as early as 3:45 a.m. on March 8th. Although in retrospect he may have had the pneumonia earlier, it is certainly clear that when he was severely symptomatic in the early hours of March 8th, in conjunction with 2 previous visits to the nurse because of malaise, it was incumbent upon the jail officials to recognize the urgency of his medical condition. In addition, recognizing that other inmates had been sick and that he had been housed in an overcrowded situation should have alerted all of the people working in the jail to the possibility of a respiratory infection that had been acquired from other inmates. I believe that valuable time was lost in the management of Mr. Carranza-Reyes and in the treatment of his jail-house acquired pneumonia, which led to a lost opportunity for a rapid and uncomplicated recovery.

Delays in the treatment of pneumonia have been associated with increased mortality and complication rates. The national standard for the treatment of community-acquired pneumonia, is that antibiotics should be given within a 4-hour interval of a patient first coming to an emergency room, or in contact with medical care. Mr. Carranza-Reyes was sick enough to have required antibiotics as early as 3:45 a.m. on March 8th and did not receive them for at least 9 hours more, when he finally arrived at the Summit Medical Center at 12:45 p.m. On his arrival at the Summit Medical Center, he was clearly in septic shock due to pneumonia. The medical records from the Summit Medical Center established that he was hypotensive and septic. His vital signs documented a blood pressure as low as 66 systolic and a pulse of 126/min and a respiratory rate of 24. He was in need of oxygen and at 15L/min. His oxygen saturation was barely above 90%. When he was seen at the Summit Medical Center, his grave condition was recognized. He was immediately given 2L of intervenous fluids, intervenous Levofloxacin, Tylenol and blood work. Blood work established the advanced nature of his illness. He was not responding appropriately to his infection with a white blood cell count of 4,200. This is a sign of overwhelming infection. In addition, he had signs of renal failure and liver function abnormalities, all consistent with a far advanced case of pneumonia and sepsis. His chest radiograph established the presence of a multi-lobar pneumonia.

Ultimately, Mr. Carranza-Reyes was transferred to Denver Health Medical Center, where he continued to deteriorate requiring intubation and intensive care for a prolonged period of time and his septic shock was complicated by the need for a left below the knee amputation. His hospital course was also complicated by cardiac arrest, and a prolonged hospital stay.

It is my opinion that Mr. Carranza-Reyes would not have developed pneumonia if his handling and the conditions in the jail had been more humane. In addition, it is clear that his pneumonia was far advanced when he was first brought to medical care, and this demonstrates that he was allowed to progress far more along in the course of illness than was necessary. It was the advanced progression of his pneumonia at the time of initial presentation at the hospital that was responsible for the life threatening nature of his pneumonia and the severe complications. At the very least, it was clear that at 3:45 a.m. on March 8th, Mr. Carranza-Reyes needed urgent medical care and he did not receive this for at least 9 hours more. It is my opinion that he needed urgent transfer to the hospital, and rapid treatment with fluids and antibiotics within 4 hours or less from the time of his initial recognition and deterioration at 3:45 a.m. I believe that the delay in treatment that occurred beyond this, further contributed to his deterioration and his poor outcome.

I am prepared to testify as a physician in the practice of Pulmonary and Critical Care Medicine that Mr. Carranza-Reyes's poor outcome, was the consequence of acquisition of a pneumonia because of the conditions in the jail cell in which he was housed, and that the poor outcome he suffered was a direct result of a far advanced pneumonia, which should have been recognized and treated in a more expeditious fashion.

Michael S. Niederman, M.D.
Pulmonary/Critical Care Medicine