**COPY**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 2005-WM-377 (BNB)

---

DEPOSITION OF: ROBERT B. GREIFINGER, M.D.
Volume I
August 25, 2006

---

MOISES CARRANZA-REYES,

Plaintiff,

v.

PARK COUNTY, a public entity of the State of Colorado and its governing board, THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; PARK COUNTY SHERIFF'S OFFICE, a public entity of the State of Colorado; FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado; MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado; JAMES BACHMAN, M.D., individually and in his official capacity as Medical Director of the Park County Jail,

Defendants.

---

TAKEN PURSUANT TO NOTICE on behalf of the Defendants at

1435 Arapahoe Street, Boulder, Colorado 80302 before

Laura L. Corning, Federal Certified Realtime Reporter,

Certified Shorthand Reporter and Notary Public within

Colorado.

Coffman Reporting
303.893.0202
303.893.2230 FAX
WWW.COFFMANREPORTING.COM

EXHIBIT
A-5

* SUBJECT TO CONFIDENTIALITY DESIGNATIONS *

Case 1:05-cv-00377-WDM-BNB   Document 127-5   Filed 01/02/07   USDC Colorado   Page 2 of 10
Carranza-Reyes v. Park County                                    Robert B. Greifinger, M.D., Volume 1

21

1           Okay. What kind of work did you do as a
2  resident at Rikers Island, it looks like from your
3  curriculum vitae, from 1976 to 1977?
4       A.   No. My residency was 1971 to 1972, and I
5  continued in 1974 to 1976. The hiatus was my two years
6  as a commissioned officer in the United States Public
7  Health Service.
8           Worked as a resident, combination of
9  learning and patient care with supervision.
10      Q.   Did you actually provide clinical care at
11 Rikers Island, physically?
12      A.   Yes.
13      Q.   Okay. And how much of that -- I mean, was
14 that the entirety of the clinical portion of your
15 residency, or did you also have residency clinical work
16 in a nonincarcerated population?
17      A.   I just spent one month at Rikers Island and
18 another two months learning and providing care at the
19 Spofford Juvenile Detention Center, which is New York
20 City's detention center for kids. I should say it was.
21 It no longer exists.
22      Q.   Where did you serve in the United States
23 Public Health Service?
24      A.   Rock Island, Illinois.
25      Q.   Doing what?

* SUBJECT TO CONFIDENTIALITY DESIGNATIONS *

36

1  A.      Certainly.

2  Q.      When's the last time that you provided

3  primary medical care to anyone?

4  A.      1985.

5  Q.      Okay. And when you -- so your treatment of

6  streptococcus A would have been 1985 or before?

7  A.      Yes.

8  Q.      In what context did you treat streptococcus

9  A?

10 A.      I was a pediatrician.

11 Q.      So you treated children with streptococcus

12 A?

13 A.      Yes.

14 Q.      Is streptococcus A the common version of

15 what I might think of in lay terms as strep throat?

16 A.      Yes.

17 Q.      So this was something that you saw in your

18 pediatric practice on probably a daily basis?

19 A.      Yes.

20 Q.      Okay. Would you consider yourself an

21 expert in streptococcus A and it's infection mechanisms?

22 A.      No.

23 Q.      And am I -- is it fair to say that you're

24 not offering an opinion in this case about the infection

25 mechanisms of streptococcus A?

Case 1:05-cv-00377-WDM-BNB   Document 127-5   Filed 01/02/07   USDC Colorado   Page 4 of 10
Carranza-Reyes v. Park County                                    Robert G. Greifinger, M.D., Volume I

42

1  many of these are state court, if you know?

2      A.      Most of them are federal.  Just a couple of
3  them are state court.

4      Q.      Which are the couple that are in state
5  court that you know of off the top of your head?

6      A.      Adams v. Dorsey.

7      Q.      Okay.

8      A.      Washington v. Los Angeles Sheriff, Murphy
9  v. New York City.  Those are all that I recognize as
10 state court cases at the moment.

11     Q.      Fair enough.  Other than -- well, when's
12 the last time that you provided actual medical care in a
13 correctional setting?

14     A.      I assume that you mean other than my
15 supervisory responsibility.  That was during my residency
16 training.

17     Q.      Okay.  Yes, I do mean other than your
18 supervisory responsibility.

19             Have you worked on any matter, that you can
20 recall, as an expert related to INS or immigration
21 detainees other than the present case?

22     A.      Yes.

23     Q.      Okay.  Can you, in either Exhibit 73 or
24 Exhibit 71, or otherwise, tell me what prior expert work
25 you've done in that area?

1  Q. Okay. Do you follow methodology in coming
2  up with your expert opinions? Or did you follow a
3  methodology in coming up with your expert opinion?
4  A. Yes.
5  Q. Can you describe your methodology for me?
6  A. I read the documents that I'm presented
7  with, I organize what I consider to be significant
8  findings and record them, and then I form opinions on
9  standard-of-care and constitutional issues based on my
10 findings.
11 Q. Okay. Anything else about the methodology
12 you follow -- the methodology you followed -- excuse
13 me -- in forming your expert opinions in this case?
14 A. I'm not sure what you might be getting at.
15 Q. I just want to understand the totality of
16 your methodology. If that's the totality of your
17 methodology, that's fine. I just want to make sure there
18 is nothing else about the methodology that you used in
19 forming your opinions in this case.
20 A. I'm sorry. I don't fully understand your
21 question, but I don't believe there is anything else.
22 Q. Okay. Do you take notes when you review
23 the documentary record?
24 A. Yes.
25 Q. Okay. What format do you take notes in?

