IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-377-WDM-BNB

MOISES CARRANZA-REYES,

     Plaintiff,

v.

PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his official capacity as Captain of Park County Sheriff's Department;
and
VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County;

     Defendants.

---

### DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS HELEN M. WOODARD, M.A.

---

Defendants Park County Board of County Commissioners, Fred Wegener, Monte Gore, and Vicki Paulsen, by and through their respective counsel, Andrew D. Ringel, Esq. and Jennifer L. Veiga, Esq. of Hall & Evans, L.L.C. and Josh A. Marks, Esq. and Melanie B. Lewis, Esq. of Berg Hill Greenleaf and Ruscitti, LLP, pursuant to Fed. R. Evid. 702, hereby submit this Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A., as follows:

### ARGUMENT

### I.  PLAINTIFF'S EXPERT WITNESS, HELEN M. WOODARD, M.A.,  MUST BE EXCLUDED FROM TESTIFYING AT TRIAL PURSUANT TO FED. R. EVID. 702

Plaintiff has endorsed Helen M. Woodard, M.A., rehabilitation counselor, to opine as an expert witness concerning Plaintiff's life care plan. Ms. Woodard's proposed expert testimony must be excluded

by this Court pursuant to the Court's gatekeeper function under Fed. R. Evid. 702 and precedent interpreting Rule 702. Ms. Woodard's testimony is not reliable because she utilizes a flawed methodology in analyzing, detailing and assessing costs associated with the life care plan she recommends for Plaintiff. Ms. Woodard's methodology is not an accepted methodology for a life care plan for a Mexican citizen amputee whose stay in the United States is temporary. The improper methodology utilized by Ms. Woodard produces a speculative life care plan for the Plaintiff. In addition, Ms. Woodard's testimony is not relevant because her methodology and reasoning cannot properly be applied to the facts in this case. In its totality, Ms. Woodard's proposed expert testimony fails to meet both the reliability and relevance requirements of Fed. R. Civ. 702 and precedent interpreting Rule 702. Under such circumstances, Ms. Woodard's proposed expert testimony cannot assist the trier of fact in resolving any issue with respect to Plaintiff's life care damages and must be excluded by this Court as a matter of law.

### A. THIS COURT HAS A GATEKEEPING ROLE FOR EXPERT TESTIMONY PURSUANT TO FED. R. EVID. 702 AND APPLICABLE PRECEDENT

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court, interpreting Fed. R. Evid. 702, held that "when faced with a proffer of expert scientific testimony, a district court 'must determine at the outset, pursuant to [Fed. R. Evid.] 104(a), whether the

2

expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" ***Hollander v. Sandoz Pharmaceuticals Corp.***, 289 F.3d 1193, 1203-4 (10th Cir.), *cert. denied,* 537 U.S. 1088 (2002) (quoting ***Daubert,*** 509 U.S. at 592; alteration in original). "Under Rule 702, the district judge must act as a gatekeeper to ensure proffered expert testimony is relevant and reliable." ***United States v. Turner,*** 285 F.3d 909, 912 (10th Cir.), *cert. denied,* 537 U.S. 895 (2002). This gatekeeper role requires a district court to determine whether proposed expert testimony rests upon sound scientific principles and rests upon a reliable scientific foundation. ***Black v. M & W Gear Co.,*** 269 F.3d 1220, 1237 (10th Cir. 2001). The touchstones for evaluating proposed expert testimony are reliability and relevance. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." ***Hollander,*** 289 F.3d at 1204 (citations, internal quotation marks and alterations omitted); ***Alfred v. Caterpillar, Inc.,*** 262 F.3d 1083, 1086 (10th Cir. 2001), *cert. denied,* 535 U.S. 928 (2002).

The Supreme Court outlined four nonexclusive factors for consideration when making the reliability assessment required by Fed. R. Evid. 702: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted by the scientific community. ***United States v. Lauder***, 409 F.3d 1254, 1263 (10th Cir. 2005) (citing ***Daubert***, 509 U.S. at 593-94). *See also **Magdaleno v. Burlington Northern R. Co.,*** 5 F.Supp.2d 899, 902 (D. Colo.

3

1998).

