Carranza-Reyes v Park County

Daniel Muldoon

---

SHEET 1   PAGE 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 2005-WM-377 (BNB)

DEPOSITION OF:  DANIEL MULDOON
November 1, 2005

MOISES CARRANZA-REYES,

Plaintiff,

v.

PARK COUNTY, a public entity of the State of Colorado and its governing board, THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; PARK COUNTY SHERIFF'S OFFICE, a public entity of the State of Colorado; FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado; MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado; JAMES BACHMAN, M.D., individually and in his official capacity as Medical Director of the Park County Jail,

Defendants.

TAKEN PURSUANT TO NOTICE AND AGREEMENT on behalf of the Plaintiff at 825 Castello, Fairplay, Colorado 80440 at 1:48 p.m. before Theresa A. Coffman, Federal Certified Realtime Reporter, Registered Professional Reporter and Notary Public within Colorado.

---

PAGE 3

                                                                    3

1                           I N D E X
2   EXAMINATION OF DANIEL MULDOON                          PAGE
    November 1, 2005
3
    By Mr. Trine                                              4
4
    By Mr. Archuleta                                         --
5
    By Mr. Kordick                                           --
6
    By Ms. Veiga                                             --
7
    By Mr. Groome                                            --
8
    By Ms. Lewis                                             --
9
    By Mr. Jurs                                              --
10
11                                                        INITIAL
    DEPOSITION EXHIBITS:                                  REFERENCE
12
    9    Intero-Office Memorandum from Muldoon to           58
13       Gore, 9/30/05
14  (Original exhibits attached to original deposition; copy
    exhibits included in continuing exhibit file; copies provided
15  to counsel as requested.)
16  REQUESTED PORTIONS OF TESTIMONY:                         PAGE
17  Request for document production
    or information
18
    Certified question                                       --
19
    Instruction not to answer
20
    Other requests or marked testimony
21
    REFERENCES TO EXHIBITS MARKED PREVIOUSLY:
22
    Exhibit No.   Page Reference    Exhibit No.   Page Reference
23
         1            25                 6             76
24       2            39
         3            32
25       4            66

---

PAGE 2

                                                                    2

1                         APPEARANCES
2   For the Plaintiff:    WILLIAM A. TRINE, ESQ.
                          Trine & Metcalf, P.C.
3                         1435 Arapahoe Avenue
                          Boulder, Colorado 80302
4
                          LLOYD C. KORDICK, ESQ.
5                         805 South Cascade
                          Colorado Springs, Colorado 80903
6
                          JOSEPH J. ARCHULETA, ESQ.
7                         Law Office of Joseph J. Archuleta
                          1724 Ogden Street
8                         Denver, Colorado 80218
9   For the Defendants    JENNIFER L. VEIGA, ESQ.
    Park County, Park     Hall & Evans, LLC
10  County Board of       1125 17th Street
    Commissioners, Park   Suite 600
11  County Sheriff's Office, Denver, Colorado 80202
    Wegener and Core:
12
                          STEPHEN A. GROOME, ESQ.
13                        P.O. Box 1373
                          501 Main Street
14                        Fairplay, Colorado 80440
15  For the Defendant     MELANIE B. LEWIS, ESQ.
    Paulsen:              Berg Hill Greenleaf & Ruscitti LLP
16                        1712 Pearl Street
                          Boulder, Colorado 80302
17
    For the Defendant     ANDREW W. JURS, ESQ.
18  Bachman:              Johnson McConaty & Sargent, P.C.
                          400 South Colorado Boulevard
19                        Suite 900
                          Glendale, Colorado 80246
20
    Also Present:         None
21

---

PAGE 4

                                                                    4

1            WHEREUPON, the within proceedings were taken
2   pursuant to the Federal Rules of Civil Procedure:
3            (At this time Messrs. Groome and Kordick
4   were not present in the deposition room.)
5            DANIEL MULDOON,
6   having been first duly sworn to state the whole truth, was
7   examined and testified as follows:
8                          EXAMINATION
9   BY MR. TRINE:
10     Q.    Please state your full name and address for
11  the record.
12     A.    Daniel Muldoon.
13           MS. VEIGA:  And why don't you provide your
14  work address.
15     A.    1180 Park County Road 16, Fairplay, 80440.
16     Q.    (BY MR. TRINE)  And what is your educational
17  background?
18     A.    I have a high school diploma, and I'm in the
19  process of getting an associate's degree right now.
20     Q.    Associate's degree in what?
21     A.    Criminal justice.
22     Q.    And where are you getting that degree?
23     A.    It's through the mail.
24           THE REPORTER:  It's through the mail?
25           THE DEPONENT:  Ashworth College,

