# ROBERT B. GREIFINGER, M.D.

June 2, 2006

William A. Trine, Esq.
Trine & Metcalf, P.C.
1435 Arapahoe Avenue
Boulder, CO 80302-6390

                        Re:    Moises Carranza-Reyes

Dear Mr. Trine:

      This is a second supplementary report on the medical care provided to Moises Carranza-Reyes while he was incarcerated in the Park County Jail, March 1 - 8, 2003. I am writing this supplement because you asked me to elaborate on Dr. James Bachman's role in this case, as the medical director for the facility.

      My prior reports are dated July 29, 2005 and April 27, 2006. My opinions are based on the materials that I had reviewed and listed in the prior reports and the deposition transcript of Vince Markovchick, MD.

      My updated resume, list of publications, list of testimony and fees are attached.

      Please also note a typographical error in my report dated July 29, 2005, in the first paragraph where I mistyped 2003 as 2002. There may be others, for which I apologize.

**Findings**

1. The Park County Jail had policies and procedures that were consistent with the standards for health care in jails published by the National Commission on Correctional Health Care.[1] (Park 0550 - 0694) Dr. Bachman was aware of these policies and he approved them annually, in his role as medical director [also referred to as the responsible physician]. (Bachman deposition pp. 11, 14, 24-25, Park 0556, Park 0313) By approving and signing these documents he accepted " . . . responsibility for any omission, commission, or negative outcome which . . ." resulted from deviation from the policies and procedures. (Park 0550) Among other things, the policy requires unobstructed access to health care personnel and services, maintenance of dignity, governance of health staff's own conduct and actions in keeping with established professional standards relative to their level of training or license, monitoring of quality of care. (Park 0551, 0553-4)

2. As the responsible physician for the facility, Dr. Bachman was responsible for all final medical judgments, and in cooperation with the health services administrator, for the implementation of all programs and practices related to the jail medical services. (Park

---

[1] Standards for Health Services in Jails 2003 and 1996. National Commission on Correctional Health Care. Chicago, 2003 and 1996.

ROBERT B. GREIFINGER, M.D.
DOBBS FERRY, NEW YORK 10522-3517
PHONE: (914) 693-9205
FAX: (914)
E-MAIL: robert.greifinger@

EXHIBIT 35

Second Supplemental Report
Moises Carranza-Reyes
June 2, 2006
Page 2 of 3

0555, Bachman testimony 51) In addition Dr. Bachman was required to participate in a continuous quality improvement program, including, among other things, review and comment on the adequacy of treatment plans initiated by health care providers, environmental inspections, and reports from the infection control committee. (Park 0559 - 64, 0566-7, 05574-8) The responsible physician is required to provide protocols for nurses evaluation of acutely ill patients. (Park 0627) Medical records are required to be dated and signed, among other things. (Park 0647)

3. Dr. Bachman did not provide any nurse protocols for the facility. (Bachman deposition 26) He did not attend any infection control or quality improvement committee meetings, nor did he inspect the pods, in the period prior to March 2003. (Bachman testimony 53-55, 59 - 61)

**Opinions**

4. As I wrote in my report of July 29, 2005, "[t]he lack of nursing protocols for patients such as Mr. Carranza-Reyes and the inadequate medical records indicate a systemic deficiency in care." Dr. Bachman was responsible for developing nursing protocols and for an adequate medical record system, including contemporaneous notes that are signed and dated by the examining health professional. He failed in this duty. This falls far below the standard of correctional health care.

5. I also wrote that "Nurse Paulsen was neither trained nor supervised to respond appropriately to acute medical problems. In fact, she was practicing beyond the scope of her license with the knowledge of Dr. Bachman, who either knew or should have known how she was conducting herself professionally." Dr. Bachman was responsible for training and supervising Nurse Paulsen regarding her medical judgments. He failed in this duty. This falls below the standard of correctional health care.

6. As a result of practices that violated jail policy, Mr. Carranza-Reyes had an obstructed access to an appropriate level of care (physician care at the facility and timely transfer for his life-threatening emergency). His dignity was compromised by the posting of medical information in the "pass-on" log. Ms. Paulsen had a practice of working beyond her training and license. Dr. Bachman declined to participate in environmental inspections, an infection control committee, or a quality management committee, although these were explicit requirements of the facility. Dr. Bachman claims he was not aware of crowding in the jail or of Ms. Paulsen's making inappropriate medical diagnoses, such as altitude sickness in this case. Dr. Bachman did not adequately train or supervise Nurse Paulsen. He did not insure that the facility policies and procedures were enforced. He failed to monitor the conditions on D-pod, and so was never aware of crowding and problems with hygiene. He should have been aware of conditions that could give rise to transmission on communicable disease. Dr. Bachman failed in his duty to perform these duties, duties that are explicit in facility policy that he approved. This falls below the standard of correctional health care.

Second Supplemental Report
Moises Carranza-Reyes
June 2, 2006
Page 3 of 3

## Conclusion

7. In his role as medical director and responsible physician for the jail, James Bachman failed in his duties to inspect, train, supervise, and monitor environmental conditions and quality of care. These were responsibilities that were explicit and consistent with the standard of correctional health care. Dr. Bachman was aware of these duties and he approved them on multiple occasions. As a result of his choices not to attend to these duties, the practices at the jail did not conform to jail policy and standards of care for correctional facilities. As a result of his choices, Mr. Carranza-Reyes suffered grievous harm, physically, emotionally, and occupationally. Dr. Bachman's care fell far below the standard of correctional health care.

8. The jail policies relied on nationally-accepted standards of care for correctional facilities, such as the Park County Jail. Standards of care in correctional facilities have evolved to manage well-known risks. These standards have a purpose which is to minimize harm to patients with actual or potential serious medical needs. Dr. Bachman was aware of the facility policies, based on nationally-accepted standards. His choice to ignore them was deliberate indifference to Mr. Carranza-Reyes' serious medical needs.

Sincerely,

Robert B. Greifinger, M.D.

Attachments