Catherine M. Knox
One Lincoln Center, Suite 380
10300 SW Greenburg Road.
Portland, OR 97223
503/449-0186
catherinemknox@comcast.net

Report
Moises Carranza-Reyes v. Park County, et al
U. S. District Court
Civil Action No. 2005-WM-377 (BNB)
Page 1 of 7

## Statement of Opinions and Reasons:

1. It is my opinion that Vickie Paulsen, R.N. was negligent in her care and treatment of Moises Carranza-Reyes, that her practice was below acceptable standards of practice for nurses in correctional settings and that her practice did not comply with the Colorado Nurse Practice Act. The basis for this opinion is:

   A. Ms. Paulsen, RN saw Mr. Carranza-Reyes for the first time on Thursday March 6, 2003 for complaints of body aches, headache, nausea, diarrhea, nasal congestion and sore throat. Her interview with him about his complaint was inadequate because she did not ask him how long he had had these symptoms, for a description of any of the symptoms, or whether anyone else in the housing area was experiencing similar problems. The nurse's consideration of the answers Mr. Carranza-Reyes gave to these questions would have guided her examination to determine the nature and urgency of Mr. Carranza-Reyes condition. Her examination of Mr. Carranza-Reyes was also not adequate. She did not take a complete set of vital signs and did not look in his ears, nose or throat. A more thorough examination of Mr. Carranza-Reyes would have been appropriate at this point to establish a more definitive diagnosis or at least a clear baseline which could have been used to compare subsequent findings and determine whether his condition was improving or getting worse.

   Ms. Paulsen, RN did not consider the possibility that the illness Mr. Carranza-Reyes had was infectious and communicable. She did not consider what conditions in his living environment either supported or harmed his condition (transmission of disease, ability to improve hydration, ability to convalesce) and she did not consider whether Mr. Carranza-Reyes' request for medical attention was delayed in reaching her.

   Ms. Paulsen, RN treated Mr. Carranza-Reyes with Motrin for body aches and headache, CTM for nasal congestion, and Pepto-Bismol for nausea and told him to drink fluids for hydration. Her decision to treat this patient as such was made without consulting a physician or other prescribing practitioner for direction and there were no standing orders or protocols in use at the jail for her to follow in determining the course of treatment. Ms. Paulsen, RN did not have authority under the Colorado Nurse Practice Act to treat Mr. Carranza-Reyes with the medications that she gave him.

   B. Ms. Paulsen, RN saw Mr. Carranza-Reyes the next day, Friday March 7, 2003 because in addition to symptoms described the day before, he was now vomiting. At this second encounter Ms. Paulsen, RN failed to do an adequate assessment.

EXHIBIT
38
PENGAD 800-631-6989

Catherine M. Knox
One Lincoln Center, Suite 380
10300 SW Greenburg Road.
Portland, OR 97223
503/449-0186
catherinemknox@comcast.net

She did not collect any information from him about the continued diarrhea, the nature and frequency of vomiting, did not inquire how long Mr. Carranza-Reyes had had the other symptoms, did not get a full set of vital signs and did not examine his ears, nose or throat or look more closely at the extent to which he may be dehydrated.  Ms. Paulsen RN, continued his treatment with Motrin, CTM and Pepto-Bismol without medical direction, direct orders, standing orders, or treatment protocol.

Ms. Paulsen, RN was negligent in failing to contact Dr. Bachman about Mr. Carranza-Reyes' continuing complaints and worsening condition on Friday March 7, 2003. Ms. Paulsen, RN did not consider the possibility that the illness Mr. Carranza-Reyes had was infectious and communicable, she did not consider what conditions in his living environment either supported or harmed his condition (transmission of disease, ability to improve hydration, ability to convalesce), and she did not consider what actions should be taken before the weekend to ensure that his condition did not deteriorate during the weekend.

