Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
McCoy v. Whirlpool Corp.D.Kan.,2003.Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
James B. MCCOY, et al., Plaintiffs,
v.
WHIRLPOOL CORP., et al., Defendants.
**Nos. Civ.A. 02-2064-KHV, Civ.A. 02-2229-KHV, Civ.A. 02-2230-KHV, Civ.A. 02-2231-KHV.**

April 21, 2003.

*MEMORANDUM AND ORDER*
VRATIL, J.
*\*1* This matter comes before the Court on *Defendants' Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Kuticka* (Doc. # 113) and *Defendants' Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Martin* (Doc. # 111), both filed March 10, 2003. For reasons stated below, defendants' motion is overruled as to Kuticka and overruled in part as to Martin.

In various capacities, James B. and Lorray McCoy have filed separate suits for property damage arising out of a fire at their home on February 16, 2000. Plaintiffs allege that the fire originated in a Kenmore "New Generation" dishwasher which they purchased from Sears, Roebuck and Company (" Sears") on August 26, 1996. Plaintiffs claim that Sears and Whirlpool Corporation ("Whirlpool"), which manufactured the dishwasher, are liable under various theories of product liability. Defendants deny that the fire originated in the dishwasher and argue that it was not defective or unreasonably dangerous. Plaintiffs have designated various experts to testify about the cause and origin of the fire. Defendants ask the Court to exclude reports and testimony by two of them, James L. Kuticka and James L. Martin.

*Analysis*

I. Defendants' Motion To Exclude Kuticka's Testimony

Plaintiffs have designated James L. Kuticka to provide testimony concerning the cause and origin of the McCoy fire. Kuticka prepared an expert report dated November 19, 2002, which eliminated external sources of combustion and concluded that " the heat source which created such damage [to the McCoy dishwasher] had to be internal to the dishwasher and originated in the area of the control panel at or near the location of the door switches and timer assembly." *Fourth Report (Investigative Follow-Up) (November 19, 2002)* at 6, Exhibit 1 in *Defendants' Reply Memorandum In Support Of Their Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Kuticka* (Doc. # 132) filed April 7, 2003.[FN1] Defendants ask the Court to exclude this opinion because under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), an expert cannot merely rely on an untested assumption that "there is no other explanation." [FN2] Defendants also argue that Kuticka is unqualified to offer an opinion about where the fire originated because he "does not even know the specific components located within that area." [FN3] *Defendants' Memorandum In Support Of Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Kuticka* (Doc. # 114) filed March 10, 2003, at 9.

> FN1. In their supporting memorandum, defendants incorrectly attribute this opinion to Kuticka's *First Report (Origin and Cause) (April 19, 2000),* and attach a copy of that report to their brief. The relevant report is attached to their reply brief.

> FN2. Defendants also ask the Court to prevent Kuticka from testifying to certain

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

matters contained in his deposition testimony on September 26, 2002 and January 29, 2003. More specifically, defendants seek to preclude testimony that the McCoy fire would not have occurred if the dishwasher had employed a latch bolt made of more fire resistant materials, as required by Canadian standards. This aspect of defendants' motion is moot because plaintiffs do not intend to offer such testimony at trial.

FN3. This criticism is puzzling. Kuticka does not profess to state what specific component caused the fire, so it would seem that he should not fairly be criticized for refusing to engage in speculation on this point.

The Court must first determine whether Kuticka is qualified by "knowledge, skill, experience, training, or education" to render opinions regarding the cause and origin of the McCoy fire. See Fed.R.Evid. 702. Kuticka has been a fire investigator since 1975, conducting fire origin and cause investigations in Missouri, Arkansas, Kansas, Oklahoma, Nebraska and Iowa. He has completed more than 800 hours of fire investigation education, been certified as a fire investigator by the International Association of Arson Investigators and serves as a Fire Service Instructor. Kuticka has investigated approximately 4,000 fires. Kuticka professes to be a fire investigator, not an expert in dishwasher component parts. The fact that he may not know what specific components were located in the area where the fire started-*e.g.*, resistors, terminations, relays, switches, etc.-does not make him unqualified to testify where the fire started or whether its source was inside or outside the dishwasher.

*2 Defendants cite *Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir.1999), for the proposition that as a matter of law, Kuticka cannot testify to his untested assumption that aside from internal combustion, "there is no other explanation" for the fire. This proposition can be easily rejected. First, *Weisgram* stands for no such rule.[FN4] Second, the parties have agreed that the National Fire Protection Association ("NFPA") has published NFPA 921, its "Guide for Fire and Explosion Investigations" -which represents the national standard with regard to appropriate methodology for investigation by fire science experts. Plaintiffs have demonstrated that Kuticka's testimony is generally consistent with the methodology established in NFPA 921 which recognizes a proper role for deductive reasoning in its methodology.

