Slip Copy

Slip Copy, 2006 WL 3533049 (D.Colo.)
(Cite as: Slip Copy)

Page 61

to residential Class properties to be approximately $210 million (in 1995 dollars). *Id.* at 252. Mr. Hunsperger considered this estimate, along with the estimates derived from the multiple regression and analogous case study approaches, in arriving at his final conclusion that concerns about Rocky Flats had diminished the value of residential properties in the Class Area in the amount of $169 million (in 1995 dollars). *Id.* at 259.

*57 Although Defendants seek to exclude all of Mr. Hunsperger's proffered testimony regarding the public opinion survey approach, they only challenge one aspect of that approach: Mr. Hunsperger's use of the responses to the housing scenario/discount questions in the Flynn/Slovic survey to generate an estimate of damages to residential properties in the Class Area. Defendants' arguments focus on the reliability of this approach to estimating diminution in property value.

With respect to the reliability question, Plaintiffs have presented evidence that real estate professionals can and do use the results of public opinion surveys in assessing the effect of environmental stigma on real property values. *See* Pls.' Cons.*Daubert* Resp. (Doc. 1399), Ex. 43 (Albert R. Wilson, *The Need for Standards in the Application of Statistical and Survey Research to Real Estate Valuation Practice* 13-15 (2002) (reporting that formal market surveys are " frequently undertaken to demonstrate quantitatively how market participants did or might behave in a transactional setting" and proposing standards based on the *Reference Guide on Survey Research* )); Hunsperger Report at 123-24, 138-40, 157-59 (identifying several cases in which survey research was used in assessing the effect of an environmental disamenity on property value). This evidence includes a decision by the New Mexico Supreme Court affirming admission of a public opinion survey that asked respondents to estimate the percentage value increase or decrease to real property caused by a local environmental disamenity, and holding that the plaintiffs' property expert could rely on the survey results in quantifying the diminution in value of the plaintiffs' property. *City of Santa Fe v. Komis,* 114 N.M. 659, 845 P.2d 753, 757, 758-59 (N.M.1992). The Tenth Circuit has also affirmed that public survey results may be admitted and relied upon by an expert to estimate damages. *See Harolds,* 82 F.3d at 1546. Thus, Mr. Hunsperger's use of a public opinion survey as part of his process for estimating damages for diminution in property value is in concept a reliable methodology under Rule 702.[FN72]

> FN72. Defendants contend Mr. Hunsperger is not qualified to use the survey results in any fashion because he is not an expert in designing, administering or interpreting raw data from public opinion surveys. Mr. Hunsperger, however, need not be qualified as an expert in these matters in order to incorporate the Flynn/Slovic survey results in his own work, particularly when I have already found that the survey is relevant, reliable and admissible in its own right. *See supra* Section I.C.2.a.

I previously found over Defendants' objection that the Flynn/Slovic survey was sufficiently reliable under survey research criteria to be admissible. *See supra* Section I.C.2.a. Defendants argue Mr. Hunsperger's use of the Flynn/Slovic survey results is nonetheless unreliable and inadmissible because Drs. Flynn and Slovic testified they did not design the survey specifically to estimate diminution in property value. I disagree. While Drs. Flynn and Slovic testified at deposition and in subsequent affidavits that they did not design their survey to measure the precise diminution in property value in the Class Area, they also testified that they knew when they designed the survey that Mr. Hunsperger intended to use its results in his valuation work, that Mr. Hunsperger consulted with Dr. Flynn about how he planned to use the survey results for this purpose, and that Drs. Flynn and Slovic agreed then and as of the date of their 1999 affidavits that Mr. Hunsperger's use of the survey results to estimate diminution in value was logical and reasonable. *See* Flynn Dep. at 106-08; Slovic Dep. at 139-41; Exs. to Pls.' Surreply re: Defs.' Mot. to Strike Pls.' Experts (Doc. 1116), Ex. 11 (Flynn Aff.), ¶¶ 6-9, & Ex. 12 (Slovic Aff.), ¶¶ 6-10. Therefore, far from undermining the reliability of Mr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3533049 (D.Colo.)
(Cite as: Slip Copy)

Hunsperger's use of the survey results, Drs. Flynn and Slovic's testimony tends to support it.

**\*58** Defendants also argue or at least strongly imply that Mr. Hunsperger's use of the housing scenario/discount portion of the survey is unreliable because Drs. Flynn and Slovic did not design their survey as a contingent valuation survey meeting the NOAA panel guidelines. The unstated assumption in this argument is that results from a public opinion survey, especially one that includes hypothetical questions, cannot be used by a real estate expert to estimate diminution in property value unless it is a contingent valuation survey meeting these requirements.

Defendants did not produce any evidence in connection with this *Daubert* motion supporting this assumption. The only evidence in the record that I am aware of that might support it is a statement by defense rebuttal expert Dr. d'Arge to the effect that any survey containing hypothetical valuation questions by definition is a contingent valuation survey that should be evaluated under the NOAA panel guidelines. *See* D'Arge Suppl. Report at 4.[FN73] Dr. d'Arge does not provide any support of this assertion, however, and, as noted earlier, there is nothing in the NOAA panel guidelines that suggests they apply in this situation. *See supra* Section I.C.2.a. I will not make a finding that contingent valuation methodology and standards apply here, and render Mr. Hunsperger's use of the Flynn/Slovic survey results unreliable and inadmissible, based solely on Dr. d'Arge's statement. The jury can hear from both Mr. Hunsperger and Dr. d'Arge regarding the alleged deficiencies in the survey design as relevant to quantification of damages and make its own determination.[FN74]

FN73. The excerpt of Dr. d'Arge's supplemental report submitted by Defendants in support of this *Daubert* motion did not include this statement. I instead reviewed the complete copy of Dr. d'Arge's supplemental report as submitted by Defendants in connection with their 1997 motion to strike Plaintiffs' experts.

*See* Defs.' Supplemental App. to Defs.' Reply Br. in Supp. of Mot. to Strike Pls.' Experts (Doc. 1092), Vol. III, Ex. 10. For reasons described earlier, I have not conducted a comprehensive review of the enormous record in this case to locate all materials that may be relevant to the issues decided here.

FN74. It is also important to reiterate that Mr. Hunsperger did not rely solely or even primarily on the results of Drs. Flynn and Slovic's housing and discount scenarios to estimate damages, but rather based his damages estimate on the totality of his analysis, which included analyses based on market sales data, that is the actual performance of individuals in the market, and other relevant information.

Defendants next argue again that Mr. Hunsperger's use of the housing scenario/discount survey responses was unreliable because the survey design included anchor bias and other design defects that render its "discount" results unreliable. As discussed earlier, the assertion of anchor bias is speculative and it and Defendants' other complaints of this nature go to the weight to be accorded to the survey results and testimony based on them. *See supra* Section I.C.2.a.

Defendants also argue that, even if Mr. Hunsperger could in principle utilize the Flynn/Slovic survey results in estimating damages, his calculation of the estimated diminution in residential property values from these results is arbitrary and involves too great an analytical gap between the survey results and his conclusions to be reliable. In particular, Defendants complain about the manner in which Mr. Hunsperger incorporated into his calculations the 46.2% of respondents who indicated they would not purchase a residence within six miles of Rocky Flats at any price.

I have considered Defendants' arguments on this point and conclude Mr. Hunspergers' calculations are sufficiently reliable to be admitted. Mr. Hunsperger employed a reasoned and transparent analytical process to estimate class-wide diminution

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3533049 (D.Colo.)
(Cite as: Slip Copy)

in value based on the mean discounts reported by Drs. Flynn and Slovic from their survey's results. *See* Hunsperger Report at 251-52. While there is room for disagreement on some of the steps taken or omitted in this process, Mr. Hunsperger's calculations were not arbitrary and were rationally connected to the survey results. To the extent there are analytical gaps in Mr. Hunsperger's calculations, they are not so great that they render his calculations unreliable and inadmissible. Defendants' criticisms, therefore, again go the weight of Mr. Hunsperger's testimony on this approach, not its admissibility.

**\*59** For the reasons stated above, I find Mr. Hunsperger's proffered testimony regarding his public opinion survey approach, including his use of the Flynn/Slovic survey results as part of his damage quantification effort, is sufficiently reliable to be admitted under Rule 702. This approach and its contribution to Mr. Hunsperger's overall damages estimate, even if as "shaky" as Defendants allege, are matters that may be presented to the jury and tested through the adversarial process. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The jury will make the ultimate determination of whether Mr. Hunsperger's work in its entirety is credible and persuasive as to the amount of any damages suffered by the Class.

Overall, I find Mr. Hunsperger employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" in his property impact study and the opinions he formed based on it. *See Kumho Tire,* 526 U.S. at 152. His expert testimony is admissible under Rule 702.

