Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2002 WL 1974046 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
O'Shea v. WelchD.Kan.,2002.Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
John O'SHEA, Plaintiff,
v.
Anthony J. WELCH, Defendant.
Case No. 01-2336-JWL.

Aug. 15, 2002.

### MEMORANDUM & ORDER

JOHN W. LUNGSTRUM, District Judge.

*1 This personal injury case arises out of an automobile accident in which the car that plaintiff was driving was struck by a car driven by defendant Anthony J. Welch. Previously, the court issued an order dismissing plaintiff's complaint as to another defendant, American Drug Stores, Inc. d/b/a Osco Drug, on the grounds that no reasonable jury could conclude based on the uncontroverted facts that Mr. Welch, an employee of Osco Drug, was acting within the course and scope of his employment at the time of the accident. Plaintiff and defendant have now stipulated that Mr. Welch was negligent and caused the accident and that no other party caused or contributed to the accident. During the pretrial conference, defendant further stipulated to entry of judgment against him for the amount of damages determined and awarded by the court at trial and that defendant would not present any affirmative evidence at trial or cross-examine any of plaintiff's witnesses.

Pursuant to the parties' stipulation, a trial on the issue of the amount of plaintiff's damages was held to the court on August 13, 2002. Defendant appeared at trial through his counsel and the intervenor, Farmers Insurance Company, Inc. (plaintiff's underinsured motorist carrier), also appeared at trial through counsel. The court notes at the outset that the "trial" was more akin to a default judgment hearing in that defendant, consistent with the approach he described at the pretrial conference, did not object to any evidence introduced by plaintiff, did not otherwise challenge or attempt to contest any evidence introduced by plaintiff, did not attack plaintiff's credibility or the credibility of any of plaintiff's witnesses, and did not present any evidence on his own behalf. Similarly, the intervenor did not contest in any way the evidence presented by plaintiff at trial. Thus, while the court, in reviewing the record, finds grist for cross-examination and questions whether it would arrive at the same result in a true adversary proceeding, it declines to pursue theories or arguments that defendant or the intervenor might have pursued but, for whatever reason, elected not to pursue. Thus, the court, finding that the damage amounts claimed by plaintiff have a sufficient evidentiary basis, awards plaintiff the full amount of damages claimed at trial and summarized below.

Following the accident, plaintiff was evaluated and treated by Dr. Douglas Burton, an orthopedic surgeon. Dr. Burton, by affidavit, testified that while plaintiff had a significant history of lumbar spine problems, new and increased lumbar and lower extremity symptoms presented following the accident consistent with the aggravation and exacerbation of pre-existing arthritic conditions in his spine. Dr. Burton further testified that plaintiff experienced new and increased cervical and upper extremity symptoms following the accident consistent with new cervical injury and/or the aggravation and exacerbation of pre-existing conditions in plaintiff's cervical spine.

*2 Dr. Burton testified that plaintiff has received necessary and appropriate medical care for his post-accident lumbar and cervical complaints. According to Dr. Burton, the medical evaluations, diagnostic services and treatments provided for plaintiff's physical injury complaints stemming from the accident have been reasonable and necessary and the expenses for such services and treatments

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                  Page 2

Not Reported in F.Supp.2d, 2002 WL 1974046 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

are usual and customary within the community. According to plaintiff, his medical expenses relating to the accident, at the time of trial, total $27,986.12. Neither defendant nor the intervenor objected to this figure or otherwise challenge Dr. Burton's testimony in any respect.

Dr. Burton further testified that plaintiff continues to receive and will require future necessary and appropriate medical and/or surgical care for his post-accident lumbar and cervical complaints. In that regard, Tracy Wingate, a qualified expert life care planner, testified that she discussed and confirmed the future medical needs of plaintiff through communications with Dr. Burton. Based on these communications, Ms. Wingate projects that plaintiff will incur future medical expenses in the amount of $236,517.66. According to Ms. Wingate, this amount is reasonable and necessary for the diagnosis, care and treatment of plaintiff's physical injuries caused or pre-existing conditions aggravated by the car accident. Of course, neither defendant nor the intervenor chose to cross-examine Ms. Wingate and nor did they object to the Life Care Plan prepared by Ms. Wingate. In the absence of any showing or suggestion that Ms. Wingate's testimony lacks credibility or that the Life Care Plan prepared by Ms. Wingate was unreasonable or otherwise unreliable, the court accepts Ms. Wingate's testimony and the damage amounts reflected in the Life Care Plan.

Plaintiff's evidence concerning past and future lost earnings came from plaintiff's own testimony. In that regard, plaintiff testified that prior to the accident, he had been physically disabled for several years due to fractures and injuries to his left foot that required several surgeries; chronic knee joint problems; and significant problems with his lower back. In August 1999, however, plaintiff agreed to have surgery on his lower back to alleviate problems and pain that were limiting his ability to return to full-time work. Just three weeks prior to the automobile accident with defendant, plaintiff underwent an extensive but successful surgery. According to plaintiff, he "felt like an 18-year-old kid again" after the surgery. Shortly thereafter, plaintiff was doing light duty work and no longer needed pain medications. In light of plaintiff's immediate and substantial improvement following his surgery, he and his health care providers discussed and anticipated plaintiff returning to full-time employment, with reasonable restrictions, in approximately six weeks.

At the time of his surgery, and for approximately ten years prior to that time, plaintiff was self-employed and owned a business that was primarily engaged in providing minor home repair and inspection services to real estate companies. After the September 1999 accident, plaintiff was unable to return to this or any employment and, as a result, suffered and continues to suffer lost earnings. Dr. Burton's affidavit supports the conclusion that plaintiff remains and is likely to remain significantly impaired by physical restrictions and disabilities. Plaintiff testified at trial that he believes he has lost $1000.00 per month in earnings since the accident, or a total of $35,000.00. In terms of future lost earnings, plaintiff testified that he believed he could have cleared $3000.00 per month, as by that time he would have fully recovered from his August 1999 surgery and would have had an opportunity to rebuild his business. In light of evidence presented that plaintiff planned to work until the age of 65, plaintiff's future lost earnings total $465,000.00. Again, neither defendant nor the intervenor challenged any of plaintiff's evidence regarding past or future lost earnings.

*3 Finally, plaintiff testified that he has endured a significant amount of pain and suffering since the automobile accident. Plaintiff explained that he is unable to stand or lie down without a great deal of discomfort. He cannot mow his own lawn. He cannot stand at the sink to do dishes without experiencing great pain in his legs. He is forced to sleep each night in a recliner because it hurts too badly to lie down. He cannot engage in certain activities with his children, such as playing catch. He now enjoys virtually no social life and stays at home. In sum, plaintiff testified that he is uncomfortable all the time. In the absence of any showing from defendant or the intervenor to the contrary, plaintiff's testimony easily supports an award of $250,000.00 for pain and suffering.

**IT IS THEREFORE ORDERED BY THE**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 1974046 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

**COURT THAT** judgment be entered in favor of plaintiff John O'Shea on his negligence claim against defendant Anthony J. Welch in the amount of $27,986.12 for past medical expenses; $236,517.66 for future medical expenses; $35,000.00 for past lost earnings; $465,000.00 for future lost earnings; and $250,000.00 for pain and suffering. The court directs the clerk to enter judgment in favor of plaintiff against defendant in the amount of $1,014,503.70.

**IT IS SO ORDERED.**

D.Kan.,2002.
O'Shea v. Welch
Not Reported in F.Supp.2d, 2002 WL 1974046 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2:01cv02336 (Docket) (Jul. 09, 2001)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.