341

1   Q.    You said yesterday -- I think -- that you
2   take Tylenol medication. Is that true?
3   A.    Every once in a while.
4   Q.    How often?
5   A.    Sometimes if I have pain, I take it for a
6   full day, and then I try and talk myself into thinking
7   that there is -- the pain is gone, but it's very
8   difficult.
9   Q.    Is that Tylenol that you can buy at the
10  store without a prescription?
11  A.    Yes.
12  Q.    You said yesterday also that you had taken
13  some medication a week or two ago for the flu; is that
14  right?
15  A.    Yes.
16  Q.    With the exception of that medication that
17  you took a week or two ago for the flu, are you taking
18  any other prescription medications?
19  A.    Not anymore. I was taking something that
20  that doctor had prescribed for me for the pain, but she
21  said not to take it anymore because it was not having an
22  effect.
23  Q.    Can you tell me, are there any medical bills
24  that you incurred as a result of your leg that have not
25  been paid?

342

1   A.    Yes.
2   Q.    Can you tell me how much, in terms of
3   dollars, is outstanding or that has not been paid?
4   A.    I don't have an exact figure, but I could
5   give you an estimate of maybe $800,000 or more.
6   Q.    Has anyone paid any of the medical bills on
7   your behalf?
8   A.    I don't know, but I think so. I don't
9   remember, though.
10  Q.    Who paid -- who do you think paid medical
11  bills on your behalf?
12  A.    I don't know who it would have been. I
13  don't know what the person's name would have been, but
14  somebody called me from the hospital or the finance
15  company or finance office and said something like there
16  had been a payment made of something like $200,000, but I
17  don't know who.
18  Q.    Do you know if the Mexican government paid
19  that on your behalf?
20  A.    I don't think so, but I don't know.
21  Q.    You don't know what organization -- you said
22  you don't have the name of an individual, but do you know
23  what organization paid that on your behalf?
24  A.    I'm not sure b[...]             [...]e
25  person very well, but I [...]              [...]een

PLAINTIFF'S
EXHIBIT
4

343

1   immigration. I don't know. I don't know.
2   Q.    I want to clear up, I guess, my
3   understanding of your education. How old were you when
4   you stopped attending school?
5   A.    Might have been around 16 years, more or
6   less. 16, maybe 17. I don't remember.
7   Q.    Have you applied for a work permit here in
8   the United States?
9   A.    No, sir.
10  Q.    Why did you retire from your job as a police
11  officer?
12      MR. KORDICK: Asked and answered.
13  A.    You want me to answer it again?
14  Q.    (BY MR. SARGENT) Please.
15  A.    Well, people in Mexico -- well, it's like
16  they don't recognize the risk that you're taking. You
17  risk your life, and what you get for it doesn't make any
18  sense, and you risk a lot, and you don't really get
19  anything for it, so it doesn't make sense.
20  Q.    Why did you stop your job selling shoes?
21  A.    Because I bought a taxi and started as a
22  taxi driver.
23  Q.    Why did you stop then being a taxi driver?
24  A.    I went to go into the Army.
25      MR. SARGENT: I think those are all of my

344

1   questions today. I appreciate your time and your
2   patience over the last two days. Thank you very much.
3       THE DEPONENT: (Through Interpreter): Thank
4   you to everyone.
5       MR. RINGEL: I have two.
6       MR. KORDICK: These don't deal with
7   McDonald's prices, do they?
8       MR. RINGEL: Close but no cigar.
9           EXAMINATION
10  BY MR. RINGEL:
11  Q.    What is the address of the Wal-Mart where
12  you got your glasses?
13  A.    It's over there on 92nd and Grant, Thornton,
14  Washington, around there.
15  Q.    Is there more than one Wal-Mart in Thornton,
16  or is there only one in Thornton?
17  A.    Just one.
18  Q.    You -- in response to a question that Mr.
19  Sargent asked you, you talked about that your father was
20  processing paperwork for you. What were you referring
21  to?
22  A.    He filed a petition for residency for me.
23  Q.    Residency in the United States?
24  A.    Yes, sir.
25  Q.    For you to become a resident alien; is that

Pages 341 to 344

[...]NFIDENTIALITY DESIGNATIONS   *

345

1  correct?
2    A.   Yes.
3    Q.   Did he also fill out paperwork for you to
4  become an individual who was allowed to work in the
5  United States?
6    A.   I don't know, sir.
7    Q.   When did your father submit -- let me ask
8  you this: Do you know whether your father submitted that
9  paperwork on your behalf?
10   A.   I don't know if he did that or not, but I
11 think he did.
12   Q.   What was the date of your father's death?
13   A.   It was in 2002. I don't remember the date.
14   Q.   So if he submitted paperwork on your behalf,
15 it was prior to his death in 2002, correct?
16   A.   True.
17   Q.   Did you ever hear from anyone about the
18 status of any paperwork that was submitted by your father
19 on your behalf?
20   A.   No.
21   Q.   Do you still have a copy of your State of
22 Mexico driver's license today?
23   A.   Not a copy.
24   Q.   Do you have the original?
25   A.   Yes, sir.

346

1        MR. RINGEL: I don't have any further
2  questions. Thank you. Gentlemen?
3        MR. ARCHULETA: Nothing.
4        THE REPORTER: Lloyd, are you handling
5  signature?
6        MR. KORDICK: Yeah. Now, you've done that
7  in Spanish and English both?
8        WHEREUPON, the within proceedings were
9  concluded at the approximate hour of 4:48 p.m. this 17th
10 day of January, 2006.
11        *       *       *
12
13
14
15
16
17
18
19
20
21
22
23
24
25

347

CERTIFICATION

I, THERESA A. COFFMAN, Federal Certified
Realtime Reporter, appointed to take the deposition of
        MOISES CARRANZA-REYES,
certify that prior to the deposition the witness was
sworn by Laura Corning to tell the truth; that the
deposition was taken by us at 1125 17th Street, Suite
600, Denver, Colorado 80202 on January 17, 2006; that the
proceedings were reduced to typewritten form by
computer-aided transcription consisting of 98 pages
herein; that the foregoing is an accurate transcript of
the proceedings.

        I certify review of the transcript was
requested.

        I further certify I am not related to any
party herein nor their counsel and have no interest in
the result of this litigation.

        IN WITNESS WHEREOF, I have hereunto set my
hand this 27th day of January, 2006.


_____
THERESA A. COFFMAN
Federal Certified Realtime Reporter

348

SIGNATURE OF WITNESS
    I, MOISES CARRANZA-REYES, do hereby certify
that I have read the deposition and that the foregoing
transcript and accompanying change sheets, if any,
constitute a true and complete transcript of my
testimony.


_____
MOISES CARRANZA-REYES
    Date Read and Signed:_____

SUBSCRIBED AND SWORN TO before me this ____ day of
_____, _____.

    ( ) Changes attached     ( ) No changes


_____
NOTARY PUBLIC

    Address: _____

    _____

    My commission expires: _____


Re: Carranza-Reyes v. Park County, et al.
Date of Deposition: January 17, 2006
Trial Date: None set
Volume: II
Reporter: TC
Proofer: MKH
Audio: SC

*  SUBJECT TO CONFIDENTIALITY DESIGNATIONS  *