EXHIBIT A-46

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 2005-WM-377 (BNB)

---

DEPOSITION OF:  DON STANLEY FRYE
November 1, 2005

---

MOISES CARRANZA-REYES,

Plaintiff,

v.

PARK COUNTY, a public entity of the State of Colorado and its governing board, THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; PARK COUNTY SHERIFF'S OFFICE, a public entity of the State of Colorado; FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado; MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado; JAMES BACHMAN, M.D., individually and in his official capacity as Medical Director of the Park County Jail,

Defendants.

---

TAKEN PURSUANT TO NOTICE AND AGREEMENT on behalf of the

Plaintiff at 824 Castello, Fairplay, Colorado 80440 at 9:00

a.m. before Theresa A. Coffman, Federal Certified Realtime

Reporter, Registered Professional Reporter and Notary Public

within Colorado.

```
 1     questions that you ask that patient?
 2               MS. LEWIS:  Object to the form.
 3          A.   I have a common set of questions I ask in
 4     any medical situation.
 5          Q.   (BY MR. TRINE)  Okay.  Let's get back to you
 6     considered quarantining Carranza-Reyes; is that right?
 7               MS. VEIGA:  Objection to the foundation.
 8          A.   I don't recall whether I did or not.  That
 9     was your synopsis.
10          Q.   (BY MR. TRINE)  Well, I'm sorry.  I thought
11     you did consider that.
12          A.   I didn't say that.  I said I may have; I
13     don't recall.
14          Q.   Okay.
15          A.   But I didn't consider it to be something I
16     needed to do, based on the medical questions that I asked
17     him.
18          Q.   Were you at all concerned that you had a
19     bunch of sick people in Pod D with 61 people in there?
20     Were you concerned about that?
21               MS. VEIGA:  Objection to form and
22     foundation.
23          A.   Certainly.
24          Q.   (BY MR. TRINE)  Why?
25          A.   It's the humane thing to do, to be concerned
```

62

1    about medical conditions of prisoners.

2         Q.    Okay.  I don't know anything about your

3    background.  Did you feel sorry for those folks?

4               MS. LEWIS:  Object to the form.

5         A.    Feel sorry for anyone who is sick.

6         Q.    (BY MR. TRINE)  I asked if you felt sorry

7    for the detainees in Pod D who were sick.

8         A.    I have compassion for that, yes.

9         Q.    Did you do anything for them that you

10   recall?

11              MS. VEIGA:  Objection to form and

12   foundation.

13        A.    I supplied, on request, what I was allowed

14   to give as a deputy.

15        Q.    (BY MR. TRINE)  You followed the

16   protocols --

17        A.    Followed procedures.

18        Q.    You followed the procedures or protocols on

19   what medications to administer, right?

20        A.    That's correct, other than what normally

21   went on on med pass, which was three times a day.

22        Q.    And you were limited to what you could do

23   based on those protocols; is that right?

24              MS. VEIGA:  Objection, foundation.

25              MR. JURS:  Object to form.

63

1     A.     I wouldn't say limited, because if I have a
2  situation I am concerned about, I have procedures to call
3  the nurse and let them know.
4     Q.     (BY MR. TRINE)  Do you remember calling the
5  nurse on the night of March 6 or the night of March 7
6  with any of your concerns?
7     A.     I wouldn't have made the call.  I would have
8  reported it to control.  Control would have made the
9  call.
10    Q.     Do you remember reporting to control any of
11 your concerns on the night of March 6 or March 7?
12    A.     I reported to control my observations and
13 also reported that I took Carranza-Reyes back to medical
14 for oxygen.
15    Q.     Excuse me.  That did not happen on March 6
16 or March 7.
17    A.     Okay.
18    Q.     That happened on the night of March 8, so
19 let's get back to on the night of March 6 and the night
20 of March 7.  Did you report your concerns to control or
21 your supervisor?
22    A.     I don't recall what concerns I had at that
23 point.
24           MS. LEWIS:  Counsel, could I ask for
25 clarification?  Because I thought he left the morning of

64

1    March 8, so this would have been the night of March 7,
2    not the night of March 8 as you just stated. Are you
3    meaning to ask him about --
4              MR. TRINE:  No, he left -- Carranza-Reyes
5    left at 11:45 the morning of March 8.
6              MS. LEWIS:  Correct.
7              MR. TRINE:  Not the night of March 7.
8              THE DEPONENT:  I'm answering that based on
9    my shift, which would have been on the 7th, which is what
10   I'm understanding what you're asking about.
11       Q.    (BY MR. TRINE)  Okay.  Did you report your
12   concerns on the night of March 6?
13             MS. VEIGA:  Objection, form and foundation.
14       A.    I would have reported what I did, or if I
15   had felt that somebody's condition was getting worse, I
16   would have reported that, yes.
17       Q.    (BY MR. TRINE)  Now, do you have a distinct
18   memory of interviewing sick detainees in Pod D with an
19   interpreter on the night of March 6?
20       A.    Specifically to that date?
21       Q.    Right.
22       A.    I don't recall.  I've done that hundreds of
23   times in two and a half years.
24       Q.    If you did that, would you record it
25   somewhere?