3/15/2006 Keeling, D.O., Timothy Barnes

```
 1    IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
 2    Case No. 2005-WM-377 (BNB)
 3    _____
 4    DEPOSITION OF:  TIMOTHY BARNES KEELING, D.O. March 15, 2006
 5    _____
 6    MOISES CARRANZA-REYES,
 7    Plaintiff,
 8    v.
 9    PARK COUNTY, a public entity of the State of Colorado and its governing board,
10    COMMISSIONERS; PARK COUNTY SHERIFF'S OFFICE, a public entity of the State
11    individually and in his official capacity as Sheriff of Park County, Colorado;
12    his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSE
13    official capacity as Registered Nurse for Park County, Colorado; JAMES BACHMAN,
14    official capacity as Medical Director of the Park County Jail,
15    Defendants.
16    _____
17
18
19    TAKEN PURSUANT TO NOTICE on behalf of the Defendants at
20    340 Peak One Drive, Frisco, Colorado at 1:45 p.m. before
21    Laura L. Corning, Federal Certified Realtime Reporter,
22    Certified Shorthand Reporter and Notary Public within
23    Colorado.
24
25
```

Page 1

3/15/2006 Keeling, D.O., Timothy Barnes

```
 1                       I N D E X
 2    EXAMINATION OF TIMOTHY BARNES KEELING, D.O.        PAGE March 15,
 3    By Mr. Trine                                          83
 4    By Mr. Ringel                                         60
 5    By Mr. Marks                                          42
 6    By Mr. Jurs                                         4, 108
 7    By Mr. Murray                                         --
 8
 9                                              INITIAL DEPOSITION EX
10                                                         65
11    (Original exhibits attached to original transcript;
12    indcopies included in continuing exhibit file maintained by Coffman Rep
13    requested.)
14
15    REQUESTED PORTIONS OF TESTIMONY:                    PAGE
16    Request for document production                43, 74 or informat
17
18    REFERENCES TO EXHIBITS MARKED PREVIOUSLY:
19    EXHIBIT NO.      PAGE REFERENCE
20         24              6
21
22
23
24
25
```

Page 3

3/15/2006 Keeling, D.O., Timothy Barnes

```
                       APPEARANCES
 1
 2    For the Plaintiff:      WILLIAM A. TRINE, ESQ.
 3                            1435 Arapahoe
                              Boulder, Colorado
 4    For the Defendants      ANDREW D. RINGEL, ESQ.
 5    Park County, Park       Hall & Evans, LLC County Board of
 6    Commissioners, Park     Suite 600 County Sheriff's Office, Denver, Colorado
 7    Wegener and Gore:
 8    For the Defendant       JOSH MARKS, ESQ. Paulsen:
 9                            1712 Pearl Street
                              Boulder, C
10    For the Defendant       ANDREW W. JURS, ESQ.
11    Bachman:                Johnson McConaty & Sargent, P.C.
12                            Suite 900
                              Glendale, Colorado
13    For the Deponent:       RICHARD L. MURRAY, JR., ESQ.
14                            Montgomery Little Soran Murray
15                            5445 DTC Parkway
                              Suite 1500
16                            Englewood, Colorado 80111
17    Also Present:           None
18
19
20
21
22
23
24
25
```

Page 2

3/15/2006 Keeling, D.O., Timothy Barnes

```
 1           WHEREUPON, the within proceedings were taken
 2    pursuant to the Federal Rules of Civil Procedure
 3           TIMOTHY BARNES KEELING, D.O.,
 4    having been first duly sworn to state the whole truth,
 5    was examined and testified as follows:
 6           EXAMINATION
 7    BY MR. JURS:
 8           Q.  Good afternoon, Dr. Keeling.  My name is
 9    Andrew Jurs and I represent Dr. Bachman in this case.  We
10    met each other just a moment ago before the deposition
11    started.  I'm going to be asking you questions about your
12    involvement in this lawsuit, if I could.
13           MR. MURRAY:  Let me interrupt a minute.  I
14    have a short comment that I'd like to put on the record
15    for everybody, just to make sure everybody is on the same
16    page, at least with me, about what's going to happen
17    today.
18           Dr. Keeling is here today.  He's available
19    to provide testimony about his care and treatment, the
20    records that he's familiar with regarding his emergency
21    department contact.  It is not his desire to formulate or
22    provide opinions regarding care that occurred before he
23    was involved with the patient or for care that occurred
24    after he was involved with the patient.  Although I'm
25    sure you all know there are a couple of records that came
```

