IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-377-WDM-BNB

MOISES CARRANZA-REYES,

    Plaintiff,

v.

PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his official capacity as Captain of Park County Sheriff's Department; and
VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County;

    Defendants.

_____

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS HELEN M. WOODARD, M.A.**
_____

Defendants Park County Board of County Commissioners, Fred Wegener, Monte Gore, and Vicki Paulsen, by and through their respective counsel, Andrew D. Ringel, Esq. and Jennifer L. Veiga, Esq. of Hall & Evans, L.L.C. and Josh A. Marks, Esq. and Melanie B. Lewis, Esq. of Berg Hill Greenleaf and Ruscitti, LLP, pursuant to Fed. R. Evid. 702, hereby submit this Reply Brief in Support of Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A., as follows:

**INTRODUCTION**

Defendants filed their Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A. (hereinafter "Defendants' Motion") on January 3, 2007. Plaintiff filed his Response to Defendants' Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A. (hereinafter "Plaintiff's Response") on January 30, 2007. Now, Defendants respectfully submit this Reply in

Support of Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A. Nothing contained in the Plaintiff's Response alters the propriety of this Court excluding Ms. Woodard from testifying as an expert in this case pursuant to Fed. R. Evid. 702, ***Daubert v. Merrell Dow Pharms.Inc.,*** 509 U.S. 579 (1993), and its progeny.

## ARGUMENT

### I. PLAINTIFF'S EXPERT WITNESS, HELEN M. WOODARD, M.A., MUST BE EXCLUDED FROM TESTIFYING AT TRIAL PURSUANT TO FED. R. EVID. 702

Defendants' challenge to the proffered expert testimony of Ms. Woodard pursuant to Fed. R. Civ. P. 702 and ***Daubert*** on the grounds of both its lack of reliability and its lack of relevance. [*See* Defendants' Motion, at 5-17]. The precedent previously cited by the Defendants in their Motion demonstrates reliability and relevance are the touchstones for this Court's gatekeeper role under Fed. R. Evid. 702. "Under Rule 702, the district judge must act as a gatekeeper to ensure proffered expert testimony is relevant and reliable." ***United States v. Turner,*** 285 F.3d 909, 912 (10th Cir.), *cert. denied,* 537 U.S. 895 (2002). This gatekeeper role requires this Court to determine whether proposed expert testimony rests upon sound scientific principles and rests upon a reliable scientific foundation. ***Black v. M & W Gear Co.,*** 269 F.3d 1220, 1237 (10th Cir. 2001). The guideposts for evaluating proposed expert testimony are reliability and relevance. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." ***Hollander v. Sandoz Pharms. Corp.,*** 289 F.3d 1193, 1204 (10th Cir.), *cert. denied,* 537 U.S. 1088 (2002) (citations, internal quotation marks and alterations omitted); ***Alfred v. Caterpillar, Inc.,*** 262 F.3d 1083, 1086 (10th Cir. 2001), *cert. denied,* 535 U.S. 928 (2002). The reliability of

proposed expert testimony is based on the methodology employed by the expert. ***United States v. Lauder,*** 409 F.3d 1254, 1263 (10th Cir. 2005). Relevance, on the other hand, is based on a determination of the proposed expert testimony's relevance to the case. "Further, the expert testimony must 'fit' the facts at issue, requiring a valid scientific connection between the testimony and issue sought to be proved." ***Magdaleno v. Burlington Northern R. Co.,*** 5 F.Supp.2d 899, 902 (D.Colo. 1998).

Plaintiff's Response does not attempt to defend Ms. Woodard's proposed expert testimony appropriately in terms of its reliability and relevance. Instead, Plaintiff focuses on the qualifications of Ms. Woodard as a life care plan expert, the unsupported contention that ***Daubert*** applies only to "novel methods," and the assertion that the Defendants' criticisms go to the weight of Ms. Woodard's proposed expert testimony and not its inadmissibility. [*See* Plaintiff's Response]. Plaintiff's approach represents an inappropriate attempt to narrow this Court's gatekeeping function under Fed. R. Evid. 702. Instead, this Court must focus its attention on the reliability and relevance of Ms. Woodard's proffered expert testimony. Judged against the appropriate standard, Ms. Woodard must be excluded as an expert in this case pursuant to Fed. R. Evid. 702 as a matter of law.

