IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES,

     Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
PARK COUNTY SHERIFF'S OFFICE, a public entity of the State of Colorado;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his official capacity as Captain of Park County Sheriff's Department; and
VICKIE PAULSEN, individually, and in her official capacity as Registered Nurse for Park County, Colorado;

     Defendants.
_____

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS PATRICIA L. PACEY, Ph.D.**
_____

     Defendants Park County Board of County Commissioners, Fred Wegener, Monte Gore, and Vicki Paulsen, by and through their respective counsel, Andrew D. Ringel, Esq. and Jennifer L. Veiga, Esq. of Hall & Evans, L.L.C. and Josh A. Marks, Esq. and Melanie B. Lewis, Esq. of Berg Hill Greenleaf and Ruscitti, LLP, pursuant to Fed. R. Evid. 702, hereby submit this Motion to Exclude Plaintiff's Expert Witness Patricia L. Pacey, Ph.D., as follows:

**INTRODUCTION**

     Defendants filed their Motion to Exclude Plaintiff's Expert Witness Patricia L. Pacey, Ph.D. (hereinafter "Defendants' Motion") on January 3, 2007. Plaintiff filed his Response to Defendants' Motion to Exclude Plaintiff's Expert Witness Patricia A. Pacey, Ph.D. (hereinafter

"Plaintiff's Response") on February 1, 2007. Now, Defendants respectfully submit this Reply in Support of Motion to Exclude Plaintiff's Expert Witness Patricia L. Pacey, Ph.D. Nothing contained in the Plaintiff's Response alters the propriety of this Court excluding Dr. Pacey from testifying as an expert in this case pursuant to Fed. R. Evid. 702, ***Daubert v. Merrell Dow Pharms.Inc.,*** 509 U.S. 579 (1993), and its progeny.

## ARGUMENT

### I.  PLAINTIFF'S EXPERT WITNESS, PATRICIA L. PACEY, Ph.D. MUST BE EXCLUDED FROM TESTIFYING AT TRIAL

Defendants' challenge to the proposed expert testimony of Plaintiff's expert Patricia L. Pacey, Ph.D. focuses on the fundamental problems with Dr. Pacey's proposed expert opinions. Defendants argue in their Motion that Dr. Pacey opines and makes entirely conclusory assertions respecting Plaintiff's alleged economic losses, without providing appropriate supporting documentation or demonstrating she conducted an acceptable, recognized methodology of any kind.  Most fundamentally, Dr. Pacey's calculations of Plaintiff's economic losses do not translate into any competent analysis of any alleged economic loss in this case.  Dr. Pacey failed to conduct even rudimentary research or to employ acceptable methodology in her calculation of present values of future losses.  Many of Dr. Pacey's assumptions are grounded on numbers she basically picked from thin air, without any basis or support.  Dr. Pacey's testimony is inconsistent and often contrary to the facts of the case.  Dr. Pacey's analysis is also often contrary to logic and sound economic principles.  As such, Dr. Pacey's proffered expert testimony must be excluded by this Court pursuant to this Court's gatekeeping function for experts under Fed. R. Evid. 702 and applicable precedent interpreting and applying Rule 702.

Defendants' Motion challenged in considerable detail the following inappropriate methodological and factual assumptions underlying Dr. Pacey's proposed expert opinions concerning Plaintiff's alleged economic losses for both Dr. Pacey's scenarios for the Plaintiff: (1) Dr. Pacey's unsupported conclusion Plaintiff would have stayed in the United States [*see* Defendants' Motion, at 8]; (2) Dr. Pacey's unsupported conclusion Plaintiff would have stayed in the United States and worked as a legally documented worker [*see* Defendants' Motion, at 9-10]; (3) Dr. Pacey's unwarranted assumption Plaintiff would have earned wages similar to wages earned by males in the United States with less than a high school education [*see* Defendants' Motion, at 10-15]; (4) Dr. Pacey's inflated worklife expectancy for the Plaintiff renders her proposed expert opinions unreliable [*see* Defendants' Motion, at 16-17]; (5) Dr. Pacey's failure to use any Mexican costs for her valuation of the life care plan prepared by Helen M. Woodard, M.A. was fundamentally inappropriate and improper [*see* Defendants' Motion, at 18-22]; (6) Dr. Pacey's failure to utilize any Mexican data or statistics is methodologically unacceptable [*see* Defendants' Motion, at 22-23]; and (7) Dr. Pacey's opinion concerning the loss of four hours per week of home services is not supported by any actual data. [*See* Defendants' Motion, at 23-25]. [1] Based upon these fundamental methodological and underlying data problems with Dr. Pacey's proposed expert opinion, Defendants argued in their Motion that Dr. Pacey's expert opinions are fundamentally flawed because they are neither reliable nor relevant within the meaning of Fed. R. Civ. P. 702 and applicable precedent, requiring this Court to exclude Dr. Pacey from testifying at any trial in this matter.

