**EXHIBIT A-12**

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1

Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
JRL Enterprises, Inc. v. Procorp Associates, Inc.E.D.La.,2003.Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
JRL ENTERPRISES, INC.
v.
PROCORP ASSOCIATES, INC.. et al.
**No. Civ.A. 01-2893.**

June 3, 2003.

### ORDER & REASONS

FALLON, J.

*1 Before the Court are the following motions: (1) Motion of plaintiff, JRL Enterprises, Inc. ("JRL") for Reconsideration of this Court's January 16, 2003 Order & Reasons dismissing Civil Action No. 02-2038, a consolidated case in these proceedings; and (2) Motion in Limine of Defendant Procorp Associates ("Procorp") to Exclude the Testimony of Plaintiff's Expert, Harold Asher under Rule 702 of the Federal Rules of Evidence. For the following reasons, the Court GRANTS the plaintiff's Motion for Reconsideration and GRANTS the defendant's motion in limine.

### I. JRL'S MOTION FOR RECONSIDERATION

#### A. Facts

*1 Plaintiff, JRL, is a computer software company that designs educational software. During the fall of 2000, JRL began exploring the possibility of an initial public offering of its stock. To assist in this endeavor, it contracted with defendant Procorp, a human resources consulting firm. By May, 2001, the relationship between the parties had soured, and JRL filed suit against Procorp in Civil District Court for Orleans Parish asserting claims for breach of contract, negligence, and breach of fiduciary duties owed by Procorp to JRL. JRL further sought a declaratory judgment that it did not owe Procorp $378,641 in fees under the services contract. Procorp removed the lawsuit to this Court, asserting diversity jurisdiction.[FN1] According to the petition, Procorp had convinced JRL to turn over human resource functions to Procorp for efficient management. However, JRL alleged, the defendant shut down JRL's operations and prevented " performance of any useful work by company employees." When JRL appointed a new CEO, he terminated the contract, and the lawsuit followed.

FN1. This action was assigned Civil Action Number 01-2893, and is the lead case in this consolidated proceeding.

*1 Procorp answered and counterclaimed against JRL for the unpaid amounts of the contract. It also added JRL's CEO, John Lee, as a third party defendant based on JRL's lack of solvency. Lee then attempted to sue Dan Spence, president of Procorp, individually for defamation, but this action was dismissed by this Court in the Order and Reasons dated January 11, 2002. JRL thereafter sought leave to amend its petition to add Spence personally as a defendant, alleging that he was part of a conspiracy to take over JRL. Procorp opposed the proposed amendment. The magistrate judge granted leave to amend the complaint on March 25, 2002. Subsequently, on the plaintiff's motion, this case was transferred to Judge Barbier of this Court because it was related to proceedings underway in that Court. On April 4, 2002, defendant filed its objections to the magistrate's ruling on the amended complaint, and the matter was set for hearing before Judge Barbier on May 8, 2002. On April 23, 2002, Judge Barbier entered an order of dismissal in the related case, a resolution having been reached. Thereafter, Judge Barbier transferred the case back to this Court on May 6, 2002. The May 8 hearing was continued to June 14, 2002. On June 14, 2002,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

this Court reversed the magistrate's ruling and denied plaintiff's leave to amend. JRL then filed a new complaint in this Court on July 2, 2002 naming Procorp and Spence as defendants. This second suit was docketed as Civil Action Number 02-2038 and was consolidated with the first-filed suit for trial before this Court.

*2 The second complaint asserts causes of action against Spence and Procorp, as Spence's employer under the theory of *respondeat superior,* for tortious interference with contractual relations, tortious interference with prospective business opportunities of JRL, breach of Spence's fiduciary duties to JRL, negligence, and conspiracy. According to the allegations of the complaint, Spence, JRL's CFO Louis Raspino, and JRL's primary lender engaged in a conspiracy to attempt an improper hostile takeover of JRL by the lender. JRL alleged that Spence divulged confidential information about JRL to the bank, and prevented JRL from earning any productive revenue.

*2 Spence and Procorp moved to dismiss the second complaint (02-2038) pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants argued that the causes of action pled sound in tort and have prescribed because suit was filed more than one year after the actions allegedly occurred. Alternatively, defendants argue that the plaintiffs have failed to assert any claims upon which relief can be granted. JRL argued that its filing of the first suit interrupted prescription as to both Spence and Procorp because the two are solidarily liable.