* SUBJECT TO CONFIDENTIALITY DESIGNATIONS *

1    A.    Yes.

2    Q.    Okay. And you believe that there was a
3 problem with untimely correction of the problem with
4 respect to backed-up toilets; is that right?

5    A.    Yes.

6    Q.    The problem wasn't addressed in a timely
7 fashion, fair?

8    A.    Yes.

9    Q.    And you believe there was a lack of soap;
10 is that true?

11   A.    Yes. Cleaning materials.

12   Q.    Okay.

13   A.    And I also believe that the crowding was a
14 significant factor in the creation of an unsanitary and
15 stressful situation to the immune systems of the inmates
16 confined on D pod, including Mr. Carranza-Reyes.

17   Q.    Okay. Take a look at number 29. Is Mr.
18 Carranza-Reyes making a right-to-privacy-related claim in
19 this lawsuit?

20   A.    I don't recall. I don't believe so.

21   Q.    Why is this in your report?

22   A.    It's because I'm trying to describe a
23 system of care and a system of inattention to the human
24 rights and civil rights of people. I'm trying to
25 demonstrate that it's a systematic failure to address the

1    of the cryptococcal meningitis relative to HIV, but I
2    certainly was able to testify about the delivery of
3    timely inadequate care to that patient.
4        Q.    What court was that, Doctor?
5        A.    Northern District of Georgia.
6        Q.    And what's the other time that you were
7    limited in your testimony?
8        A.    I don't -- I certainly don't recall. But
9    there have been multiple times when I was -- when motions
10   were wholly denied. You can look at Woodward v. Myers,
11   M-y-e-r-s, in an appellate decision for the -- wherever
12   the Northern District of Illinois was, and in New Jersey.
13       Q.    Okay. Have you testified at a Daubert or
14   Frye hearing in front of the court in any of these
15   instances, either where your testimony was limited or
16   otherwise challenged under those two --
17       A.    No.
18       Q.    -- cases?
19       A.    Another decision you may want to look at is
20   Collins v. Fowler. It's Western District of
21   Pennsylvania.
22       Q.    And what happened in that decision?
23       A.    I got to -- the -- the court supported my
24   ability to testify on all matters involved in that case.
25       Q.    Does the scope of your expert opinion in

93

1   this case include the issue of causation?

2       A.    Yes.

3       Q.    So describe your expert opinion about
4   causation in this case.

5       A.    I believe that the crowded and the
6   unsanitary conditions on D pod in the Park County Jail
7   during the period of March 1 through March 8 of 2003
8   caused Mr. Carranza-Reyes to get sick with streptococcal
9   disease, and that the lack of timely and appropriate
10  medical care for him led to his death -- or near-death
11  and to his amputation and to all the other complications
12  he suffered from his illness.  It led to his
13  hospitalization at Summit Medical Center, to his
14  hospitalization at Denver Health and to get his current
15  compromised medical condition.

16      Q.    What basis do you have to know what Mr.
17  Carranza-Reyes's current medical condition is today?

18      A.    Well, I know from the records of Denver
19  Health that he lost a good part of his lung and he lost a
20  leg.  And I've -- through conversations with Mr. Trine,
21  I'm aware of some other medical problems that he has.

22      Q.    What are those medical problems of which
23  you're aware today?

24      A.    Well, I'm aware of his -- his pain, his --
25  I'm aware of his -- of pain that he testifies to in his

1   deposition. I'm aware of pain with urination he has.
2   I'm aware of difficulties he has with fitting his
3   prosthesis and his lack of ability to get physical
4   therapy and diagnosis and treatment for other maladies
5   that he suffers.
6       Q.   Okay.
7       A.   All of which were, as I understand it, a
8   consequence of the illness in question.
9       Q.   It seems to me that there are two aspects
10  of your opinions in this case: One, the issue of
11  causation, vis-a-vis whether or not Mr. Carranza-Reyes
12  caught the illness of streptococcus A and related
13  complications in the Park County Jail; and the second
14  part of your causation opinion being the -- the extent of
15  Mr. Carranza-Reyes's illness because of what you're
16  concluding to be not timely medical intervention. Is
17  that a fair split of --
18      A.   Not exactly. I think your first is a
19  little too simplistic. The -- many people carry
20  streptococcus A, as they do carry other bacteria, and I'm
21  saying that either he caught it there or he had it in his
22  body, which many of us do, and the stressful conditions
23  of crowding and unhygienic clothing, unhygienic
24  toiletting, unhygienic conditions generally, stressed his
25  body so much that it caused his body to relax its immune

1   system and allow the streptococcal bacteria to cause
2   illness. So that would be for number one.
3              For number two I would say that that
4   illness could have been diagnosed and treated easily if
5   he had been seen by an appropriate medical professional
6   in a timely way. He was prevented from doing that for a
7   variety of reasons. Barriers that were created by the
8   County, by the medical director and by the Nurse Paulsen
9   prevented him from timely treatment, and as a consequence
10  of not getting timely treatment, he was close to death
11  and he suffered all that he did during the next four
12  months and later.
13      Q.      All right. I think I understand your
14  causation opinion. Show me in any of your reports where
15  that first part of the causation opinion is articulated.
16      A.      Paragraph 28, first sentence, second
17  sentence, third sentence, fourth sentence, fifth
18  sentence, and then I have conclusions based on that.
19      Q.      Okay. And is that -- is that articulation
20  of the first part of your causation opinion articulated
21  anywhere else in any of your three reports that you can
22  point out to me?
23      A.      I want to say that it's part of my
24  causation opinion. It's also part of my deliberate-
25  indifference opinion.