Assuming the proffered expert testimony meets this reliability criterion, this Court must also determine the proffered expert testimony's relevance to the case. "Further, the expert testimony must 'fit' the facts at issue, requiring a valid scientific connection between the testimony and issue sought to be proved." *Id.* at 902. In applying *Daubert* to any particular proffered expert testimony, this Court has considerable flexibility so long as the Court actually performs its required gatekeeper function. *Goebel v. Denver & Rio Grande Western R.R.,* 215 F.3d 1083, 1087 (10th Cir. 2000) ("*Goebel I*"). The focus under *Daubert* is on the principles and methodology employed by the proposed expert, not the results reached. *Daubert,* 509 U.S. at 595. Requiring expert opinions to be based on reliable scientific methodology is important because, "[i]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel I,* 215 F.3d at 1088. Ultimately, the purpose of a *Daubert* analysis is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Charmichael,* 526 U.S. 137, 152 (1999); *Hollander,* 289 F.3d at 1206-7.

The *Daubert* analysis applies to all experts endorsed pursuant to Fed. R. Evid. 702, not only experts whose testimony is based on scientific knowledge, but also to expert testimony based on technical or other specialized knowledge. *Kumho Tire,* 526 U.S. at 147-50; *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 n.2 (10th Cir. 2001). Specifically, federal courts regularly apply *Daubert* and Fed. R. Evid. 702 to experts in economics or related fields retained to opine concerning

4

damages suffered by a particular party. *See, e.g.*, ***Atlantic Richfield Co. v. Farm Credit Bureau of Wichita*,** 226 F.3d 1138, 1163-68 (10th Cir. 2000) (applying methodology to economist); ***Blue Dane Simmental Corp. v. American Simmental Association*,** 178 F.3d 1035, 1039-41 (8th Cir. 1999) (same); ***Garay v. Missouri Pacific R. Co.*,** 60 F.Supp.2d 1168, 1172-74 (D. Kan. 1999) (same); ***Cochrane v. Schneider Nat. Carriers, Inc.*,** 980 F. Supp. 374, 376-80 (D. Kan. 1997) (same). Federal courts have also applied the principles of ***Daubert*** and Fed. R. Evid. 702 to experts offering life care plans for an injured person. *See, e.g.*, ***Ballance v. Wal-Mart Stores, Inc.*,** 1999 U.S. App. LEXIS 7663, at 5-6 (4th Cir. Apr. 21, 1999) (unpublished disposition attached as Exh. A-1); ***Israel v. Springs Industries, Inc.*,** 2006 U.S. Dist. LEXIS 80863, at 7-8 (E.D.N.Y. Nov. 3, 2006) (unpublished disposition attached as Exh. A-2).

### B. APPLICATION OF FED. R. EVID. 702, *DAUBERT*, AND *KUHMO TIRE* TO PROPOSED EXPERT TESTIMONY OF HELEN M. WOODARD, M.A.

Plaintiff endorsed economist Helen M. Woodard, M.A., a rehabilitation counselor, as an expert to testify concerning Plaintiff's life care plan. Ms. Woodard prepared an expert report. [*See* Report of Helen M. Woodard, M.A., April 28, 2006, attached as Exh. A-3]. In addition, Ms. Woodard's deposition was taken by counsel for the Defendants. [*See* Deposition of Helen M. Woodard, M.A., July 12, 2006, relevant excerpts attached as Exh. A-4]. A review of Ms. Woodard's proposed expert testimony demonstrates the methodology she used in arriving at her expert opinion concerning Plaintiff's life care plan is dubious and untrustworthy. Ms. Woodard made a variety of fundamental errors in her methodology and in her factual and legal assumptions underlying her expert opinion, all of which dramatically call into question the overall reliability and validity of all of Ms. Woodard's opinions concerning Plaintiff's life care plan. In

5

addition, the underlying factual basis of Ms. Woodard's expert opinion is not supported by appropriate data and information undercutting the relevance of her proposed expert opinions as well.

## 1. LACK OF RELIABILITY

### A. Woodard's Methodology is Fundamentally Flawed

Generally, this court should focus on an expert's methodology rather than the conclusions it generates. *Goebel v. Denver & Rio Grande Western R.R.,* 346 F.3d 987, 992 (10th Cir. 2003) ("*Goebel II*") (citing *Daubert*, 509 U.S. at 595). An expert's conclusions, however, are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id*. Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Both Ms. Woodard's conclusions and her methodology reveal an analytical gap between her expert opinions and both the factual basis underlying them as well as any scientific method that cannot survive analysis by this Court as required by Fed. R. Evid. 702.