---

Notes:

Coffman Reporting
303.893.0202
303.893.2230 FAX

EXHIBIT 5

SHEET 5  PAGE 17

**Page 17**

1  Q. How would you have available beds?
2  A. If they took 20 INS detainees down to
3  Wackenhut, we would have 20 available beds for new
4  detainees coming from the Western Slope.
5  Q. That's what I asked you originally. You're
6  saying that you could at times tell INS, if you'll come
7  pick up some of the INS detainees in Park County and take
8  them to Wackenhut, then we'll have more room?
9  A. Yes, sir. That's what I said.
10  Q. Now, how many detainees were in Pod D when,
11  in your opinion, you couldn't take any more and had to
12  turn the INS down?
13  A. When whatever number of available beds were
14  full, and I have no idea how many beds are in there right
15  now.
16  Q. Well, it's been represented to us by answers
17  to written interrogatories that there -- and documents --
18  that there are 42.
19  A. Okay.
20  Q. And with those 42 beds three-tiered in Pod
21  D, do you think you could get more beds in Pod D on the
22  upper tier?
23  MR. RINGEL: Objection to form.
24  Q. (BY MR. TRINE) Do you feel, with the 42
25  beds that are presently in the upper tier of Pod D, you

**Page 18**

1  could squeeze more in the upper tier? You could squeeze
2  more bunk beds in there?
3  A. No, sir, I don't believe we could.
4  Q. So you think Pod D at the moment is filled
5  to capacity as far as bedding goes, right?
6  MS. LEWIS: Object to the form of the
7  question.
8  A. Can we try that question again?
9  Q. (BY MR. TRINE) Yeah. It appears to you
10  that Pod D is therefore filled to capacity as far as beds
11  go in the upper tier; isn't that right?
12  A. Generally speaking, yes, sir.
13  Q. Okay. So if all those beds were filled and
14  INS called wanting to send more inmates in, you would
15  tell them you don't have room because all your beds are
16  filled, right?
17  A. That would be one option, yes, sir.
18  Q. And you've done that before?
19  A. I have done that before.
20  Q. Have you ever at times said, "No, bring them
21  in" when you knew that all 42 of those beds were filled?
22  A. We have other options also. I can clear out
23  a corner cell in Charlie pod, which would open up six or
24  eight beds. We've done creative housing before.
25  Q. Okay. In other words, if you had beds

**Page 19**

1  available in Pod C, even though Pod D is filled to
2  capacity at 42, you might say, "Bring them in, we'll put
3  them in Pod C"?
4  MS. LEWIS: Object to the form.
5  A. Yes, sir.
6  Q. (BY MR. TRINE) Now, what if Pod C was
7  filled to capacity?
8  A. It would depend on what was going on that
9  particular day, what other bunks might be available, what
10  else I could do creatively to create a bunk. One of the
11  issues is having to keep separation until the INS
12  detainees are medically cleared.
13  Q. Have there been -- strike that. Was it your
14  understanding from Monte Gore that you were not to turn
15  down INS detainees even if Pod D was filled to capacity
16  with 42 people?
17  MS. LEWIS: Object to the form.
18  A. No, sir. If we could make it work, we did.
19  If I could come up with creative housing, if I could put
20  them in another pod, then we would.
21  Q. (BY MR. TRINE) Now, on the times that INS
22  called and you told them that you didn't have room, was
23  that because you couldn't do any creative housing to take
24  them?
25  A. No, sir.

**Page 20**

1  Q. In other words, all the pods were filled?
2  And/or you couldn't put any of the INS detainees in one
3  of the other pods?
4  A. Right. I couldn't put INS detainees in with
5  the Department of Corrections boot camp inmates, for
6  example. I have to keep a separation there.
7  Q. Your only possibility was what? Pod C?
8  A. Or Baker pod. Depending on who was housed
9  in there.
10  Q. Either B or C, depending on who was in
11  there?
12  A. Yes, sir. Or possibly at one time there was
13  a small pod in the back that we used.
14  Q. Now, was there ever a time when someone else
15  at the jail authorized INS to deliver a batch of
16  detainees when Pod D was filled to capacity with 42 and,
17  when you became aware of that, objected to that?
18  A. No, sir.
19  Q. Have you at any time ever complained orally
20  or in writing at the overcrowding of detainees in Pod D?
21  MR. RINGEL: Objection to form.
22  A. Not that I recollect.
23  Q. (BY MR. TRINE) Now, the records reflect
24  that between March 1 and March 8 when Pod D already had
25  49 detainees, that a batch of additional detainees