C.  Ms. Paulsen, RN instructed the deputies at Park County Detention Center that Mr. Carranza-Reyes should be observed and could be given medication for headache, nasal congestion and nausea and vomiting.  Ms. Paulsen's instructions did not include what signs, symptoms or conditions the deputies should observe Mr. Carranza-Reyes for, what changes in his condition Ms. Paulsen should be contacted for, what measures should be taken to ensure that he was getting enough fluids and rest or whether any steps should be taken to reduce the transmission of "flu-like symptoms" amongst other persons detained or working at the jail.   Ms. Paulsen, RN was negligent in the delegation of nursing tasks to the deputies at the Park County Jail.

Ms. Paulsen, RN was contacted by Deputy Fikejs at 3:00 am Saturday March 8, 2003 because Mr. Carranza-Reyes was feeling worse and now complained of shortness of breath and back pain in addition to the other symptoms. The deputy had taken Mr. Carranza-Reyes's blood pressure, pulse and respirations and gave him oxygen because his breathing was rapid and shallow. The deputy gave oxygen without orders, instruction or delegation by the nurse or physician. Ms. Paulsen, RN concluded from the information the deputy gave her during the telephone call that Mr. Carranza-Reyes was to be given a higher dose of Motrin and that they were to call if his condition worsened.  She failed to ascertain the extent to which his condition had worsened, failed to contact the physician or refer the patient for more urgent assessment and care.

D.  On Saturday March 8, 2003 Ms. Paulsen, RN came to the jail just before 8:00 am to check on Mr. Carranza-Reyes.  As she was opening up her office she was

Catherine M. Knox
One Lincoln Center, Suite 580
10300 SW Greenburg Road
Portland, OR 97223
503/449-0186
catherinemknox@comcast.net

notified that Mr. Carranza-Reyes had fallen down in the housing unit so she went to the housing unit to see him. Ms. Paulsen, RN assessed Mr. Carranza-Reyes as having acute pain on his right side from flank to lower abdomen and that he was coherent. Ms. Paulsen, RN determined that he should be transported to Summit Medical Center emergency services for evaluation.

Ms. Paulsen, RN failed to complete an adequate assessment of Mr. Carranza-Reyes the morning of Saturday March 8, 2003. Ms. Paulsen RN did not inquire of Mr. Carranza-Reyes or those who had been caring for him in the cell about his other symptoms, she did not take his vital signs or further examine him except to look at and touch the area of pain he described and she did not have him taken to the clinic to more thoroughly examine him or to wait under medical supervision until transport occurred. Ms. Paulsen, RN reports that she telephoned the emergency room to inform them that a patient would be coming from the jail for service but there is no record that she made the call in her notes, the jail records or the records from the emergency room. She did not copy the chart or prepare any written records to be taken with the patient to the emergency room. Ms. Paulsen, RN was negligent in not contacting or consulting with a physician or other prescribing provider about Mr. Carranza-Reyes' worsening condition. It would have been appropriate for Ms. Paulsen, RN to seek orders for lab work, fluid replacement, medications and other measures that would support the patient's health and well being in the interim until transport to the emergency room.

E.  Ms. Paulsen, RN left the jail at about 9:00 am on Saturday March 8, 2003. Mr. Carranza-Reyes had not yet been transported to Summit Medical Center and no orders for diagnostic work or supportive and perhaps emergency treatment had been requested by Ms. Paulsen, RN. Ms. Paulsen, RN delegated the continued monitoring and assessment of Mr. Carranza-Reyes' condition to the deputies. The instructions she left were to call her if his conditioned worsened. Mr. Carranza-Reyes continued to vomit and his condition continued to deteriorate. Ms. Paulsen, RN called the jail twice and was updated about his condition. She insisted that he be transported to Summit for evaluation and this was initiated by a deputy from the jail at 11:40 am with arrival at the emergency room an hour later. Ms. Paulsen, RN was negligent in delegating the continued care and monitoring of Mr. Carranza-Reyes to the deputies. She was negligent in her decision to leave the jail before Mr. Carranza-Reyes was transported and for not seeking orders, consultation or advice about his care and treatment in the interim. Ms. Paulsen's action to leave the jail at 9:00 am contributed to the delay in the patient's transport to Summit Medical Center. Her failure to stay with the patient and seek appropriate medical orders put the patient at significant risk during the delay.