FN4. In *Weisgram*, the Eighth Circuit Court of Appeals rejected testimony by Dan Freeman, a fire captain who arrived with the first fire truck on the scene of fire at decedent's home. Even though Freeman was "not an electrical expert" and did not know what happened with the heater at decedent's home, the district court allowed him to testify that the heater malfunctioned and that after the malfunction,
I believe that we ignited nearby combustibles, namely, the, possibly the throw rug or area rug that was on that vinyl floor was very possibly pushed up against that heater.... That up against the heater would contain the heat, would trap it, would cause it to build up to the point where you could have had ignition of that cellulose based product [the jute backing on the rug].... In addition to that, the heat build up would start to cause other things to start what we call off gassing. The vinyl floor is going to warm up, the vinyl flooring is stuck to the floor with a glue, a plastic. There are several types on the market but one of them there is an asphalt base type. There is another type ... ones I have looked into have got products in them that will off gas and ignite such as a naphtha, ethylene glycol.... It's a solvent. Basically it's an accelerant. It will off gas and it will cause vapors to disperse. It will loosen up. Those vapors are going to try to find a way to escape from underneath that vinyl. Normally that would be at the edge of the wall where the vinyl floor meets the wall. I believe the ignition temperature of naphtha is probably somewhere in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                         Page 3
Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

neighborhood of 400, 450 degrees. The flash point is considerably lower than that.... [B]y flash point I mean it will give off enough vapors to ignite briefly if there is a heat source to ignite.

169 F.3d at 518-19. The Eighth Circuit held what while Freeman clearly was qualified as a cause and origin expert, he was not qualified to offer an opinion that the heater had malfunctioned, and that his testimony regarding the events that followed the surmised malfunction amounted to nothing more than blatant speculation. *Id.* at 519.

The Eighth Circuit also rejected the testimony of a master electrician who purported to testify as a "fire investigator" and "technical forensic expert" that a small rug had been over the heater, that heat was trapped by the rug and focused down on to the linoleum flooring, that volatile vapors from adhesive in the flooring went into the heater, and that the vapors ignited to cause a fire. *Id.* The this expert's theory was that "[t]here is no other explanation. Everything else is ruled out ... by Captain Freeman." *Id.* Having rejected Freeman's explanation as "blatant speculation," the Eighth Circuit logically concluded that the testimony of the master electrician-which was based solely on Captain Freeman's thought process-was itself "rank speculation." *Id.* at 520. Nothing in the *Weisgram* holding suggests that deductive reasoning is inherently unreliable and invalid under *Daubert*.

Kuticka's testimony will be helpful to the jury, which can easily sort out any perceived inadequacies at the time of trial. For reasons explained in the Court's *Memorandum And Order* of April 16, 2003 (Doc. # 139), with regard to plaintiffs' motions to exclude the testimony of Richard Dyer and Roger Owens, the Court finds that a further hearing on defendants' motion would be an imprudent use of judicial resources and unnecessarily increase the parties' litigation costs. The hearing on this motion, previously set for April 29, 2003, is hereby cancelled and defendants' motion is overruled.

II. Defendants' Motion To Exclude Martin's Testimony

A. Report Dated July 3, 2001

Kuticka and Michael Schulz, another cause and origin expert for plaintiffs, will testify that the McCoy fire originated within the upper door of the dishwasher at the location of the door latch switch assembly, and that the cause of the fire was electrical heat energy. Based on that testimony, plaintiffs have designated James L. Martin, an electrical engineer, to testify that the thermal energy which caused the McCoy fire originated at one or more terminals of two door switches which were mechanically linked and interlocked with the dishwasher door latching mechanism. *Report Of James L. Martin (July 3, 2001* ) at 2, Exhibit 2 in *Defendants Memorandum In Support Of Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Martin* ("*Defendants' Memo To Exclude Martin*") (Doc. # 112) filed March 10, 2003. Defendants do not claim that Martin failed to consider relevant data, that he misapplied any relevant methodology which is generally accepted within the electrical engineering community, or that any particular tests would have exposed defects in his analysis. Instead, defendants ask the Court to exclude Martin's testimony because (1) he has not identified which of ten potential resistive components caused the fire; (2) he has not personally conducted testing to support his opinion; and (3) his conclusion that the fire started in the upper section of the dishwasher is contradicted by that of Dr. Byron W. Sherman, another electrical expert for plaintiff, and Martin relies on damage to the dishwasher itself as a basis for his conclusion. *Defendants' Memo To Exclude Martin* (Doc. # 112) at 6, 7, 9, 10.