### D. Defendants' Motion to Exclude Plaintiffs' Expert Witness Testimony Relating to Conduct and Associated Motions in Limine

Plaintiffs intend to offer evidence at the class trial regarding Defendants' allegedly pervasive mismanagement of radioactive and toxic materials at Rocky Flats, including expert testimony from Drs. Robert Budnitz and Thomas Cochran.[FN75] In seven overlapping motions in limine and a *Daubert* motion, Defendants move to exclude all testimony by Drs. Budnitz and Cochran and most of Plaintiffs' other "conduct evidence" primarily on the ground that it is irrelevant. Defendants also assert Drs. Budnitz's and Cochran's proffered testimony must be excluded because neither is qualified and their testimony is unreliable.

> FN75. Plaintiffs originally designated a third expert witness, Dr. D. Warner North, to testify regarding Defendants' conduct at the plant, but notified Defendants and the court in July, 2005, that they did not intend to call him. *See* Pls.' Cons.*Daubert* Mot. at 94 n.83.

Defendants' motions in limine regarding conduct evidence encompass all of the relevance/fit arguments asserted against Drs. Budnitz's and Cochran's proffered expert testimony. Accordingly, I discuss these motions in limine first, and then address Defendants' additional arguments for exclusion of Drs. Budnitz's and Cochran's testimony.

### 1. Motions in limine to exclude conduct evidence (Nos.6-12)

In Motions in Limine Nos. 6 through 12, Defendants seek to exclude virtually all evidence regarding Defendants' conduct and practices at the Rocky Flats plant. *See* Defs.' Mots. in Limine Nos. 6-12 (Docs.1359-65). Although Defendants assert other grounds for exclusion in these motions, a key tenet of each is Defendants' contention that evidence concerning their conduct at the Rocky Flats plant is only relevant and admissible if it relates directly to an incident that Plaintiffs can prove caused plutonium to be released to the entirety of the Class Area. *See id.*

As described earlier in this decision, Defendants' asserted relevance standard misreads both Rule 401 of the Federal Rules of Evidence and the law of the case regarding the issues to be tried. *See supra*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 64

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

Section I.A. To review briefly, Rule 401 declares a liberal relevancy standard that incorporates notions of both materiality and probativity. *McVeigh,* 153 F.3d at 1190. A fact is material or "of consequence" under Rule 401 "when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict." *Id.* Limiting evidence concerning Defendants' conduct at the plant to incidents that directly or indisputably caused plutonium contamination to the entire Class Area is contrary to this standard and the law of the case, which in fact establishes multiple issues to which " conduct evidence" may be relevant. *See supra* Section I.A and discussion herein.

**\*60** Rule 401 also sets a "very low" bar for the degree of probative value required under the rule, so that "even a minimal degree of probability-*i.e.,* ' any tendency'-that the asserted fact exists is sufficient to find the proffered evidence relevant." *Id.* (quoting Rule 401). Defendants therefore err in their assumption that evidence must be highly probative or even conclusive regarding a consequential fact before the evidence can be found relevant under Rule 401.

Many of Defendants' arguments against the relevance of Plaintiffs' conduct evidence fall away once their improper relevance standard is removed. My additional reasons for denying each of Defendants' conduct-related motions in limine are set out below. Because these motions seek exclusion of broad, overlapping categories of evidence, my decisions and rationale are necessarily broad as well. Issues relating to discrete items of evidence falling with these categories may arise at trial and will decided then.

a. Defendants' Motion in Limine No. 6

In this motion Defendants seek an order barring Plaintiffs, their witnesses and attorneys from offering or mentioning any evidence related to the use of substances other than plutonium at Rocky Flats, including evidence that any non-plutonium hazardous or toxic substances from Rocky Flats were released into the environment or created a risk of harm. *See* Defs.' Mot. in Limine No. 6 (Doc. 1359) at 1. This motion is denied for the following reasons.

Defendants first assert all evidence relating to substances other than plutonium at Rocky Flats is irrelevant, principally because it is undisputed that Plaintiffs' trespass claims and part of their nuisance claims relate solely to plutonium. Consistent with their pleadings, however, Plaintiffs' pre-trial statement of claims declares that their nuisance claims are based in part on "threatened future releases of plutonium *and other hazardous substances."* Pls.' Statement of Claims (Doc. 1419) at 4 (emphasis added). Hence, evidence regarding Defendants' use and disposal of hazardous substances other than plutonium at Rocky Flats is relevant to the future risk component of Plaintiffs' nuisance claims.

Defendants argue this category of evidence is nonetheless irrelevant because Plaintiffs will not be able to prove that any non-plutonium toxic substances used at the plant pose a continuing risk of harm to the Class as a whole. This contention is without merit, as it relates to the sufficiency of this evidence, and not to whether it is relevant and admissible under the Federal Rules of Evidence.

Evidence regarding Defendants' alleged misconduct in handling, storing and disposing of hazardous substances other than plutonium is also probative of a second element of Plaintiffs' nuisance claim, which is whether Defendants acted negligently or intentionally in causing any unreasonable and substantial interference with the use and enjoyment of property. *See Cook IX,* 273 F.Supp.2d at 1202 (stating elements of nuisance claim). For purposes of the class trial, this element requires Plaintiffs to prove (among other things) that Defendants' negligent or intentional conduct caused Class members to be exposed to plutonium released from the plant and/or that their conduct created conditions at the plant that pose a demonstrable risk of future harm to the Class Area. *See* May 2005 Order at 4-6; Start of Trial Instructions, No. 3.6. Evidence tending to show a pattern of negligent misconduct by one or both Defendants in the handling of dangerous materials at Rocky Flats is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 65

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

relevant and admissible to show that Defendants acted negligently in the particular acts that injured the Class. *See Elliot v. Turner Constr. Co.,* 381 F.3d 995, 1004 (10th Cir.2004) (evidence tending to establish a pattern of negligence by defendant in overall project admissible regarding defendant's alleged negligence in specific aspect of project that injured plaintiff); *Silkwood v. Kerr-McGee Corp. (" Silkwood II"),* 769 F.2d 1451, 1455-56 (10th Cir.1985) (in a personal injury suit against operator of nuclear facility, "jury may permissibly infer from a pattern of negligence likely to cause a particular injury that such negligence did indeed cause the injury"); *see also Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir.1987) (evidence of a pattern of trespass and property damage by defendant admissible to prove recklessness and other elements of plaintiff's claims, even though none of the other incidents involved injury to the plaintiff and were dissimilar in other respects). As a result, evidence that Defendants had a pattern of negligence in handling plutonium and other dangerous substances at the plant is material and probative of Plaintiffs' nuisance claims even if some of the misconduct alleged by Plaintiffs did not itself cause the Class Area to become contaminated or pose a risk of future harm there.

*61 Evidence regarding Defendants' use and disposal of hazardous substances other than plutonium is also relevant to the generic causation question to be decided by the jury [FN76] and to the jury's determination of any punitive damages. *See Silkwood II,* 769 F.2d at 1455-56 (evidence of general pattern of misconduct meeting punitive damages standard sufficient for jury to infer same type of misconduct caused plaintiff's injuries and justified punitive damages award). Thus, evidence of Defendants' conduct relating to non-plutonium hazardous or toxic substances at Rocky Flats is relevant to several facts of consequence to the determination of this action.[FN77]

> FN76. *See supra* note 10 and accompanying text.
>
> FN77. Because Defendants' alleged pattern of misconduct in their handling, storage and disposal of hazardous or toxic substances in the aggregate is relevant to the issues just noted, I also reject Defendants' assertion that evidence of Defendants' alleged misconduct must be evaluated for relevance on a substance-by-substance basis.

Defendants also argue that all evidence regarding non-plutonium substances must be excluded pursuant to Federal Rule of Evidence 404(b), which bars admission of "evidence of other crimes, wrongs or acts" when offered to show the defendant's bad character and that the defendant likely acted in conformity with that character in connection with the conduct at issue. Fed.R.Evid. 404(b); *see, e.g., United States v. Maden,* 114 F.3d 155, 157 (10th Cir.1997). By its terms, however, the Rule only applies to evidence of "other" bad acts, that is bad acts that are extrinsic to the acts at issue in the suit. *See* Fed.R.Evid. 404(b); *Elliot,* 381 F.3d at 1004; *see generally* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.20[2][b] (2nd ed.2005) (collecting and summarizing cases). "Evidence is extrinsic if it involves an act wholly apart from and not intricately related to the asserted claim." *Elliot,* 381 F.3d at 1004. Here, as just described, Defendants' alleged mishandling of hazardous and toxic materials other than plutonium at Rocky Flats is not "wholly apart" from the asserted claims and is in fact related to them. Rule 404(b) might be appropriately invoked if Plaintiffs sought to introduce evidence that Defendants mishandled plutonium or other toxic materials at some facility other than Rocky Flats, but it does not apply to evidence of their alleged negligence in handling these materials at Rocky Flats.