Page 4

Paulsen's A-22

3/15/2006 Keeling, D.O., Timothy Barnes

1   Q.   Starting three lines from the bottom of that
2   paragraph and ending two lines, there is a sentence which
3   states, "The patient had mild cold symptoms for the past
4   week." Do you see that sentence?
5   A.   Yes.
6   Q.   Where did you learn that information?
7   A.   From the interview of the patient.
8   Q.   That's what the patient told you, then?
9   A.   Or the nurse. Us.
10  Q.   When you use the language "mild cold
11  symptoms," what does that mean to you as a physician?
12  A.   To me it means runny nose, possibly a sore
13  throat.
14  Q.   Anything else?
15  A.   Sometimes earache.
16  Q.   In the Chief Complaint section there is also
17  other information. Does this paragraph as a whole
18  accurately reflect what you saw of the patient at the
19  time you saw him on March 8, 2003?
20  A.   I'm sorry. Direct me to where we're
21  looking.
22  Q.   The Chief Complaint paragraph, page 2, at
23  the top, starting "Patient complains of" and ending "for
24  the past three days."
25  A.   And your question one more time.

25

3/15/2006 Keeling, D.O., Timothy Barnes

1   Q.   There is a description of the patient's
2   condition in that paragraph, and I'm wondering if that
3   description accurately reflects what you observed of the
4   patient on March 8, 2003.
5   A.   Yes.
6   Q.   Further down, let's see, there is the Review
7   of Symptoms and then there is Physician Exam, and
8   directly below that is a line that says, "Patient status:
9   Alert and cooperative." Do you see that on page 2?
10  A.   Yes.
11  Q.   What does "Alert and cooperative" mean?
12  A.   Just as it says. The patient was alert and
13  he was cooperative.
14  Q.   So he's conscious and able to answer
15  questions?
16  A.   Yes.
17  Q.   He is alert and cooperative means he is not
18  in shock; is that true?
19  A.   Yes.
20  Q.   Not in critical condition?
21  A.   That's true.
22  Q.   When you saw the patient, you took the
23  history, you did the exam. At what point did you
24  determine that you needed to have blood tests or other
25  lab work done?

26

3/15/2006 Keeling, D.O., Timothy Barnes

1   A.   At that same time.
2   Q.   So that was as a result of that examination
3   and history?
4   A.   Yes.
5   Q.   When you ordered tests, what did you order?
6   A.   Refer back to page 1. Reading from the top
7   to the bottom, EKG; IV lactated Ringer's times two;
8   Levaquin, 500 milligrams IV; Tylenol, 750 milligrams
9   oral; CBC; chemistry 22; blood culture and sensitivity
10  times two; chest X-ray.
11  Q.   And you're referring to page 1 in answering
12  that question?
13  A.   Yes.
14  Q.   Did you order the variety of tests that you
15  just listed at the same time or at different times?
16  A.   At different times.
17  Q.   Could you tell me the order in which you
18  made that -- those orders?
19  A.   The blood work would have been obtained at
20  the same time as the IV was started. The EKG, I don't
21  recall exactly if it was before or after the IVs. The
22  blood -- the chest X-ray was sometime within that
23  process. And lastly, the blood cultures were done last
24  with the antibiotics, the Levaquin being administered
25  after the blood cultures.