First, Plaintiff argues Ms. Woodard is a qualified expert concerning life care plans. [*See* Plaintiff's Response, at 1-2]. Defendants do not challenge Ms. Woodard's general qualification to create life care plans for injured persons. However, Plaintiff's narrow focus on Ms. Woodard's qualifications is inappropriate. Ms. Woodard's qualifications represent only the beginning of the analysis. This Court's gatekeeping function requires much more of an analysis than simply whether Ms. Woodard is generally qualified as an expert witness. "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." ***Goebel v. Denver & Rio Grande Western***

3

***R.,*** 215 F.3d 1083, 1088 (10th Cir. 2000). It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." ***Dodge v. Cotter Corp.,*** 328 F.3d 1212, 1222 (10th Cir.), *cert. denied,* 540 U.S. 1003 (2003) (citations omitted). The reliability of relevance of Ms. Woodard's proffered expert testimony to this particular case is at issue in the Defendants' Motion. Under Fed. R. Evid. 702, ***Daubert*** and its progeny, Ms. Woodard is not allowed to testify in the instant case until this Court determines her proposed expert testimony is reliable and relevant, regardless of her general qualifications as an expert in her field.

In fact, Defendants have challenged Ms. Woodard's qualifications as a life care planner to assess the Plaintiff's future medical needs. [*See* Defendants' Motion, at 6-7]. Plaintiff is wrong when Plaintiff asserts the Defendants do not dispute Ms. Woodard's qualifications to render her expert opinions here, and also mischaracterizes the Defendants' argument as simply a dispute over who Ms. Woodard relied upon in obtaining her data to formulate her life care plan for Plaintiff. [*See* Plaintiff's Response, at 2]. Defendants' argument concerning Ms. Woodard differs. Initially, Defendants argue Ms. Woodard as a rehabilitation counselor with an M.A. in Special Education lacks the appropriate background to assess the Plaintiff's future medical care needs. Ms. Woodard may be qualified to make assessment referrals, but she lacks the qualifications of a medical provider to make medical assessments to base a life care plan. [*See* Defendants' Motion, at 6]. Plaintiff does not contest the limitations on Ms. Woodard's role as a rehabilitation counselor. [*See* Plaintiff's Response, at 2 ("Ms Woodard testified that she sends people for medical assessments and does not do them herself.")]. Further, Defendants also challenge Ms. Woodard's reliance on Meredith Poppish, a nurse practitioner, as providing an opinion about Plaintiff's future medical needs and

4

requirements. [*See* Defendants' Motion, at 7].

Plaintiff suggests all Ms. Woodard did here was to conclude that Plaintiff "needs an orthopedic, physiatrist, and prosthetic consult, and may need pain management and psychological assessments." [*See* Plaintiff's Response, at 2]. However, in reality, Ms. Woodard did much more than simply opine about the type of specialist treatment Plaintiff might require in the future. Rather, Ms. Woodard made specific recommendations that Plaintiff's future medical care needs would require an initial consultation with an orthopedist or other specialist in physical medicine and rehabilitation followed by 2 to 3 visits with that specialist for the remainder of Plaintiff's lifetime. [*See* Woodard Report, at PACEY 00039, Exh. A-3]. Similarly, Ms. Woodard also recommended Plaintiff needed to visit a pulmonologist for 2 to 4 visits initially and then for an annual evaluation. [*See* Woodard Report, at PACEY 00040, Exh. A-3]. Even assuming Ms. Woodard as a rehabilitation counselor is qualified to make assessments concerning the Plaintiff's needs from various specialists, Ms. Woodard's life care plan for Plaintiff here goes well beyond that competency. Not only does Ms. Woodard opine about the type of assessments Plaintiff will require, but Ms. Woodard also opines about the duration and frequency of Plaintiff's future medical needs. It is this additional proposed expert opinion by Ms. Woodard that she is not qualified to render as a rehabilitation counselor because Plaintiff's specific future medical needs represent a ***medical*** and not a rehabilitative or life care planning assessment.