---

[1] Defendants also argued Dr. Pacey's expert report failed to comply with Fed. R. Civ. P. 26(a)(2)(B) because Dr. Pacey does not adequately disclose the data and other information she relied upon to render her expert opinions. [*See* Defendants' Motion, at 15-16].

3

Defendants' challenge the proffered expert testimony of Dr. Pacey pursuant to Fed. R. Civ. P. 702 and *Daubert* on the grounds of both its lack of reliability and its lack of relevance. The precedent previously cited by the Defendants in their Motion demonstrates reliability and relevance are the touchstones for this Court's gatekeeper role under Fed. R. Evid. 702. "Under Rule 702, the district judge must act as a gatekeeper to ensure proffered expert testimony is relevant and reliable." *United States v. Turner,* 285 F.3d 909, 912 (10th Cir.), *cert. denied,* 537 U.S. 895 (2002). This gatekeeper role requires this Court to determine whether proposed expert testimony rests upon sound scientific principles and rests upon a reliable scientific foundation. *Black v. M & W Gear Co.,* 269 F.3d 1220, 1237 (10th Cir. 2001). The guideposts for evaluating proposed expert testimony are reliability and relevance. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Hollander v. Sandoz Pharms. Corp.,* 289 F.3d 1193, 1204 (10th Cir.), *cert. denied,* 537 U.S. 1088 (2002) (citations, internal quotation marks and alterations omitted); *Alfred v. Caterpillar, Inc.,* 262 F.3d 1083, 1086 (10th Cir. 2001), *cert. denied,* 535 U.S. 928 (2002). The reliability of proposed expert testimony is based on the methodology employed by the expert. *United States v. Lauder,* 409 F.3d 1254, 1263 (10th Cir. 2005). Relevance, on the other hand, is based on a determination of the proposed expert testimony's relevance to the case. "Further, the expert testimony must 'fit' the facts at issue, requiring a valid scientific connection between the testimony and issue sought to be proved." *Magdaleno v. Burlington Northern R. Co.,* 5 F.Supp.2d 899, 902 (D.Colo. 1998).

Plaintiff's Response does not attempt to defend Dr. Pacey's proposed expert testimony in the appropriate terms of its reliability and relevance. Instead, Plaintiff focuses on the qualifications of Dr. Pacey as an economic loss expert, the unsupported contention that ***Daubert*** applies only to "novel methods," and the assertion that Defendants' criticisms go to the weight of Dr. Pacey's proposed expert testimony and not its inadmissibility. [*See* Plaintiff's Response, at 1-13]. Plaintiff's approach represents an inappropriate attempt to narrow this Court's gatekeeping function under Fed. R. Evid. 702. Instead, this Court must focus its attention on the reliability and relevance of Dr. Pacey's proffered expert testimony. Judged against the appropriate standard, Dr. Pacey must be excluded as an expert in this case pursuant to Fed. R. Evid. 702 as a matter of law.

Fundamentally, the principal issue presented in Defendants' Motion is not whether Dr. Pacey is qualified to opine on economic loss or whether she attempted to utilized appropriate methodologies for such opinions but, rather, whether Dr. Pacey's calculations are based on scientific principles and "appropriate validation – i.e., 'good grounds,' based on what is known." ***Mitchell v. Gencorp, Inc.***, 165 F.3d 778, 780 (10th Cir. 1999) (*citing **Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993)). "It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." ***Dodge v. Cotter Corp.,*** 328 F.3d 1212, 1222 (10th Cir.), *cert. denied,* 540 U.S. 1003 (2003) (citations omitted). "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." ***Goebel v. Cenver & Rio Grande Western R.,*** 215 F.3d 1083, 1088 (10th Cir. 2000). If the Court finds that Dr. Pacey's opinions are based entirely on conclusory assertions, without proper supporting documentation and data, or that she

failed to conduct her calculations using an acceptable, recognized methodology, Dr. Pacey's testimony must be excluded pursuant to Fed. R. Evid. 702.