*2 In Order & Reasons dated January 16, 2003, this Court granted the defendants' motion and dismissed Civil Action No. 02-2038; judgment was thereafter rendered as to those claims. In reaching its decision, the Court found that Spence and Procorp were solidarily liable only insofar as that term is used under Civil Code article 2320 which makes employers liable for the torts of their employees. The Court reasoned that Procorp could be liable for Spence's actions, but that Spence could not be held liable for Procorp's. The Court further noted that the causes of action alleged in the second complaint were based on conspiracy and tort, while the first complaint sounded in contract. Analogizing this case to the court's decision in *Autrey v. Energy Corp. of America, Inc.,* 594 So.2d 1354 (La.App. 3d Cir.1992), the Court found that the causes of action pled in the two complaints were distinct and should not be considered as having put the defendant on notice about additional causes of action. Accordingly, the Court found that prescription had not been interrupted and these claims were dismissed. As to those claims for Spence's breach of a fiduciary duty, the Court found that those were not viable in the absence of a showing of fraud; since JRL's complaint did not plead fraud, these claims were also dismissed.

*2 JRL now moves for reconsideration of this ruling and continues to argue that Procorp and Spence must be regarded as solidarily liable such that suit against the first defendant interrupted suit as to the second defendant. JRL has moved for reconsideration only as to those causes of action sounding in tort (tortious interference with contractual relations, tortious interference with prospective business opportunities, and negligence); they do not challenge the Court's rulings as to Spence's fiduciary duties. JRL argues that this Court's reliance on *Autrey* was misplaced and argues that the Court should apply *Masson v. Champion Ins. Co.,* 591 So.2d 399 (La.App. 4th Cir.1991), to find that prescription was interrupted. Defendant re-urges the same arguments made in its motion to dismiss the causes of action against Spence and the reply memorandum thereto.

B. Analysis

*3 JRL relies on *Williams v. Sewerage & Water Board,* 611 So.2d 1383 (La.1993) to support its arguments that Spence and Procorp are solidarily liable. The *Williams* Court held that "the sources of the obligors' debts are irrelevant so long as they are both obligated to the same thing, that is, to repair the same damage." *Id.* at 1388. While this is correct, it does not explain how an employee can be held liable for the acts of the employer. JRL must demonstrate that Spence be held liable for his employer's actions in the first complaint. It is clear under the second complaint that Spence and Procorp are solidarily liable under the theory of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                      Page 3
Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

*respondeat superior* and Civil Code article 2320. As this Court stated in its Order & Reasons, Procorp is liable for Spence's actions, but that does not make Spence responsible for Procorp's.

*3 The first complaint asserted a cause of action for breach of contract; Spence cannot be held liable on this theory because he is not a party to the contract. Any liability Spence may have for Procorp's actions arises out of JRL's claims that Procorp acted negligently. A basic tenet of corporate law is that a corporate officer or employee cannot be held responsible under a respondeat superior theory for the actions of the corporation, without a showing of fraud or serious misconduct. In dismissing the plaintiff's causes of action against Spence and Procorp for Spence's alleged breach of fiduciary duty, this Court noted that Louisiana law does not permit recovery against corporate officers for the independent action of the corporation absent allegations of fraud. The same holds true for allegations of negligence. *See Young v. Adolph,* 821 So.2d 101, 107 (La.App. 5th Cir.2002) ("Thus, if the officers and directors do not purport to bind themselves individually, they do not incur personal liability for the debts of the corporation."). As such, Spence cannot be held liable for Procorp's actions in the first complaint. The first complaint did not allege causes of action for which a solidary obligor exists.

*3 JRL's reliance on *Masson v. Champion Ins. Co.,* 591 So.2d 399 (La.App. 5th Cir.2002), is misplaced. In *Masson,* the plaintiff sued the insurer of the driver at fault in an automobile accident involving the plaintiff. The plaintiff later amended is complaint to add defendant LIGA, who had assumed the debts of the insurance company. A third amended complaint was then filed against LIGA, the insurer, the negligent driver, and the plaintiff's UM carrier. The defendants moved to dismiss the third amended complaint, arguing that prescription had run. The court of appeal overruled the exception of prescription, finding that all defendants were liable in solido so that prescription was interrupted as to all when the first suit was filed. *Id.* at 403.