Initially, Ms. Woodard's proffered opinion fails to meet the reliability component. Ms. Woodard's methodology did not include or rely on assessments by the appropriate medical specialists, but on her own experience. [*See* Woodard Dep., at 7 & 50, Exh. A-4]. Ms. Woodard lacks the appropriate background to assess future medical care needs. Ms. Woodard is not a physician or health care provider of any kind. Instead, she has an M.A. in Special Education. [*See* Woodard Curriculum Vitae, Exh. A-5]. Ms. Woodard's experience as a rehabilitation counselor does not qualify her to make future medical care

6

projections. Ms. Woodard is not a specialist in any medical field and cannot herself assess Plaintiff's current and future medical needs. As a rehabilitation counselor, Ms. Woodard may be qualified to make assessment referrals, but she is not qualified to make medical assessments upon which to base a life care plan. [*See* Woodard Dep., at 50, Exh. A-4]. Fed. R. Evid. 702 allows expert testimony only where the "witness [is] qualified as an expert by knowledge, skill, experience, training, or education" to offer such opinions. To qualify as an expert to opine on Plaintiff's future medical needs, Ms. Woodard was required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." ***Graham v. Wyeth Labs.***, 906 F.2d 1399, 1408 (10th Cir. 1990) (quoting ***Bridger v. Union R. Co.***, 355 F.2d 382, 387 (6th Cir. 1966)). The heart of expert testimony is its foundation. ***Lifewise Master Funding v. Telebank***, 374 F.3d 917, 928 (10th Cir. 2004).

Ms. Woodard's proposed expert opinions cannot overcome this fundamental flaw in her methodology. Instead of applying a methodology that relies on appropriate medical assessments, Ms. Woodard engaged in speculation to opine about Plaintiff's life care plan needs without proper substantiation based upon the opinion of someone qualified to opine about the Plaintiff's future medical needs and requirements. Further, Ms. Woodard's reliance on Meredith Poppish, a nurse practitioner who is not a medical treatment specialist, who is not qualified to make medical assessments despite Ms. Woodard's assertion she is, and who denies making the recommendations to Ms. Woodard on which Woodard's life care plan relies, is a fundamental flaw underlying all of Ms. Woodard's proposed expert testimony. [*See* Woodard Dep., at 50-51, 68, 70 & 80, Exh. A-4; [Deposition of Meredith Poppish, August 22, 2006, at

7

63-67, 74, & 97-98, Exh. A-6]. Ms. Woodard relied on dated and incomplete information from a review of medical records of treatment rendered more than three years prior to her opinion, which medical records did not provide an assessment of Plaintiff's current medical status and more importantly, Plaintiff's specific and detailed future medical needs. [*See* Woodard Dep., at 24-25, Exh. A-4]. Under her methodology, Ms. Woodard consulted with no qualified medical treatment provider who could conduct an appropriate assessment of Plaintiff's current and future medical and rehabilitation needs. [*See* Woodard Dep., at 15, 18-19, 26-27, 50, Exh. A-4].

In addition, Ms. Woodard's methodology is further flawed because, in the face of a situation involving a Mexican national who has no legal status to remain in the United States, the methodology fails to incorporate the likelihood that Plaintiff will have to return to Mexico. Ms. Woodard testified her proposed life care plan does not address the current reality that Plaintiff is not legally employable in the United States because of his present immigration status. [*See* Woodard Dep., at 47-48, Exh. A-4]. Ms. Woodard merely relied on Plaintiff's preference for living in the United States rather than Mexico, [*see* Woodard Dep., at 37, 74, Exh. A-4], which is not an appropriate basis for an expert opinion on likely future life care needs. For purposes of a life care plan, Plaintiff does not get to choose where he will live.