Catherine M. Knox
One Lincoln Center, Suite 380
10300 SW Greenburg Road.
Portland, OR 97223
503/449-0186
catherinemknox@comcast.net

F.  Ms. Paulsen, RN was aware that others being held at the jail were experiencing "flu like symptoms" before, during and after the time that Mr. Carranza-Reyes was ill. She treated each person's complaints symptomatically but took no action to identify, prevent or limit the transmission of infection among those detained or working at the jail. After Mr. Carranza-Reyes was hospitalized and diagnosed with Group A strep with septicemia secondary to pneumonia Ms. Paulsen, RN did make arrangements for others with similar health complaints to be seen by the physician, gathered information about the infectiousness of Strep A for the deputies and made some recommendations about cleaning and sanitation in the housing units. Her actions were often prompted by others higher in the chain of command and were initiated rather late in the sequence of this incident. Ms. Paulsen, RN was negligent in her responsibility to prevent disease and to support the well being of her patients.

2.  It is my opinion that Vickie Paulsen, R.N. was deliberately indifferent to the needs and condition of Mr. Carranza-Reyes.  The basis for this opinion is:

A.  Deputy Fikejs and Deputy Frye called Ms. Paulsen RN at home at 3:00 am on Saturday March 8, 2003 to tell her that Mr. Carranza-Reyes was having trouble breathing, had vomited and was nauseated. When they called Ms. Paulsen, RN it was because they saw the need to seek medical advice and direction. Ms. Paulsen, RN first saw Mr. Carranza-Reyes on March 6, 2003 and over the next 42 hours his symptoms had become worse, not better, in spite of her attempts to treat him symptomatically.  This was very clear when the deputies called her at home Saturday morning and she should have urgently sought a physician's advice and direction for the care and treatment of Mr. Carranza-Reyes.

B.  Ms. Paulsen, RN left the jail at 9:00 am on Saturday March 8, 2003 after she had determined that he needed to be transported to Summit Medical Center for emergency services.  She did not call a physician for direction or obtain orders diagnostic work or treatment. She did not prepare copies of his health record at the jail. She did not interview or examine Mr. Carranza-Reyes other than briefly to identify that he was in acute pain after he had collapsed on the tier. She did not interview cell mates to obtain any information about his condition that night or over the previous days. She did not provide him with supportive nursing care while waiting for transport. Ms. Paulsen, RN left Mr. Carranza-Reyes without adequate medical supervision for 2 ½ hours after he had collapsed on the tier and she had determined that he needed to be transported to the emergency room.

Catherine M. Knox
One Lincoln Center, Suite 380
10300 SW Greenburg Road
Portland, OR 97223
503/449-0186
catherinemknox@comcast.net

3. It is my opinion that the conduct of Vickie Paulsen, RN constituted reckless and callous disregard for Mr. Carranza-Reyes's rights. The basis for this opinion is:

A. Ms. Paulsen, RN was provided with a description of her duties, the policies and procedures used at the jail and opportunity to meet with her immediate supervisor and the facility physician. At no time did she clarify discrepancies between the actual practices at the jail and these expectations for the proper delivery of health care. She knew that she was not completely fulfilling the expectations for health care at the jail and that the policies and procedures were not being followed. She made no effort to ensure that treatment protocols or standing orders were in place but practiced as though they were rather than getting proper medical orders.

B. Ms. Paulsen, RN made no arrangements to provide health care coverage at the jail when she was not able to provide services. When she told the jail that she would not be in to work on Tuesday March 4, 2003 she knew that there were no provisions made to have another nurse work. When she came to work on Wednesday March 5, 2003 she knew that several inmates had had symptoms of influenza the day before. When she saw Mr. Carranza-Reyes she did not ask him how long he had had symptoms and if he had tried to request medical attention earlier. If she had, she would have known he had already been ill for two days and may also have identified the problem that detainees (especially those who did not understand English) were having trouble accessing medical attention.

C. When Ms. Paulsen, RN saw Mr. Carranza-Reyes on Friday March 7, 2003, she found that his symptoms were not better and that he was now vomiting. She did not consider his likely need for medical observation and care through the weekend. If she had called Dr. Bachman or another prescribing provider on Friday, it is more likely that Mr. Carranza-Reyes would have been treated with appropriate antibiotics, hydrated and provided supportive medical convalescence. Ms. Paulsen, RN had no authority and was not qualified independently to order treatment as she did.