*3 Plaintiffs respond that Martin's testimony is based on relevant facts and data (including drawings, diagrams, specifications and data regarding the dishwasher model at issue; inspection of the remains of the McCoy dishwasher and dishwashers from four other fire incidents; reports,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

data, photographs and depositions regarding the McCoy fire; and documentation from Whirlpool regarding the design, manufacture, testing and analysis of the electrical circuitry of "New Generation" dishwashers). *Memorandum In Opposition To Defendants' Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Martin ("Plaintiffs' Opposition")* (Doc. # 126) filed March 24, 2003, at 22-23. Plaintiffs also argue that Martin's opinions are derived from Ohm's Law, a well recognized and basic principle for understanding the relationship between electricity and fire, see *McHenry v. Icon Health & Fitness, Inc.*, 2001 WL 487949 (D.Kan.2001), and that Martin is not obligated to test his opinions. *Plaintiffs' Opposition* (Doc. # 126) at 25-26.

While Martin's qualifications are not in dispute, the Court notes that he holds a bachelor of science degree in electrical engineering and has continuously practiced as a licensed professional electrical engineer since August of 1968. In 1977 he formed Martin Engineering, which specializes in consulting engineering and forensic engineering. On behalf of Martin Engineering, Martin has provided electrical engineering consulting to a wide variety of electrical construction projects and has completed more than 650 forensic engineering assignments. Of those 650 assignments, about 400 of them involved fires. Of the residential fires, seven involved dishwashers and five of the seven were Whirlpool dishwashers. Martin is qualified to render electrical engineering testimony related to the source of electrical heat energy which caused the McCoy fire.

Defendants' arguments on these points are without merit. The answer to defendants' criticism that Martin has not identified which of ten potential resistive components caused the fire is: *so what?* Defendants' point might be well taken if we were dealing with cross-examination or a motion for summary judgment, but the Court is at a loss to see how it implicates *Daubert.*

As to defendants' second point, independent testing is not the *sine qua non* of admissibility under *Daubert.* Rule 702, Fed.R.Evid., provides that an expert may testify as to scientific, technical or other specialized knowledge "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case ." In determining whether an opinion or particular scientific theory is " reliable," the Court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community. *Daubert,* 509 U.S. at 593-94. The Supreme Court has emphasized, however, that while a trial court *may* consider one or more of these factors, the test of reliability is flexible and *Daubert's* list of factors does **not necessarily** or exclusively apply to all experts or every **case.** *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999). Therefore, while a trial court should consider the specific factors identified in *Daubert where they are reasonable measures of the reliability of expert testimony, id.,* the law does **not** require an expert to back his or her opinion with independent tests that unequivocally support his or her conclusions. See *Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929 (8th Cir.2001) (no requirement that expert always cite published studies on general causation in order to reliably conclude that particular object caused particular illness) (quoting *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 155 (3d Cir.1999)); see also *Fed. Deposit Ins. Corp. v. Suna Assocs., Inc.,* 80 F.3d 681, 687 (2d Cir.1996) (no abuse of discretion in admitting expert testimony based on a hybrid of two widely used methods); *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995) (admitting medical expert testimony despite fact that expert could not point to single piece of medical literature that specifically supported opinion). Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of independent testing may "go to the weight, not the admissibility" of the testimony. See *Zuchowicz v. United States,* 140 F.3d 381, 387 (2d Cir.1998). A contrary requirement would effectively resurrect a *Frye*-like bright-line standard, not by requiring that a methodology be " generally accepted," but by excluding expert testimony not backed by independent testing. *Frye*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 5

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

*v. United States*, 293 F. 1013 (D.C.Cir.1923). Such a bright-line requirement would be at odds with the liberal admissibility standards of the federal rules and the express teachings of *Daubert*. See *McCullock*, 61 F.3d at 1042, 1044.

**\*4** Defendants here have cited no evidence that Martin's methodology is incapable of testing, or that testing is a necessary or appropriate measure of the reliability of his opinions in the field of electrical engineering. They have not suggested what tests he should have prepared or what material evidence those tests would have yielded. The naked criticism that Martin failed to conduct independent testing is not fatal to the admissibility of his testimony under *Daubert*.

Finally, defendants have not sufficiently called into question the reliability of Martin's testimony that the fire started in the upper section of the dishwasher. Defendants have not articulated any respect in which Martin's test is inconsistent with NFPA 921 or other established standards, and the purported disagreement between Martin and Sherman is a matter which goes to the weight-not the admissibility-of his testimony.