Defendants argued at length against this conclusion at oral argument, asserting that evidence of a pattern of conduct at Rocky Flats is neither relevant nor intrinsic to Plaintiffs' claims. This argument ignores Plaintiffs' allegation that Defendants' mishandling of non-plutonium substances created conditions at the plant that pose a risk of future harm to the Class. It also fails to address squarely the Tenth Circuit's decision in *Elliot.* In that case, the Tenth Circuit considered whether Rule 404(b) barred admission

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 66

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

of evidence that the defendant had been negligent in various acts at a job site separate from the act that injured the plaintiff. 381 F.3d at 1003-04. The Tenth Circuit found the Rule did not apply to this evidence of additional negligent conduct, reasoning that evidence of a pattern of negligence by the defendant at the particular job site was directly related and therefore intrinsic to the question of the defendants' negligence in causing the plaintiff's injury. *Elliot*, 381 F.3d at 1004. The same is true in this case.

**\*62** In addition, even if I were to find Rule 404(b) applicable here, it would not bar admission of evidence relating to Defendants' alleged mismanagement of non-plutonium materials. Rule 404(b) is a rule of inclusion and allows evidence of "other" bad acts to be admitted so long as the evidence is not offered to prove bad character or a propensity to act as alleged. *See, e.g., United States v. Sarracino*, 131 F.3d 943, 949 (10th Cir.1997); *Maden*, 114 F.3d at 157. For the reasons stated earlier, evidence regarding Defendants' management of toxic materials other than plutonium is relevant to multiple issues to be decided in the class trial, and therefore serves other proper purposes as permitted by the rule. Accordingly, even if Rule 404(b) were applicable here, I find no basis for excluding all evidence relating to non-plutonium substances pursuant to it.

Finally, Defendants argue this category of evidence must be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury and by considerations of undue delay or waste of time. Defendants' arguments in this regard are premised largely on their contention that all such evidence is irrelevant to the matters to be decided by the jury, which is incorrect for the reasons stated above. Balancing the probative weight of this category of evidence against Defendants' concerns, I find no basis under Rule 403 for the blanket exclusion sought by Defendants.

b. Defendants' Motion in Limine No. 7

In this motion, Defendants seek to exclude " evidence related to employee health and safety at Rocky Flats" on the ground that all such evidence is irrelevant, would be unduly prejudicial to Defendants, and constitutes evidence of past bad acts inadmissible under Rule 404(b). Defs.' Mot. in Limine No. 7 (Doc. 1360) at 1; July 28, 2005 Hr'g Tr. (Doc. 1434) at 40. This motion is denied.

I agree with Defendants that the general issue of worker health and safety at Rocky Flats is not part of this action, but the blanket exclusion Defendants seek is unnecessary and overbroad. First, the exclusion is unnecessary because there is no indication in the record that Plaintiffs intend to try the issue of worker health and safety.[FN78] Second, the relief sought by Defendants is overbroad because some evidence that might be described as " relating to" worker health and safety may be relevant if, for example, it concerns plutonium escaping containment in the workplace and being released to the environment or Defendants' pattern of conduct in handling plutonium and other hazardous substances at the plant. Specific evidence "relating to" worker health and safety may also be relevant in other ways that I cannot anticipate in the abstract. Thus, while some or even most evidence in this broad category of evidence may indeed be irrelevant to this action, this does not justify the blanket exclusion requested by Defendants.

> FN78. Nor would I allow Plaintiffs to do so given the nature of the claims they have asserted.

**\*63** I also am not persuaded that admission of any evidence relating to worker health and safety poses a danger of unfair prejudice and confusion of the issues that outweighs its probative value. This question cannot be decided in the abstract as proposed by Defendants. For the reasons stated in the previous section, I also find no merit in Defendants' contention that Rule 404(b) applies here and bars admission of all evidence falling into this category.

c. Defendants' Motion in Limine No. 8

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

Page 67

In this motion Defendants seek to exclude all evidence "related to releases, incidents and conditions that occurred wholly within buildings at Rocky Flats" on the ground that such releases, incidents and conditions, by definition, could have no off-site environmental effect and hence are irrelevant to both the trespass and nuisance claims. Defs.' Mot. in Limine No. 8 (Doc. 1361) at 1. Defendants also argue that admission of any such evidence would be unfairly prejudicial under Rule 403 and would violate Rule 404(b)s' stricture against admission of propensity evidence.

Once again, the blanket exclusion Defendants seek is overbroad. By Defendants' account, this motion would bar, among other things, all evidence regarding plutonium fires that were contained within buildings, all conditions in buildings that raised criticality concerns and numerous other incidents that resulted in a loss of containment of plutonium or tend to show a pattern of mishandling plutonium and other hazardous substances. For the reasons described earlier, evidence of this sort is relevant, at minimum, to the question of whether Defendants were negligent in causing any interference with Class members' use and enjoyment of property. Some of the evidence Defendants seek to exclude in this motion may also be probative as circumstantial evidence of past releases (*e.g.,* evidence of plutonium in ductwork venting to the outside environment) or of waste storage and disposal practices that resulted in conditions that pose a continuing risk of future harm to the Class. FN79 Because this evidence is intrinsic to Plaintiffs' claims and theory of the case, it is not evidence of prior bad acts subject to Rule 404(b).FN80 Finally, I am not persuaded that the probative value of this category of evidence is substantially outweighed by the danger of unfair prejudice or confusion of the issues.

FN79. Defendants assert that the demolition of these plant buildings and the on-going plant cleanup have eliminated this possibility and therefore render evidence of incidents and releases within these buildings irrelevant. Plaintiffs dispute this assertion, which in any event goes to the sufficiency of Plaintiffs' evidence on this point, not its relevance.

FN80. Even if Rule 404(b) were applicable here, I would also find, as stated earlier, that this evidence is offered for a proper purpose and is therefore admissible under the rule.

Defendants assert all evidence relating to releases that occurred solely within buildings also must be excluded pursuant to Magistrate Judge Borcher's 1994 ruling in a discovery dispute that Dow need not produce information regarding releases within a building that affected only employees within the building. Mem. Op. & Order (Doc. 327) at 2. The context for this ruling and its basis is not clear from Judge Borchers' order, however. More importantly, the scope of this action, and with it the evidence relevant to Plaintiffs' property damage claims, has evolved in the years since Judge Borchers' order. My determination, based on the current status of this action and the issues to be decided in the class trial, is that evidence of releases, incidents and conditions occurring solely within buildings may be relevant to one or more of these issues as described above. Defendants' motion to exclude all evidence in this category is, therefore, denied.

d. Defendants' Motion in Limine No. 9

*64 In this motion, Defendants seek to exclude all evidence or references relating to what they call "inventory difference" and what Plaintiffs and others refer to as "material unaccounted for" or "MUF." Defs.' Mot. in Limine No. 9 (Doc. 1362) at 1. MUF refers to plutonium, uranium and other radioactive materials that cannot be accounted for by plant operators. *See Cook v. Rockwell Intl Corp. ("Cook VI"),* 907 F.Supp. 1460, 1463 (D.Colo.1995). The existence and quantity of MUF at any given time is determined by comparing the quantity of these materials that accounting records report present at the site with the quantity of materials determined to be on hand through physical inspection and analysis. *See* Pls.' Cons.*Daubert* Resp. (Doc. 1399), Ex. 7 (Cochran MUF Report) at 3 (citing DOE definition). It is undisputed that the cumulative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 68

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

MUF during Defendants' operation of Rocky Flats is more than 2,600 pounds.[FN81]

> FN81. This is not the first time questions concerning MUF evidence have arisen in this litigation. In 1995, I found the DOE in contempt for failing to produce documents relating to MUF. *Cook VI,* 907 F.Supp. at 1463-64, 1468; *see also Cook v. Rockwell Intl Corp. ("Cook VII"),* 935 F.Supp. 1452 (D.Colo.1996)(discussing additional issues relating to production or access to DOE's MUF documents).

Defendants argue that evidence concerning MUF is irrelevant to Plaintiffs' trespass and nuisance claims because Plaintiffs cannot prove that any MUF was released to the environment where it was or could have been transported to the Class Area. Defendants also argue affirmatively that all MUF for the site can be largely explained by accounting errors, errors or omissions in estimating the amount of plutonium contained in waste shipped off-site and by the unreported presence of plutonium-containing residue in processing equipment and the like. They further assert MUF data is irrelevant because, according to their experts and a government contractor, the data cannot be used to estimate the quantity, if any, of the unaccounted for plutonium that was released to the environment.[FN82]

> FN82. It bears mentioning that much of the debate in this action about MUF and whether it includes any unreported releases to the on- or off-site environment are the result of the federal government's decision to classify and withhold much potentially explanatory MUF-related information.