27

3/15/2006 Keeling, D.O., Timothy Barnes

1   Q.   So the blood culture was the last diagnostic
2   test of the list of tests that you went over a moment
3   ago, and as a result of that you ordered Levaquin?
4   A.   The blood cultures was the last diagnostic
5   test, yes. The Levaquin, the antibiotic, was
6   administered after the blood cultures are obtained but
7   not necessarily as a consequence of the blood culture, as
8   those results would not be available until a later date.
9   Q.   I understand. So prior to -- strike that.
10  Are you able to estimate what time you would have ordered
11  the Levaquin in this case?
12  A.   My estimation is after 3:00 p.m.
13  Q.   And prior to the Levaquin being ordered at
14  approximately 3:00 p.m. -- or after 3:00 p.m. I'm not
15  sure -- the patient had received just Tylenol, isn't that
16  the case, as a medication?
17  A.   Well, if you exclude oxygen and lactated
18  Ringer's.
19  Q.   The patient would have received oxygen,
20  lactated Ringer's and Tylenol.
21  A.   Yes.
22  Q.   Got it. What are the lactated Ringer's for?
23  A.   That's an IV fluid for volume expansion.
24  And I'll add that he also received potassium chloride,
25  20 milliequivalents orally.

28

3/15/2006 Keeling, D.O., Timothy Barnes

```
 1                C E R T I F I C A T I O N
 2          I, LAURA L. CORNING, Federal Certified
 3   Realtime Reporter and Certified Shorthand Reporter,
 4   appointed to take the deposition of
 5          TIMOTHY BARNES KEELING, D.O.,
 6   certify prior to the deposition the witness was sworn by
 7   me to tell the truth; that the deposition was taken by me
 8   at 340 Peak One Drive, Frisco, Colorado on March 15,
 9   2006; that the proceedings were reduced to typewritten
10   form by computer-aided transcription consisting of 110
11   pages herein; that the foregoing is an accurate
12   transcript of the proceedings.
13          I certify review of the transcript was not
14   requested on the record.  I further certify I am not
15   related to any party herein or their counsel and have no
16   interest in the result of this litigation.
17          IN WITNESS WHEREOF, I have hereunto set my
18   hand this 22nd day of March, 2006.
19
20   _____        LAURA L. CORNING
21        Federal Certified Realtime Reporter     Certified Shorthand Reporter
22   Re:  Carranza-Reyes v. Park County
23   Date of Deposition:  March 15, 2006 Trial Date:  None set
24   Volume:  -- Reporter:  LC
25   Proofer:  MKH/Audio:  SC
```

3/15/2006 Keeling, D.O., Timothy Barnes

```
 1      COFFMAN REPORTING & LITIGATION SUPPORT, INC.    1440 Blake Street, Suite 320
 2             Denver, Colorado 80202                   303.893.0202
 3
 4   ANDREW W. JURS, ESQ. Johnson McConaty & Sargent, P.C.
 5   400 South Colorado Boulevard Suite 900
 6   Glendale, Colorado 80246
 7   Re:  Carranza-Reyes v. Park County
 8   Deposition of:  TIMOTHY BARNES KEELING, D.O. Date of Deposition:  March 15, 2006
 9   Trial Date:  None set
10   Enclosed is:
11   (XX) ORIGINAL TRANSCRIPT.  Please retain unopened    original until it is required by any party in a
12        trial or hearing in the above matter.
13   (  ) ORIGINAL SIGNATURE PAGE     ___with ___without corrections; copies provided to
14        other counsel; please append these sealed originals    to original transcript in your possession.
15   (  ) No signature or correction sheets received.
16   (XX) Review of transcript not requested.
17   (  ) 30-day review unavailable.  Signature/correction
18        pages forwarded to counsel handling signature.   Original filed in anticipation of trial date.
19        See letter within deposition.
20   (  ) Copy of deposition, signature and correction pages    sent to deponent.  See letter within deposition.
21   (  ) Signature not applicable.
22   Original transcript filed on_____via_____
23   Follow-up documentation filed on_____via_____
24   cc:  Attending counsel
25
```