Plaintiff attempts to rescue Ms. Woodard's proposed expert opinion by arguing Ms. Woodard appropriately relied upon Ms. Poppish. Plaintiff contends Ms. Poppish recommended Plaintiff needed orthopedic, rehabilitation services, chronic pain, and possibly neurological consults and that it is within Ms. Poppish's area of expertise as a nurse practitioner to recommend consults with

5

medical experts and to develop a treatment plan that may include collaboration with other medical providers. [*See* Plaintiff's Response, at 11-12]. Critically, however, even assuming Ms. Poppish may appropriately recommend a consult with a physician or other specialist as a nurse practitioner, Ms. Poppish herself testified that as a primary health care provider she is not qualified to recommend any particular frequency or duration of treatment by any specialist for the Plaintiff. During her deposition, Ms. Poppish testified as follows:

> Q. So you think he would need them biweekly for the next year?
>
> A. At least, yeah. But again, I'm not a rehabilitation expert; that would be up to someone else's assessment of what he needs. I would never be the person to assess what he needs for treatment; someone else would do that assessment, which is why we refer patients out for specialist care.
>
> Q. So you don't think that's within your area of expertise whether to recommend---
>
> A. It is not. That's why I would send him our, that's why I would send him to a specialist.
>
> . . . .
>
> Q. And physical therapy. Okay. And how often do you think he needs to go to physical therapy?
>
> A. Again, that would be the evaluation of the physical therapist.
>
> Q. So you don't feel qualified to say how often?
>
> A. I don't. I'm so sorry. I'm not trying to be difficult, but—I mean, I could conjecture, but I'm not a physical therapist, so I would send him to see the physical therapist to determine his treatment plan.

[*See* Poppish Dep., at 67-69, Pl. Exh. 8]. Based on Ms. Poppish's deposition testimony about her lack of qualifications to opine about the frequency and duration of Plaintiff's needs for specialist care, Ms. Woodard cannot appropriately rely on Ms. Poppish to support critical elements of her life

6

care plan. Finally, it is crucial to remember Ms. Poppish herself denies making the recommendations to Ms. Woodard that Ms. Woodard relies upon for her life care plan. [*See* Poppish Dep., at 63-67, 74, & 97-98, Exh. A-6].

Neither Ms. Woodard alone, nor based on the expertise of Ms. Poppish, possesses the education, training or experience needed to predict and opine about the medical care and treatment Plaintiff needs today or will need during the remainder of his lifetime. Ms. Woodard may be qualified to state opinions concerning the type of treatment Plaintiff may need or the cost of that treatment, but it represents an all together different matter for Ms. Woodard to attempt to opine about the Plaintiff's specific future medical needs in terms of the number of visits to various specialists, their frequency, and their duration. As the cases relied upon by the Plaintiff and discussed below demonstrate, no prior precedent exists allowing a life care plan expert to opine outside of her expertise and fail to rely on actual medical expertise concerning the need, frequency, and duration of future medical treatment.

Second, Plaintiff asserts the Defendants have not met their "threshold burden" of showing that the disputed expert opinions fall outside the ordinary case where the reliability of an expert's methods is taken for granted. [*See* Plaintiff's Response, at 3]. In reality, however, it is the party offering expert testimony who bears the burden of establishing its admissibility under Fed. R. Evid. 702 and ***Daubert***. *See, e.g.*, ***In re Breast Implant Litigation,*** 11 F.Supp.2d 1217, 1244 (D. Colo. 1998) (plaintiffs failed to meet their burden of proof establishing that the expert opinions on causation were based on valid, scientific principles and reliable scientific methods, processes, reasoning, and data; were based upon data reasonably relied upon by experts in the field, and would assist the trier of fact in resolving a factual dispute in the action); ***Mitchell v. Gencorp, Inc.,*** 165

7

F.3d 778, 781 (10th Cir. 1999) ("Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficient satisfy Rule 702's reliability requirements."; alteration added); ***Allison v. McGhan Med. Corp.,*** 184 F.3d 1300, 1312 (11th Cir. 1999) ("Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable.") (citing ***In re Paoli R.R. Yard PCB Litig.,*** 35 F.3d 717, 744 (3rd Cir. 1994)). Moreover, Plaintiff is incorrect that Fed. R. Evid. 702 somehow only applies to "novel methods." Plaintiff relies upon ***Kuhmo Tire Co., Ltd. v. Carmichael,*** 526 U.S. 137 (1999), for this proposition. However, nothing in ***Kuhmo Tire*** supports the notion this Court only must perform its gatekeeping function under Fed. R. Evid. 702 only in instances involving "novel methods." When an expert uses a novel method the burden on the proponent of that expert's testimony on proving reliability and relevance is increased. However, in ***Kuhmo Tire,*** the Supreme Court made clear a district court's gatekeeping function applies not only to testimony based on scientific knowledge or methodology, but also to testimony based on technical or other specialized knowledge. The Supreme Court recognized that in performing its review of proposed expert testimony, a district court must have flexibility in how to conduct its analysis, but it is clear from ***Kuhmo Tire*** a district court's analysis of the reliability and relevance of proposed expert testimony applies to the type of technical or specialized knowledge used by in creating a life care plan by a rehabilitation counselor such as Ms. Woodard. *See **Kuhmo Tire,*** 526 U.S. at 141-142; ***Ralston v. Smith & Nephew Richards, Inc.,*** 275 F.3d 965, 970 n. 2 (10th Cir. 2001). Plaintiff's effort to narrowly limit this Court's review under Fed. R. Evid. 702 to "novel methods" fails.