First, Plaintiff argues this Court should not exclude Dr. Pacey since she is a qualified expert concerning economic analysis. [*See* Plaintiff's Response, at 1-2]. Defendants do not challenge Dr. Pacey's general qualifications as an expert. However, Plaintiff's myopic focus on Dr. Pacey's qualifications is inappropriate. Dr. Pacey's qualifications represent only the first step of the analysis. This Court's gatekeeping function requires much more of an analysis than simply whetherIal Dr. Pacey is generally qualified to be an expert witness. Because an expert is not allowed to speculate and cannot offer an expert opinion based solely on the expert's *ipse dixit* it is entirely irrelevant whether Dr. Pacey has the general qualifications to be an expert witness in the field of economics or to generally opine about an injured person's prospective economic losses. **Goebel,** 215 F.3d at 1088; **Dodge,** 328 F.3d at 1222. Instead, the reliability and relevance of Dr. Pacey's proffered expert testimony to this particular case is at issue in the Defendants' Motion. Under Fed. R. Evid. 702, **Daubert** and its progeny, Dr. Pacey is not allowed to testify in the instant case until this Court determines her proposed expert testimony is reliable and relevant, regardless of her general qualifications as an expert in her field. Moreover, Defendants agree that Dr. Pacey has impeccable credentials and thus, she, of all people, should know that actual factual support is essential for any reliable economic appraisal.

Second, Plaintiff maintains an analysis of the admissibility of proposed expert testimony pursuant to Fed. R. Evid. 702 only applies "novel methods" and is therefore inapplicable to expert testimony concerning economic analysis because methodologies pertaining to economic loss are not "novel." [*See* Plaintiff's Response, at 4-6]. Once again, Plaintiff relies upon **Kuhmo**

*Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999), for this proposition. However, absolutely nothing in *Kuhmo Tire* supports the proposition this Court is only required to exercise its authority under Fed. R. Evid. 702 in the face of "novel methods" employed by the proposed expert. Rather, the United States Supreme Court has made it unmistakably clear this Court's gatekeeping function under Fed. R. Evid. 702 applies not only to testimony based on scientific knowledge or methodology, but also to testimony based on technical or other specialized knowledge. The Supreme Court recognized this Court must have flexibility in performing its required review under Fed. R. Evid. 702, but under *Kuhmo Tire* and other precedent, this Court's evaluation of the reliability and relevance of proposed expert testimony applies to the type of specialized, technical and scientific knowledge of an economics expert such as Dr. Pacey. *See Kuhmo Tire,* 526 U.S. at 141-42; *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 n. 2 (10th Cir. 2001).

Indeed, other federal courts have long recognized the applicability of *Daubert* and Fed. R. Evid. 702 in striking expert opinions on economic loss and damages. Those courts have refused to allow proposed economics experts to testify if their opinions were not sufficiently reliable and relevant under a Fed. R. Evid. 702 analysis. *See*, *e.g.*, Order, *Foraker v. Schauer*, United States District Court for the District of Colorado, 04-cv-00363-EWN-OES, (Sept. 8, 2005), at 41, unpublished disposition attached hereto as Exhibit A-11 (concluding opinions of expert economist were unreliable taken as a whole and therefore inadmissible under *Daubert* and *Kumho* after analyzing various aspects of the approach taken by proposed expert economist); *JRL Enterprises, Inc. v. Procorp Associates, Inc.*, 2003 WL 21284020, at 5-7 (E.D. La. June 3, 2003), unpublished disposition attached as Exhibit A-12 (concluding opinions of expert CPA on

7

economic losses were unreliable and inadmissible after noting that defendant properly challenged the expert's faulty use of facts underlying his opinion); ***Otis v. Doctor's Associates, Inc.***, 1998 WL 673595, at 4-5 (N.D.Ill. Sept. 14, 1998), unpublished disposition attached as Exhibit A-13 (excluding proposed economic loss expert based on the expert's failure to establish accuracy of data relied upon to form the expert's opinion). Cases such as these recognize ***Daubert*** and its progeny establish the gatekeeper role for this Court with respect to expert testimony and its requirement that unreliable testimony by any expert is inadmissible. No basis exists for Plaintiffs' proposition that ***Daubert*** does not apply to expert testimony concerning economic loss and damages.