*3 In this case, it has already been demonstrated that Spence was not liable in solido for any acts of Procorp alleged in the first complaint. Procorp is only vicariously liable for Spence's acts in the second complaint. The two are not solidarily liable as that term is usually understood. Spence could not have been reasonably put on notice that he was going to be sued for the acts of the corporation. Accordingly, interruption as to Spence did not occur.

*4 However, that does not end this Court's inquiry on the motion for reconsideration. During oral arguments on this motion, plaintiff raised an additional argument compelling reconsideration. It argued for the first time that this Court should use its equitable powers to permit the second complaint because the lawsuit was untimely only because of the delayed review of the magistrate's order granting leave to file the amended complaint. The plaintiff is correct that its amended complaint was timely filed, and the issue of prescription arose only because the back and forth transfer of the case between two sections of this Court delayed a district court's review of the magistrate's ruling. The plaintiff was not at fault in causing this delay. Until a dispositive ruling on the magistrate's order, there was no reason to file a separate suit and when the magistrate's ruling was reversed by this Court it was then technically too late to file it.

*4 Prescriptive statutes should be "strictly construed against prescription and in favor of the claim that is said to be extinguished." *Louisiana Health Service and Indemnity Co. v. Tarver,* 635 So.2d 1090, 1098 (La.1994). Nevertheless, the Louisiana Supreme Court has also recognized that "[t]he principles of equity and justice ... demand that under certain circumstances, prescription is suspended because plaintiff was effectually prevented from enforcing his rights for reasons external to his own will." *Wimberly v. Gatch,* 635 So.2d 206, 211 (La.1994). Although the court in *Wimberly* was discussing the doctrine of *contra non valentem,* and this case does not fall squarely within the recognized circumstances of that doctrine, the Court finds that the present case requires a similar analysis. In this case, the plaintiff's claim prescribed only because of a delay in issuing a ruling, a delay not occasioned by any act of the plaintiff. Statutes

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 4

Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

of limitation or prescription as the concept is termed in Louisiana brings about a degree of finality as well as predictability. These concepts are important to an effective legal system. But, in certain, rare instances the need of finality and predictability must bow to fairness and justice.[FN2] This case is one of those rare instances. A strict application of prescription is not warranted in this case. Accordingly, the motion for reconsideration is GRANTED, and the Court VACATES its judgment in Civil Action No. 02-2038.

> FN2. *See, e.g.,* Albert Tate, Jr., *The "New" Judicial Solution: Occasions for and Limits to Judicial Creativity,* 54 TUL. L. REV. 877, 911 (1980).

## II. PROCORP'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

### A. Facts

*4 During discovery of this matter, JRL identified Harold Asher as its expert on the calculation of damages. Asher is a Certified Public Accountant who has previously qualified as an expert witness in several courts throughout Louisiana, including the Eastern District of Louisiana. Asher's expert report ( "the Asher report") stated that but for Procorp's actions, JRL would have had profits from sales to the ACT company of more than $7.7 million. Further, Asher opined that JRL's profits from other sales, but for Procorp's interference, would have totaled more than $29.7 million. Finally, Asher concluded that Procorp caused JRL to incur an additional $982,946 in extra expenses. Thus, the Asher report found that JRL's damages as a result of Procorp's actions amounted to more than $30.7 million.

*5 The defendant moves to exclude this report and Asher's testimony, arguing that it is does not meet the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert.* Asher testified that he relied on a document referred to as HA-2 in formulating his report. HA-2 is a compilation of JRL's sales forecasts prepared in late 2000 or early 2001; the forecast was prepared by John Alvendia, JRL's vice-president in charge of sales, and based only on his experiences with JRL and knowledge of its business. HA-2 is a list of potential JRL customers, the expected revenues and expenses from potential sales, and the estimated probability of those sales becoming a reality. The potential losses were calculated by subtracting the expected costs from the potential revenue and multiplying that by the probability of the sale. Asher testified that he conducted no independent investigation of these numbers and simply relied on Alvendia's numbers and the representations of JRL CEO John Lee in formulating his calculations. Asher stated in his deposition that he was "merely taking the facts as given to me by Mr. Lee and putting them in a format so that you can determine the economic loss."