Ms. Woodard's methodology also excludes an analysis of Plaintiff's capacity to work in Mexico. [*See* Woodard Dep., at 74, Exh. A-4]. Ms. Woodard testified that Plaintiff is "likely not employable in Mexico," but her methodology does not have a reasoned, factual foundation for such a conclusion. [*See* Woodard Dep., at 48, Exh. A-4]. Ms. Woodard's methodology did not rely on a labor market study of either the United States or Mexico because Ms. Woodard did not develop one for purposes of her

vocational assessment of Plaintiff. Rather, Ms. Woodard merely relied on her "past experience in both those places." [*See* Woodard Dep., at 93, Exh. A-4]. Moreover, Ms. Woodard used costs in the United States, not in Mexico. [*See* Woodard Dep., at 18, 45, 53, Exh. A-4]. Although Ms. Woodard says she has conducted labor market surveys of Mexico in the past, and she asserts she possesses the necessary qualifications to conduct vocational assessments, her methodology for Plaintiff's life care plan did not include conducting any such assessment. In the absence of any actual data concerning the current labor market circumstances in Mexico and the Plaintiff's ability to obtain gainful employment in Mexico based on those current circumstances, Ms. Woodard's expert opinion is based on nothing more than her own say so. To be reliable under Fed. R. Evid. 702, Ms. Woodard's expert opinion must be grounded in some actual data that could be recognized, tested and either verified or contradicted by others in her field. No such data underlies Ms. Woodard's proposed opinion here.

Furthermore, Ms. Woodard's methodology is also flawed because it relies on input of others whose work was not verified for accuracy. Ms. Woodard herself never interviewed any of Plaintiff's medical providers. Instead, under her methodology, Ms. Woodard relied on the results of an interview of Poppish, a nurse practitioner who has been Plaintiff's sole medical service provider since his release from the Denver Health Medical Center, conducted by Charlene Morgan. [*See* Woodard Dep., at 26, Exh. A-4]. Ms. Morgan has no prior experience as a rehabilitation counselor, [*see* Woodard Dep., at 13, Exh. A-4], and the facts she reported from the interview with Ms. Poppish were disputed by Ms. Poppish herself. [*See* Poppish Dep., at 63-67, 74 & 97-98, Exh. A-6].

Finally, Ms. Woodard's methodology lacks validity because it has not been evaluated to determine

9

whether it has adequately served the needs of any of Ms. Woodward's clients. [*See* Woodard Dep., at 119, Exh. A-4]. Ms. Woodard admits her expertise is based on experience rather than on specialized education or scientific certification. [*See* Woodard Dep., at 119, Exh. A-4]. With regard to experience-based testimony, it is important to know how often the experience-based methodology of a life care plan expert has produced erroneous results, or whether such a method is generally accepted in the relevant life care planning community. ***Kumho,*** 526 U.S. at 151. Ms. Woodard, however, has never evaluated her methodology or tested her results. No basis exists for Ms. Woodard to even opine that any of the life care plans she has previously created for her clients have actually been necessary or required by those clients as time went on. In the absence of any empirical evaluation of Ms. Woodard's life care plan methodology, and whether her methodology has any level of accuracy for predicting future events, this Court is again left with no scientific basis to evaluate Ms. Woodard's proposed expert opinions.

In sum, Ms. Woodard's methodology is invalid because it is based on factual assumptions that are unsubstantiated or directly contradicted by the actual undisputed facts contained in the record and inappropriate basic medical assessments. These errors demonstrate that Ms. Woodard's expert opinion in its entirety is unreliable and irrelevant. Under ***Daubert***, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." ***Goebel II***, 346 F.3d at 992. As a result of the inherent unreliability of Ms. Woodard's proposed expert testimony, this Court must exclude Ms. Woodard from testifying at trial pursuant to Fed. R. Evid. 702, ***Daubert*** and its progeny.

### B. Woodard's Factual Assumptions Are Unsubstantiated

Additionally, expert testimony must be based on specialized knowledge, which implies a grounding in proper methods and procedures, not mere "subjective belief or unsupported speculation." *Goebel II*, 346 F.3d at 991 (citing *Daubert*, 509 U.S. at 590). Assertions must be supported by appropriate validation, that is, "good grounds" based on what is known. *Id.* Expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required." *Id.* In this case, Ms. Woodard's factual assumptions were unsupported and unvalidated. As a result, her opinion is based on conjecture or speculation rather than valid facts.