D. Ms. Paulsen, RN did not initiate or take action to provide medical attention for Mr. Carranza-Reyes when on Saturday morning at 3 am it became clear that his condition was more urgent. Her failure to assess Mr. Carranza-Reyes' condition thoroughly, order that he be transported, call a physician to obtain interim orders and provide nursing care to him until he was transported on Saturday March 8, 2006 delayed initiation of definitive care almost 10 hours.

Catherine M. Knox
One Lincoln Center, Suite 580
10300 SW Greenburg Road.
Portland, OR 97223
503/449-0180
catherinemknox@comcast.net

Report
**Moises Carranza-Reyes v. Park County, et al**
U.S. District Court
Civil Action No. 2005-WM-377 (BNB)
Page 6 of 7

## Data and Other Information Considered:

The witness reviewed and considered the following data and other information in forming opinions about this case:

- Second Amended Complaint and Jury Demand
- January 18, 2006 deposition of Vicki Ann Paulsen, RN with exhibits 20-26 attached used in her deposition
- Outline by William Trine of the deposition of Vicki Ann Paulsen, RN with reference to deposition pages
- Outline by William Trine of the deposition of Moises Carranza-Reyes taken 1/16/06 – 1/17/06
- Outline by William Trine of the deposition of Monte Gore taken 10/31/05 and 1/20/06
- Outline by William Trine of the deposition of Steven Crawford taken 11/2/05
- Outline by William Trine of the deposition of Daniel Muldoon taken 11/1/05
- Deposition Exhibit # 4 Park County Jail Policies and Procedures
- Deposition Exhibit # 30 The Consulate General of Mexico, Denver, Colorado dated March 10, 2003
- Statement of Edward Allen dated 10/28/05
- Interim Summary Records from Denver Health Medical Center dated 4/1/03 through 4/30/03 and 3/8/03 through 3/31/03, Bate stamped 1223 and 1224
- Photos of Moises Carranza-Reyes on pages numbered 1 – 22
- Medical Records Index for Moises Carranza-Reyes for the Denver Health Center, pages 1-45
- Records for Moises Carranza-Reyes from Denver Health Medical Center, Bate stamped 200-202, 1232-1236, 638-643
- Records for Moises Carranza-Reyes from Summit Medical Center sent by the law office of Joseph Archuleta dated 6/10/03
- Records Summit County ambulance service transporting Moises Carranza-Reyes on 3/8/03
- Code of Colorado Regulations 1010 – 1013 Sanitary Standards for Penal Institutions, from Westlaw pages 1-14
- Colorado Nurse Practice Act, Colorado Revised Statutes, Title 12, Professions and Occupations, Article 38 Nurses, Effective July 1, 2004, pages 1-24
- Manual of the Association for Professionals in Infection Control and Epidemiology, 2005 pages 70-2 through 70-5
- Records provided by the Park County Sheriff concerning Moises Carranza-Reyes total 32 pages

Catherine M. Knox
One Lincoln Center, Suite 380
10300 SW Greenburg Road.
Portland, OR 97223
503/449-0186
catherinemknox@comcast.net

## Exhibits Used to Summarize or Support Opinions:

No exhibits will be used to summarize or support the opinions of the witness.

## Qualifications of the Witness:

The qualifications of the witness as an expert in correctional health care are described in the enclosed resume. Publications authored by the witness within the preceding ten years are described in the enclosed resume.

## Compensation to be Paid Witness:

The witness is compensated at a rate of $100.00 an hour for review of material, opinion and advice and report writing and $125.00 an hour for deposition and testimony. If travel is necessary, witness is paid $80.00 an hour portal to portal plus actual expenses.

## Other Cases the Witness has Testified as an Expert at Trial or by Deposition Within the Preceding Four Years:

The witness has not testified or been deposed as an expert witness on any other cases the last four years.

This report is submitted by:

Catherine M. Knox RN, MN, CCHP

16 May 2006
Date