B. Report Dated August 19, 2002

Martin proposes to identify three possible causes of excessive resistance heating at the location of the dishwasher door latch assembly: (1) the switch was not appropriate; (2) the connection of conductor terminal to switch was not appropriate; or (3) the connection between the terminal and the conductor was not appropriate. *Report of James L. Martin (August 19, 2002 )* at 3, Exhibit 3 in *Defendants' Memo To Exclude Martin* (Doc. # 112). Defendants apparently seek to prevent Martin from testifying that excessive resistance heating possibly arose from the switch or the connection between the conductor terminal and the switch, or from refuting their claim that black door latch switches with white plungers, which Whirlpool utilized after April of 1992, added safety to the dishwasher electrical system because they melted at high temperatures and allowed the switch contacts to separate.[FN5] Defendants also seek to prevent Martin from testifying that Whirlpool's premium model dishwashers (such as the one in the McCoy home) have an operating current demand which exceeds the safe operating capabilities of the door switch assembly. *Report Of James L. Martin (August 19, 2002)* at 5. On a more general level, defendants argue that Martin's methodology is unreliable because it is novel and unsupported by any article, text, study, scientific literature or data, and that it has not been subject to peer review. Defendants also seek to exclude Martin's opinions on the causes of other fires, arguing that those opinions employ the same untested and unreliable theories as the methodology which he employed with regard to the McCoy fire.

> FN5. Defendants also address testimony about the adequacy and design of Whirlpool retrofit kits, but plaintiffs do not intend to offer such evidence at trial and any motion to exclude such testimony is therefore moot. Defendants seek to exclude Martin's testimony about supposedly "fail safe" black door latch switches. Plaintiffs agree that testimony about arcing in black door latch switches is not relevant and will not be offered at trial. Plaintiffs do seek to offer Martin's testimony about the inadequacy of black door latch switches as thermal fuses, and the Court addresses that issue above.

1. Inappropriate Switch

As to Martin's opinion that excessive resistance heating possibly occurred because the switch was not appropriate, defendants argue-based on Martin's deposition testimony-that his opinion is based solely on a letter to Ernst Grunewald, a Whirlpool engineer, from Michael L. Johnson, on April 8, 1994, and that it is educated conjecture at best and rank speculation at worst. *Defendants' Memo To Exclude Martin* (Doc. # 112) at 13. Plaintiffs do not defend Martin's deposition testimony, except to say that it is "primarily commentary on documents reviewed by Mr. Martin concerning defendant Whirlpool's investigation of dishwasher fires"-and not his "ultimate reliable electrical engineering

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 6
Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

opinions." *Plaintiffs' Opposition* (Doc. # 126) at 35.

**\*5** In fact, nothing in Martin's expert report of August 19, 2002, purports to state the basis or reason for any opinion that excessive resistance heating occurred in the McCoy dishwasher because the switch was not appropriate. Martin suggests that "the premium model dishwashers are presenting [an operating current] demand which exceeds the safe operating capabilities of the door switch assembly. [FN6] *Report Of James L. Martin (August 19, 2002)* at 5. In the end, however, he concludes that the "most probable root cause" of the fire was "the defective design of the electrical circuitry *leading to* the door switch assembly and control panel" (emphasis added). *Id.*

> FN6. Rule 26(a)(2)(B), Fed.R.Civ.P., provides that an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor ... [and] the data or other information considered by the witness in forming the opinions."

The Court sustains defendants' motion to exclude testimony that an inappropriate switch possibly caused excessive resistance heating in the McCoy dishwasher. First, to the extent that such testimony is based on the letter to Grunewald, it is speculative. Second, Martin at most suggests that an inappropriate switch was a "possible" cause for the fire and-given his conclusion that the "most probable root cause" was the electrical circuitry *leading to* the door switch assembly and control panel-his opinion about the switch itself is irrelevant and would not be helpful to the jury.

### 2. Inappropriate Connection Between The Switch And The Conductor Terminal

As to Martin's opinion that excessive resistance heating possibly occurred because of an inappropriate connection between the switch and the conductor terminal, defendants argue-again from Martin's deposition testimony-that his opinions derive solely from comments by Dr. Richard C. Seib, Whirlpool's Director of Product Safety, in a letter to the Consumer Product Safety Commission dated February 25, 1994. *Deposition Of James L. Martin* at 158, Exhibit 16 in *Defendants' Memo To Exclude Martin* (Doc. # 112). At his deposition, Martin admitted that he had no data to support his interpretation of Seib's letter, and plaintiffs again do not seek to defend Martin's testimony except to say that it is "primarily commentary on documents reviewed by Mr. Martin concerning defendant Whirlpool's investigation of dishwasher fires"-and not his "ultimate reliable electrical engineering opinions." *Plaintiffs' Opposition* (Doc. # 126) at 35. For reasons stated above, with respect to the issue of the allegedly inappropriate switch, the Court finds that Martin's testimony on this matter should be excluded.