Defendants' assertion that Plaintiffs must be able to prove MUF was or could be released to the Class Area to establish its relevance once again improperly applies a standard of proof to determine relevancy. *See* Fed.R.Evid. Rule 401 (relevant evidence is evidence "having *any tendency* to make the existence of any fact that is of consequence ... more or less probable than it would be without- the evidence;" emphasis added.); *see generally* Charles Alan Wright & Kenneth W. Graham, Jr., 22 Fed. Practice and Procedure: Evidence § 5165 at 50-51 (1978 & Supp.2006) ("judge may not consider the weight of the evidence in determining relevance" under Rule 401); *see also supra* Section I.A (discussing relevancy standard). Under the proper, Rule 401 standard, MUF evidence is relevant because it has a tendency to make the existence of several facts of consequence more or less probable than they would be without this evidence.

For example, Defendants' inability to account for 2,600 pounds of plutonium in their Rocky Flats operations is relevant to the question of whether Defendants were negligent in their management of plutonium and its risks, which bears on the "intent or negligence" element of Plaintiffs' nuisance claim. In *Silkwood,* the Tenth Circuit found that a nuclear plant operator's inability to account for as little as 23 pounds of plutonium was "notable" evidence of a pattern of gross negligence relevant to a claim arising from the off-site release of plutonium. *See Silkwood II,* 769 F.2d at 1455-56 (affirming award of punitive damages on claim for property damage caused by contamination of off-site property). That Defendants cannot account for 2,600 pounds of plutonium and other radioactive materials is unquestionably relevant to their care, or lack thereof, in managing these materials.

\*65 MUF-related data is also relevant to determining whether plutonium from Rocky Flats has been released into the environment, where it either has or may in the future be transported by natural forces to the Class Area. This relevance is demonstrated by various investigators' use of MUF data in estimating the amount of plutonium released during the 1957 fire and other events, and by the efforts of RAC and earlier investigators to account for MUF and to utilize MUF data to assess whether any portion of it might represent unreported releases to the environment. *See* Cochran MUF Report at 11-13 (identifying studies); Defs.' Mot. in Limine No. 9, Ex. 2. Contrary to Defendants' assertions, it is not necessary for MUF data to produce quantitative estimates of unreported plutonium releases for MUF data to be relevant to this issue. Defendants' contention that MUF may be accounted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

Page 69

for through means other than unreported releases goes to the weight and sufficiency of this evidence with respect to releases, not its relevance.

In addition, the existence and amount of MUF for the site is relevant to the generic causation question to be answered by the jury and to the credibility of witnesses testifying about matters such as the amount of plutonium released from Rocky Flats and its associated risks.

I have also considered Defendants' contention that all MUF-related evidence should be excluded under Rule 403 because its probative value is substantially outweighed by its potential to create unfair prejudice or confusion of the issues. I am not persuaded either that MUF evidence has the lack of probative value argued by Defendants or that the risk of unfair prejudice or confusion is large enough to outweigh substantially this value. Finally, I find no basis for exclusion under Rule 404(b) for the reasons stated earlier.

e. Defendants' Motion in Limine No. 10

In this motion, Defendants seek to exclude all evidence or direct or indirect mention of "past risks that never materialized," which they describe as the risk of fires, criticality events [FN83] or other events at Rocky Flats that might have resulted in plutonium or other toxic materials being released into the environment if they had occurred. See Defs.' Mot. in Limine No. 10 (Doc. 1363) at 3, 8; see id. at 1-2. Defendants include in this category all evidence regarding at least one event that did occur, the 1969 fire at the plant, that would describe how close the fire allegedly came to causing a catastrophic environmental disaster. Id. at 5. The focus of this amorphous motion, however, appears to be testimony or evidence regarding Defendants' management of plutonium-related risks and how their operating practices may have contributed to the creation of such risks. Id. at 3-4, 5-6, 10.

FN83. A criticality event occurs when too much fissible material is unintentionally brought together and forms a critical mass, which creates an uncontrolled nuclear chain reaction. See Pls.' Cons.*Daubert* Resp. (Doc. 1399), Ex. 6 (Cochran Overview Report) at 28.

Defendants argue this and other "past risk" evidence is irrelevant because none of these potential events or catastrophic consequences occurred, and they cannot occur now, because the conditions giving rise to these risks have been eliminated through the plant shut-down and subsequent cleanup. They further argue that such evidence should be excluded under Rule 403 because it would unfairly prejudice Defendants, confuse the jury and waste trial time and resources.

*66 This motion is denied. Defendants are free to argue that Rocky Flats does not pose a risk of current or future harm to the Class Area (as relevant to Plaintiffs' nuisance claims) because the plant has been dismantled and all on-site conditions that might give rise to such off-site harm have been fully abated through the site cleanup. Whether the cleanup is in fact complete and has removed all plutonium and other toxic materials that might be remobilized and pose a current or future risk to the Class Area is disputed, however, and thus presents a factual issue to be decided by the jury. I will not do as Defendants suggest and usurp the jury's function by deciding this factual issue in the context of Defendants' evidentiary motions.

I further find that evidence regarding "past risks" and Defendants' management of them is relevant to this action. For the reasons stated earlier, the degree of care Defendants exhibited in managing plutonium and other dangerous substances at the plant is relevant to whether Defendants acted negligently in creating conditions that resulted in plutonium being released to the Class Area or created conditions that could lead to future harm. See supra Section I.D.1.a. Evidence of these matters is also relevant to the generic causation question and the jury's determination of any punitive damages. See id.

The probative value of this general category of evidence is not substantially outweighed by the risk of unfair prejudice or confusion of the issues. While

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 70

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

there may be specific items of evidence within this poorly defined category that require a different analysis, I will not exclude all evidence within it based on this possibility. Any complaints regarding specific items of evidence will be addressed at trial.

### f. Defendants' Motion in Limine No. 11

In this motion, Defendants seek to exclude all evidence of plutonium-related incidents and practices that "Plaintiffs cannot prove impacted (or could someday impact) the entire Class Area." Defs.' Mot. in Limine No. 11 (Doc. 1364). This category of evidence includes, according to Defendants, all evidence or mention of the 1969 fire and other "minor" plutonium fires at the plant and all evidence or mention of Defendants' handling, use and storage of plutonium during the many years of plant operation. *See id.* at 5-10. Defendants contend all such evidence is irrelevant and/or subject to exclusion under Rules 403 and 404(b).

This motion is founded on the proposition that only evidence that can and has been linked directly to a past or potential release of plutonium that affects the Class as a whole is relevant to this action. This proposition is incorrect for all of the reasons stated earlier in this decision. *See supra* Section I.A. Defendants also err in suggesting that an item of evidence must "prove" a consequential fact in order to be relevant. *See supra id.*; Section I.D.1 (introduction).

For the reasons stated above with respect to Defendants' overlapping motions, evidence relating to Defendants' handling, use and management of plutonium, including fires and other incidents that occurred in the course of this conduct, is relevant to multiple issues in this action. It also does not as a category pose a risk of prejudice or confusion warranting exclusion and is not "bad character" evidence presented for an improper purpose. Because this category of evidence is relevant and not subject to exclusion on the cited bases, Defendants' motion is denied.

### g. Defendants' Motion in Limine No. 12

*67 In their final conduct-related motion in limine, Defendants seek to exclude all evidence that does not apply to the Class as a whole. This motion is based on Defendants' contention that the relevant and admissible evidence in this class action is evidence "that would be admissible in each of the individual trials for each class member, were such trials to occur." Defs.' Combined Reply in Supp. of Mots. in Limine (Doc. 1410), Tab 12, at 1. As a result, Defendants argue, all evidence relating to " incidents, conditions, occurrences or activities that do not impact the entire class" must be excluded. Defs.' Mot. in Limine No. 12 (Doc. 1365) at 4. As examples of evidence that should be excluded under this motion, Defendants identify evidence concerning the release of plutonium or other toxic materials via surface or ground water to some but not all of the Class Area and all expert evidence that does not specifically study and assess the whole of the Class Area. *See id.* at 7-9.

Defendants' legal contention and the relevancy standard Defendants advance based on it finds no support in Rule 401 or the law relating to class trials. *See supra* Section I.A. There is no logic to or basis for Defendants' assumption that because Plaintiffs must prove liability and damages for the Class as a whole, only evidence that applies to each and every Class member is relevant and should be admitted. The question is whether the evidence as a whole proves class-wide liability and damages, not whether specific items of evidence do. *See id.*

There is ample evidence within this broad category of evidence that is relevant and admissible in this action for all of the reasons stated above and elsewhere in this decision. Accordingly, I deny Defendants' motion to exclude this category of evidence.