Third, Plaintiff cites five cases for the proposition Ms. Woodard's methodology is commonly

8

used and generally accepted in the field of life care planning. [*See* Plaintiff's Response, at 4-5]. Again, Plaintiff misses the point of the Defendant's challenge to Ms. Woodard's approach. Defendants are not arguing it was inappropriate for Ms. Woodard to gather medical information from medical records and providers and make an assessment of the potential areas of medical need for an injured person. Instead, Defendants argue the manner in which Ms. Woodard did so here and the type and quality of the data she relied upon was flawed and did not provide her with an appropriate factual basis to form her expert opinions making them ungrounded and speculative. Plaintiff ignores the fundamental principle underlying the reliability inquiry from *Daubert* requiring this Court to evaluate both the methodology used and the conclusions reached by the expert. *See, e.g., General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("But conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."); *Bitter v. A.O. Smith Corp.,* 400 F.3d 1227, 1233 (10th Cir. 2004), *cert. denied,* 126 S.Ct. 395 (2005) ("Although it is not always a straightforward exercise to disaggregate method and conclusion, when the conclusion simply does not follow from the data, the district court is free to determine that an impermissible analytical gap exists between premises and conclusion."); *Goebel v. Denver & Rio Grande Western R.R.,* 346 F.3d 987, 992 (10th Cir. 2003) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion offered."); *Magdaleno,* 5 F.Supp.2d at 902 ("[t]he expert testimony must 'fit' the facts at issue, requiring a valid scientific connection between the testimony and issue sought to be proved.").

Indeed, the decision in *Cook v. Rockwell International,* 2006 WL 3533049 (D. Colo. Dec. 7,

9

2006) (unpublished decision attached as Pl. Exh. 3), relied upon heavily by the Plaintiff, makes this point repeatedly in reference to the amended Fed. R. Evid. 702. *See Cook,* 2006 WL 3533049, at 14 (Pl. Exh. 3) ("The nature of my reliability review under Rule 702 is further informed by the Rule's statement of the three areas of inquiry for determining whether an expert's methodology is sufficiently reliable to be admitted. The first of these is whether the testimony is based on sufficient facts or data. *See* Fed. R. Evid. 702(1). This is a quantitative rather than a qualitative standard, *i.e.*, the question is whether the expert considered *enough* information to make the proffered opinion reliable."); *Cook,* 2006 WL 3533049, at 14 ("The third component of the reliability inquiry assume the witness used reliable principles and methods in forming his opinions, and focuses instead on whether the witness applied these principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702(3).")

Additionally, review of several of the cases relied upon by the Plaintiff demonstrates the fundamental flaws in Ms. Woodard's analytical approach in comparison to the life care plans at issue in those cases. *See, e.g., **O'Shea v. Welch,*** 2002 WL 1974046 at *2 (D. Kan. Aug. 15, 2002) (describing life care plan expert relying on medical opinions of treating orthopedic surgeon for future medical and surgical care needed) (unpublished disposition attached as Pl. Exh. 5); ***Merryweather v. Calister,*** 2002 WL 1291987 (Utah App. June 13, 2002) (affirming admission into evidence of life care plan created that was reviewed and agreed upon by the plaintiff's personal physician) (unpublished disposition attached as Pl. Exh. 6);[1] ***Morales v. E.D. Etnyre & Co.,*** 382

---

[1] Plaintiff relies upon ***Merryweather*** for the proposition that a life care plan is not a "newly discovered procedure." [*See* Plaintiff's Response, at 5]. ***Merryweather*** involved a determination as to whether the testimony of a life care plan expert was admissible under Rule 702 of the Utah Rules of Evidence. The "newly discovered procedure" language is from a decision from the Utah Supreme

F.Supp.2d   273 (D.N.M. 2005)(treating physician and surgeon could testify about future medical needs for his patient as well as the probable monetary costs of those future medical needs).  These precedents demonstrate the medical determination of the need for future medical care for an injured person is something to be established by a medical care provider, and most typically a treating physician, and not a life care planner or rehabilitation counselor such as Ms. Woodard.