Importantly, the combination of Plaintiff's arguments that Dr. Pacey is qualified as an expert and because she did not utilize any "novel methods" in reaching her expert opinions her opinions are not subject to review by this Court. Under the Plaintiff's approach, so long as an expert witness is generally qualified to be an expert and does not utilize a "novel" methodology, this Court cannot review the experts proffered opinions for admissibility under Fed. R. Evid. 702. Undeniably, Plaintiff's approach is not the law. If it was, then there would not be any discussion in the case law applying Fed. R. Evid. 702 concerning how even a credentialed expert cannot speculate. *See, e.g.,* ***Dodge,*** 328 F.3d at 1222; ***Goebel,*** 215 F.3d at 1088; ***Mitchell,*** 165 F.3d at 780. Furthermore, Plaintiff's approach would allow a credentialed expert economist to opine in any fashion whatsoever respecting an injured party's economic losses with no analysis of the admissibility of that expert's opinion and the Defendants' only recourse being to challenge the expert through cross-examination or contrary expert testimony. Fortunately, Plaintiff's approach does not represent the applicable law of Fed. R. Evid. 702.

Third, Plaintiff argues the Defendants' criticisms go to the weight and not the admissibility of Dr. Pacey's economic loss appraisal of the Plaintiff. [*See* Plaintiff's Response, at 7-12]. Again, Plaintiff ignores this Court's gatekeeper role requiring this Court determine whether Dr. Pacey's proffered expert testimony is admissible as a threshold matter. ***Daubert,*** 509 U.S. at 596. In their totality, as demonstrated in the Defendants' Motion in detail, Dr. Pacey's calculations do not translate into a competent analysis of any alleged economic loss in this matter. It is undisputed that she failed to do rudimentary research or to employ an acceptable methodology in her calculation of any present value for her projections of purported future losses. Rather, her assumptions are grounded upon numbers she simply picked from thin air, without basis or support. [*See, e.g.,* Pacey Dep., at. 108, ll. 16-25 and 107, ll. 5-11, Exh. A-1]. Defendants challenge the lack of information and data used by Dr. Pacey to reach her conclusions.

The testimony and documentation presented at Dr. Pacey's deposition, and discussed in detail in Defendants' Motion, establishes that, although her background qualifies her as an expert, her approach in regard to this matter is wholly inadequate to be considered competent and, thus, her testimony will not assist the trier of fact in this action and must be excluded. Defendants have exposed the fundamental underlying methodological and analytical flaws of Dr. Pacey's opinions. Under Fed. R. Evid. 702 as interpreted by ***Daubert*** and its progeny, the reliability inquiry this Court must undertake in evaluating Dr. Pacey's proposed expert testimony requires this Court to evaluate both the methodology used and the conclusions reached by the expert. *See, e.g.,* ***General Electric Co. v. Joinder,*** 522 U.S. 136, 146 (1997) ("But the conclusions and methodology are not entirely distinct from one another. Trained experts

9

commonly extrapolate from existing data. But nothing in either ***Daubert*** or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."); ***Bitter v. A.O. Smith Corp.,*** 400 F.3d 1227, 1233 (10th Cir. 2004), *cert. denied,* 126 S.Ct. 395 (2005) ("Although it is not always a straightforward exercise to disaggregate method and conclusion, when the conclusion simply does not follow from the data, the district court is free to determine that an impermissible analytical gap exists between premises and conclusion."); ***Goebel v. Denver & Rio Grande Western R. R.,*** 346 F.3d 987, 992 (10th Cir. 2003) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion offered."). Defendants' description of and analysis of Dr. Pacey's proposed expert opinions establishes the errors made by Dr. Pacey in terms of her methodology, assumptions, and data relied upon. The totality of the Defendants' challenge to Dr. Pacey renders her entire proposed expert opinion unreliable as a matter of law.

Fourth, Plaintiff does not offer much response to the Defendants' detailed and specific arguments in the Plaintiff's Response. As such, it does not make sense for the Defendants to reiterate all of their detailed criticisms made in their Motion respecting Dr. Pacey's proposed expert opinion. [*See* Defendants' Motion, at 6-26]. However, some of the issues raised by the Plaintiff in his Response do warrant some comment by the Defendants.