*5 Procorp argues that this reliance is not sufficient under Rule 702 and *Daubert.* It argues that the failure to conduct independent verification of his numbers is not sound methodology. Procorp points out that the numbers simply reflect the self-serving representations of JRL and its employees. JRL asserts that Asher is not being tendered as an expert on probabilities, and that the probabilities would be proven by Alvendia's testimony. However, Alvendia himself testified that he is not an expert on statistics or probabilities. Therefore, argues the defendant, the numbers in the Asher report are unreliable because they are not the basis of an independent, verifiable figures.

*5 JRL opposes the defendant's motion on several grounds. First, it argues that Procorp's motion is deficient because Procorp relies on Asher's and Alvendia's incomplete depositions. According to the plaintiff, defense counsel took these depositions during the course of a day, then determined that the deposition would need to be continued until a later date. However, to date, the depositions have not concluded. Further, a review of the depositions shows that only defense counsel had questioned the witnesses prior to the depositions' termination. JRL argues that the motion should be either denied outright because of the failure to use complete depositions or should at least be denied as premature until such depositions are concluded.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 5

Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

*5 JRL's second argument is that the assumptions made in formulating Exhibit HA-2 and, thus, the Asher report, were reasonable because they were based on Alvendia's knowledge of the working of the company. JRL argues that this was part of the company's regular strategy, and that these figures were not prepared solely for this litigation. Furthermore, JRL points to the deposition of John Mann, a consultant contacted by JRL who was involved in some of the alleged lost sales JRL is claiming in damages. Mann simply testified that he found Alvendia's assumptions regarding some of the sales to be "fair." However, he offers no support for this assumption, and, most importantly, there is no indication that Asher followed up with Mann to verify these assessments. In fact, after reviewing Asher's deposition, it would seem that he did not do so.

*6 JRL's final argument is that Asher is entitled to rely on facts provided to the expert before or at a hearing under Rule 703. JRL insists that Ahser is not being offered as an expert in causation or statistics and that it is for a jury to determine whether Asher's reliance on the facts was reasonable. Thus, JRL argues that cross-examination, not a *Daubert* motion, is the appropriate mechanism to challenge Asher's opinions.

B. Analysis

*6 As noted above, the defendants challenge the experts' opinion as unreliable under Rule 702 of the Federal Rules of Evidence; the rule provides:

*6 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*6 FED. R. EVID. 702.

*6 The current version of Rule 802 was enacted in response to the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), which held that before an expert is allowed to testify the trial court must assess the reliability of the methodology used by the proposed expert and the relevance of the testimony to the facts at issue. The proponent of the evidence must first prove that the offered testimony is based on sufficient facts or data. *See* FED. R. EVID. 702. Next, the party must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable.... The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (en banc). The proponent of the evidence must prove the testimony's reliability by a preponderance of the evidence. *Id.*

*6 In *Daubert,* the Supreme Court identified a non-exclusive list of factors for a district court to consider in determining reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert,* 509 U.S. at 593-95. A district court must focus on methodology, not conclusions. In *Kumho Tires,* the Court cautioned that the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tires,* 526 U.S. at 152. After the proponent of the expert testimony has carried her burden of showing reliability, the party must also prove the expert opinions' relevance. That is, that the experts' opinions have "a valid ... connection to the pertinent inquiry." *Daubert,* 509 U.S. at 592.

*7 Plaintiff argues that the defendant is attacking the factual basis of Asher's opinions and that the jury, not the Court in a *Daubert* hearing, should evaluate this issue. Plaintiff cites *Loudermill v. Dow Chemical Co.,* 863 F.2d 566 (8th Cir.1988), which held that "the factual basis of an expert opinion goes to the credibility of the testimony, not the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Id.* at 570. Plaintiff's argument is without merit because it fails to realize that the defendant is not arguing that there is no factual basis for Asher's opinions, but that Asher's reliance and use of the facts is faulty. Defendant is properly attacking the expert's methodology, not the facts of the opinion. As the Tenth Circuit recognized in *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir.1993), the rationale of Rule 703 "is certainly not satisfied in this case, where the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable." *Id.* at 732.[FN3]

> FN3. It is significant to note that in the *TK-7 Corporation* case, the court held that one expert could not rely on the figures calculated by another expert whether the proffered expert did not conduct any investigation of the other expert's figures. As the Court noted, the fact that [the expert] relied upon the report did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report." *TK-7 Corp.*, 993 F.2d at 732.