First, Ms. Woodard's assertion of anticipated medical needs was not based on a medical assessment, and thus there is no factual foundation for the medical specialties and frequency of treatment included in the life care plan prescribed by Ms. Woodard. Ms. Woodard did not speak to any medical specialist for an assessment of Plaintiff's treatment needs. [*See* Woodard Dep., at 7, 27, 50, Exh. A-4]. Ms. Woodard did not speak to the rehabilitation specialists and physician who treated Plaintiff at Denver Health Medical Center. [*See* Woodard Dep., at 7, 27, 42, Exh. A-4]. Ms. Woodard's reliance on nurse practitioner Poppish was inappropriate and invalid because the projection of Plaintiff's future medical needs is not within the scope of practice of a nurse practitioner. [*See* Woodard Dep., at 42, Exh. A-4]. Because Ms. Woodard did not speak to the medical treatment providers who were in the best position to project Plaintiff's actual future medical and rehabilitative needs, Ms. Woodard's expert opinion is based on her own speculation concerning Plaintiff's future medical needs for surgeries/hospitalizations without an appropriate

11

factual and medical basis. For example, Ms. Woodard stated Plaintiff is at risk for additional surgery such as stump revisions or plastic surgery, but she did not speak with any medical provider about this prediction, including Plaintiff's prosthetist. As a consequence, Ms. Woodard's inclusion of the cost for possible, and not a probable, hospitalization for stump surgery is inappropriately included by Ms. Woodard in her recommended life care plan because it is not validated and not based on any specialized knowledge she actually possesses.

Second, because Plaintiff has not undergone medical assessments since his release from Denver Health Medical Center, and because his ongoing medical services, such as they are, at the Clinica Campesina are conducted by a nurse practitioner rather than a physician, or more appropriately physicians specializing in the areas where Plaintiff needs future medical care and treatment, there is insufficient factual basis for Ms. Woodard to develop a life care plan for Plaintiff's future medical and equipment needs. Ms. Woodard could have sent Plaintiff for a medical assessment, but did not do so. [*See* Woodard Dep., at 51, Exh. A-4]. Without a sound professional basis for a prediction of future life care needs, Ms. Woodard's life care plan is merely speculative and deficient.

Third, Ms. Woodard concluded Plaintiff cannot work in the United States, but that assertion is not supported by the results of the vocational testing conducted by Ms. Woodard's staff. [*See* Woodard Dep., at 47-48, Exh. A-4]. The vocational testing found Plaintiff was "at least average in all of the dexterity testing" and he did unusually well in the testing, even though it is "very unusual to have someone who . . . is a non-English speaker overall do as well as he did." [*See* Woodard Dep., at 82, 85, Exh. A-4]. Ms. Woodard did not analyze the jobs that Plaintiff can do beyond the "heavier physical labor" that

12

characterizes "jobs done by immigrants." [*See* Woodard Dep., at 88, Exh. A-4]. Thus, Ms. Woodard's factual analysis was unsupported by the information contained in her own file.

Fourth, Ms. Woodard opined that Plaintiff cannot work because of his pain and prosthesis, but it was Ms. Woodard's responsibility in developing a life care plan to assess Plaintiff's employability given the fact of a prosthesis, not to use this fact to avoid an appropriate analysis. Ms. Woodard testified Plaintiff would only have access to unskilled, sedentary jobs. [*See* Woodard Dep., at 88, Exh. A-4]. However, those limitations do not disqualify Plaintiff from all employment whatsoever. Ms. Woodard utterly failed to analyze the market for unskilled, sedentary jobs that Plaintiff can perform even considering his physical limitations.

Fifth, recognizing that Plaintiff cannot work in the United States because of his non-legal status, Ms. Woodard testified that the Mexican economy is "not good" and the jobs there "tend to be a lot harder." [*See* Woodard Dep., at 87, Exh. A-4]. Those observations, however, were not supported by the facts developed by her staff and found in her file concerning the Mexican economy. For example, Ms. Woodard's file shows that Plaintiff can become a street trader, and the data in her file shows that street traders make a good enough living to own a house. [*See* Woodard File, at WOODARD 000137, Exh. A-7]. In addition, Ms. Woodard's observation about jobs in Mexico tending "to be a lot harder" does not provide a sound basis for failing to analyze Plaintiff's work potential in Mexico as part of a life care plan for the Plaintiff living in Mexico. The conditions of the economy in Mexico are a reality to be incorporated in the analysis, not a basis for failing to develop a life care plan for Plaintiff in Mexico. The Mexican economy will go through its cycles, as does any economy, regardless of the state of Plaintiff's health. A life care plan

13

for Plaintiff should simply acknowledge the current level of his employability in the United States or in Mexico, assess the type of jobs Plaintiff can do in either country, and develop a life care plan for each country accordingly. Ms. Woodard simply failed to substantiate the basis for her failure to analyze Plaintiff's potential to work in Mexico as part of an appropriately researched and validated Mexico life care plan.