### 3. Black Door Latch Switches With White Plungers

Martin disagrees with Whirlpool's contention that black door latch switches with white plungers, which Whirlpool utilized after April of 1992, added safety to the dishwasher electrical system because they melt at high temperatures and allow the switch contacts to separate. *Deposition Of James L. Martin* at 250, Exhibit 19 in *Defendants' Memo To Exclude Martin* (Doc. # 112). Defendants argue-again from his deposition testimony-that Martin has no test results or scientific data which support his conclusion that even if the switch contacts separate, electrical voltage is present at the incoming switch terminal and may cause a fire by arcing. *Defendants' Memo To Exclude Martin* (Doc. # 112) at 18. Defendants argue that Martin's opinion also contradicts his testimony that resistance heating cannot occur without current flow. Plaintiffs argue that Martin's opinions are based on Whirlpool's own testing and service records, which reveal that black door latch switches do not always fail in the safe "off" position when they are overheated; instead, they may fail in the "closed" position, allowing current to continue to flow. *Plaintiffs' Opposition* (Doc. # 126) at 35.

**\*6** Martin's report states as follows:
... Whirlpool admits overheating can be experienced when black door switches are used. Even if the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

switch contacts do separate, electrical voltage is still present at the incoming terminal of the switch. If the phase conductor insulation also melts, as it possibly will from the heat which melts the door switch, an electrical fault can be established where the conductor insulation is violated. If such a fault does occur and sufficient impedance is presented to the dishwasher's electrical supply circuit such that the circuit protection device (fuse or circuit breaker) does not react, additional thermal energy will be produced at the location of the fault. This scenario serves to relocate the source of thermal production from the conductor terminations to a point upstream of these terminations, not a good situation. This concept also requires the door switch to function as a thermal fuse, a function for which it is not designed nor [sic] tested to perform.

*Report of James L. Martin (August 19, 2002)* at 4. Defendants do not argue that this conclusion is incorrect-merely that it is untested. Nor do they suggest any manner in which Martin's reasoning or methodology is inconsistent with generally accepted methodology in the field of electrical engineering. On this record, the Court is not convinced that Martin's opinions should be barred for lack of independent testing.

### 4. Excess Current

As to Martin's testimony that premium model dishwashers are presenting an operating current demand which exceeds the safe operating capabilities of the door switch assembly, defendants complain that Martin's testimony is based on Dr. Seib's letter to the Consumer Product Safety Commission on February 25, 1994, that his methodology is untested and "anything but sound," and that his opinion is "completely contrary to generally accepted industry standards set by Underwriters Laboratories." *Defendants' Memo To Exclude Martin* (Doc. # 112) at 20-21. Whirlpool offers to prove at an evidentiary hearing that upon extensive testing, the interlock switches in the "New Generation" dishwashers, including the McCoy dishwasher, met or exceeded all applicable UL standards. *Id.* at 22. Plaintiffs respond that Martin's methodology-which basically consists of Ohm's law-is identical to that employed by Whirlpool's Dr. Grunewald, and that it comports with sound engineering methodology. *Plaintiffs' Opposition* (Doc. # 126) at 36-37.

Defendants disagree with Martin's conclusion but they have not sufficiently articulated a problem with his methodology, and the fact that others may disagree with his conclusions is not sufficient to sustain a challenge under *Daubert*. *Daubert* does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology. *Kannakeril v. Terminix Inter'l, Inc.*, 128 F.3d 802, 806 (3d Cir.1997). A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible. "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir.1994); *see Daubert*, 509 U.S. at 590. This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony. As the Supreme Court has explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *accord* Weinstein, §§ 702.05[3] at 702-76.

### 5. Methodology

*7 As noted, defendants argue that Martin's methodology is unreliable because it is novel and unsupported by any article, text, study, scientific literature or data, and has not been subject to peer review. *Defendants' Memo To Exclude Martin* (Doc. # 112) at 23. Plaintiffs insist that they have met their burden of proof that Martin's testimony is based on reliable principles and methods which have been reliably applied to the facts of the case. *Plaintiffs' Opposition* (Doc. # 126) at 37. Plaintiffs also argue that while peer review may be a pertinent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 8

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

factor, the "lack of peer review will rarely, if ever, be the single dispositive factor that determines reliability of expert testimony" and that to exclude evidence on this ground, the Court must find a connection between lack of publication and reliability. *Smith v. Ford*, 215 F.3d 713, 720 (7th Cir.2000).

Defendants' argument is well founded in *Daubert* rhetoric but **not** in the facts which appear in the record. In *Daubert*, the Supreme Court emphasized that the gatekeeping inquiry must be "tied to the facts" of a particular **case**. 509 U.S. at 591. With the two exceptions noted above, defendants have **not** demonstrated that Martin's methodology lacks support in the electrical engineering community, and the Court has no reason to believe that his methodology is unreliable. "When the Supreme Court in *Daubert* told judges to distinguish between real and courtroom science, it was **not** with the object of discovering the essence of 'science,' if there is such an essence. The object ... was to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir.1996). The Court has no reason to suspect that Martin's testimony fails this test. The Supreme Court has made clear that the trial court has the discretionary authority to avoid unnecessary "reliability" proceedings in **ordinary cases** where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex **cases** where cause for questioning the expert's reliability arises. *Kuhmo Tire Co.*, 526 U.S. at 152. In seeking to exclude testimony under *Daubert*, defendants must "[call] sufficiently into question" the principles, methods, or applications which Martin employed. *Daubert*, 509 U.S. at 592. Defendants have **not** done so in this respect and their motion is overruled.