### 2. Motion to exclude expert testimony by Dr. Robert Budnitz

Dr. Robert Budnitz is a former senior officer with the United States Nuclear Regulatory Commission (NRC) and a frequent consultant to the NRC, DOE, and other domestic and foreign government agencies on nuclear safety issues. *See* Pls.' Cons.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3533049 (D.Colo.)
(Cite as: Slip Copy)

Page 71

*Daubert* Resp. (Doc. 1399), Ex. 1 [hereinafter " Budnitz 903 Pad Report"], Attach. A (Budnitiz statement of qualifications). Dr. Budnitz has extensive academic credentials and professional experience in the field of nuclear energy and safety, including, as most pertinent here: participation in the development of NRC's fire regulations and guidance for nuclear facilities; evaluating and investigating nuclear waste management programs at Three Mile Island, the Hanford Nuclear Reservation and other federal facilities for the NRC, DOE and/or its contractors; and chairing a special committee created by the National Academy of Sciences to study management of nuclear waste. *See id.;* Pls.' Cons.*Daubert* Resp. (Doc. 1399), Ex. 3 [hereinafter 'Budnitz Dep.'] at 380-81, 390-94, 621-23. For several years Dr. Budnitz also managed the largest division within the DOE's Lawrence Berkeley Laboratory, Budnitz 903 Pad Report, Attach. A at 2, which he testified carried out a wide range of activities in research and engineering development that covered most of the disciplines involved in managing a facility such as Rocky Flats, *see* Budnitz Dep. at 307-08. He has published approximately 90 articles and reports, most of which relate to nuclear safety, monitoring and/or waste management. *See* Budnitz 903 Pad Report, Attach. B (list of publications).

*68 Dr. Budnitz authored two expert reports for this case, one covering the major Rocky Flats fires of 1957 and 1969 and other incidents, *see* Pls.' Cons. *Daubert* Resp. (Doc. 1399), Ex. 2 [hereinafter " Budnitz Fires Report"], and another concerning waste management practices associated with the 903 pad plutonium releases, *see* Budnitz 903 Pad Report. Both of these reports also discuss and state conclusions regarding Dow's management and safety practices from 1945-69 and how they contributed to the 1969 fire and plutonium releases from the 903 pad. In addition, Dr. Budnitz contributed a discussion of criticality concerns during Defendants' Rocky Flats operations to a report authored primarily by another of Plaintiffs' experts.[FN84] *See* Pls.' Cons. *Daubert* Resp., Ex. 21 at 62-64.

FN84. Plaintiffs notified the court before trial that they did not intend to call this second expert, Dr. D. Warner North, at trial. *See supra* note 75.

Defendants seek to exclude Dr. Budnitz's proffered testimony as disclosed in these expert reports on the grounds that his testimony is entirely irrelevant, he is not qualified to testify on these subjects, his intended testimony will not assist the jury and his testimony is not reliable. To the contrary, I find Dr. Budnitz and his proposed testimony meets each of these Rule 702 requirements and is therefore admissible. More specifically:

I reject Defendants' challenge to the relevance of Dr. Budnitz's proffered testimony for the reasons stated in connection with Motions in Limine Nos. 6-12 discussed above.

I reject Defendants' challenge to Dr. Budnitz's qualifications because their arguments are based on an incomplete and distorted account of his knowledge, experience, training and education in the relevant fields. A review of Dr. Budnitz's complete statement of qualifications and related deposition testimony, none of which is challenged by Defendants, reveals he is thoroughly qualified to testify as disclosed in his expert reports.

Defendants' argument that Dr. Budnitz's testimony will not assist the jury also fails. It is premised on Defendants' contention that Dr. Budnitz's testimony is no more than a summary of documentary evidence that the jury could just as easily review and digest itself to reach any relevant conclusions. Safety and operating practices at a nuclear production facility are, however, highly specialized matters not within the province of an ordinary juror. They are, therefore, a proper subject for expert testimony. *See, e.g., United States v. Mulder,* 273 F.3d 91, 101-102 (2nd Cir.2001) (expert testimony concerning matters that are not well known or commonly understood is admissible); *see generally* 4 *Weinstein* § 702.03[1] (collecting cases). Dr. Budnitz is an expert in these matters, and it is clear from a fair reading of his reports that he drew extensively on his specialized knowledge and experience to review, analyze and summarize available information and to reach conclusions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 72

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

regarding the adequacy of Dow's safety and waste management practices. It was also perfectly proper for Dr. Budnitz to consider documentary evidence and pre-existing investigative reports in evaluating Dow's conduct, and to interpret and summarize the information he collected through this process to assist the jury in understanding these practices and the bases for his conclusions about them. One of Defendants' experts, Dr. Frank J. Blaha, similarly reviewed and summarized historic documentary materials in his own report regarding waste management practices at Rocky Flats. *See* Pls.' Cons. *Daubert* Resp. (Doc. 1399), Ex. 30.

\*69 Dr. Budnitz's evaluation and conclusions also satisfy Rule 702's reliability requirement. Dr. Budnitz assessed Defendants' conduct according to the practices and standards of care in the industry, including the overarching "ALARA" principle that radiation exposures and impacts should be kept "as low as reasonably achievable." *See, e.g.,* Budnitz Dep. at 571-72; Budnitz 903 Pad Report at 41-50 (concluding Dow failed to utilize readily available measures that would have prevented offsite releases of plutonium from the 903 pad and assessed its impact once it occurred); Budnitz Fire Report at 2 (comparing fire-safety practices at Rocky Flats with practices at other AEC facilities managed by different contractors). This assessment was based on Dr. Budnitz's extensive experience and expertise in safety and risk management at nuclear facilities. While Defendants argue Dr. Budnitz should also have evaluated their conduct according to unspecified federal regulatory standards or written safety procedures, neither sets the standard of care in this case. *See Cook IX,* 273 F.Supp.2d at 1199 (state law standard of care governs action); Mem. Op. on Jury Instructions, Section II.B (regarding Defendants' proposed nuisance Instruction No. 7). At best, Defendants' contentions here go to the weight of Dr. Budnitz's testimony regarding Defendants' conduct, and do not affect its reliability and admission under Rule 702.

### 3. Motion to exclude expert testimony by Dr. Thomas Cochran

Dr. Thomas Cochran is a senior scientist and the director of the nuclear program at the Natural Resources Defense Council, Inc. (NRDC). Pls.' Cons. *Daubert* Resp. (Doc. 1399), Ex. 6 [hereinafter "Cochran Overview Report"], Attach. (Cochran curriculum vitae) at 1. He received his master's degree and Ph.D in physics from Vanderbilt University, where his master's level work involved health physics and his Ph.D dissertation was in nuclear physics. *Id.* at 4. Dr. Cochran has written several books, including two on U.S. nuclear weapon production facilities, and more than fifty articles, reports and papers on nuclear facilities, nuclear weapons, and arms control, including on plutonium toxicity and radiation protection standards. *See id.* at 6-15. Dr. Cochran has been an advisor to the DOE and NRC, including service on the DOE's Environmental Management Board and the NRC's Advisory Panel for the Decontamination of the Three Mile Island Unit 2 and its Safety Goals Workshop. *Id.* at 2-3. He has testified on numerous occasions before Congressional committees on nuclear energy, weapons and waste. *See id.* at 3.

Dr. Cochran authored two expert reports in this litigation, an overview of Rocky Flats operations and health and safety practices, particularly as they relate to actual or potential off-site releases of plutonium, and another on plutonium inventory differences at Rocky Flats. *See* Cochran Overview Report; Pls.' Cons.*Daubert* Resp. (Doc. 1399), Ex. 7 [hereinafter "Cochran MUF Report"]. More specifically, in his Overview Report, Dr. Cochran provides a basic primer on nuclear weapons and their manufacture, including the technical subjects of radioactivity and radiation, plutonium and health physics (health effects of exposure to radiation); discusses the major known releases of plutonium from Rocky Flats and Dow and Rockwell's waste management practices; and concludes based on his review and analysis that both Defendants operated Rocky Flats without proper regard for the hazards posed by plutonium and other toxic substances present there. *See* Cochran Overview Report. In his MUF Report, Dr. Cochran defines and explains MUF, summarizes the history of MUF accounting at Rocky Flats and concludes, based on his analysis, that Dow was grossly negligent in failing to account for such a large amount of plutonium and that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3533049 (D.Colo.)
(Cite as: Slip Copy)

Page 73

amount of MUF at Rocky Flats casts doubt on official estimates of the quantity of plutonium released to the off-site environment. *See* Cochran MUF Report.

**\*70** Defendants seek to exclude Dr. Cochran's proffered expert testimony for much the same reasons they advanced with respect to Dr. Budnitz's testimony, and I reject them for much the same reasons stated above.

First, Dr. Cochran's testimony regarding Defendants' operations and MUF at Rocky Flats is relevant for the reasons stated earlier in connection with Defendants' motions in limine. His proffered testimony providing an overview of nuclear weapons design, plutonium weapons fabrication and processing at Rocky Flats, the ALARA principle, health physics and the characteristics and risks of radioactivity and plutonium, *see* Cochran Overview Report at 1-23, will assist the jury by providing helpful background on these complex technical matters, which are not within the common knowledge of most jurors. His intended testimony regarding off-site releases of plutonium, criticality, MUF and pondcrete, based on his review and analysis of relevant documentary materials and including the conclusions he drew from this analysis, *see id.* at 23-30; Cochran MUF Report, will also assist the jury.