Fourth, Plaintiff attempts to distinguish *Balance v. Wal-Mart Stores, Inc.,* 1999 U.S. App. LEXIS 7663, at 5-6 (4th Cir. Apr. 21, 1999) (unpublished disposition attached as Exh. A-1), *Joseph*

---

Court.  Importantly, the Utah decisions cited in *Merryweather* make clear Utah still applies *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), which has been abandoned by the United States Supreme Court in interpreting Fed. R. Evid. 702.  *See generally State v. Rimmasch,* 775 P.2d 388, 396 (Utah 1989); *State v. Adams,* 5 P.3d 642, 646-47(Utah 2000).  As such, Plaintiff's reliance on *Merryweather* is misplaced.

*Israel v. Springs Industries, Inc.,* 2006 U.S. Dist. LEXIS 80863, at 7-8 (E.D.N.Y. Nov. 3, 2006) unpublished disposition attached as Exh. A-2), and *Garay v. Missouri Pacific R.,* 60 F.Supp.2d 1168 (D. Kan. 1999), relied upon by Defendants. [*See* Plaintiff's Response, at 6]. Plaintiff misunderstands the purpose of the Defendants citing these cases. Defendants did not analogize Ms. Woodard's life care plan to the life care plans prepared in these instances. Rather, Defendants simply relied on these three decisions for the proposition that federal courts have applied the principles of *Daubert* and Fed. R. Evid. 702 to experts offering life care plans for an injured person to demonstrate the propriety of this Court doing so for Ms. Woodard. [*See* Defendants' Motion, at 4-5]. Ms. Woodard's proposed expert opinion must be excluded by this Court, not because of any specific analogy to these cases, but more fundamentally because it fails the reliability and relevance inquiries this Court must employ pursuant to Fed. R. Evid. 702 and applicable precedent.[2]

Fifth, Plaintiff argues the Defendants' criticisms of Ms. Woodard go to the weight of her proposed expert testimony and not its admissibility. [*See* Plaintiff's Response, at 6-10]. Plaintiff suggests the Defendants' challenge to Ms. Woodard may be addressed through cross examination, presentation of contrary evidence, and careful jury instructions from this Court. However, despite quoting *Daubert* for this proposition, Plaintiff ignores the fact this Court must first determine Ms.

---

[2] Additionally, however, *Balance* and *Joseph Israel* do in fact support the Defendants' criticisms of Ms. Woodard's approach here. In *Balance,* the life care planner's plan relied on the diagnosis of a neurosurgeon. *Balance,* 1999 U.S. App. LEXIS 7663, at 3 (Exh. A-1). In *Joseph Israel,* the district court ordered a *Daubert* hearing for a physician who created a life care plan because the physician had no professional experience with allergies or atopic dermatitis, the plaintiff's medical condition. Further, the district court rejected the physician's opinion as to the plaintiff's functioning below grade level because the physician had no experience in educational testing. *Joseph Israel,* 2006 U.S. Dist. LEXIS 80863, at 7-8 (Exh. A-2). Thus, *Joseph Israel* supports the proposition advanced by the Defendants that a medical provider in the appropriate specialized medical field is needed to support a reliable life care plan.

12

Woodard's proposed expert testimony is admissible as a threshold matter. *Daubert,* 509 U.S. at 596. Defendants have exposed the fundamental methodological and analytical flaws in Ms. Woodard's approach as well as the factual and legal assumptions underlying her expert opinion in a fashion calling into question the reliability, relevance and validity of Ms. Woodard's expert opinion concerning Plaintiff's life care plan. It is not sufficient for the Plaintiff to blithely assert any problems with Ms. Woodard's proposed expert testimony may be worked out at a trial in this matter. Such a suggestion ignores this Court's fundamental role as a gatekeeper pursuant to Fed. R. Evid. 702. Ms. Woodard's proffered expert testimony is neither sufficiently reliable nor sufficiently relevant to survive the Defendants' challenge under Fed. R. Evid. 702 and it is not enough for this Court to recognize the fundamental flaws in Ms. Woodard's approach, but still allow Ms. Woodard to testify at trial based on the flawed assumption the crucible of trial is sufficient to protect the interests of the Defendants and fulfill this Court's gatekeeping function under Fed. R. Evid. 702.