For example, Plaintiff attempts to refute Defendants' position that English proficiency is a factor that must be considered for a reliable analysis in this case. [*See* Plaintiff's Response, at 5]. Plaintiff's argument might be true if Plaintiff spoke some English. However, the fact that he spoke no English at all must be factored into any analysis since the statistics in the studies relied upon show that one who has less than a high school education and ***who speaks no English*** can

10

expect to earn 15% less than one who speaks English. [*See* University Avenue Undergraduate Journal of Economics, *English Language Proficiency and Wage Rates of Mexican Immigrants*, by Jeremy Sandford, Illinois Wesleyan University (2002), at 13, Exh. A-4 (Table 4 indicating that an individual that speaks no English with less than a high school education will earn 15% less than an individual who speaks some English); *English Language Ability and the Labor Market Opportunities of Hispanic and East Asian Immigrant Men* by Sherrie A. Kossoudji, University of Michigan (2001), at 224, Exh. A-5 ("Generally, immigrants who do not speak English are 'pushed down' the occupational ladder. The effect is much stronger for Hispanics than for Asians, and some workers (especially Asians) appear successfully to pursue strategies to minimize and, in some cases, to eliminate the [English Language Ability] penalty.")].

While it could be argued that Plaintiff might eventually learn some English, might even become proficient in English, or might pursue strategies to minimize the effect of having no English language skills, as discussed in Defendants' Motion, Dr. Pacey did not consider any of these issues, but, rather, based her conclusions on the assumption that Plaintiff would begin working the moment he got out of jail and would work full-time, year-around until he reached the age of 65 without any allowance for the fact that he spoke no English or when, if ever, he might learn English, just as she speculated and made no allowance for his return to the U.S. after he was deported back to Mexico. Such faulty conclusions are unreliable and must be excluded at trial. *See* **Goebel**, 215 F.3d at 1088 (an expert cannot speculate regardless of her credentials). Plaintiff ignores the entirety of the studies discussed in Defendants' Motion, studies that clearly show that undocumented immigration status and lack of English proficiency both have negative

11

impacts on a person's earning capacity. Dr. Pacey totally ignored such findings and simply speculated about Plaintiff's prospective earning capacity. [*See* Congressional Budget Office paper entitled ***The Role of Immigrants in the U. S. Labor Market*** (November 2005), at 15, Exh. A-6 to Defendants' Motion ("Foreign born workers earn less than native workers . . . Those differences can be directly linked to the lower earnings of workers from Mexico and Central America. The average earnings of men from Mexico and Central America were about half of those of native men.")]. Instead, Plaintiff would like to quibble and selectively cite from the studies presented by the Defendants. [*See* Plaintiff's Response, at 5]. However, the fundamental point made by the Defendants remains. Dr. Pacey's expert opinions inappropriately assumed Plaintiff's lost income would be the equivalent of the wages earned by males in the United States with less than a high school education ***who do speak English***. Despite the Plaintiff's efforts in his Response, Dr. Pacey never even considered that there would be any difference in the Plaintiff's prospective income because of his lack of English. Dr. Pacey's opinion is entirely flawed as a result. [*See* Defendants' Motion, at 10-15].

Similarly, Plaintiff contends the Defendants' criticism of Dr. Pacey's reliance on an inappropriate worklife expectancy table relates to worklife expectancy and not earnings. [*See* Plaintiff's Response, at 6]. Plaintiff entirely misses the point. Defendants argued Dr. Pacey significantly inflated the Plaintiff's damages by utilizing a worklife expectancy that was not supported by any of the authorities in Dr. Pacey's Bibliography or any other authoritative source. [*See* Defendants' Motion, at 16-17]. Plaintiff does not even bother to attempt to excuse Dr. Pacey's fundamental error. Instead, Plaintiff asserts that the worklife expectancy calculation for Dr. Pacey is somehow not related to Plaintiff's prospective earnings. Unfortunately for Plaintiff,

worklife expectancy translates directly into the Plaintiff's economic damages. The longer the worklife expectancy, the higher the damages because the economic damages are projected for a longer period of time. More fundamentally, Plaintiff fails to challenge the reality that Dr. Pacey's own sources cited in her Bibliography and referenced by the Defendants in their Motion do not support Dr. Pacey's conclusion that Plaintiff will have a worklife expectancy of age 65. It is this type of opinion of Dr. Pacey that is grounded in absolutely nothing that the Defendants contend undercuts the overall reliability of her proposed expert opinion as a whole.