*7 Furthermore, the Court overrules the plaintiff's objections to the form of this motion because Asher's deposition was not concluded. Plaintiff has the burden of proving his case and could have called Asher as a witness at the time of the hearing, but plaintiff chose not to do so. Also, plaintiff chose not to resume Asher's deposition. Therefore, the Court will proceed with an analysis of Asher's proffered opinions under Rule 702 and *Daubert.*

*7 District courts have previously utilized *Daubert* and Rule 702 in striking expert opinions on economic loss and damages. The district court's decision in *Otis v. Doctor's Associates, Inc.*, 1998 WL 673595 (N.D.Ill. Sept. 14, 1998) is most analogous to the present case. In *Otis,* the plaintiff sued for fraud arising out of a failed agreement to promote a fast food restaurant. Plaintiff claimed that he was entitled to lost profits based on the defendant's failure to abide by a development agent agreement ("DA agreement"). Plaintiff retained an expert to perform damages calculations based on the anticipated lost profits over the life of the DA agreement, and defendant moved to exclude the expert's opinions as unreliable under the *Daubert* rationale.

*7 The Court granted the motion and found that the expert's calculations were based solely on projections found in the agreement. The district court noted that the expert performed no "market analysis to verify the reasonableness or accuracy of the projections in the DA Agreement." *Id.,* at *1. The court found that this failure established that the expert's calculations could not be evaluated for accuracy. Furthermore, the court found that the expert had failed to establish that the expert's numbers had any basis in reality. Concluding its analysis, the court stated that the expert had failed to offer any evidence of general acceptance, or known rate of error for his methods; finally, the court said that the plaintiff had shown no evidence that the expert's calculations were "anything more than an exercise in arithmetic based on inherently unreliable values." *Id.,* at *4.

*8 Other courts have similarly excluded expert opinions where the expert failed to conduct any independent research to determine the reliability of his assumptions. *See, e.g., Total Containment, Inc. v. Dayco Products, Inc.,* 2001 WL 1167506, at *6-7 (E.D.Pa. Sept. 6, 2001); *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,* 1998 WL 175888, at *7-8 (E.D.Pa. Apr. 15, 1998).

*8 When these principles are applied to the Asher report, this Court finds that JRL has not met its burden of relevance and reliability under Rule 702. Asher has merely accepted as true the facts given him by JRL. JRL's assertion that it is not offering Asher as an expert in causation or statistics but as an expert on the calculation of damages is not enough. Asher performed no independent analysis of the numbers given him by JRL; in fact, his report is devoid of any analysis of figures other than those provided by JRL. He has failed to show that reasonable accountants would simply and blindly accept such numbers in formulating opinions. His

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Not Reported in F.Supp.2d

Page 7

Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

theory cannot be tested, and the rate of error is not known. Basically, the plaintiff is presenting its own estimation of damages in the guise of an expert opinion. Asher has failed to demonstrate any impartiality in formulating his opinions, and he should be precluded from testifying. Procorp's Motion in Limine is GRANTED.

### III. CONCLUSION

**\*8** For the foregoing reasons, IT IS ORDERED that the plaintiff's Motion to Reconsider this Court's January 16, 2003 Order & Reasons is GRANTED. Accordingly, IT IS FURTHER ORDERED, that this Court's judgment dismissing Civil Action Number 02-2038 is VACATED. Finally, IT IS FURTHER ORDERED that the defendant's Motion in Limine to Exclude the Expert Testimony of Harold Ahser is GRANTED.

E.D.La.,2003.
JRL Enterprises, Inc. v. Procorp Associates, Inc.
Not Reported in F.Supp.2d, 2003 WL 21284020 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2002 WL 32914623 (Trial Motion, Memorandum and Affidavit) Motion to Extend Deadline for Submitting Expert Report (Jul. 23, 2002) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.