Sixth, Ms. Woodard's assessment of Mexico's national medical system as being problematic is also not corroborated by the information in her own file. Ms. Woodard does not provide a factual basis or rationale for dismissing Mexico's national health care system as a basis for Plaintiff's life care if he returned to Mexico because of his immigration status. Ms. Woodard admits Plaintiff is from Mexico City, and her file indicates that in Mexico City there are a "variety of medical specialists he would need." [*See* Woodard Dep., at 54, Exh. A-4]. In addition, Ms. Woodard's file notes that "[t]he quality of [medical] care … in Mexico have been outstanding."  [*See* Woodard File, at WOODARD 00063, Exh. A-7]. "Medical training and practices in Mexico are of the highest standards if your physician or hospital is offering services in the private medical sector. The socialized medical care, at the clinic level, leaves much to be desired. However, for major surgeries, this system also offers world class specialists and care."  [*See* Woodard File, at WOODARD 00063, Exh. A-7]. Ms. Woodard's file indicates the Mexican medical system has made considerable progress. [*See* Woodard File, at WOODARD 00148, Exh. A-7]. In any event, prior to entering the United States illegally, Plaintiff lived in Mexico without apparent medical problems under the state of the medical system described in Ms. Woodard's file. [*See* Woodard Dep., at 23, Exh. A-4]. Ms. Woodard provides no reasoning or facts indicating why Plaintiff cannot go back to live in Mexico and receive appropriate and necessary ongoing medical and rehabilitative care. Indeed, some of Ms.

14

Woodard's own research states Mexico "has an excellent reputation for the quality of its health care system." [*See* Woodard File, at WOODARD 00183, Exh. A-7]. In sum, Ms. Woodard failed to conduct the analysis necessary to present a complete and proper life care plan for Plaintiff that considers the very real likelihood that he may have to return to Mexico.

Seventh, Ms. Woodard's undeveloped attempt to address the costs of medical care in Mexico, as related to costs in the United States, is contradictory and inconclusive. Staff research found an average of costs for medical care in the United States that is 48% less than in Mexico; yet on the same record of research, a staff annotation indicates that, "research says 66% less in Mexico." Ms. Woodard had no explanation for this contradiction. [*See* Woodard Dep., at 62, Exh. A-4]. Ms. Woodard admits all of the equipment she lists as needed by Plaintiff throughout his life is available in Mexico, yet she failed to obtain information on the cost of any of that equipment in Mexico. [*See* Woodard Dep., at 57 & 66, Exh. A-4]. The sloppiness in the data compilation fails to provide any basis of a proper analytical underpinning for the life care plan, and the entire effort must be rejected. Fundamentally, Ms. Woodard's factual assumptions were not based on proper research and analysis, but instead rely on speculation. Such a failure renders Woodard's life care plan, and her proposed expert testimony, speculative, unreliable and inadmissible under Fed. R. Evid. 702.

## 2. LACK OF RELEVANCE

Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." ***Hollander,*** 289 F.3d at 1204. Ms. Woodard's expert testimony must be precluded by this Court because her expert opinions for Plaintiff's life care plan also fail to meet the relevance requirement of

Fed. R. Evid. 702.

First, Ms. Woodard's testimony is irrelevant because she bases her projection of Plaintiff's future medical needs on her own opinion and the opinion of a nurse practitioner, both of whom are unqualified to assess the Plaintiff's future medical and rehabilitative needs. Ms. Woodard's opinion on Plaintiff's future medical needs, including medical services, medications and surgeries, are irrelevant because she is not competent to provide such an opinion. Ms. Woodard's life care plan is irrelevant because it depends on an incompetent opinion of Plaintiff's future medical needs. Ms. Woodard's opinion on Plaintiff's future equipment needs as they relate to prosthetic replacement is also irrelevant because she is not a prosthetist and did not consult with a prosthetist to develop her recommendation.

Second, Ms. Woodard's testimony is also irrelevant because Plaintiff is likely return to Mexico because of his illegal immigration status in the United States and her reasoning completely ignores this reality. Even if consideration of Plaintiff's return to Mexico is deemed only probable or possible, rather than likely, Ms. Woodard's life care plan is completely devoid of any methodology, factual basis or reasoning that addresses Plaintiff's life care needs in Mexico. Ms. Woodard's life care plan is comprised of projections based on an assumption that Plaintiff will continue to live and work in the United States for the remainder of his working lifetime. As a result, Ms. Woodard's life care plan is inaccurate and incomplete. Such a life care plan ignores reality and is irrelevant.