C. Opinions Regarding Other Fires

In his reports and deposition testimony, Martin renders opinions about what caused fires other than the McCoy fire. As noted, defendants seek to exclude Martin's opinions on the causes of other fires because those opinions employ the same untested and unreliable theories as the methodology which he employed with regard to the McCoy fire. *Defendants' Memo To Exclude Martin* (Doc. # 112) at 26. In addition, defendants complain that even though he is not a cause and origin expert, Martin relied in part on burn patterns in forming his opinions. *Id.*

*8 Defendants' analysis on this issue is abbreviated and unpersuasive. For reasons previously stated with regard to the McCoy fire, the Court finds that defendants' complaints are **not** cognizable under *Daubert* and go to the weight rather than the admissibility of Martin's testimony.

As with the four *Daubert* motions involving other expert witnesses, the Court is satisfied that an evidentiary hearing on the motion to exclude Martin's testimony would serve no useful purpose. The Court possesses latitude in deciding whether or when **special** briefing or other proceedings are needed to investigate reliability. *Kumho Tire Co.*, 526 U.S. at 152. The Court may satisfy its gatekeeper role when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion-so long as it has sufficient evidence to perform "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Martin's methodology does not involve new scientific theory or new and novel testing methodologies. To the extent that different investigators might utilize the same methodologies and arrive at different conclusions, the matter involves the credibility of witnesses and the weighing of the evidence-both of which are well suited for resolution by the jury. At trial, the evidence may unfold in such a way as to reveal a genuine *Daubert* issue. If so, the Court will address it at that time. At trial, plaintiffs obviously must lay all **necessary** foundation for Martin's opinions. At this point it appears that defendants' objections go more to weight than to admissibility, however, and that the **showing** required to determine admissibility under *Daubert* is the precise **showing** that the jury will need to evaluate the credibility and weight to be given Martin's testimony. Because the **necessary** foundation for admission must be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

presented to the jury, a pre-trial *Daubert* hearing would require duplication of effort and needless expense. Accordingly, the hearing previously set for April 29, 2003, is hereby cancelled.

IT IS THEREFORE ORDERED that *Defendants' Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Kuticka* (Doc. # 113), filed March 10, 2003, be and hereby is OVERRULED.

IT IS HEREBY FURTHER ORDERED that *Defendants' Motion To Exclude Testimony Of Plaintiffs' Expert, James L. Martin* (Doc. # 111) filed March 10, 2003, be and hereby is SUSTAINED as to Martin's opinion that excessive resistance heating possibly occurred because the switch was not appropriate and Martin's opinion that excessive resistance heating possibly occurred because of an inappropriate connection between the switch and the conductor terminal. Defendants' motion is otherwise OVERRULED.

IT IS HEREBYFURTHER ORDERED that ALL dispositive motions be filed no later than May 1, 2003. The Court's prior order (Doc. # 140) is hereby vacated to the extent that it set two separate deadlines for dispositive motions. All dispositive motions shall be filed no later than May 1, 2003.

D.Kan.,2003.
McCoy v. Whirlpool Corp.
Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 360653 (Trial Transcript) Transcript Ordered By: Mr. Owens (Jan. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 360644 (Trial Transcript) Trial Transcirpt (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 360647 (Trial Transcript) Transcript Ordered By: Mr. Johnson (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 360648 (Trial Transcript) Transcript Ordered By: Mr. Johnson (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 360649 (Trial Transcript) Trial Transcript (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 360650 (Trial Transcript) Transcript Ordered By: Mr. Johnson (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 360651 (Trial Transcript) Trial Transcript (Jan. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 360652 (Trial Transcript) Trial Transcript (Jan. 5, 2006) Original Image of this Document (PDF)
• 2005 WL 2369806 (Trial Motion, Memorandum and Affidavit) Defendant Whirlpool Corporation's Memorandum In Support of Motions for Judgment as a Matter of Law Made at the Close of Plaintiffs' Case-in-Chief and at the Close of all of the Evidence and in Support of Defendant's Motion for Judgment Notwithstandin g the Verdict or, in the Alternative, for a New Trial (Feb. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 2369705 (Verdict, Agreement and Settlement) Verdict (Feb. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 4154864 () Jury Trial - Testimony of James L. Martin (Feb. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 2369807 (Trial Motion, Memorandum and Affidavit) Trial Brief (Jan. 20, 2005) Original Image of this Document (PDF)
• 2005 WL 2369808 (Trial Motion, Memorandum and Affidavit) Defendants' Trial Brief (Jan. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 4154863 () (Partial Testimony) (2005) Original Image of this Document (PDF)
• 2005 WL 4154865 () (Partial Testimony) (2005)
• 2005 WL 4154866 () (Partial Testimony) (2005)
• 2004 WL 3541465 (Verdict, Agreement and Settlement) Plaintiffs' Witness List (Sep. 17, 2004) Original Image of this Document (PDF)
• 2004 WL 3744518 () Report of RICHARD A. DYER (Jul. 31, 2004) Original Image of this Document (PDF)
• 2004 WL 4072395 () Affidavit of Michael Gregory in Support of Defendant's Response to Plaintiffs' Motion in Limine to Exclude the Testimony of Defendant's Expert Michael F. Gregory and Motion in Limine to Exclude all Evidence Relating to the ""After Fire" Position of the McCoy Dishwasher Timer Shaft (Mar. 25,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 10