Dr. Cochran also has sufficient knowledge and experience concerning both the general and specific subjects addressed in his reports, including MUF and events that caused off-site releases, to qualify as an expert under Rule 702. *See, e.g.,* Cochran Overview Report, Attach. (Cochran curriculum vitae); Pls.' Cons.*Daubert* Resp. (Doc. 1399), Ex. 8 [hereinafter "Cochran Dep."] at 16, 40-42, 97, 101, 106. Defendants' complaint that Dr. Cochran does not specialize in some of these matters again bears on the weight of his testimony and does not render it inadmissible. *See, e.g., Ralston,* 275 F.3d at 970.

Finally, as to reliability, Dr. Cochran utilized his knowledge and experience to assess Defendants' Rocky Flats operations against industry standards and practices, including the ALARA principle. *See, e.g.,* Cochran Overview Report at 14-15; Cochran Dep. at 218-22. The bases for his conclusions are clearly stated and his conclusions flow logically from them. While Defendants and their experts apparently believe Dr. Cochran should have employed different standards and reached different conclusions, this does not render his methods and conclusions "unverifiable" as Defendants suggest or require exclusion of his testimony. I find Dr. Cochran employed the same level of intellectual rigor in his work on this case that characterizes the practice of an expert in this field. For this reason and the others stated above, Dr. Cochran's proffered testimony is reliable and otherwise admissible under Rule 702.

### E. Defendants' Additional Motions in Limine

Defendants filed nine motions in limine in addition to those discussed in the previous section. Like Defendants' other motions in limine, these motions and their supporting arguments push the limits of in limine consideration. While I have decided these motions based on the arguments they present, discrete evidence falling within these motions may require additional consideration during trial, and warrant different treatment, depending on the specific evidence offered and circumstances as they develop at trial.

#### 1. Motions to exclude evidence regarding the FBI raid, grand jury investigation and Rockwell's guilty pleas (Nos.1-3)

**\*71** In these motions, Defendants seek to exclude all evidence and mention of the FBI raid of Rocky Flats in 1989, its underlying allegations and attendant publicity; all evidence and mention of the subsequent grand jury investigation, its outcome and the resulting controversy; and all evidence relating to Rockwell's 1992 guilty pleas to environmental crimes at Rocky Flats, all conduct underlying these pleas and all publicity regarding them. *See* Defs.' Mots. in Limine Nos. 1-3 (Docs.1354-56). Defendants argue all such evidence is inadmissible because it is irrelevant to any issue of consequence, constitutes improper propensity evidence barred by Rule 404(b) and/or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

poses such a danger of unfair prejudice and waste of trial time that it should be excluded under Rule 403.

These motions are denied in part and granted in part. The fact of each of these events, and the conduct and alleged conduct that were the subject of the FBI raid, the grand jury investigation and Rockwell's guilty pleas, are relevant to issues to be decided in the class trial. These events are interwoven with virtually everything that occurred at or concerning Rocky Flats between the late 1980s and early 1990s. It would be impossible to tell the story of Rocky Flats, and thus provide the jury with a context for other relevant testimony and evidence, without mention of the FBI raid and its aftermath. The criminal investigation also scrutinized or touched on much of Rockwell's conduct relating to hazardous substances at the plant during the plant's last years of operation. As described earlier, evidence of this conduct is relevant to whether Rockwell acted negligently with respect to these substances and any harm suffered by the Class, whether conditions at the plant pose a risk of future harm and punitive damages. *See supra* Section I.D.1. Much of the publicity surrounding the FBI raid and its aftermath is also relevant to the issue of compensatory damages because it goes to the market's knowledge of environmental concerns and conditions associated with the plant.

I am not persuaded that Rules 404(b) or 403 require that this general category of evidence be excluded. This evidence does not pertain to "other" bad acts by Rockwell, but rather relates to an alleged pattern of misconduct by Rockwell that underlies Plaintiffs' claims. As such, Rule 404(b) and its bar against propensity evidence do not apply. *See supra* Section I.D.1. Defendants' concerns about the risk of prejudice can and will be addressed through appropriate limiting instructions, as discussed below.[FN85]

> FN85. Defendants also argue that all evidence and mention of the special grand jury proceedings must be excluded because the secrecy of these proceedings would otherwise be compromised. I will not admit evidence regarding matters occurring before the special grand jury. *See* Fed.R.Crim.P. 6(e)(2). However, the relief sought by Defendants is not required to protect grand jury secrecy.
> In addition, some of Plaintiffs' evidence regarding Rockwell's conduct no doubt was presented to the grand jury. This fact does not bar its admission in this action, but whether this evidence was presented to the grand jury is irrelevant.

Defendants' Motions in Limine Nos. 1-3 are therefore denied to the extent they seek a blanket order excluding evidence regarding the fact of the FBI raid, the grand jury investigation and Rockwell's guilty pleas, the conduct and alleged conduct by Rockwell that were the subject of these proceedings, and publicity regarding this conduct and these events.

I am persuaded, however, that a subset of the evidence falling within the scope of these motions requires different treatment. That subset relates to the controversy concerning the Department of Justice's prosecution of Rockwell, including the so-called runaway grand jury. It is clear from the parties' motions and briefing that Rockwell intends to argue and present evidence that federal prosecutors ultimately exonerated it of all charges of environmental misconduct, except those to which it pled guilty.[FN86] Plaintiffs intend to rebut this contention by introducing evidence that there are other, less innocent explanations for the prosecutors' failure to pursue additional charges against Rockwell.

> FN86. Defendants relied heavily on this proposition in their various motions in limine to assert, as a matter of fact, that all allegations made against Rockwell in the criminal investigation were false. Plaintiffs dispute this fact as stated above.

*72 The question of whether the U.S. Attorney and the Department of Justice (DOJ) properly discharged their duties in investigating and prosecuting Rockwell is not relevant to the matters to be determined in this action. Even if it were, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 75

Slip Copy, 2006 WL 3533049 (D.Colo.)
(Cite as: Slip Copy)

probative value of this evidence is substantially outweighed by its potential to confuse the issues and needlessly extend the length and complexity of the trial. Accordingly, I intend to bar Defendants from arguing or presenting evidence that the U.S. Attorney and the DOJ ultimately exonerated Rockwell from most of the conduct that had been alleged in the FBI search warrant. For the same reasons, I will not allow Plaintiffs to argue or introduce evidence relating to the runaway grand jury, the congressional investigation into the DOJ's prosecution of Rockwell or similar evidence that might tend to show that the Department of Justice acted improperly in failing to prosecute Rockwell more vigorously.

I will also instruct the jury that it should not view the fact that the FBI issued a warrant based on certain allegations, that the grand jury failed to issue indictments or that Rockwell did not plead guilty to additional crimes as evidence that Rockwell did or did not engage in additional environmental misconduct (*i.e.*, misconduct beyond that to which it pled guilty) during its tenure at the plant. The jury will be directed to make its findings based on the evidence of Rockwell's conduct presented at trial, and not on the fact that the FBI made or investigated certain allegations or the outcome of the criminal prosecution. *See* Start of Trial Instructions, Nos. 2.4, 2.5.

The line I have drawn between admissible and inadmissible evidence relating to the FBI raid and its aftermath should be viewed as a broad outline that may be refined as evidence is presented and the trial unfolds. I also recognize that this line may raise questions regarding the admissibility of specific items of evidence, especially news accounts that might be used as a backdoor to introduce evidence about the controversy regarding the grand jury and the federal government's prosecution of Rockwell. Whether certain exhibits will be admitted or questioning permitted under this standard will likely be an exhibit-by-exhibit and question-by-question determination.

2. Motions to exclude evidence regarding other lawsuits (Nos. 14 & 15)

In their Motion in Limine No. 14, Defendants seek to exclude evidence or mention of any other lawsuits filed against either Defendant. Defs.' Mot. in Limine No. 14 (Doc. 1367). In their Motion in Limine No. 15, Defendants seek this same relief with respect to a specific criminal proceeding against Rockwell in connection with its operation of a facility in Santa Susana, California. Defs.' Mot. in Limine No. 15 (Doc. 1368). In response, Plaintiffs have represented that they do not intend to present evidence of or mention the Santa Susana proceeding at trial. This concession renders Defendants' Motion in Limine No. 15 moot, and it is denied on this basis.

*73 With respect to Motion in Limine No. 14, Plaintiffs assert that they intend to present evidence regarding two other lawsuits against Defendants: the criminal proceeding against Rockwell that resulted its 1992 guilty pleas as described in the preceding section and *Church v. Dow Chemical Co.*, No. 75-M-1162 (D.Colo.), which also concerns Rocky Flats. I will therefore construe Motion in Limine No. 14 as a motion to exclude evidence and reference to these two law suits.