In this case, Ms. Woodard's methodology is unreliable not only because she merely interviewed the Plaintiff, reviewed three-year old medical records that do not provide an assessment of Plaintiff's future medical needs, and relies only on her own experience and not the medical expertise of an appropriate medical treatment provided. The methodology is also unreliable because it fails to incorporate fundamental elements such as the likelihood that Plaintiff will have to return to Mexico, it does not analyze Plaintiff's ability to work in Mexico with any vocational assessment or labor market survey of Mexico, it has never been evaluated for effectiveness, it is incomplete in its analysis of Plaintiff's capacity to work, and it does not actually include any cost analysis of either the projected medical and rehabilitative care for the Plaintiff or his medical equipment needs in Mexico. Defendants' criticisms of Ms. Woodard go not to the weight of the evidence Plaintiff

13

intends to elicit from her in the form of her expert opinion, but rather to the admissibility of Ms. Woodard's life care plan itself.

Sixth, Plaintiff offers various explanations concerning the flaws underlying Ms. Woodard's approach and the data she relied upon to reach her purported expert conclusions. [*See* Plaintiff's Response, at 8 & 10-16]. Principally, Plaintiff argues so long as Ms. Woodard's proposed expert testimony meets the lenient relevancy standard of Fed. R. Evid. 401 it is sufficient to be admissible. [*See* Plaintiff's Response, at 8]. Plaintiff misstates the applicable analysis. Defendants' challenges to Ms. Woodard's expert opinion focus on its underlying reliability as well as its relevance. Defendants' basic and overriding point is the manner in which Ms. Woodard approached creating the life care plan for the Plaintiff including the data she relied upon from Ms. Poppish and her staff, the assumptions she made in terms of the Plaintiff continuing to reside and work in the United States without the legal capacity to do so, and the lack of any verification of Ms. Woodard's approach to life care plans in practice, Ms. Woodard's proposed expert testimony is inadmissible because it is unreliable. [*See* Defendant's Motion, at 5-17]. Fundamentally, the flaws identified by the Defendants with Ms. Woodard's opinion go far beyond the argument that her proposed expert testimony is irrelevant.

In sum, Defendants' Motion to exclude Ms. Woodard as an expert in this case presented a detailed analysis of the fundamental methodological, analytical, and others flaws made by Ms. Woodard rendering her proffered expert opinion unreliable and irrelevant under Fed. R. Evid. 702, ***Daubert,*** and its progeny. Plaintiff attempts to distract this Court from the real issues raised by the Defendants. However, a close examination of the manner in which Ms. Woodard reached her expert opinion and the data that she used in rendering her opinions demonstrates she must be excluded by

14

this Court from testifying at any trial in this matter as a matter of law.

## CONCLUSION

In conclusion, for all of the foregoing reasons, as well as based on the arguments and authorities contained in their original Motion, Defendants Board of County Commissioners of Park County, Fred Wegener, Monte Gore and Vicki Paulsen respectfully request this Court issue an order excluding the testimony of Plaintiff's expert witness Helen M. Woodard, M.A., from the trial in this matter, and for all other and further relief as this Court deems just and appropriate.

Dated this 23rd day of February, 2007.

Respectfully submitted,

s/ Andrew D. Ringel_____
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, Colorado 80202-2052
Tel: (303) 628-3300
Fax: (303) 293-3238
ringela@hallevans.com,
veigaj@hallevans.com
**ATTORNEYS FOR DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, FRED WEGENER AND MONTE GORE**

and

Josh A. Marks, Esq.
Melanie B. Lewis, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302
Tel: (303) 402-1600
Fax: (303) 402-1601
jam@bhgrlaw.com, mbl@bhgrlaw.com

15

**ATTORNEYS FOR DEFENDANT
VICKI PAULSEN**

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 23rd day of February, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph J. Archuleta, Esq.
archuletalaw@qwest.net

William A. Trine, Esq.
btrine@trine-metcalf.com

Josh A. Marks, Esq.
jam@bhgrlaw.com

Melanie B. Lewis, Esq.
mbl@bhgrlaw.com

Lloyd C. Kordick, Esq.
lloyd@kordicklaw.com

Adele P. Kimmel, Esq.
akimmel@tlpj.org

s/Marlene Wilson,   Secretary
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3300
Fax: 303-293-3238
ringela@hallevans.com
veigaj@hallevans.com

**ATTORNEYS FOR DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

H:\Users\RINGELA\park\Carranza-Reyes\Reply Helen Woodard.doc