Further, Plaintiff challenges the Defendants' point that Dr. Pacey failed to rely on any data whatsoever concerning Mexico. [*See* Plaintiff's Response, at 11]. Dr. Pacey admitted during her deposition she failed to conduct any analysis of the economic conditions in Mexico and instead asserted that the conditions in the United States and Mexico were sufficiently similar to allow her to utilize a United States discount rate for her calculations of Plaintiff's prospective economic losses if he returns to Mexico. However, it only stands to reason that if Dr. Pacey is performing an economic analysis of costs and income in a particular country it is appropriate to use data and statistics from that country. A court would never allow an expert to use Mexican or Canadian statistics to analyze the economic loss of a U.S. resident and citizen working in the United States. Dr. Pacey speculates interest rates are global and that they won't be much different from country to country. This assumption is not supported by a recent International Monetary Fund analysis concerning comparisons of Consumer Price Index and the Government Bond Yields for 19 countries. [*See* Data From IMF web site, www.imf.org, attached as Exhibit A-14]. An examination of this table makes clear that these rates can vary considerably from country to country. By calculating the "5 Yr Average" one can see that Mexico had an average

13

inflation rate of 4.38% and average interest rate of 9.29%. This would suggest a net discount rate closer to 5% than the 1% used by Dr. Pacey based inappropriately on United States data. Such calculations demonstrate Dr. Pacey was required to examine actual Mexican data and statistics to ensure any reliability to her analysis and expert opinions.

Finally, Plaintiff never specifically addresses the Defendants' argument Dr. Pacey's failure to use any Mexican costs for her valuation was fundamentally inappropriate. [*See* Defendants' Motion, at 18-22]. Plaintiff offers four paragraphs in his Response respecting this argument. [*See* Plaintiff's Response, at 10-11]. However, nowhere does Plaintiff offer a response to the Defendants' critique of Dr. Pacey's assumption that the costs in Mexico would be 55% of what they would be in the United States. Fundamentally, Plaintiff offers no defense to the reality that this assumption by Dr. Pacey was based on little or no meaningful research and certainly not enough authoritative data to be relied upon to support an expert opinion under Fed. R. Evid. 702, ***Daubert,*** and its progeny. [*See* Plaintiffs' Response, at 10-11]. Review of the Defendants' arguments on this point further demonstrate how Dr. Pacey's overall proffered expert opinion represents nothing more than her broad speculation ungrounded in any reliable data concerning any actual prospective economic loss for the Plaintiff, particularly if the Plaintiff is required to return to Mexico for any gainful employment, based on the actual reality that Plaintiff remains an undocumented alien who cannot legally work in the United States. Careful review by this Court of the Defendants' arguments concerning Dr. Pacey and the Plaintiff's Response demonstrates Dr. Pacey cannot be allowed to testify in this case because her proposed expert opinions simply do not meet the reliability and relevance criteria to pass muster under this Court's gatekeeping role over experts mandated by Fed. R. Evid. 702.

## CONCLUSION

In conclusion, for all of the foregoing reasons, as well as based upon all of the arguments and authorities contained in their original Motion, Defendants Board of County Commissioners of Park County, Fred Wegener, Monte Gore and Vicki Paulsen respectfully request this Court issue an order excluding the testimony of Plaintiff's expert witness Patricia L. Pacey, Ph.D. from the trial in this matter, and for all other and further relief as this Court deems just and appropriate.

Dated this 2nd day of March, 2007.

Respectfully submitted,

s/ Andrew D. Ringel_____
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, Colorado 80202-2052
Tel: (303) 628-3300
Fax: (303) 293-3238
ringela@hallevans.com,
veigaj@hallevans.com
**ATTORNEYS FOR DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, FRED WEGENER AND MONTE GORE**

and

Josh A. Marks, Esq.
Melanie B. Lewis, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302
Tel: (303) 402-1600
Fax: (303) 402-1601
jam@bhgrlaw.com, mbl@bhgrlaw.com
**ATTORNEYS FOR DEFENDANT VICKI PAULSEN**

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 2nd day of March, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph J. Archuleta, Esq.
archuletalaw@qwest.net

William A. Trine, Esq.
btrine@trine-metcalf.com

Josh A. Marks, Esq.
jam@bhgrlaw.com

Melanie B. Lewis, Esq.
mbl@bhgrlaw.com

Lloyd C. Kordick, Esq.
lloyd@kordicklaw.com

Adele P. Kimmel, Esq.
akimmel@tlpj.org

s/Loree Trout,   Secretary
  Andrew D. Ringel, Esq.
  Jennifer L. Veiga, Esq.
  Hall & Evans, L.L.C.
  1125 17th Street, Suite 600
  Denver, CO 80202-2052
  303-628-3300
  Fax: 303-293-3238
  ringela@hallevans.com
  veigaj@hallevans.com

**ATTORNEYS FOR DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

H:\Users\RINGELA\park\Carranza-Reyes\Reply Motion to Exclude Patricia Pacey.doc