Third, Ms. Woodard's testimony is also irrelevant because she strains to find no level of work that Plaintiff can perform, either in the United States or in Mexico, even though the fact is that her staff's own vocational testing demonstrated some level of ability to work and no analysis was conducted correlating the

16

actual vocational testing obtained for the Plaintiff with any jobs in either Mexico or the United States Plaintiff could perform given his physical limitations.

In sum, Ms. Woodard's proposed expert opinion on Plaintiff's life care plan fails to meet the standard of reliability required by Fed. R. Evid. 702 and ***Daubert***. Ms. Woodard's numerous inappropriate methodological processes and factual assumptions serve to reduce her opinion to speculation. No competent life care plan utilizes the types of assumptions that Ms. Woodard employs. Instead of basing her opinion on sound medical assessments and a reasonable projection of life care needs in both the United States and in Mexico, Ms. Woodard engages in blatant speculation that ignores the applicable facts.

Finally Defendants anticipate Plaintiff will argue that the Defendants' criticisms of Ms. Woodard are not appropriate for exclusion of her testimony under Fed. R. Civ. P. 702 and ***Daubert***, but simply go to the weight the jury should give Ms. Woodard's opinions and can be explored through cross-examination. Such a position, however, ignores the entire purpose of ***Daubert*** in requiring this Court to preclude from jury consideration expert opinions that have no basis in fact, law or appropriate methodology. Simply put, Ms. Woodard's opinion fails analytical scrutiny and cannot be considered sufficiently intellectually rigorous and grounded in sound factual assumptions and scientific methodology to be presented to the jury. Cross-examination alone cannot be considered sufficient to mitigate the jury's consideration of Ms. Woodard's entirely unsound, incomplete and speculative approach to evaluating Plaintiff's life care plan.

## CERTIFICATE OF COMPLIANCE WITH D.C.Colo.LCiv.R. 7.1(A)

Pursuant to D.C.Colo.LCiv.R. 7.1(A), prior to submitting the instant Motion, the undersigned counsel contacted counsel for the Plaintiff, William A. Trine, Esq. Mr. Trine indicated that the Plaintiff

opposes this Motion.

## **CONCLUSION**

In conclusion, for all of the foregoing reasons, Defendants Board of County Commissioners of Park County, Fred Wegener, Monte Gore and Vicki Paulsen respectfully request this Court issue an order excluding the testimony of Plaintiff's expert witness Helen M. Woodard, M.A., from the trial in this matter, and for all other and further relief as this Court deems just and appropriate.

Dated this 3rd day of January, 2007.

Respectfully submitted,

s/ Andrew D. Ringel_____
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, Colorado 80202-2052
Tel:  (303) 628-3300
Fax:  (303) 293-3238
ringela@hallevans.com, veigaj@hallevans.com
**ATTORNEYS FOR DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, FRED WEGENER AND MONTE GORE**

and

Josh A. Marks, Esq.
Melanie B. Lewis, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302
Tel: (303) 402-1600
Fax: (303) 402-1601
jam@bhgrlaw.com, mbl@bhgrlaw.com
**ATTORNEYS FOR DEFENDANT VICKI PAULSEN**

### CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 3rd day of January, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Joseph J. Archuleta, Esq. <br> archuletalaw@qwest.net | Lloyd C. Kordick, Esq. <br> lloyd@kordicklaw.com |
| William A. Trine, Esq. <br> btrine@trine-metcalf.com | Adele P. Kimmel, Esq. <br> akimmel@tlpj.org |
| Josh A. Marks, Esq. <br> jam@bhgrlaw.com | |
| Melanie B. Lewis, Esq. <br> mbl@bhgrlaw.com | |

s/Loree Trout,   Secretary
  Andrew D. Ringel, Esq.
  Jennifer L. Veiga, Esq.
  Hall & Evans, L.L.C.
  1125 17th Street, Suite 600
  Denver, CO 80202-2052
  303-628-3300
  Fax: 303-293-3238
  ringela@hallevans.com
  veigaj@hallevans.com

  **ATTORNEYS FOR DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

H:\Users\RINGELA\park\Carranza-Reyes\Motion to Limit Helen Woodard.doc