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

2004) Original Image of this Document (PDF)
• 2003 WL 24295352 () Affidavit of RICHARD C. SEIB (Dec. 6, 2003) Original Image of this Document (PDF)
• 2003 WL 24891872 () Affidavit of Ernst Grunewald in Support of Defendants' Motion for Summary Judgment (May 1, 2003) Original Image of this Document (PDF)
• 2003 WL 24891871 () Affidavit of Ernst Grunewald (Mar. 31, 2003) Original Image of this Document (PDF)
• 2003 WL 24303422 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Exclude Testimony of Plaintiffs' Expert, James L. Martin (Mar. 10, 2003) Original Image of this Document (PDF)
• 2003 WL 24303423 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Daubert Motion to Exclude Opinion Testimony of Defendants' Expert Richard Dyer (Mar. 10, 2003) Original Image of this Document (PDF)
• 2003 WL 24891873 () (Partial Testimony) (Feb. 6, 2003) Original Image of this Document (PDF)
• 2003 WL 24891884 () (Partial Testimony) (Feb. 6, 2003) Original Image of this Document (PDF)
• 2003 WL 24891866 () (Partial Testimony) (Jan. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 24891867 () (Partial Testimony) (Jan. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 24891883 () Videotaped Deposition of James L. Kuticka (Jan. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 24295351 () Affidavit of Ernst Grunewald (Jan. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 24891869 () Affidavit of Ernst Grunewald (Jan. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 24891863 () (Report or Affidavit of James L. Kuticka) (Jan. 14, 2003)
• 2003 WL 24891885 () (Partial Testimony) (Jan. 6, 2003)
• 2003 WL 24891886 () (Partial Testimony) (Jan. 6, 2003)
• 2003 WL 24891870 () Rebuttal Report By Roger L. Owens, P.E. Owens Forensic Engineering (Jan. 3, 2003) Original Image of this Document (PDF)
• 2003 WL 24891862 () Supplemental Report of Richard A. Dyer (Jan. 2, 2003) Original Image of this Document (PDF)
• 2003 WL 24891882 () (Deposition of James L. Kuticka) (2003) Original Image of this Document (PDF)
• 2002 WL 33821264 () Rebuttal Report of Michael F. Gregory Whirloop Corporation (Dec. 18, 2002) Original Image of this Document (PDF)
• 2002 WL 33004058 () (Deposition) (Dec. 10, 2002) Original Image of this Document (PDF)
• 2002 WL 33004060 () (Partial Testimony of Roger L. Owens, P.E.) (Nov. 21, 2002) Original Image of this Document (PDF)
• 2002 WL 33821256 () (Report or Affidavit of James L. Kuticka) (Nov. 19, 2002)
• 2002 WL 33821268 () (Partial Testimony) (Oct. 11, 2002) Original Image of this Document (PDF)
• 2002 WL 33821262 () (Report or Affidavit of Michael F. Gregory) (Oct. 10, 2002)
• 2002 WL 33821259 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821260 () (Partial Testimony) (Oct. 2, 2002)
• 2002 WL 33821266 () (Partial Testimony) (Oct. 2, 2002)
• 2002 WL 33821272 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821275 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821281 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821287 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821295 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821299 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821300 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821301 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821303 () (Partial Testimony) (Oct. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 33821258 () (Partial Testimony) (Oct. 1, 2002)
• 2002 WL 33821271 () (Partial Testimony) (Oct. 1, 2002)
• 2002 WL 33821273 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 11