The fact of both of these suits is relevant to this action because both are part of the history of Rocky Flats. It is not possible to tell that story and provide a context for other relevant testimony and evidence in this case without reference to them. Rockwell's 1992 guilty pleas and associated legal proceedings are also relevant for the other reasons stated in the preceding section. *See supra* Section I.E.1 (regarding Defendants' Motion in Limine Nos. 1-3). As Defendants admit in the subject motion, evidence regarding the 1975 *Church* litigation is also relevant to issues such as when the public (market) was aware of environmental concerns and risks at Rocky Flats. *See* Defs.' Mot. in Limine No. 14 at 3 n.4 (asserting Defendants may seek to introduce evidence regarding the *Church* litigation for this purpose).

I therefore deny Defendants' Motion in Limine No. 14 to exclude all evidence of other lawsuits, but hold Plaintiffs may only present evidence regarding the criminal proceedings against Rockwell as provided in my ruling on Defendants' Motions in Limine Nos. 1-3. With respect to the *Church*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 76

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

litigation, Plaintiffs may present evidence and reference the fact of this litigation only. I find no basis under Rule 403 for excluding the evidence just described because the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice or confusion of the issues. Defendants' concerns in this regard will be mitigated by my instructing the jury that it should not consider the fact of either lawsuit, or the allegations made therein, in deciding whether Dow or Rockwell engaged in any of the conduct alleged by Plaintiffs in this action. *See* Start of Trial Instructions, Nos. 2.4-2.6.

### 3. Motions to exclude evidence involving the Department of Energy (Nos. 4 & 5)

#### a. Defendants' Motion in Limine No. 4

In this motion Defendants seek an order prohibiting Plaintiffs from presenting any evidence or making any reference to the DOE's general indemnification obligations under the Price-Anderson Act, *see Cook IX*, 273 F.Supp.2d at 1182-83, or any specific agreement to indemnify Defendants for costs arising from their operation of Rocky Flats, including the damages sought in this action. *See* Defs.' Mot. in Limine No. 4 (Doc. 1357) at 1-2. Defendants assert all such evidence is irrelevant and should also be excluded pursuant to Rule 403 and Rule 411. I disagree and therefore deny Defendants' motion.

A great deal of the evidence in this case concerns studies, reports and investigations conducted by or for the DOE concerning waste management practices at Rocky Flats and the plant's actual or threatened impact on off-site properties. A number of the anticipated witnesses at trial are DOE officials and employees or frequent consultants or expert witnesses for the DOE. Much of this DOE-related evidence is critical to the determination of liability in this action. Evidence that the DOE is Defendants' indemnitor is relevant to showing the DOE's interest and stake in the outcome in this litigation, which in turn is relevant to the credibility of these witnesses and the trustworthiness of other evidence originating with or within the control of the DOE.[FN87]

> FN87. Defendants urge that I follow the district court in *Hanford*, which excluded evidence of DOE indemnification as irrelevant in a recent trial. *See In re Hanford Nuclear Reservation Litig.*, No. CV-91-3015, Order re: Final Pretrial Conf. (Doc. 1874) at 8 (E.D Wash. Apr. 18, 2005). My understanding is that this case presented somewhat different issues than are presented here. Nonetheless, to the extent my decision that evidence of DOE's indemnification is relevant is inconsistent with the *Hanford* court's decision, I respectfully disagree with that decision.

**\*74** I am not persuaded that the probative value of this evidence is substantially outweighed by the risk of undue prejudice or confusion of the issues as required for exclusion under Rule 403. The jury is fully capable of distinguishing between the DOE and Defendants, and whatever risk exists that the jury will improperly consider DOE's "deep pockets" in determining damages does not outweigh the probative value of this evidence with respect to the credibility of DOE witnesses and other evidence.[FN88]

> FN88. Indeed, it is equally plausible to assume a jury, taxpayers all, would have the opposite reaction to DOE's indemnification. My experience teaches me that jurors do neither.

Defendants' reliance on Rule 411 is also misplaced. This rule provides, as relevant here:
Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as ... bias or prejudice of a witness.

Fed.R.Evid. 411. Assuming Rule 411 applies to evidence of statutory indemnification obligations, it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

Page 77

does not bar the admission of such evidence when it is offered for a purpose other than proving the defendant's conduct was wrongful. *See id.; see, e.g., Conde v. Starlight I, Inc.*, 103 F.3d 210, 214 (1st Cir.1997); *Corbett v. Borandi*, 375 F.2d 265, 268 (3rd Cir.1967). Here, as just described, evidence of DOE's indemnification is offered for and is relevant to the possible bias or prejudice of DOE-related witnesses and evidence. Accordingly, Rule 411, even if applicable here, does not require exclusion of this evidence.

### b. Defendants' Motion in Limine No. 5

In this motion Defendants seek an order prohibiting Plaintiffs from presenting any evidence or making any reference to the DOE's classification of documents, its declassification review process and its conduct in response to discovery requests in this case. *See* Defs.' Mot. in Limine No. 5 (Doc. 1358) at 1. Defendants contend all such evidence is irrelevant and, even if it were relevant, should be excluded because it is unfairly prejudicial to them and could cause jury confusion.

This motion is denied. This case is unusual in that the DOE, a non-party, controls a great deal of the information and documents describing operations and events at Rocky Flats. Much of this information is relevant to the issues to be decided in this case, but is not available because it is classified as secret by the DOE. It is not possible for the parties to present their cases without mentioning that relevant information is classified and unavailable for use at trial.

The jury is also entitled to know the efforts Plaintiffs, or Defendants for that matter, made to obtain access to this information and why they are unable to present all of the evidence they sought. This information will assist the jury in understanding and evaluating the information, documents and other relevant evidence that is available and presented at trial regarding Rocky Flats operations and events. Defendants' concerns about undue prejudice and confusion can and will be addressed through an appropriate limiting instruction. *See* Start of Trial Instructions, No. 1.9.

*75 Discrete issues concerning specific evidence in this category will be resolved as they emerge during trial. The blanket order in limine sought by Defendants is not feasible or appropriate.

### 4. Motion to exclude certain lay witness testimony (No. 13)

Defendants here move to exclude all testimony by three lay witnesses identified by Plaintiffs: Len Ackland, W. Gale Biggs and Stuart Poet. Defs.' Mot. in Limine No. 13 (Doc. 1366).

Len Ackland is a journalism professor and author of a book on the history of Rocky Flats. Plaintiffs state they intend to call him to testify about the information about Rocky Flats that was available to the public based on the knowledge he acquired about media coverage of Rocky Flats during his book research.[FN89] Pls.' Cons.Mem. in Opp. to Defs.' Mots. in Limine (Doc. 1395) at 31. Plaintiffs also indicate Mr. Ackland may testify about the difficulties he personally encountered during his research in trying to obtain Rocky Flats-related documents and information from the DOE and other government sources. *Id.*

> FN89. Plaintiffs state they will not ask Mr. Ackland to testify to the truth of any statements found in media coverage, but rather only that these media statements were available to the public. *Id.*

Dr. Gale Biggs is a meteorologist and citizen activist who participated in several groups and projects addressing environmental issues at Rocky Flats, including the Rocky Flats Scientific Monitoring Panel (later known as the Citizens Advisory Board) appointed by Governor Romer and the Citizen's Soil Sampling Committee of the Health Advisory Panel. Plaintiffs report that Dr. Biggs will testify about the historical events surrounding his involvement with Rocky Flats, including the fact that the Governor's panel found "Rocky Flats' environmental monitoring systems inadequate in various ways. *Id.* at 32.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 78

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

Stuart Poet is a scientist who participated in the first soil sampling study that found plutonium from Rocky Flats in soil in the Class Area. Plaintiffs report that he will testify regarding the history, events and findings of this study. *Id.*

Each of these witnesses' proffered testimony is relevant to facts of consequence to the determination of this action. I am not persuaded by Defendants' arguments that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice or confusion of the issues, if any, that might result from its presentation.

Defendants also argue the testimony of each of these witnesses must be excluded because it consists entirely of lay opinions that do not meet the requirements of Federal Rule of Evidence 701, Rule 701 provides that a lay witness may testify in the form of opinions or inferences when these opinions or inferences are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701.

Rule 701 by its terms only concerns opinion testimony by a lay witness, and thus has no application to lay witness testimony that is factual in nature. *See United States v. Caballero,* 277 F.3d 1235, 1247 (10th Cir.2002) (testimony regarding facts experienced or observed by witness proffers no opinion, lay or expert). The anticipated testimony of Mr. Ackland, Dr. Biggs and Mr. Poet, as described by Plaintiffs, is largely if not entirely factual in nature and thus is not subject to the requirements for admission of lay opinion testimony. [FN90] If these witnesses offer any opinion testimony at trial, I will decide at that time whether it is admissible under Rule 701.