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2002 WL 33821283 () Volume I Deposition of James L. Martin (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33821288 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33821294 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33821296 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33821298 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33821302 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33821304 () (Partial Testimony) (Oct. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 33004062 () (Partial Testimony) (Sep. 26, 2002) Original Image of this Document (PDF)
• 2002 WL 33821257 () (Partial Testimony) (Sep. 26, 2002) Original Image of this Document (PDF)
• 2002 WL 33821267 () (Partial Testimony) (Sep. 26, 2002)
• 2002 WL 33821269 () (Partial Testimony) (Sep. 26, 2002) Original Image of this Document (PDF)
• 2002 WL 33821274 () (Partial Testimony) (Sep. 26, 2002) Original Image of this Document (PDF)
• 2002 WL 33821279 () (Partial Testimony) (Sep. 26, 2002) Original Image of this Document (PDF)
• 2002 WL 32997967 () [Report of James L. Martin, P.E.] (Aug. 19, 2002) Original Image of this Document (PDF)
• 2:02cv02229 (Docket) (May 17, 2002)
• 2:02cv02230 (Docket) (May 17, 2002)
• 2:02cv02231 (Docket) (May 17, 2002)
• 2002 WL 32897045 (Trial Pleading) Separate Answer of Defendant Whirlpool Corporation (Mar. 11, 2002) Original Image of this Document (PDF)
• 2002 WL 32897046 (Trial Pleading) Separate Answer of Defendant Sears, Roebuck and Co. (Mar. 11, 2002) Original Image of this Document (PDF)
• 2002 WL 32897047 (Trial Pleading) Complaint (Feb. 15, 2002) Original Image of this Document (PDF)
• 2002 WL 33004102 (Trial Pleading) Complaint (Feb. 15, 2002) Original Image of this Document (PDF)
• 2:02cv02064 (Docket) (Feb. 15, 2002)
• 2002 WL 33004061 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821255 () (Report or Affidavit of Marvin J. McDowell, B.S., C.F.E.I.) (2002)
• 2002 WL 33821263 () (Partial Testimony) (2002)
• 2002 WL 33821265 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821270 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821277 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821278 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821280 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821282 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821285 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821286 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821289 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821290 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821291 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821292 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821293 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821305 () (Partial Testimony) (2002) Original Image of this Document (PDF)
• 2002 WL 33821311 () (Transcript of James L. Kuticka) (2002) Original Image of this Document (PDF)
• 2002 WL 33821312 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821313 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821314 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821315 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821316 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821317 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821318 () (Transcript of James L. Kuticka) (2002) Original Image of this Document (PDF)
• 2002 WL 33821319 () (Transcript) (2002)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 12

Not Reported in F.Supp.2d, 2003 WL 1923016 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

Original Image of this Document (PDF)
• 2002 WL 33821320 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821321 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821322 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821323 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821324 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821325 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821326 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821327 () (Transcript) (2002) Original Image of this Document (PDF)
• 2002 WL 33821328 () Deposition of Wayne Paul Klug, taken on behalf of the Plaintiffs, pursuant to Notice to Take Deposition, beginning at 8:30 a.m. on the 10th day of December, 2002, at the Boulevard Inn, 521 Lake Boulevard, St. Joseph, Michigan, before Lora J. Appino, RPR-RMR, Certified Shorthand Reporter. (2002) Original Image of this Document (PDF)
• 2002 WL 33821329 () Jury Trial - Testimony of Ernst Grunewald (2002) Original Image of this Document (PDF)
• 2001 WL 35722958 () Report of Richard A. Dyer (Jul. 31, 2001) Original Image of this Document (PDF)
• 2001 WL 34895776 () (Report or Affidavit of Roger L. Owens, P.E.) (Jul. 29, 2001)
• 2001 WL 35722960 () (Report or Affidavit of Roger L. Owens, P.E.) (Jul. 29, 2001)
• 2001 WL 34895777 () (Report or Affidavit of Marvin J. McDowell, B.S.) (Jul. 25, 2001)
• 2001 WL 35722957 () Interim Report of Investigation and Analysis (Jul. 6, 2001) Original Image of this Document (PDF)
• 2001 WL 34895778 () (Report or Affidavit of James L. Martin, P.E.) (Jul. 3, 2001)
• 2000 WL 35356828 () (Report or Affidavit of James Kuticka) (Apr. 20, 2000)
• 2000 WL 35356827 () (Report or Affidavit of James Kuticka) (Apr. 19, 2000)
• 1999 WL 33997677 () Report of RICHARD A. DYER (Jun. 7, 1999) Original Image of this Document (PDF)
• 1999 WL 34678994 () Report of Richard A. Dyer (Jun. 7, 1999) Original Image of this Document (PDF)
• 1999 WL 34678996 () (Partial Testimony) (Apr. 22, 1999) Original Image of this Document (PDF)
• 1999 WL 34678995 () (Report or Affidavit) (Mar. 9, 1999) Original Image of this Document (PDF)
• 1994 WL 16198399 () (Report or Affidavit) (Apr. 8, 1994) Original Image of this Document (PDF)
• 1994 WL 16437965 () (Report or Affidavit) (Apr. 8, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.