> FN90. That each of these witnesses may have specialized knowledge in journalism or science does not automatically require that their testimony be reviewed as lay or expert opinion testimony under Rule 701 or 702. *See* Fed.R.Evid.701 2000 advisory committee's note (Rule 701 "does not distinguish between expert and lay *witnesses,* but rather between expert and lay *testimony.*") (emphasis in original); *Caballero,* 277 F.3d at 1247 ("Witnesses need not testify as experts simply because they are experts-the nature and object of their testimony determines whether the procedural protections of Rule 702 apply.").

*\*76 For the reasons stated above, Defendants' motion to exclude these witnesses' testimony is denied.

5. Motion to exclude evidence regarding remediation costs (No. 16)

In this motion, Defendants seek to exclude all evidence or mention of the actual or estimated cost of dismantling and cleaning up the Rocky Flats plant and plant site, and to exclude evidence of costs incurred by Defendants to remediate environmental conditions at the site during their periods of operation. *See* Defs.' Mot. in Limine No. 16 (Doc. 1369). This motion is granted.

Plaintiffs assert this cost evidence is relevant to inform the jury of the severity of contamination and the difficulty of cleaning it up, which they contend are relevant to the question of whether the plant poses a continuing threat of off-site releases. Evidence regarding the cost of remedial efforts at the plant, however, is at best indirect evidence of these matters and has relatively little probative value with respect to the material question (in the nuisance context) of whether conditions arising from Defendants' Rocky Flats operations pose a future risk of harm to the Class.

The low probative value of this evidence must be balanced against the risk of unfair prejudice and confusion of the issues it presents. I find this risk is significant, because the sheer cost of just the post-operation cleanup, reportedly estimated to be as high as $7.6 billion, may overwhelm and inflame the jury and distract it from consideration of other,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 79

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

more probative evidence. As a result, I find the risk of undue prejudice and confusion posed by this evidence substantially outweighs its low probative value, and therefore exclude it pursuant to Rule 403.

II. Plaintiffs' *Daubert* Motion and Motion in Limine

In their *Daubert* motion, Plaintiffs move to exclude the testimony of five of the eighteen or more experts designated by Defendants and to limit the testimony of six other defense experts in certain respects. *See* Pls.' Mem. in Supp. of Mot. to Exclude Test. of Certain Defense Expert Witnesses (Doc. 1351) [hereinafter "Pls.' *Daubert* Mot."]. In their motion in limine, Plaintiffs seek to exclude certain additional expert and lay evidence. *See* Pls.' Omnibus Mot. in Limine (Doc. 1341) [hereinafter " Pls.' Mot. in Limine"]. I address both motions below, beginning with Plaintiffs' arguments to exclude or limit certain expert testimony, and then proceeding to their motion in limine.

A. Request to Exclude Certain Expert Testimony in its Entirety

Plaintiffs move to exclude all expert testimony proffered by defense witnesses Daniel Conway, John Dorchester, Geneva Smart and Dr. Jack Holl. I examine the proposed testimony of each witness in turn.

1. Daniel Conway

Daniel Conway is an urban economist and the president, principal and director of economic and market research for a Denver area firm. He holds an Urban Land Economics degree from the University of Wisconsin, has served as an honorarium instructor at local universities and has published many articles on various topics. App. to Pls.' Mot. to Exclude Test. of Certain Defense Expert Witnesses (Doc. 1352) [hereinafter "App. to Pls.' *Daubert* Mot."], Tab 3 at 13-14, Tab 4 at 27-28 (Conway statement of qualifications).

\*77 In 1996, Mr. Conway authored a 14-page expert report in this litigation opining that the Rocky Flats plant had not adversely affected the value of undeveloped real estate and improved commercial real estate in the Class Area. *See* App. to Pls.' *Daubert* Mot. (Doc. 1352), Tab 3 [hereinafter "Conway Report"]. Mr. Conway stated the basis of this opinion was his "experience and the data typically relied upon by developmental forecasters." *Id.* at 1. These data reported employment growth, population growth, household formations, retail/commercial construction and the addition of office and industrial space in the Class Area and surrounding communities from 1980 to 1996. *Id.* at 1-2. Mr. Conway concluded that, in terms of these "indicators," undeveloped properties and developed commercial properties in the Class Area performed at least as well, if not better, than those in the northwest Denver area, Jefferson County and the Denver metro region. *Id.* at 1. Based on this conclusion, he further opined that Rocky Flats had had no effect on the value of undeveloped and commercial properties in the Class Area from the plant's 1954 inception through 1996. *Id.*

In 2004, Mr. Conway authored a supplemental expert report updating his 1996 report and conclusions to include data from 1997 through mid-2004. App. to Pls.' *Daubert* Mot. (Doc. 1352), Tab 4 [hereinafter "Conway Suppl. Report"]. In it Mr. Conway reiterated his opinion that Rocky Flats had not adversely affected the value of undeveloped and commercial properties in the Class Area. *Id.* at 1. Mr. Conway further reported that he had recently interviewed and/or reviewed the deposition transcripts of a number of public officials, developers, builders and other stakeholders doing business in the Class Area and that these interviews and depositions demonstrated that Rocky Flats had not diminished the pace of development and construction in the Class Area or negatively impacted the value of homes, commercial buildings or land in the area. *Id.* at 25.

The proponent of an expert witness has the burden of demonstrating that the expert's testimony is sufficiently reliable to be admitted under Rule 702. *See Mitchell,* 165 F.3d at 781-82; *Ralston,* 275 F.3d at 970 n. 4. "The expert's assurance that the methodology and supporting data is reliable will not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 80

Slip Copy, 2006 WL 3533049 (D.Colo.)
**(Cite as: Slip Copy)**

suffice" to carry this burden. *Mitchell*, 165 F.3d at 781.

Plaintiffs move to exclude Mr. Conway's testimony on the ground that neither he nor Defendants have demonstrated that his opinion regarding Rocky Flat's effect on Class Area property values is the product of a reliable methodology. I agree and find Defendants have not carried their burden of demonstrating that Mr. Conway's testimony is sufficiently reliable to be admitted under Rule 702.

As just described, Mr. Conway's opinion that Rocky Flats has had no adverse impact on the value of undeveloped and commercial properties in the Class Area is based primarily on his evaluation of five " indicators." Although he states these indicators are " typically relied upon by development forecasters," Conway Report at 1; Conway Suppl. Report at 1, neither he nor Defendants provide any support, other than Mr. Conway's assurance, for this statement. Nor do Mr. Conway and Defendants explain how the work of "development forecasters" relates to the question of whether Rocky Flats has affected Class Area property values.

*78 Fundamentally, therefore, Mr. Conway and Defendants have failed to show that Mr. Conway's methodology of determining and comparing the rate of population, job and development growth in the Class Area, Jefferson County and the Denver metro area provides a reliable basis for his expert opinion that Rocky Flats has not negatively affected property values in the Class Area. The question to be decided by the jury is not whether Rocky Flats (or, more properly, Defendants' trespass and/or nuisance) negatively affected growth and development in the Class Area, but whether the *value* of residential, commercial and undeveloped property in the Class Area has been harmed by this conduct. While the rate of growth and development in the Class Area may have some relevance to this question, Mr. Conway and Defendants do not explain that relevance or, more importantly, demonstrate how a comparison of these data for a limited period of time is a reliable method for opining that Rocky Flats has had no adverse impact on property values in the Class Area. Without a linkage between these "indicators," real estate values, and Rocky Flats, there is, in the words of the Supreme Court, "simply too great an analytical gap between the data and the opinion proffered" for Mr. Conway's testimony to be admitted. *Joiner*, 522 U.S. at 146.

To the extent Mr. Conway relied on his experience to reach his conclusions on value, Rule 702 requires that he "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir.2003) (quoting Fed.R.Evid. 702 2000 advisory committee's note). Mr. Conway did not provide this explanation and therefore no showing was made that his proposed testimony rests on a reliable foundation as required by Rule 702.[FN91] *See id.*

> FN91. Mr. Conway's reliance in his 2004 supplemental report on the interviews and review of deposition testimony he later conducted does not change this conclusion. Neither this methodology nor the results of it were disclosed as a basis for Mr. Conway's expert opinion in his 1996 report. Supplementing Mr. Conway's report some eight years later to include this methodology and material exceeds the bounds of permissible supplementation of expert testimony under the Federal Rules. *See infra* Section II.B.1 (regarding challenge to Dr. Whicker's supplemental expert disclosures). A party that fails to disclose information as required by Rule 26(a) is not permitted to use such information at trial unless the party's failure to disclose was substantially justified or harmless. Fed.R.Civ.P. 37(c)(1). As Mr. Conway's improper supplementation to include this additional material is neither substantially justified nor harmless at this late stage of the case, I will not consider it here.

Defendants argue that certain of Mr. Conway's testimony regarding the pace of development in the Class Area relative to other areas should be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.