IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-0037-WDM-BNB

MOISES CARRANZA-REYES

        Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department;
VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado,

        Defendants.

---

## FINAL PRETRIAL ORDER

---

## 1.  DATE AND APPEARANCES

        The Final Pretrial Conference was held before United States Magistrate Judge Boyd N. Boland commencing at 9:00 a.m. on March 13, 2007.  The Plaintiff is represented by William Trine of Trine & Metcalf, P.C., Joseph Archuleta of The Archuleta Law Firm, and Lloyd C. Kordick of Lloyd C. Kordick & Associates.  Defendants Board of County Commissioners of Park County, Fred Wegener and Monte Gore are represented by Andrew Ringel and Jennifer Veiga of Hall & Evans, LLC.  Defendant Vicki Paulsen is represented by Josh A. Marks and Melanie B. Lewis of Berg, Hill, Greenleaf & Ruscitti.

## 2. JURISDICTION

This Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## 3. CLAIMS AND DEFENSES

**A.     Plaintiff's Claims.**

The Plaintiff is a 31-year-old immigrant from Mexico who was detained by the INS (now "ICE") and placed in the Park County Jail as an INS detainee on March 1, 2003.  He was never charged with a crime and has no criminal history.  He worked as a police officer in Mexico City for four years and received an honorable discharge from the Mexican Army.  Upon arrival at the jail on March 1, 2003, Plaintiff was placed in Pod D where all undocumented immigrant were detained at the Park County Jail pursuant to a contract which Park County had with the INS. Pod D was originally designed and constructed to house 18 people with 18 double bunk beds on the upper tier of the dormitory-style cell and 3 picnic-style concrete tables on the lower tier that would comfortably seat 18 people for dining purposes.  American Correctional Association standards adopted by the DOC and Park County Jail limited the number of inmates in dormitory housing to one inmate per 80 square feet.  Pod D had a total of 1475 square feet, which included both upper tier and lower floor.  Accordingly, the ACA standards and the Park County Jail regulations limited the number of detainees that could be housed in Pod D to 18.  Pod D also had two toilets, and ACA standards adopted by the jail required one toilet per 12 people.  Pod D likewise had two showers.  After the jail was constructed in 1995, three-tiered bunk beds were crowded into the upper tier of Pod D, replacing the double bunk beds, with the top bunk only 16

2

inches from the ceiling.  With that crowded change, 42 INS detainees could be accommodated on the upper tier.  Once the bunks on the upper tier were filled, any additional detainees were give a mat and told to sleep on the floor.  When mats filled the space between the three-tiered bunk beds on the upper tier, additional detainees would sleep on mats on the ground floor.

When Plaintiff arrived at the jail on 3/1/03, he was placed in an already overcrowded Pod D with 47 other INS detainees, many of whom were ill, and Plaintiff slept on a dirty mat on the floor between sick detainees.  The sick detainees were not quarantined or segregated from the healthy population.  During the week of 3/1/03, more detainees arrived and were crowded into Pod D until there were 61 with 19 sleeping on mats on the floor.  The contagion spread among detainees and the Plaintiff became ill on 3/4/03 and developed a red sore throat, fever, headache, nasal congestion, and other signs and symptoms of strep throat.  In the days that followed, he developed nausea, frequent vomiting, was spitting up blood, had chest pain, abdominal pain and back pain.  He was given pills for his headache and diarrhea by the Defendant, Nurse Paulsen, and the jail staff, but he and the other detainees were not seen by a physician.

During the night of March 7, 2003, the pain in his chest was severe, he was having great difficulty breathing, and a deputy administered oxygen and called Nurse Paulsen at home, and she ordered the same medications by telephone without traveling to the jail to do a nursing assessment and without arranging for transport to the emergency room at the Summit County Hospital.  Nurse Paulsen arrived at the jail at 8:00 a.m. on March 8, 2003 (Saturday), to assess the Plaintiff and immediately recognized that he needed urgent emergency treatment.  Instead of sending Plaintiff by ambulance to the emergency department at Summit County, she went home thinking that the Plaintiff might have a kidney stone that he would pass without medical

treatment.  In fact, Plaintiff was suffering from pneumonia in both lungs, septicemia that had developed from his strep throat, and organ failure was developing from his sepsis.  Nurse Paulsen finally ordered Plaintiff's transfer to the Summit County Medical Center by telephone at 11:00 a.m. on 3/8/03, but not by ambulance.  Plaintiff was shackled, handcuffed and placed in a sheriff's van, arriving at the Summit County Medical Center at 12:45 p.m., where pneumonia, septicemia, and lab results showing system failure resulted in a transfer by ambulance to Denver Health Hospital.   On arrival at Denver Health, Plaintiff was in septic shock, was diagnosed with a virulent Strep A infection, and he went into cardiac and respiratory arrest, but was resuscitated.

Plaintiff had developed a Strep A throat infection at the jail, which was not timely treated with antibiotics, and the bacteria infected his lungs causing pneumonia and spread through his blood vessels (septicemia) to vital organs, which began shutting down resulting in septic shock, respiratory and cardiac arrest, necrosis of both legs and the lower right lobe of his lung.  It was necessary that his left lower leg be amputated to save his life, and it was touch and go as to whether his right leg would be amputated.  His right leg sustained severe tissue damage and is permanently injured.  He was in ICU for two months and in-house rehabilitation for a month.  He was eventually fitted with a prosthesis, but suffers from constant discomfort and frequent pain in both legs.  He has severe psychological problems related to his physical condition, including a fear that he will never marry and have a family, or be able to support a family.  He is presently living in Denver with his brother and sister-in-law and hopes to become a citizen of the United States.

Plaintiff claims that it was the custom and practice of the Park County Defendants to accept all detainees sent by the INS and place them in Pod D, regardless of whether Pod D had

adequate bunk beds, toilets, or dining tables sufficient to accommodate the number of detainees accepted, and no maximum limit was placed on the occupancy of Pod D in violation of the Jail's own Policy and Procedure Manual which limited the number of detainees in Pod D to a maximum of 18.  Plaintiff claims that Pod D was filthy and contaminated as a result of overcrowding and sick detainees not being isolated from the general population and not receiving medical care.

Plaintiff claims that it was the custom, practice and policy of the Park County Defendants to crowd as many detainees into Pod D as possible to generate a profit for the county and, in the process, intentionally violated the County's own written policies and procedures, as well as national and Colorado DOC standards.

Plaintiff claims that:

a.      Each of the Defendants' conduct constitutes deliberate indifference to Plaintiff's serious medical needs and inhumane conditions of Plaintiff's confinement in violation of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments.

b.      Each of the Defendants' conduct constitutes cruel and unusual punishment and a violation of due process and equal protection under the law.

c.      That the Defendant, the Park County Board of County Commissioners, failed to enact policies or enforce existing policies that would guarantee INS detainees sanitary housing and appropriate medical care and treatment guaranteed under the Eighth and Fourteenth Amendments of the constitution.

d.      That the Sheriff, in his official capacity, failed to enforce the policies, practices and procedures which governed the operation of the jail and which were designed to protect the

constitutional rights of detainees.  Further, the Sheriff permitted and condoned the customs, practices and procedures of overcrowding and filthy conditions of confinement which deprived detainees, including the Plaintiff, of their constitutional rights to not be subjected to cruel and unusual punishment.

e.       The Sheriff, in his official capacity, failed to institute policies or practices, or enforce existing policies, which resulted in a deliberate indifference to Plaintiff's medical needs and deliberate indifference to the inhumane conditions of his confinement.

f.       The Defendant, Vicki Paulsen, R.N., was negligent in her care and treatment of the Plaintiff while he was incarcerated in the Park County Jail.  Her negligence consisted, *inter alia,* of improperly making medical diagnoses and improperly treating Plaintiff's condition; of failing to timely obtain medical treatment for the Plaintiff; in abandoning the Plaintiff; and in failing to do proper nursing assessments, taking a proper history and properly recording this information.

g.       Punitive damages on his claims of constitutional rights violations and attorney's fees and costs pursuant to §1988.

**B.       Defenses from Defendants Board of County Commissioners of Park County, Sheriff Fred Wegener, and Captain Monte Gore:**

Defendants Board of County Commissioners of Park County, Sheriff Fred Wegener, and Captain Monte Gore deny they violated the Plaintiff Moises Carranza-Reyes' constitutional rights in any fashion whatsoever.  Defendants deny the conditions of confinement of the Plaintiff during his detention in the Park County Jail were as the Plaintiff describes and deny the Plaintiff's conditions of confinement violated his constitutional rights.  Further, Defendants state

the Plaintiff received appropriate access to medical care consistently with his constitutional rights during his detention in the Park County Jail.  No custom, policy, or practice of the Board of County Commissioners of Park County or the Sheriff of Park County caused any constitutional injury to the Plaintiff.  Finally, neither Sheriff Wegener nor Captain Monte Gore personally participated in any alleged violation of Plaintiff's constitutional rights during his detention in the Park County Jail.

As defenses and affirmative defenses, these Defendants assert the following:  (1) Plaintiff's Second Amended Complaint fails to state a claim as to which relief may be granted; (2) All or part of Plaintiff's claims do not rise to the level of constitutional violations, sufficient to state a claim upon which relief may be granted against these Defendants; (3) Defendants' actions were taken for legitimate, nondiscriminatory penological purposes; (4) Plaintiff's claims for punitive or exemplary damages against Defendants Fred Wegener and Monte Gore in their individual capacities are barred, reduced, or in the alternative, are unconstitutional and would violate their rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; (5) Plaintiff's claims for punitive or exemplary damages against Defendants Fred Wegener and Monte Gore in their official capacities, and Defendant Park County Board of County Commissioners are barred as a matter of law; (6) The injuries and damages sustained by Plaintiff, in whole or in part, were proximately caused by his own acts or omissions and/or the acts or omissions of third parties over whom the Defendants have no control or right of control.; (7) Defendants Fred Wegener and Monte Gore in their individual capacities are entitled to qualified immunity for all Plaintiff's claims of constitutional violations; (8) Plaintiff failed to mitigate his damages, if any, as required by law; (9) Defendants never

breached any duty owed Plaintiff at any time in the course of his incarceration; (10) Plaintiff is not entitled to the relief sought in the Second Amended Complaint under any of the theories asserted; (11) Defendants may not be held liable on the basis of any vicarious liability or respondeat superior theory for any alleged violation of the United States Constitution; (12) Plaintiff was deprived of no well-settled liberty or property interest and he was afforded all of the rights, privileges and immunities guaranteed by the Constitution and no constitutionally protected interest is impugned in relation to any claim of Plaintiff; (13) Plaintiff's claims against Defendants Fred Wegener and Monte Gore in their individual capacities are barred, in whole or in part, due to a failure of personal participation on their part; (14) Defendants' conduct was, at all times, lawful, justified and privileged and any actions complained of by Plaintiff in relation to these Defendants were justified by penological reasons; (15) Plaintiff's injuries and damages, if any, were either pre-existing or not aggravated by any action or omission of or by Defendants, nor were they proximately caused by or related to any act or omission of Defendants; (16) Plaintiff's damages, if any, are subject to offset by virtue of amounts received from other sources.

**C.      Defenses of Defendant Vicki Paulsen**, **R.N.:**   Defendant Vicki Paulsen, R.N., denies that she violated Plaintiff's Eighth or Fourteenth Amendment, or any other constitutional rights, and denies that her treatment of Plaintiff was below the standard.  When Plaintiff presented to Paulsen with vague symptoms that were consistent with a common viral illness and/or altitude sickness, she treated him with over-the-counter medications to relieve any discomfort he was suffering.  When Plaintiff's condition deteriorated, Paulsen went to the Park County Jail on her day off to evaluate Plaintiff and determined that Plaintiff needed evaluation by a physician,

requiring transport to Summit Medical Center.  Paulsen ordered that Plaintiff be transported, and took action to ensure transport arrangements were in progress.  Paulsen left the jail believing that transport arrangements were in progress and that Plaintiff was stable, and later called the jail to check on Plaintiff.  At no time did Paulsen act with deliberate indifference to Plaintiff's serious medical needs, and her treatment of Plaintiff was well within the standard of care.

For her defenses and affirmative defenses, Paulsen states Plaintiff fails to state any claim in the Second Amended Complaint upon which relief may be granted against her; Plaintiff's claims do not rise to the level of any constitutional violation sufficient to state a claim under 42 U.S.C. § 1983; her actions in relation to Plaintiff were taken in good faith and for legitimate reasons and did not violate any regulatory, statutory, common law, or other legal provision of any kind; any injuries and damages sustained by Plaintiff, in whole or in part, were proximately caused by his own acts or omissions, or the acts or omissions of third parties that Paulsen cannot control or over whom she lacks the right to control; Plaintiff's injuries and damages, if any, are the result of his own negligence, which bars or diminishes his right of recovery pursuant to C.R.S. § 13-21-111; she is entitled to a reduction of the damage award, if any, to the extent of any payments made by a collateral source under the provisions of C.R.S. § 13-21-111.6; her liability, if any, is limited by the provisions of C.R.S. § 13-21-111.5; Plaintiff's alleged damages are the sole and proximate result of any injury sustained or a condition existing prior to the incident complained of in Plaintiff's Second Amended Complaint; Defendant is immune to Plaintiff's claims, or his claims are limited by virtue of the doctrine of qualified immunity, or of the Colorado Governmental Immunity Act, C.R.S. § 24-10-101, *et seq*; Plaintiff failed and refused to mitigate his damages, if any, as required by law; Plaintiff is not the real party-in-

interest to all of the claims set forth in the Second Amended Complaint; Plaintiff's claim for punitive damages against Paulsen is barred as a matter of law, or would otherwise be unconstitutional as applied to this Defendant; Paulsen asserts any and all protections, limitations and rights afforded under the Health Care Availability Act, C.R.S. § 13-64-101; and Paulsen asserts any affirmative defense raised by the Park County Defendants as appropriate.

## 4.  STIPULATIONS

The parties stipulate the following facts are undisputed:

1.      Plaintiff Moises Carranza-Reyes was detained by the Immigration and Naturalization Service for being in the United States without proper documentation on March 1, 2003.

2.      The INS contracts with Park County to house INS detainees in the Park County Jail.

3.      Plaintiff was detained in the Park County Jail from March 1, 2003, through March 8, 2003.

4.      Fred Wegener was the Sheriff of Park County in March 2003.

5.      Monte Gore was a Captain and the Jail Administrator for Park County in March 2003.

6.      Vicki Paulsen is a Registered Nurse and provided medical care at the Park County Jail in March 2003.

7.      Park County contracted with James J. Bachman, M.D. to provide medical services at the Park County Jail in March 2003.

## 5.  PENDING MOTIONS

a.      Motion for Summary Judgment from Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore filed on December 13, 2006 (Doc. 117). Plaintiff filed his Response to Motion for Summary Judgment from Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore on January 11, 2007 (Doc. 130).  Defendants Park County Board of County Commissioners, Fred Wegener, and Monte Gore filed their Reply Brief in Support of Motion for Summary Judgment on February 12, 2007 (Doc. 157).

b.      Defendant Vicki Paulsen's Motion for Summary Judgment filed on December 15, 2006 (Doc. 121), and Brief in Support of Defendant Vicki Paulsen's Motion for Summary Judgment filed on December 15, 2006 (Doc. 122).  Plaintiff filed his Response to Defendant Vicki Paulsen's Motion for Summary Judgment on January 15, 2007 (Doc. 136).  Defendant Vicki Paulsen filed her Reply Brief in Support of Motion for Summary Judgment on February 15, 2007 (Doc. 167).

c.      Defendants' Motion to Limit Expert Testimony by Michael S. Niederman, M.D. and Robert B. Greifinger, M.D. filed on January 2, 2007 (Doc. 127).    Plaintiff filed his Response to Defendants' Motion to Limit Expert Testimony by Michael S. Niederman, M.D. and Robert B. Greifinger, M.D. on January 26, 2007 (Doc. 146).  Defendants filed their Reply in Support of Motion to Limit Expert Testimony of Michael S. Niederman, M.D. and Robert B. Greifinger, M.D. on February 19, 2007 (Doc. 147).

d.      Defendants' Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A. filed on January 3, 2007 (Doc. 128).   Plaintiff filed his Response to Defendants' Motion to

Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A. on January 30, 2007 (Doc. 150). Defendants filed their Reply in Support of Motion to Exclude Plaintiff's Expert Witness Helen M. Woodard, M.A. on February 23, 2007 (Doc. 149).

        e.        Defendants' Motion to Exclude Plaintiff's Expert Witness Patricia L. Pacey, Ph.D. filed on January 3, 2007 (Doc. 130).   Plaintiff filed his Response to Defendants' Motion to Exclude Plaintiff's Expert Witness Patricia L. Pacey, Ph.D. on February 1, 2007 (Doc. 153). Defendants filed their Reply in Support of Motion to Exclude Plaintiff's Expert Witness Patricia L. Pacey, Ph.D. on March 2, 2007 (Doc. 173).

        f.        The parties contemplate filing motions in limine and trial briefs pursuant to the deadline established by this Court's Pretrial and Trial Procedures.  In addition, Defendants contemplate potentially filing additional motions pursuant to Fed. R. Evid. 702 challenging aspects of the proposed expert testimony of some of the Plaintiff's expert witnesses.

## 6.  WITNESSES

A.     Plaintiff's Non-Expert Witnesses:

    (a)    Will Call Witnesses:

        (1)        The Plaintiff, **Moises Carranza-Reyes**, 68 East 108th Street, Northglenn, CO 80238, telephone 720-620-0200, will testify concerning his claims for relief, injuries and damages sustained, his pre-existing health condition, and conditions of confinement at the Park County Jail.

        (2)        **Abraham Carranza-Reyes,** 68 E. 108th Street, Northglenn, CO 80238, telephone 720-620-0200.  Plaintiff's brother was also a detainee at the Park County Jail and has information concerning the Plaintiff's pre-existing health condition, his

deteriorating health condition at the jail, the conditions of confinement at the jail, and Plaintiff's physical and mental condition, injuries and damages.

(3)     **John Bellantonio,** 29025 Pinion Circle Drive, Buena Vista, CO 81211, telephone 719-295-2350.  Officer employed at the Park County Jail.  Mr. Bellantonio will testify about the history of overcrowding, conditions of confinement in Pod D, the practice of violating the Sheriff's policies and procedures, the illness of detainees in Pod D in March 2003, his unsuccessful efforts to limit the number of detainees in Pod D, his complaints about the substandard conditions in Pod D, and any other relevant matters contained in his deposition.

(4)     **Edward William Allen,** 510 North 19th Street, No. 34, Cañon City, CO 81212.  Officer employed at the Park County Jail during relevant time frame.  Mr. Allen will testify about the history of overcrowding violating the jail's policies and procedures; the design, size and configuration of Pod D; the conditions of confinement in Pod D during March 2003 and prior thereto; the condition and illness of detainees in Pod D in March 2003; his contacts with and observations of Plaintiff; and any other relevant matters contained in his deposition.

(b)     May Call Witnesses:

(1)     The Defendant, **Monte Gore,** for cross-examination.  Will be cross-examined on the jail's policies and procedures and the violations thereof; turning the jail into a profit center for the county by overcrowding; failure to provide timely medical care; conditions of confinement and other cost-reduction methods resulting in detainee health problems; the jail's policies and procedures and the intentional violation thereof;

his knowledge concerning Plaintiff's illness and treatment; and other relevant matters contained in his deposition.  He may testify with regard to his conversations with other people involving Plaintiff's incarceration at the jail, his health problems, efforts to sanitize and disinfect the jail after Plaintiff was hospitalized, his conversations with other people regarding the conditions at the jail, his conversations and meetings with the Park County Commissioners, the jail's budget for health care, sanitation, and any other relevant matters contained in his deposition.

(2)     The Defendant, **Sheriff Fred Wegener,** for cross-examination.  May be crossed examined on overcrowding; the conditions of confinement in Pod D; the architectural drawings of the jail; the jail's Policy and Procedure Manual and violations; newspaper articles regarding the jail as a profit center; violations of the ACA Standards and Jail Policies and Procedures; overcrowding and conditions of confinement; and any other relevant matters contained in his deposition.

(3)     **Briselda Gomez-Villalobos,** the wife of Abraham Carranza-Reyes, 68 E. 108th Street, Northglenn, CO 80238, telephone 720-620-0200.  Plaintiff's sister-in-law, who was also a detainee incarcerated at the Park County Jail, has knowledge concerning Plaintiff's pre-existing health condition, the injuries and damages sustained by Plaintiff, the overcrowding and conditions of confinement, the lack of medical care and illness of detainees, and any other relevant matters contained in her deposition.

(4)     **Daniel Muldoon,** for cross-examination, sergeant/employee at the Park County Jail.  Will testify regarding the Policy and Procedure manual and the intentional violation of written policies resulting in overcrowding and filthy conditions of

confinement; the contagion spreading among detainees in Pod D while Plaintiff was incarcerated; his observations and conversations with others concerning Plaintiff's condition and illness; his transport of the Plaintiff to Summit County Medical Center and from there to Denver Health; his knowledge of the spread of communicable disease at the jail; the failure to disinfect and sterilize the jail facilities during Plaintiff's incarceration and the steps taken to do so after Plaintiff's departure; and any other relevant matters contained in his deposition.

(5)     **Don Stanley Frye,** for cross-examination, detention deputy at the Park County Jail.  May be cross-examined on his knowledge of the spread of communicable disease in Pod D and his observations and knowledge of Plaintiff's illness; his knowledge of overcrowding and conditions of confinement; his knowledge of the violation of the Sheriff's Policies & Procedures Manual and of the practice of overcrowding; his conversations with Nurse Paulsen; his observations of Plaintiff's deteriorating physical condition, illness and lack of medical treatment; and any other relevant matters contained in his deposition.

(6)     **Gregory Scott Flint,** for cross examination, a detective corporal working in the Park County Sheriff's Office.  May testify on the lack of training on the Sheriff's Policies and Procedures Manual and ACA Standards; his knowledge that there was no capacity on the number of detainees who could be housed in Pod D; overcrowding and health issues in Pod D; Monte Gore's efforts to cut costs and turn the jail into a profit center for the County; his conversations with Monte Gore who decided on how many detainees could be crowded into Pod D; the conditions of confinement in Pod D;

documents that he authored on the communicable disease spreading through Pod D; his knowledge of Plaintiff's deteriorating physical condition at the jail; and any other relevant matters contained in his deposition.

(7)     **Steven Crawford,** for cross examination, a sergeant and shift supervisor at the Park County Jail.  Has knowledge of the history of overcrowding in Pod D; the conditions of confinement; the practice of violating the Sheriff's Policies & Procedures Manual; the failure to quarantine or isolate sick detainees; his conversations with others concerning Plaintiff's deteriorating physical condition; and any other relevant matters contained in his deposition.

(8)     **Darlene K. Ellis,** for cross-examination, a deputy at the Park County Jail. Has knowledge of the steady increase in the number of detainees housed in Pod D; the overcrowding; the competence and honesty of Edward Allen; the illness in Pod D and conditions of confinement; and any other relevant matters contained in her deposition.

(9)     **Scott Allen Theobald,** for cross examination, a deputy at the Park County Jail.  May cross-examine on his interview of the Plaintiff using Clarence Candelaria as a translator; the jail's practice of exceeding the maximum occupancy defined by the Sheriff's Policies & Procedures Manual; his interview of Plaintiff's sister-in-law; his knowledge that the translator, Candelaria, could not read or write; and any other relevant matters contained in his deposition.

(10)    **R. Scott Rappold,** Colorado Springs Gazette, Colorado Springs, CO, regarding his conversations with Defendant Monte Gore as reported in an Associated Press news release dated 6/5/06.

(11)     **Pastor Gilberto Juarez,** 3726 E. 112th Place, Thornton, CO 80233.  He has information concerning Plaintiff's condition at Denver Health Hospital and his condition following discharge, his activities in the El Bethel Church in Thornton, CO, and his observations of Plaintiff's injuries and damages.

(12)     **Fabian Pina,** Mexican Consulate official, Office of the Mexican Consulate, 5350 Leetsdale Drive, Suite 100, Denver, CO 80246, telephone 303-331-1110.  He has information concerning Plaintiff's condition at the Denver Health Hospital, conversations with Plaintiff's twin brother, and perhaps conversations with others.

(13)     **Laura Luz Reyes-Garay,** Calle Manzana #4 – Lote 5, Ciudad Cuatemoc, Seccion Moctezuma, Municipio de Ecatepek, Estado de Mexico 07580, telephone 01 152-555-937-47-72-4.  Ms. Reyes is Plaintiff's mother and can testify regarding his pre-existing health condition, his work habits, and his condition during his hospitalization when she was at his bedside.  She was also present when the decision was made to amputate Plaintiff's leg.  She can otherwise testify regarding his injuries and damages.

(14)     **Vanessa Calva-Ruiz,** Consul de Protecion, Consulado General de Mexico, 5350 Leetsdale Drive, Suite 100, Denver, Co 80246, telephone 303-331-1871.  Ms. Calva-Ruiz has information concerning Abraham Carranza-Reyes' complaint made to the Mexican Consulate in Denver regarding his brother's treatment and condition.

(15)     **Laura Juarez,** 3726 East 112th Place, Thornton, CO 80233.  She is the wife of Paston Gilberto Juarez and was present with Plaintiff at the hospital and translated for Pastor Juarez and the family with the doctors and health care personnel.

(16)   **Kim Borek or other representative of Denver Health Billing,** Legal Department, Post Office Box 40418, Denver, CO 80204, telephone 720-956-2448.  May testify concerning the cost of Plaintiff's medical care and treatment at Denver Health.

(17)   **Ingrid Luszko,** Denver Health Hospital Authority Legal Unit, MC 1926, 990 Bannock, Second Floor, Denver, CO 80204.  Ms. Luszko is a nurse with the Denver Health and Hospitals and has information regarding the amended lien filed on 7/30/03 and accepted by the Secretary of State on 8/3/03 in the sum of $672,610.50 was reasonable and necessarily incurred.

(18)   **Kimberly Gerraro,** addres unknown.  Ms. Gerraro was formerly a deputy sheriff in Park County, CO, assigned to the jail.  She is expected to testify concerning her log notes and other records concerning her being at the jail before and during the time that Mr. Carranza-Reyes was in the jail.  She is expected to testify as to the condition of overcrowding and unsanitary conditions and that she observed the jail nurse decline to see inmates who were desiring medical care and treatment.

(19)   Plaintiff reserves the right to call any lay witnesses named by Defendants.

B.   Plaintiff's Expert Witnesses:

(a)   Will call witnesses:

(1)   **Ivor Samuel Douglas, M.D.,** Director, Medical Critical Care Services at Denver Health Hospital, telephone 303-436-6900.  Specialty is pulmonary medicine. Will testify with regard to Plaintiff's medical condition and treatment rendered at Denver Health; the diagnosis of severe septic shock, Strep A pneumonia, multi-organ dysfunction, acute renal failure, acute respiratory failure, ARDS, metabolic acidosis,

lactic acidosis, gangrene in both feet and legs, the below-knee amputation on the left leg and severe gangrene and tissue damage to the right leg, gangrene destruction of the right lower lobe of the lung, and all other conditions arising out of his Strep A pneumonia that led to severe septic shock.  He will describe in detail all of the treatment rendered and the fact that Plaintiff suffered from Strep A pneumonia and sepsis before arrival at Denver Health for at least several days.   He will explain how Strep A, if not treated, leads to all of the complications Plaintiff had; and that once septic shock develops, there is a golden 4-hour window of opportunity to treat it and had Plaintiff not been hydrated and provider antibiotics within that time frame, he would have died.  He will testify that Plaintiff had a Strep A infectious disease process for at least several days before arriving at Denver Health and that transmission of Strep A from person to person is clearly established; and that Plaintiff had no underlying chronic disease state that contributed to his susceptibility to this infectious process and had no evidence of cancer or HIV and no evidence that his immune system had been recently compromised.  He may testify with regard to any relevant Denver Health medical records or matters contained in his deposition.

(2)      **Vince Markovchick, M.D.,** head of the Department of Emergency Medicine at Denver Health.  Will testify with regard to Plaintiff's condition on arrival in the Emergency Department at 5:06 p.m. on March 8, 2003; that Plaintiff was in critical condition and transferred to the care of Dr. Ivor Douglas in ICU; that he was admitted to the ER in septic shock with respiratory failure from pneumonia and acute renal failure; and that Plaintiff absolutely would have died in a short period of time without treatment. He may testify to any relevant matters contained in his deposition.

(3)      **Meredith Poppish, nurse practitioner,** Clinica Campesina, 8900 N. Washington, Thornton, CO 80229.  Will testify with regard to her nursing diagnoses as a nurse practitioner; her recommendations and treatment rendered; Plaintiff's primary complaint and condition; the medical history she obtained and her recommendations for consultations by other experts and future treatment and physical therapy.  She will describe her clinical evaluations, Plaintiff's ongoing medical and psychological problems, and Plaintiff's need of extensive care that he cannot obtain for lack of finances.  She will testify with regard to his need for rehabilitation because of the amputation, his need for consultation with an orthopedic surgeon, a chronic pain specialist, and a specialist to determine his adaptive equipment needs; his need for regular counseling and cognitive behavior counseling and mental health counseling.  She will otherwise testify to those matters contained in her deposition.

(4)      **Robert B. Greifinger, M.D.,** 32 Parkway Drive, Dobbs Ferry, NY 10522-3517, telephone 914-693-9205.  He is an expert in correctional care health and medicine and the public health aspects of prevention and transmission of infectious disease in correctional facilities.  He will testify that Plaintiff's condition at the time he arrive at Denver Health could have been prevented by the Defendants and that the Defendants violated national standards of care, as well as the Sheriff's own policies and procedures; that the crowded and unsanitary conditions in Pod D during March 1-8, 2003, caused Plaintiff to become sick with streptococcal disease, and the lack of timely and appropriate medical care led to his near-death, amputation and other complications.  He will explain how each of the Defendants violated national standards and the Sheriff's

Policies & Procedures Manual and was deliberately indifferent to Plaintiff's medical needs.  He will otherwise testify to those matters contained in his written reports and in his depositions given in this case.

      (5)    **Michael S. Niederman, M.D.,** Pulmonary/Critical Care Medicine, Winthrop University Hospital, 222 Station Plaza North, Suite 509, Mineola, NY 11501, telephone 516-663-2381, Chairman of the Department of Medicine at Winthrop University Hospital and on the faculty at the State University of New York, specializing in pulmonary and critical care with a subspecialty in infectious respiratory disease, particularly pneumonia and sepsis.  He will explain how strep throat, if untreated, can spread to the lungs, to blood vessels resulting in septicemia, and major organ failure.  He will explain the pathophysiology (mechanisms of disease development) of pneumonia in a crowded jail cell.  He will testify that had Plaintiff received a rapid strep-test at the jail, he would have been treated with antibiotics and his complications, pneumonia and septicemia could have been avoided because Plaintiff did not have pneumonia on March 6 and developed it from the strep throat on March 7 and it became advanced on March 8.  He will refer to the studies and literature, as well as his own research, which support his opinions.  Plaintiff was health on arrival at the jail and was not infected, but if he was colonized and not infected, the environment interfered with his immune function and allowed the infection to develop or he acquired the infection from the conditions of confinement and it was then allowed to progress without treatment.  He will testify with medical probability that Plaintiff's complications would have been avoided had he received antibiotics no later than 5:00 a.m. on March 8 and that he should have been

treated no later than 3:45 a.m. on March 8.  He will testify with regard to the standard of care in administering antibiotics within 4 hours of presentation of pneumonia.  He will otherwise testify to those matters contained in his written report and his deposition.

(6)     **Helen Woodard, M.A.,**  ReEntry Rehabilitation Services, Inc., 1435 Reed Street, Lakewood, CO 80214, telephone 303-238-3700, an expert in vocational assessments and life care plans.  She performed a vocational assessment with a survey in Mexico of problems that people with similar disabilities have in obtaining and retaining employment and analyzed Plaintiff's employment possibilities in both the U.S. and Mexico.  She also performed a life care plan with an analysis of what Plaintiff will need in terms of medical equipment, supplies and assistance over the course of his lifetime. She will testify with regard to the methods and data used to perform a vocational assessment and life care plan, and the results of her assessment and how she arrived at the life care plan.  She will discuss her sources of data for the life care plan, the results of the vocational testing that was administered, and the costs of the life care plan, whether in the U.S. or in Mexico.  Her opinions and conclusions are contained in her written reports and in her deposition.

(7)     **Patricia Pacey, Ph.D.,**  Pacey Economics Group, 6630 Gunpark Drive, Suite 200, Boulder, CO 80301, telephone 303-530-5333.  Dr. Pacey is an economist who performed an evaluation of Plaintiff's lost earnings, past and future, resulting from his amputation and injuries; the loss of essential home services, past and future; and the cost of a life care plan, reduced to present value.  Her methods, data, resources and conclusions are contained in her written reports and deposition.

(8)     **George K. Rohwer, EMT,** 139 Eagle's Nest Trial, Kremmling, CO

80459, a paramedic with the Summit County Ambulance Service in Frisco, CO.  He will

explain the ambulance report made in transporting Plaintiff from Summit County

Medical Center to Denver Health on March 8, 2003.  He will describe the information he

received from the nurse at Summit County Medical when he arrived to transport Plaintiff;

Plaintiff's condition during the ambulance trip and the treatment he rendered.  He will

explain that Plaintiff was warm and sweaty, his chest had wheezing in all fields and

extreme shortness of breathe, complaints of chest pain and that Plaintiff twice vomited

blood in route.  His level of discomfort was severe and that he was in critical condition

and needed to be transported as quickly as possible.  He was on oxygen, antibiotics, and

had two IV's in place in route.  He demonstrated signs and symptoms of shock while in

transport.  Based on the information Mr. Rowher received from the nurse when he

arrived at Summit County Medical to transport Plaintiff, Plaintiff was unstable when he

first arrived and was still unstable, but more stable, after initial treatment.  He will

otherwise testify to the relevant portions of his the ambulance records and his deposition.

(9)     **Catherine M. Knox, R.N.,** One Lincoln Center, Suite 380, 10300 SW

Greenburg Road, Portland, OR 97223, telephone 503-449-0186.  Ms. Knox is a

registered nurse with extensive experience in nursing administration in the Department of

Corrections in the State of Washington and established standards and procedures for

nursing care in the Department of Corrections in Oregon and developed the policies and

procedures on providing medical attention, infection control, access to medical services,

and development of nursing protocols for jails and prisons.  She did likewise in New

Mexico.  She will testify that the Defendant, Nurse Paulsen, was negligent in her care and treatment of the Plaintiff at the Park County Jail, was deliberately indifferent to Plaintiff's medical needs, and will explain in detail, as she did in her written report and deposition, the bases for her opinions and the manner in which Nurse Paulsen was both negligent and deliberately indifferent.

(10)   **Manuel Romero,** corrections expert, 1607 Ben San Avenue, Belen, NM 87002, telephone 505-861-3944, an expert on conditions of confinement in jails and prisons and on national standards.  He will testify that the Park County Jail's practices and procedures on overcrowding, failure to isolate sick persons with communicable disease, failure to obtain medical treatment, failure to treat a communicable disease, and the inhumane conditions in Pod D, all violated national standards, as well as the sheriff's policies and procedures, and that the conduct of the Defendants represented a deliberate indifference to Plaintiff's medical needs and inhumane conditions of confinement and constituted cruel and unusual punishment.  He will testify that the policy of overcrowding also violated the contract between the INS and Park County.  Further, the jail's medical policies and practices were inadequate and the jail was deficient in not having a staff member that speaks Spanish.  He will otherwise testify to the matters contained in his written reports and his deposition.

(b)   May call witnesses:

(1)   **Defendant Vicki Paulen, R.N.,** for cross-examination.  She failed to enact or request nursing protocols; made medical diagnoses of Plaintiff's condition in violation of the Colorado Nurse Practices Act; made negligent and improper diagnoses;

failed to obtain medical treatment for Plaintiff in a timely fashion; failed to obtain and record Plaintiff's medical history; failed to do proper nursing assessments and nursing plans; failed to recognize the symptoms of a strep throat and obtain a rapid strep-test; failed to recognize the signs and symptoms of a developing pneumonia and septicemia; failed to order timely emergency transport of the Plaintiff to a medical clinic or hospital; violated the sheriff's policies and procedures; failed to arrange for a backup RN care in her absence; and will testify with regard to her conduct and lack thereof which supports all of these failures.  She may also be questioned with regard to relevant testimony rendered in her deposition.

(2)      **Timothy Barnes Keeling, D.O.,** Summit Medical Center, Frisco, CO. May testify regarding Plaintiff's condition when treated at the Medical Center on March 8, 2003.  He may testify from the medical records regarding the history obtained, the diagnostic testing, his diagnoses and reasons for immediate transport to Denver Health. He will testify that Plaintiff arrived with unstable vital signs suffering from pneumonia, sepsis, with a history of symptoms of pneumonia and sepsis the previous three days.  He will otherwise explain the basis for his diagnoses and may be questioned from relevant portions of the Summit Medical Center records and from his deposition.

(3)      **James Bachman, M.D.,** P. O. Box 545, Frisco, CO 80443, Park County Jail Medical Director with office in Frisco, CO.  He may testify that he was available, on call, as Medical Director of the Park County Jail, but was never called during the first week of March, 2003, regarding the infectious disease epidemic in Pod D and was never informed of Plaintiff's medical condition in violation of the Sheriff's Policy & Procedure

Manual, and was only asked to see detainees incarcerated in Pod D after the Plaintiff was transferred to Denver Health Hospital.  He treated several of those detainees for respiratory infection and bronchitis infection and took a history from others of a fever and symptoms of infection that had resolved.  He may otherwise testify to those matters contained in his deposition.

(4)     **Michelle Holien,** clinical social worker with master's degree at Clinica Campesina, 8900 N. Washington, Thornton, CO 80229.  She may testify with regard to her contact with Plaintiff as set forth in the Clinica Campesina records and as described in her deposition.

(5)     **David Wu, M.D.,** Clinica Campesina, 8900 N. Washington, Thornton, CO 80229.  Dr. Wu saw the Plaintiff once for pain management evaluation and may testify with regard to that evaluation.

(6)     **Sarah L. Anschuetz, M.D.,** Centura Health Partners at Summit Radiology Center, Frisco, CO.  She may testify with regard to the radiology films taken at the Summit County Medical Center on March 8, 2003, which were abnormal and consistent with pneumonia.

(7)     **Amy Woessner, R.N.,** Summit County Medical Center, Frisco, CO.  She can testify with regard to the history obtained from the Plaintiff at the Medical Center on March 8, 2003, as set forth in the medical records.

(8)     **Colleen Seyer,** Summit County Nursing Office, employed as a public health nurse and also employed at the Summit County Medical Center.  She authored a

note on the bottom of the Orders Section on page 1 of the records regarding the Plaintiff on March 8, 2003.

(9)     **Health care providers at Denver Health Medical Center.**  The below-listed health care providers who rendered care and treatment to the Plaintiff at the Denver Health al Center during his hospitalization from March 8, 2003, until June 23, 2003, are health care providers who may be called as witnesses.  .  The Denver Health Medical Center is located at 777 Bannock Street, Denver, CO 80204-4507, main telephone number is 303-436-6000.  Denver Health Medical Center staffing telephone number is 303-436-5720.  Colorado University Physicians' telephone number is 303-493-7000 ( to locate those doctors who were residents).

(10)     **Dr. Michael Repine:**  Orthopedic Surgery, 2750 Broadway, Boulder, CO 80304, telephone 303-440-3036.  Plaintiff's surgeon, pre-op diagnosis, 4/23/03.  4/29/03, pre-op diagnosis of dry gangrene.  4/24/03, ordering physician for final pathologic diagnosis.  Authored OP reports for 6/3/03 and 6/6/03.

(11)     **Dr. Ryan Aukerman:**  Plaintiff's Surgeon, Orthopedic Clinic of the University of Colorado Hospital, 12605 E. 16th Avenue, Aurora, CO, Post Office Box 6510, Mail Stop F722, Aurora, CO 80045, telephone 720-848-1900.  He authored Plaintiff's pre-op diagnosis.

(12)     **Dr. Jonathon Gutman:**  Plaintiff's attending physician.  University of Colorado Hospital, 5819 E. 9th Avenue, Denver, CO 80220, telephone 720-273-6706. 5/9/03, notified of respiration 34; 5/11/03 notified of temperature 38.9; 5/15/03

interviewed Plaintiff who continues with tachycardia and daily fevers; 5/16/03 saw patient.

(11) **Dr. Lauren Elizabeth Sarnat.** Plaintiff's treating physician who dictated interim summary from 4/1/03 through 4/30/03; attending note on 4/4/03; resident note on 4/7/03; physician progress note on 4/14/03; summary of condition and treatment from 3/8/03 to 5/3/03; 5/11/03 discharge resume from 3/8/03 to 5/11/03.

(12) **Dr. Frederick Albrecht.** Dictated Plaintiff's interim summary from 3/8/03 through 3/31/03; on 3/8/03 was at bedside attempting to detect blood pressure, COR called and treatment rendered.

(13) **Dr. Dan Scott:** Physical Medicine and Rehabilitative Services at Denver Veterans Administration Medical Center, 1055 Clermont, Denver, CO 80220, telephone 303-393-2819. May testify regarding Plaintiff's condition on 6/15/03 as set forth in his attending note.

(14) **Dr. Susan E. O'Brien:** Denver Veterans Administration Medical Center, 1055 Clermont, Denver, CO 80220, telephone 303-393-2819. May testify with regard to Plaintiff's condition as set forth in her attending notes on 6/21/03 and 6/22/03.

C.     Defendants' Non-Expert Witnesses:

(a)     Will call witnesses:

(1)     Plaintiff Moises Carranza-Reyes, c/o counsel for Plaintiff, for cross-examination. Mr. Carranza-Reyes is expected to testify concerning his knowledge and information regarding all aspects of facts pertaining to this matter, including but not limited to, his journey from

Mexico to the United States, his incarceration in the Park County Jail, his medical treatment, and his damages, and all related issues.

(2)     Defendant Sheriff Fred Wegener, c/o counsel for Defendants.  Sheriff Wegener is expected to testify concerning his duties and responsibilities as the Sheriff of Park County, the policies and procedures of the Park County Jail, his lack of any personal participation in any specific decision regarding the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(3)     Defendant Captain Monte Gore, c/o counsel for Defendants.  Captain Gore is expected to testify concerning his duties and responsibilities as the Jail Administrator of the Park County Jail, the policies and procedures of the Park County Jail, his lack of personal participation in any specific decision regarding the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(4)     Defendant Vicki Paulsen, R.N., c/o counsel for Defendants.  Ms. Paulsen is expected to testify concerning her duties and responsibilities as a Nurse at the Park County Jail, the policies and procedures of the Park County Jail related to the provision of medical care, her role in the treatment of individuals in the Park County Jail vis-à-vis James J. Bachman, M.D. and otherwise, the provision of medical care in the Park County Jail, the specific medical care she provided to the Plaintiff, her observations concerning the Plaintiff and related to the Plaintiff, her

observations of the conditions of confinement in the Park County Jail, and all other related issues.

(b)      May call witnesses:

(1)      Abraham Carranza-Reyes, c/o counsel for Plaintiff.  Abraham Carranza-Reyes may testify concerning his journey, along with Plaintiff Moises Carranza-Reyes, from Mexico to the United States, the conditions of confinement at the Park County Jail, his observations concerning his and his brother's detention in the Park County Jail, the statements he has made concerning his detention and his brother's detention, his brother's injuries and damages, and all other related issues.

(2)      Briselda Gomez-Villalobos, c/o counsel for Plaintiff.  Ms. Gomez-Villalobos may testify concerning her journey, along with Plaintiff Moises Carranza-Reyes, from Mexico to the United States, the conditions of confinement at the Park County Jail, the statements she has made concerning her detention in the Park County Jail, her communications concerning the Plaintiff, the Plaintiff's injuries and damages, and all other related issues.

(3)      James J. Bachman, M.D., Frisco Medical Center, P.O. Box 545, Frisco, Colorado 80443.  Dr. Bachman is a physician who served as the medical director of the Park County Jail during Plaintiff's detention in that facility.  If called as a witness, Dr. Bachman may testify regarding his duties and responsibilities at the Park County Jail, his observations at the Park County Jail, the conditions of confinement at the Park County Jail, the provision of medical care at the Park County Jail, his evaluation and supervision of Vicki Paulsen R.N.'s performance of her nursing duties at the Park County Jail, and Ms. Paulsen's treatment of the Plaintiff, and all other related issues.

(4)     Daniel Muldoon, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Muldoon was a Sergeant at the Park County Jail in March 2003.  Mr. Muldoon may testify concerning his duties and responsibilities as a Sergeant of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(5)     Don Frye, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Frye was a Corporal at the Park County Jail in March 2003.  Mr. Frye may testify concerning his duties and responsibilities as a Corporal of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(6)     Steven Crawford, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Crawford was a Corporal at the Park County Jail in March 2003.  Mr. Crawford may testify concerning his duties and responsibilities as a Corporal of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the

provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(7)    William Fikejs, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Fikejs was a Deputy at the Park County Jail in March 2003.  Mr. Fikejs may testify concerning his duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(8)    Scott Theobald, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Theobald was a Deputy at the Park County Jail in March 2003.  Mr. Theobald may testify concerning his duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(9)    Gregory Flint, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Flint was a Sergeant at the Park County Jail in March 2003.  Mr. Flint may testify concerning his duties and responsibilities as a Sergeant of the Park County Jail, the policies and procedures of the Park County Jail, his

interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(10)     William Sallee, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Sallee was a Deputy at the Park County Jail in March 2003.  Mr. Sallee may testify concerning his duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(11)     Rodney Greeley, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Mr. Greeley was a Deputy at the Park County Jail in March 2003.  Mr. Greeley may testify concerning his duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(12)     Darlene Ellis, Park County Sheriff's Department, P.O. Box 1373, 501 Main Street, Fairplay, Colorado 80440-0220, (719) 836-4201.  Ms. Ellis was a Deputy and was

responsible for overseeing the trustees and work-release at the Park County Jail in March 2003.

Ms. Ellis may testify concerning her duties and responsibilities at the Park County Jail, the

policies and procedures of the Park County Jail, her interactions and observations of the

Plaintiff, her knowledge concerning the Plaintiff, her observations concerning the conditions of

confinement in the Park County Jail, the provision of medical care in the Park County Jail, the

training and supervision provided to those who worked in the Park County Jail, and all other

related issues.

(13)     John Bellantonio, 29025 Pinon Circle Drive, Buena Vista, Colorado 81211, (719)

295-2350.  Mr. Bellantonio was a Corporal at the Park County Jail in March 2003.  Mr.

Bellantonio may testify concerning his duties and responsibilities as a Corporal of the Park

County Jail, the policies and procedures of the Park County Jail, his interactions and

observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning

the conditions of confinement in the Park County Jail, the provision of medical care in the Park

County Jail, the training and supervision provided to those who worked in the Park County Jail,

and all other related issues.

(14)     Edward Allen, 510 North 19th Street, No. 34, Canon City, Colorado 81212.  Mr.

Allen was a Deputy at the Park County Jail in March 2003.  Mr. Allen may testify concerning his

duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the

Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the

Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the

provision of medical care in the Park County Jail, the training and supervision provided to those

who worked in the Park County Jail, and all other related issues.

(15)    Michael Guerin, 58 Ruby Circle, Lake George, Colorado 80827.  Mr. Guerin was a deputy at the Park County Jail in March 2003.  Mr. Guerin may testify concerning his duties and responsibilities as a Deputy at the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(16)    Kimberly Guerrero, P.O. Box 1679, Bailey, Colorado 80421.  Ms. Guerrero was a Corporal at the Park County Jail in March 2003.  Ms. Guerrero may testify concerning her duties and responsibilities as a Corporal of the Park County Jail, the policies and procedures of the Park County Jail, her interactions and observations of the Plaintiff, her knowledge concerning the Plaintiff, her observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(17)    James Deathrage, P.O. Box 4104, Buena Vista, Colorado 81211.  Mr. Deathrage was responsible for maintenance at the Park County Jail in March 2003.  Mr. Deathrage may testify concerning the policies and procedures of the Park County Jail regarding maintenance, how he performed maintenance at the Park County Jail, and all other related issues.

(18)    John Thomas, current address unknown.  Mr. Thomas was a Deputy at the Park County Jail in March 2003.  Mr. Thomas may testify concerning his duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his

observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(19)    Jennifer Walker, P.O. Box 70, Fairplay, Colorado 80440.  Ms. Walker was a Deputy a the Park County Jail in March 2003.  Ms. Walker may testify concerning her duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, her interactions and observations of the Plaintiff, her knowledge concerning the Plaintiff, her observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(20)    Raymond Bridge, P.O. Box 1291, Fairplay, Colorado 80440.  Mr. Bridge  was a Deputy at the Park County Jail in March 2003.  Mr. Bridge may testify concerning his duties and responsibilities as a Deputy of the Park County Jail, the policies and procedures of the Park County Jail, his interactions and observations of the Plaintiff, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, the provision of medical care in the Park County Jail, the training and supervision provided to those who worked in the Park County Jail, and all other related issues.

(21)    Scott Weber, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Mr. Weber is an official with Immigration and Customs Enforcement.  Mr. Weber may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park

County Jail, his knowledge concerning the Plaintiff, his observations concerning the conditions of confinement in the Park County Jail, and all related issues.

(22)     Catherine Malapanes, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Ms. Malapanes is an official with Immigration and Customs Enforcement.  Ms. Malapanes may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park County Jail, her knowledge concerning the Plaintiff, her observations of the conditions of confinement in the Park County Jail, and all related issues.

(23)     Bill Simmons, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Mr. Simmons is an official with Immigration and Customs Enforcement.  Mr. Simmons may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park County Jail, his knowledge concerning the Plaintiff, his observations of the conditions of confinement in the Park County Jail, and all related issues.

(24)     Ben Baca, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Mr. Baca is an official with Immigration and Customs Enforcement.  Mr. Baca may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park

County Jail, his knowledge concerning the Plaintiff, his observations of the conditions of confinement in the Park County Jail, and all related issues.

(25)     Dan Fitzgibbon, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Mr. Fitzgibbon is an official with Immigration and Customs Enforcement.  Mr. Fitzgibbon may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park County Jail, his knowledge concerning the Plaintiff, his observations of the conditions of confinement in the Park County Jail, and all related issues.

(26)     Karen Bryant, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Ms. Bryant is an official with Immigration and Customs Enforcement.  Ms. Bryant may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park County Jail, her knowledge concerning the Plaintiff, her observations of the conditions of confinement in the Park County Jail, and all related issues.

(27)     Ron Giebel, c/o Corina E. Almeida, Chief Counsel, Office of the General Counsel, U.S. Department of Homeland Security, Immigration and Customs Enforcement, 4730 Paris Street, Denver, Colorado 80239.  Mr. Giebel is an official with Immigration and Customs Enforcement.  Mr. Giebel may testify concerning the contractual relationship between the United States and Park County to place detainees in the Park County Jail, the inspections of the Park

County Jail, his knowledge concerning the Plaintiff, his observations of the conditions of confinement in the Park County Jail, and all related issues.

(28)     Fabian Pina, Office of the Mexican Consulate, 5350 Leetsdale Drive, Suite 100, Denver, Colorado 80246, (303) 331-1110.  Mr. Pina is an official with the Office of the Mexican Consulate in Denver, Colorado.  Mr. Pina may testify concerning his interactions with the Plaintiff and his family and all related issues.

(29)     Vanessa Calva Ruiz, Office of the Mexican Consulate, 5350 Leetsdale Drive, Suite 100, Denver, Colorado 80246, (303) 331-1110.  Ms. Calva Ruiz may testify to authenticate the Spanish text of a statement provided to Abraham Carranza-Reyes to the Office of the Consulate General of Mexico.

(30)     Michael Arellano, Chief, Private Prisons Monitoring Unit, Colorado Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr. Arellano may testify concerning the inspections he performed or was privy to of the Park County Jail, his observations of the conditions of confinement at the Park County Jail, his observations concerning the provision of medical services at the Park County Jail, and all other related issues.

(31)     Michael E. Colvin, Monitor, Private Prison Monitoring Unit, Colorado Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr. Colvin may testify concerning the inspections he performed or was privy to of the Park County Jail, his observations of the conditions of confinement at the Park County Jail, his observations concerning the provision of medical services at the Park County Jail, and all other related issues.

(32)     Terry Flanagan, Security Specialist, Private Prison Monitoring Unit, Colorado Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr. Flanagan may testify concerning the inspections he performed or was privy to of the Park County Jail, his observations of the conditions of confinement at the Park County Jail, his observations concerning the provision of medical services at the Park County Jail, and all other related issues.

(33)     Lou Archuleta, Private Prison Monitoring Unit, Colorado Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr. Archuleta may testify concerning the inspections he performed or was privy to of the Park County Jail, his observations of the conditions of confinement at the Park County Jail, his observations concerning the provision of medical services at the Park County Jail, and all other related issues.

(34)     John Bongirno, Monitor, Private Prison Monitoring Unit, Colorado Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr. Bongirno may testify concerning the inspections he performed or was privy to of the Park County Jail, his observations of the conditions of confinement at the Park County Jail, his observations concerning the provision of medical services at the Park County Jail, and all other related issues.

(35)     Gaynell Pritts, Monitor, Private Prison Monitoring Unit, Colorado Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr. Pritts may testify concerning the inspections he performed or was privy to of the Park County

Jail, his observations of the conditions of confinement at the Park County Jail, his observations

concerning the provision of medical services at the Park County Jail, and all other related issues.

(36)     Deborah Ahlin, Intelligence Specialist, Private Prison Monitoring Unit, Colorado

Department of Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719)

226-4777.  Ms. Ahlin may testify concerning the inspections she performed or was privy to of

the Park County Jail, her observations of the conditions of confinement at the Park County Jail,

her observations concerning the provision of medical services at the Park County Jail, and all

other related issues.

(37)     Jim Webber, Monitor, Private Prison Monitoring Unit, Colorado Department of

Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr.

Webber may testify concerning the inspections he performed or was privy to of the Park County

Jail, his observations of the conditions of confinement at the Park County Jail, his observations

concerning the provision of medical services at the Park County Jail, and all other related issues.

(38)     Kevin Milyard, Chief, Private Prison Monitoring Unit, Colorado Department of

Corrections, 2862 South Circle Drive, Colorado Springs, Colorado 80906, (719) 226-4777.  Mr.

Milyard may testify concerning the inspections he performed or was privy to of the Park County

Jail, his observations of the conditions of confinement at the Park County Jail, his observations

concerning the provision of medical services at the Park County Jail, and all other related issues.

(39)     Chaplain Clarence (Bud) Jones, Way of the Cross Jail Ministry, 13100 E. 144th

Ave., Brighton, Colorado 80601.  Chaplain Jones has held Bible Study with individuals

incarcerated in the Park County Jail for the past ten years.  Chaplain Jones may testify

concerning his visits to the Park County Jail, his observations of the conditions of confinement at the Park County Jail in comparison to other jails that he has visited, and all other related issues.

(40)    J. Frank Solis, Associate Priest, Anglican Church of the Savior, P.O. Box 4991, Buena Vista, Colorado 81211, (719) 395-0736.  Father Solis has held Bible Study and Worship Services with individuals incarcerated in the Park County Jail since December 1995.  Father Solis may testify concerning his visits to the Park County Jail, his observations of the conditions of confinement at the Park County Jail in comparison to other jails that he has visited, and all other related issues.

(41)    Mike Wheat, Dillon Police Department, P.O. Box 335, 275 Lake Dillon Drive, Dillon, Colorado 80435, (970) 468-6078.  Officer Wheat participated in a shakedown exercise at the Park County Jail on approximately April 17, 2003.  Officer Wheat may testify concerning his visits to the Park County Jail, his observations of the conditions of confinement at the Park County Jail in comparison to other jails that he has visited, and all other related issues.

(42)    Alan Sulzenfuss, Anglican Minister, Salida, Colorado, current address and telephone number unknown.  Minister Sulzenfuss is a chaplain volunteer who conducts or has conducted services for inmates at the Park County Jail.  Minister Sulzenfuss may testify concerning his visits to the Park County Jail, his observations of the conditions of confinement at the Park County Jail in comparison to other jails he has visited, and all other related issues.

(43)    Gene Ward, current address and telephone number unknown.  Mr. Ward is a volunteer who has conducted Alcoholics Anonymous meetings at the Park County Jail.  Mr. Ward will testify concerning his visits to the Park County Jail, his observations of the conditions

of confinement at the Park County Jail in comparison to other jails that he has visited, and all other related issues.

(44)    All witnesses designated by the Plaintiff.

(45)    All witnesses necessary for impeachment.

(46)    All witnesses necessary for rebuttal.

(47)    All witnesses necessary for purposes of authenticating documents.

Defendants do not presently anticipate calling any non-expert witness by deposition.

D.       Defendants' Expert Witnesses:

(a)    Will call witnesses:

(1)    Kathryn L. Doeschot, Case Management, Inc., 9101 Pearl Street, Suite 117, Thornton, Colorado 80229; (303) 771-7723.   Ms. Doeschot is a Rehabilitation Consultant and President of Case Management, Inc.  Ms. Doeschot is expected to testify consistent with her report dated August 14, 2006.

(2)    Thomas A. Rosazza, Rosazza Associates, Inc., P.O. Box 26053, 3843 Teakwood Court, Colorado Springs, Colorado 80918-3007, (719) 592-0770.  Mr. Rosazza is a correctional management consultant and President of Rosazza Associates, Inc.  Mr. Rosazza is expected to testify consistent with his report dated September 11, 2006 and his deposition in this matter.

(3)    Vicki Paulsen, R.N., 348 Aspen Lane, Hartsel, Colorado.  Ms. Paulsen is a Defendant in this case, a registered nurse and treater of Moises Carranza-Reyes at the Park County Jail.   If called as a witness, Ms. Paulsen is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes and her deposition testimony of January 18, 2006.  Ms. Paulsen will testify concerning her observation and treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis for Mr. Carranza-Reyes, her assessment of

the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and other related issues.

(4)      Shelley Fischer, RN, MS, 5408 Timberline Road, Fort Collins, Colorado 80528, (970) 227-8378.   Ms. Fisher is a registered nurse and the owner of Fischer Healthcare Counseling.  Ms. Fischer is expected to testify consistent with her report dated September 13, 2006.

(b)      May call witnesses:

(1)      Gregory B. Taylor and Kyle D. Jacobson, Taylor, Jacobson and Associates, P.C., 390 S. Kline St., Lakewood, Colorado 80226, (303) 987-8199.  Mr. Taylor and Mr. Jacobson are expected to testify consistent with their report dated September 15, 2006.

(2)      Donald H. Kearns, M.D., Rocky Mountain Infectious Disease Specialists, P.C., 1550 S. Potomac Street, Suite 270, Aurora, Colorado 80012, (303) 750-1800.    Dr. Kearns is a physician and a specialist in infectious disease.  Dr. Kearns is expected to testify consistent with his report dated September 14, 2006.

 (3)      Ivor Garlick, M.D., 1211 South Parker Road, Suite 100, Denver, Colorado 80231, (303) 873-6990.  Dr. Garlick is a physician licensed in the State of Colorado and an expert in the provision of medical care at correctional facilities.  Dr. Garlick is expected to testify consistent with his report dated September 13, 2006.

(5)      Elizabeth Kraft, M.D., 2247 South Madison Street, Denver, Colorado 80210, (303) 758-2452.  Dr. Kraft is a physician licensed in the State of Colorado and specialized in the fields of family medicine and administrative medicine.  Dr. Kraft is expected to testify consistent with her report provided by counsel for Dr. Bachman on September 28, 2006.

(6)      James Bachman, M.D., Frisco Medical Center, P.O. Box 545, Frisco, Colorado 80443.  Dr. Bachman is a physician who served as the medical director of the Park County Jail during Plaintiff's detention in that facility.  If called as a witness, Dr. Bachman may testify regarding his duties and responsibilities at the Park County Jail, his observations at the Park County Jail, his evaluation and supervision of Vicki Paulsen R.N.'s performance of her nursing duties at the Park County Jail, and Ms. Paulsen's treatment of the Plaintiff, and all other related issues.

(7)      Ivor Douglas, M.D., Denver Health Medical Center, 777 Bannock Street, Denver, CO 80204; (303) 436-6000.  Dr. Douglas is director of medical critical care services at Denver Health Medical Center, and is a treating physician of Moises Carranza-Reyes.  If called as a witness, Dr. Douglas is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes, the Plaintiff's description of his proposed testimony in the Plaintiff's Fourth Supplemental Rule 26(a)(1) Disclosures dated May 24, 2006, as modified during his deposition, and his deposition testimony of July 12, 2006.  Dr. Douglas will testify concerning his observation and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his prognosis for Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(8)      Vincent Markovchick, M.D., Denver Health Medical Center, 777 Bannock Street, Denver, CO 80204; (303) 436-6000.  Dr. Markovchick is an emergency department physician and a treating physician of Moises Carranza-Reyes.   If called as a witness, Dr. Markovchick is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes and his deposition testimony of April 11, 2006.  Dr. Markovchick will testify concerning his observation

and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his prognosis for Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(9)     Timothy B. Keeling, D.O., Summit Medical Center, 38 County Road 1030, Frisco, Colorado 80443; (970) 668-3300.  Dr. Keeling is an emergency department physician and a treating physician of Moises Carranza-Reyes.   If called as a witness, Dr. Keeling is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes and his deposition testimony of March 15, 2006.  Dr. Keeling will testify concerning his observation and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his prognosis for Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(10)    Colleen Seyer, R.N., Summit Medical Center, 38 County Road 1030, Frisco, Colorado 80443; (970) 668-3300. Ms. Seyer is an emergency department nurse and a treating nurse of Moises Carranza-Reyes.    If called as a witness, Ms. Seyer is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes.   Ms. Seyer will testify concerning her observation and treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis for Mr. Carranza-Reyes, her assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(11)    Amy Woessner, R.N., Summit Medical Center, 38 County Road 1030, Frisco, Colorado 80443; (970) 668-3300. Ms. Woessner is a treating nurse of Moises Carranza-Reyes. If called as a witness, Ms. Woessner is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes.   Ms. Woessner will testify concerning her observation and

46

treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis for Mr. Carranza-Reyes, her assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(12)    George Rohwer, EMT, Summit County Ambulance Service, P.O. Box 4910, Frisco, Colorado 80443; (970) 668-5777.  Mr. Rowher is an EMT who transported Moises Carranza-Reyes from Summit Medical Center to Denver Health Medical Center.  If called as a witness, Mr. Rohwer is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes and his deposition testimony of September 18, 2006.  Mr. Rohwer will testify concerning his observation and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his prognosis for Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(13)    Meredith Poppish, R.N., N.P., Clinica Compesina Family Health Services, 8990 North Washington, Thornton, Colorado 80229; (720) 929-1655.  Ms. Poppish is a registered nurse practitioner and a treater of Moises Carranza-Reyes.     If called as a witness, Ms. Poppish is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes and her deposition testimony of August 22, 2006.  Ms. Poppish will testify concerning her observation and treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis for Mr. Carranza-Reyes, her assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(14)    Sara L. Anschuetz, M.D., 8380 N. Zuni, #100, Denver, Colorado 80221, (303) 427-8000.  Dr. Anschuetz is a radiologist who reviewed x-rays of the Plaintiff taken at Summit Medical Center and is a treater of Moises Carranza-Reyes.  If called as a witness, Dr. Anschuetz

is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes. Dr. Anschuetz will testify concerning her observation and treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis for Mr. Carranza-Reyes, her assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(15)    Lauren Elizabeth Sarnat, M.D., Denver Health Medical Center, 777 Bannock Street, Denver, Colorado 80204, (303) 436-6000. Dr. Sarnat was involved in the treatment of Moises Carranza-Reyes at Denver Health Medical Center as a treating physician. If called as a witness, Dr. Sarnat is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes. Dr. Sarnat will testify concerning her observation and treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis of Mr. Carranza-Reyes, her assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(16)    James Fisher, M.D., Denver Health Medical Center, 777 Bannock Street, Denver, CO 80204; (303) 436-6000. Dr. Fisher is the Chief of Pulmonary Care/Critical Care Medicine at Denver Health Medical Center, and is a treating physician of Moises Carranza-Reyes. If called as a witness, Dr. Fisher is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes. Dr. Fisher will testify concerning his observation and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his prognosis for Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(17)    Richard Albert, M.D., Denver Health Medical Center, 777 Bannock Street, Denver, Colorado 80204, (303) 436-6000.  Dr. Albert is currently Chief of Medicine and was involved in the treatment of Moises Carranza-Reyes at Denver Health Medical Center as a treating physician.  If called as a witness, Dr. Albert is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes.  Dr. Albert will testify concerning his observation and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his prognosis of Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(18)    Michel S. Holien, L.C.S.W., Clinica Compesina Family Health Services, 8990 North Washington, Thornton, Colorado 80229; (720) 929-1655.  Ms. Holien is a licensed clinical social worker and a treater of Moises Carranza-Reyes.  If called as a witness, Ms. Holien is expected to testify consistent with her medical records regarding Mr. Carranza-Reyes and her deposition testimony of November 30, 2006.  Ms. Holien will testify concerning her observation and treatment of Mr. Carranza-Reyes, her diagnosis of Mr. Carranza-Reyes, her prognosis for Mr. Carranza-Reyes, her assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and all other related issues.

(19)    Hsiao-Chi David Wu, M.D., Clinica Compesina Family Health Services, 8990 North Washington, Thornton, Colorado 80229; (720) 929-1655.  Dr. Wu is a physician and a treater of Moises Carranza-Reyes.  If called as a witness, Dr. Wu is expected to testify consistent with his medical records regarding Mr. Carranza-Reyes.  Dr. Wu will testify concerning his observation and treatment of Mr. Carranza-Reyes, his diagnosis of Mr. Carranza-Reyes, his

prognosis for Mr. Carranza-Reyes, his assessment of the nature, extent and permanency of Mr. Carranza-Reyes' medical condition and other related issues.

    (20)    Any non-retained expert listed by the Plaintiff.

Defendants do not anticipate calling any expert witnesses by deposition.

## 7.  EXHIBITS

    (1)    Plaintiff's Exhibits:   *See* Plaintiff's Exhibit List attached hereto.

    (2)    Defendants' Exhibits:   *See* Defendants' Exhibit List attached hereto.

    (3)    Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than March 27, 2007.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed and served via ECF no later than April 13, 2007.

**Demonstrative exhibits must be exchanged at least 45 days before trial (including physical enlargements of exhibits).**

## 8.  DISCOVERY

Discovery has been completed.

## 9.  SPECIAL ISSUES

Several of the witnesses who will and may testify at trial speak Spanish as their first language and have only limited ability to speak English.  As a result, an appropriate Spanish-English language interpreter will be necessary pursuant to Fed. R. Civ. P. 43(f) and Fed. R. Evid. 604.

In addition, Defendants object to Plaintiff's statement of his claims to the extent it alleges that Plaintiff brings a claim grounded on equal protection and due process violations.  (*See*

Section III.A.b., *supra*).  No such claims were presented in Plaintiff's Second Amended Complaint, and Defendants object to Plaintiff raising such claims via the Final Pretrial Order.

Also, although formal discovery is concluded, Defendants have pending requests for documents, with Plaintiff's authorization for release of information regarding those documents, to the Mexican Consulate and to various agencies in Mexico.  In addition, Defendants still have not received any files from Immigration and Customs Enforcement ("ICE") due to the government's refusal to allow record and depositions subpoenas of ICE employees and files.  A Freedom of Information Act request may result in the production of ICE documents.  ~~Defendants reserve the right to file an appropriate motion to amend the Final Pretrial Order to include any additional trial exhibits that may be received pursuant to these requests.~~

## 10.  SETTLEMENT

a.      Counsel for the parties participated in a settlement conference mediated by Magistrate Judge Boyd N. Boland on January 5, 2007, to discuss in good faith the settlement of the case.

b.      The participants in the settlement conference included the parties, their counsel, and appropriate other representatives of the Defendants.

c.      The parties were promptly informed of all offers of settlement.

d.      Counsel for the parties do not presently intend to hold future settlement conferences.

e.      It appears from the discussion by all counsel that there is little possibility of settlement.

f.    There is presently no date for an additional settlement conference before United States Magistrate Judge Boyd N. Boland.

g.    Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6 and have held a settlement conference with United States Magistrate Judge Boyd N. Boland as noted above.

### 11.  OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

### 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

### 13.  TRIAL AND ESTIMATED TRIAL TIME;
### FURTHER TRIAL PREPARATION PROCEEDINGS

1.    Trial is to a jury;

2.    Estimated trial time is **four weeks or 20 trial days** ~~three weeks or fifteen trial days~~;

3.    Situs of trial is the United States District Court in Denver, Colorado.

Dated March 13, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

APPROVED:


/s William A. Trine                          /s Andrew D. Ringel
_____          _____

William A. Trine                             Andrew Ringel
Trine & Metcalf, P.C.                        Hall & Evans
1435 Arapahoe Avenue                         1125 17th Street, Suite 600
Boulder, CO 80302                            Denver, CO 80202-2052
*Counsel for Plaintiff*                      *Counsel for Defendant Park County, Park*
                                             *County Board of County Commissioners,*
                                             *Park County Sheriff's Office, Fred Wegener,*
                                             *And Monte Gore*


                                             /s Melanie B. Lewis
                                             _____

                                             Josh A. Marks
                                             Melanie B. Lewis
                                             Berg, Hill, Greenleaf & Ruscitti
                                             1712 Pearl Street
                                             Boulder, CO 80302
                                             *Counsel for Defendant Vicki Paulsen*

## PLAINTIFF'S EXHIBIT LIST

Plaintiff reserves the right to use any exhibits identified by Defendants.

1.      Daily jail logs from March 1, 2003 through March 10, 2003 (Bate-stamped 1-108; Deposition Exhibit 1).

2.      The Park County Jail's response to the Consulate General of Mexico regarding the medical concerns of Moises Carranza-Reyes dated 3/14/03 (Park 0128-Park 158; Deposition Exhibit 2).

3.      Master Control Log (Park 0966-Park 1014; Deposition Exhibit 3).

4.      Park County Jail Policies & Procedures (Park 0550-Park 0694; Deposition Exhibit 4).

5.      Park County Sheriff's Office Policy & Procedure Manual – Inmate Sleeping Areas; Housing Area Furnishings; Inmate Housing – Showers (Park 1450-Park 1452; Deposition Exhibit 5).

6.      Communicable Diseases (Park 1995-Park 1999; Deposition Exhibit 6).

7.      Vicki Paulsen Park County Personnel File (Park 0291-Park 0311; Deposition Exhibit 20).

8.      Pass-On Records (Park 3406-Park 3597; Deposition Exhibit 21).

9.      Summit Medical Center records re: Carranza-Reyes (Bate 1-17; Deposition Exhibit 24).

10.     The Consulate General of Mexico, Denver, Colorado, dated 3/10/03 requesting ICE to provide medical examinations for the rest of the detainees at the Park County Jail with

attached treatment authorization requests and other documents (Park 0496; Park 0473-Park 0493; Deposition Exhibit 30).

11.     Invoices from Park County Sheriff's Office to INS for detention of detainees in months of January, February and March (Park 0443-Park 0446; Deposition Exhibit 35).

12.     Interoffice Memorandum from Corporal Crawford to Captain Gore dated 3/8/03 re: Carranza-Reyes (Park 0145-Park 0149; Plaintiff's Exhibit 99, taken from Deposition Exhibit 2).

13.     Interoffice Memorandum from Corporal Crawford to "all staff" dated 3/8/03 (Carranza-Reyes has a kidney stone, etc.) (Park 3529 and Park 3530-Park 3532; Deposition Exhibit 100, taken from Exhibit 21).

14.     Park County Sheriff's Office Policy & Procedure Manual, Chapter 11, J-1111, Sanitation and Hygiene (Park 1528-Park 2532; Deposition Exhibit 36).

15.     Architectural drawings of jail dated 4/3/95 (Park 2278; Deposition Exhibit 29).

16.     Denver Health Medical Center (DHMC) emergency room records (DHMC 0051-0055 dated 3/8/03.

17.     Dr. Ivor Samuel Douglas, DHMC records; cumulative critical care documentation (Deposition Exhibit 40).

18.     Plaintiff's Fourth Supplemental Disclosures re: Ivor Samuel Douglas, M.D. (Deposition Exhibit 44).

19.     Clinica Campesina medical records re: Carranza-Reyes (Deposition Exhibits 66, 67, 68, and 69).

20.     Helen Woodard report, including life care plan (Deposition Exhibit 48).

21.     Helen Woodard data, including cost surveys (Deposition Exhibit 49).

22.     Dr. Pacey's notes of her conversation with Helen Woodard on 5/13/06 (Deposition Exhibit 50).

23.     Report of Patricia L. Pacey, Ph.D. (Deposition Exhibit 51).

24.     Research from Helen Woodard's file (Deposition Exhibit 56).

25.     Government Surveys data from the Bureau of Census from Patricia Pacey's records (Deposition Exhibit 57).

26.     Patricia Pacey's Appendix.

27.     Resume of Robert B. Greifinger, M.D. (Deposition Exhibit 71).

28.     Dr. Greifinger's publication list (Deposition Exhibit 72).

29.     Dr. Greifinger's report dated 7/29/05 (Deposition Exhibit 74).

30.     Dr. Greifinger's report dated 4/27/06 (Deposition Exhibit 75).

31.     Dr. Greifinger's report dated 6/2/06 (Deposition Exhibit 76).

32.     National Commission on Correctional Health Care Standards, 1997 ed., J-41; J-12; J-36; J-38.

33.     National Commission on Correctional Health Care Standards, 2003 ed., JE-11; J-41; J-12; J-38.

34.     Summit County Ambulance Service records on transport of Carranza-Reyes to DHMC on 3/8/03 (Deposition Exhibit 84).

35.     Catherine M. Knox Curriculum Vitae (Deposition Exhibit 90).

36.     Report of Catherine M. Knox, R.N. (Deposition Exhibit 91).

37.     Colorado Nurse Practice Act (NPA) (Deposition Exhibit 93).

38.     Curriculum Vitae of Michael S. Niederman, M.D. (Deposition Exhibit 80).

39.     Dr. Niederman's report dated 6/8/06 (Deposition Exhibit 83).

40.     Curriculum Vitae of Manuel D. Romero (Deposition Exhibit 59).

41.     Report of Manuel D. Romero (Deposition Exhibit 60).

42.     32 Photographs taken of the Plaintiff while hospitalized at DHMC.

43.     Photographs of Plaintiff with and without prosthesis after discharge from DHMC (27 photos).

44.     Plaintiff's military honorable discharge certificate dated 6/23/01.

45.     Military hospital record reflecting out-patient surgery for external hemorrhoids dated 7/21/02.

46.     Pharmacy record dated 8/6/01.

47.     Military hospital certificate reflecting Plaintiff's good health and passing a military physical.

48.     Document from the 3 Distrito Federal, including fingerprints and signature of Plaintiff.

49.     Distrito Federal showing service in the local police department.

50.     Ejercito Mexicano, Plaintiff's military records.

51.     Document identifying Plaintiff's parents, Juan Carranza and Laura Luz-Reyes.

52.     Departamento del Distrito Federal, showing Plaintiff's ID number within the Mexican Police Department (660227).

53.     Estados Unidos Mexicanos Registro Civil.

54.     Notice of Action – Application from Juan Carranza to bring Abraham Carranza-Reyes to America.

55.     Naturalization INS registration No. A35629159 for Juan Carranza Alva.

56.     Plaintiff's birth certificate (translation).

57.     Laboratorio San Pedro test results for Plaintiff.

58.     Letter from the Consulate of Mexico dated 8/20/05 containing statement given to the Consulate by Abraham Carranza-Reyes on 3/10/03.

59.     Medical records from Clinica Campesina, Thornton, CO, for the dates of 12/12/05 through 1/10/06, Bate-stamped 0009 through 00165.

60.     Statement of Abraham Carranza-Reyes given to Fabian Pina Ruiz of the Mexican Consulate in Denver, CO, dated 10/3/03 (in Spanish), with English translation dated 10/3/03 done by Jose M. Gonzalez, Ph.D., a certified interpreter from Spanish Language Specialists, together with an email from Vanessa Calva dated 9/28/05.

61.     Code of Colorado Regulations 1000, Department of Public Health & Environment, 6 Colo. Code Regs. 1010-13, Sections 8.1 through 14.7 (Plaintiff's Deposition Exhibit 22).

62.     Park County Sheriff's Office Detention Center Job Description for Nurse (Park 1356-Park 1357; Deposition Exhibit 25).

63.     INS Detention Standard – Medical Care (Park 1688-Park 1705; Deposition Exhibit 26).

64.     James J. Bachman, M.D., Curriculum Vitae (Deposition Exhibit 27).

65.     James Bachman, M.D./Park County Jail Contract of Employment dated 2/15/01 (Park 0312-Park 0320; Deposition Exhibit 28).

66.     Jail Captain job description dated 7/6/00 (Park 1335-Park 1336; Deposition Exhibit 34).

67.     *Summit Daily* news article dated 11/21/03 quoting Sheriff Fred Wegener (Deposition Exhibit 31).

68.     *Summit Daily* news article dated 3/26/04 by Linda Balough (Deposition Exhibit 32).

69.     *Denver Post* article by Kirk Mitchell on Park County Jail profits (Park 1324; Deposition Exhibit 33).

70.     Statement of Edward Allen dated 1/12/06 (Deposition Exhibit 70).

71.     Report of Thomas A. Rosazza dated 9/11/06.

72.     Letter from Denver Health, Amit Jha, M.D., showing Plaintiff is cleared for prosthesis.

73.     Notice of hospital lien, Summit Medical Center and Denver Health.

74.     Park County Sheriff's Office Detention center note stating Park County Jail accepts full financial responsibility for any hospital care rendered to Plaintiff and signed by Corporal Crawford, #3504.

75.     Denver Health Medical Center records (3,344 pages) (Bate-stamped 0001 through 3,344).

76.     Medical billings from hospital and physicians, Bate-stamped 02001 through 02251.

77.     Park County Environmental Health Department records and correspondence, Bate-stamped 0001 through 0018.

78.     Park County Final Adopted Budget for the year 2005.

79.     Denver Health accounting and billing records, Bate-stamped pages 0001 through 0537.

80.     Medical records of Dr. Irene Aguilar, Westside Clinic/Denver Health, Bate-stamped 0001 through 0008.

81.     Email from Vanessa Calva Ruiz, Consul de Proteccion, Consulado General de Mexico, dated 11/2/05.

82.     Copy of Plaintiff's automobile insurance coverage for his vehicle, insurance identification card, Colorado insurance identification card, and copy of Plaintiff's Mexican driver's license.

83.     Clinica Campesina Encounter Invoices Nos. 265414, 263048, 252452, 239870, 238795, 228071, and 219539, whose charges total $640.95.

**DEFENDANTS' EXHIBIT LIST:**

1.      Colorado Department of Public Health Inspection Reports of the Park County Detention Center [PARK 0004-11; 0023-24]

2.      Park County Daily Jail Logs and Count Sheets, March 1–10, 2003 [PARK 0026-0127]

3.      The Park County Jail's Response to the Consulate General of Mexico Regarding the Medical Concerns of Moises Carranza-Reyes dated March 14, 2003 [PARK 0128-0158]

4.      Letter from Captain Monte Gore to U.S. Department of Justice re INS Inspection/ Recommendation for the Park County Jail, and Plan of Action, 01/15/2003 [PARK 0159]

5.      INS Inspection Report for the Park County Jail, September 2002 [PARK 0171-0247]

6.      U.S. Department of Justice/ INS Intergovernmental Service Agreement for Housing Federal Detainees [PARK 0268-0288]

7.      Voluntary Statement by Clarence Candelaria re INS Hold Moises Carranza-Reyes, including Handwritten Notations, 03/17/2003 [PARK 0289-0290]

8.      Park County Jail Personnel Records of Vicki Paulsen, R.N. [PARK 0291-0311]

9.      Agreement for Professional Services for Park County, Colorado, between James Bachman, M.D. and Park County, Colorado, 02/15/2001 [PARK 0312-0320]

10.     Park County Jail Cleaning Procedures [PARK 0416]

11.     Invoices for cleaning and sanitation supplies [PARK 0417-0428]

12.     Park County Government Jail Medical Expenses for 2003 [PARK 0429]

13.     Letters/Monthly Billing Invoices to INS for January, February and March 2003 INS Holds, 02/10/2003, 03/13/2003, 04/14/2003 [PARK 0443-0445]

14.     Memorandum from Sergeant Muldoon to Captain Gore regarding transport of Moises Carranza-Reyes from the Park County Jail to Summit County Medical Center, 09/30/2005 [PARK 0481]

15.     Interoffice Memorandum from Sergeant Muldoon to Captain Gore regarding transport of Moises Carranza-Reyes from the Park County Jail to Summit County Medical Center, 09/30/2005 [PARK 0482]

16.     Immigration and Naturalization Service Pre-Authorization Referrals for Moises Carranza-Reyes, March 9, 2003 [PARK 0491-0493]

17.     Memo from Maintenance to Captain Gore listing Pod D Measurements, with attached Plans for Pod D Upper and Lower Tiers, 10/12/2005 [PARK 0524-0526]

18.     Park County Jail Medical Department Policies and Procedures Manual [PARK 0545-0694] (Deposition Exhibit 4)

19.     Park County Jail Master Control Log, January 1, 2003 to May 31, 2003 [PARK 0695-1322]

20.     Park County Jail Policy and Procedures Manual [PARK 1324-1766]

21.     Inmate Handbook (Spanish) [PARK 1767-1796]

22.     Park County Jail Criminal Justice Code of Ethics [PARK 1797-2228]

23.     As-Built Drawing: Special Systems Plan, Second Floor – Western Corrections Group, 04/03/1995  [PARK 2278]

24.     The Park County Jail's Maintenance Purchases, January 2002 to October 2002 - [PARK 2396-2535].

25.     The Park County Jail's Maintenance Purchases, November 2002 to December 2003 [PARK 2536-2654].

26.     The Park County Jail's Soft Goods and Bed Purchases, March 2001 to September 2003 [PARK 2655-2699].

27.     Order and Park County Jail Voucher showing purchase of Manual for Health Care Standards, 05/03/2002 [PARK 2700- 2702].

28.     Park County Jail Head/Face Count Sheets for Day Shift, February 2003 [PARK 2703-2732].

29.     Park County Jail Head/Face Count Sheets for Swing Shift, February 2003 [PARK 2733-2763].

30.     Park County Jail Head/Face Count Sheets for Graveyard Shift, February 2003 [PARK 2764-2794].

31.     Park County Jail Head/Face Count Sheets for Day Shift, March 2003 [PARK 2795-2827].

32.     Park County Jail Head/Face Count Sheets for Swing Shift, March 2003 [PARK 2828-2859].

33.     Park County Jail Head/Face Count Sheets for Graveyard Shift, March 2003 [PARK 2860-2890].

34.     Park County Jail Meal Count Sheets, March 2003 [PARK 2891-3044].

35.     Park County Jail Meal Count Sheets, February 2003 [PARK 3045-3203].

36.     Park County Jail Pass-On Notes, February 2003 [PARK 3406-3500]

37.     Park County Jail Pass-On Notes, March 2003 [PARK 3501-3597]

38.     Memo from Vicki Paulsen, RN regarding Moises Carranza-Reyes, 03/08/2003 [PARK 3988-3989]

39.     Park County Jail Communicable Diseases Policy [PARK 1995-2000]

40.     INS Detention Standard Medical Care [PARK 1688-1698]

41.     Plans/ Diagrams of Pod D [PARK 4089-4091]

42.     Park County Jail Kite Log, 01/09/2003-03/25/2003 [PARK 4313-4314]

43.     Park County Jail Sergeants' Daily Logs, February 2003 (Day Shift) [PARK 4843–4936].

44.     Park County Jail Sergeants' Daily Logs, February 2003 (Swing Shift) [PARK 4937-5007].

45.     Park County Jail Sergeants' Daily Logs, February 2003 (Graveyard Shift)[PARK 5008-5096].

46.     Park County Jail Visitors' Logs [PARK 6911- 6964].

47.     Park County Jail Visitor Register [PARK 6965-6968].

48.     Plaintiff's Responses to First Set of Interrogatories and Request for Production of Documents from Defendants Park County, Park County Board of County Commissioners, the Park County Sheriff's Office, Fred Wegener and Monte Gore, December 12, 2005

49.     Plaintiff's Responses to Second Set of Interrogatories and Requests for Production of Documents to Plaintiff Moises Carranza-Reyes from Defendants the Park County Board of County Commissioners, Fred Wegener and Monte Gore, June 13, 2006

50.     Letter from Don, Hiller & Galleher to Park County Sheriff's Office requesting Records of Moises Carranza-Reyes (Deposition Exhibit 18)

51.     Records Release signed by Moises Carranza-Reyes allowing access by Aiden Leonard and Summit Daily News (Deposition Exhibit 19)

52.     Letter from the Consulate General of Mexico to Jerry Weber, ICE, 03/10/2003 (Deposition Exhibit 30)

53.     Memo by Fabian Pina Ruiz (Deposition Exhibit 37)

54.     U.S. Department of Justice Notice of Action-Immigrant Petition for Relative, Fiance(e) or Orphan by Juan A. Carranza (Deposition Exhibit 38)

55.     Statement of Edward Allen dated 10/28/205 (Deposition Exhibit 70)

56.     Medical Records of Moises Carranza-Reyes from Summit County Medical Center [00001-00017, SMC 0005, SCAS 00001-00007] (Deposition Exhibits 24, 24A, 85, 86)

57.     Ambulance Transport Records of Moises Carranza-Reyes, including Summit County Emergency Services Patient Contact Report, and Transfer Consent Form (Deposition Exhibits 84, 87)

58.     Medical Records of Moises Carranza-Reyes from Denver Health Medical Center [DHMC 0000-3209]

59.     Medical Records of Moises Carranza-Reyes from Westside Clinic/ Denver Health (00001-00007)

60.     Medical Records and Invoices of Moises Carranza-Reyes from Clinica Compesina [00008-15; Defendants' Park County, et al. Seventh Supplemental Disclosure Documents, and Deposition Exhibits 66, 67, 68, 101]

61.     Letter from Meredith Poppish, RN, RNP-C to To Whom It May Concern, with attached medical records, 02/02/2006 (Deposition Exhibit 69)

62.     Clinica Campesina Mental Health Referral Form dated January 10, 2006

63.     Renewal Notice Letter dated June 1, 2002 from the State of Colorado Department of Corrections to Jerry Solberg, Park County Board of County Commissioners.

64.     Intergovernmental Contract dated July 17, 2003, between the State of Colorado (Department of Corrections) and Park County.

65.     Colorado DOC Private Prisons Monitoring Unit Contract Facility Visit, Park County Jail, 10/30/2002 [DOC 0001]

66.     Colorado DOC Memorandum from Michael Colvin to Michael Arellano regarding Park County Jail Visit of 12/16/2002 [DOC 0002]

67.     Colorado DOC Memorandum from Terry Flanagan to Michael Arellano regarding Park County Jail Audit, 09/17/2002 [DOC 0003-0017]

68.     Colorado DOC Memorandum from Michael Arellano to Bill Zalman, through Lou Archuleta, regarding Park County Jail Visit, 11/18/2003 [DOC 0018-0019]

69.     Colorado DOC Memorandum from John Bongirno to Michael Arellano regarding Park County Jail Visit, 02/27/2003 [DOC 0020-0021]

70.     Colorado DOC Memorandum from John Bongirno to Michael Arellano regarding Park County Jail Visit, 04/03/2003 [DOC 0022-0023]

71.     Colorado DOC Memorandum from Deborah Ahlin to Lou Archuleta regarding Park County Jail Visit, 10/20/2003 [DOC 0024-0025]

72.     Colorado DOC Private Prisons Monitoring Unit Contract Facility Visit, Park County Jail, 06/06/2002 [DOC 0026]

73.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 09/23/2003 [DOC 0027]

74.     Colorado DOC Private Prisons Monitoring Unit Contract Facility Visit, Park County Jail, 04/17/2003 [DOC 0028]

75.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 07/03/2003 [DOC 0029-0030]

76.     Colorado DOC Memorandum from Jim Webber to Michael Arellano regarding Park County Jail Visit, 05/14/2004 [DOC 0031]

77.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 03/22/2004 [DOC 0032]

78.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 04/02/2004 [DOC 0033-0034]

79.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 04/13/2004 [DOC 0035-0036]

80.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 04/15/2004 [DOC 0037-0038]

81.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 06/14/2004 [DOC 0039]

82.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 09/02/2004 [DOC 0040-0041]

83.     Colorado DOC Memorandum from T. Flanagan to Michael Arellano regarding Park County Jail Visit, 11/17/2004 [DOC 0042-0043]

84.     Colorado DOC Memorandum from Deborah Ahlin to Michael Arellano regarding Park County Jail Visit, 05/13/2004 [DOC 0044-0045]

85.     Colorado DOC Memorandum from T. Flanagan to Michael Arellano regarding Park County Jail Visit, 01/06/2004 [DOC 0048-0049]

86.     Colorado DOC Memorandum from Wes Lehman to Michael Arellano regarding Park County Detention Center – ACA Compliance, 09/10/2004 [DOC 0050-0057]

87.     Documents from Immigration and Naturalization Service/Immigration and Customs Enforcement[1]

88.     Documents from Mexican Consulate[2]

---

[1]

~~Defendants have an outstanding request for these records pursuant to the applicable regulations of the United States Department of Homeland Security.  Defendants reserve the right to file an appropriate motion to amend the Final Pretrial Order to include any additional documents received pursuant to this outstanding request.~~

[2]

~~Defendants have an outstanding request for these records pursuant to a release executed by the Plaintiff and a specific authorization from counsel for the Plaintiff.  Defendants reserve the right to file an appropriate motion to amend the Final Pretrial Order to include any additional documents~~

89.     Documents from the Country of Mexico[3]

90.     Expert File of Thomas A. Rosazza [Rosazza 00001-01422]

91.     Expert File of Kathryn L. Doeschot

92.     Expert File of Gregory B. Taylor and Kyle D. Jacobson

93.     Expert File of Donald H. Kearns, M.D. [Kearns 00001-00422]

94.     Expert File of Shelley Fischer, RN, MS

95.     Expert File of Ivor Garlick, M.D.

96.     Expert File of Elizabeth Kraft, M.D.

97.     Park County Sheriff's Office Detention Center Inter-Office Memo from Corporal Crawford to Captain Gore, cc: Sgt. Muldoon, regarding Moises Carranza-Reyes, 03/08/2003 (Deposition Exhibit 99-1)

98.     Park County Sheriff's Office Detention Center Inter-Office Memo from Corporal Crawford to Denver Health, Bed Control (Judy) re financial responsibility of the Park County Jail for hospital care rendered to Carranza-Reyes, 03/08/2003 (Deposition Exhibit 99-2)

99.     Park County Sheriff's Office Detention Center Inter-Office Memo from Sergeant Muldoon to Captain Gore re INS Detainee Carranza-Reyes – Timeline, 03/12/2003 (Deposition Exhibit 99-3).

100.    Park County Sheriff's Office Detention Center Inter-Office Memo from Corporal Crawford to All Staff concerning Shift Highlights/ Inmate Carranza-Reyes, 03/08/2003 [PARK 3529](Deposition Exhibit 100-1)

101.    Park County Sheriff's Office Detention Center Inter-Office Memo from Corporal Crawford to Captain Gore, cc: Sgt. Muldoon re INS Inmate Carranza-Reyes – Timeline, 03/08/2003 [PARK 3530-3531](Deposition Exhibit 100-2)

---

received pursuant to this outstanding request.

[3]     Defendants have an outstanding request for these records pursuant to letters rogatory issued by this Court.  Defendants reserve the right to file an appropriate motion to amend the Final Pretrial Order to include any additional documents received pursuant to this outstanding request.

102.    Park County Sheriff's Office Detention Center Inter-Office Memo from Corporal Crawford to All Staff concerning Shift Highlights/ Inmate Carranza-Reyes (with handwritten notations), 03/08/2003 [PARK 3532] (Deposition Exhibit 100-3)

103.    Denver Health Medical Center Progress Record, 03/09/2003 (Deposition Exhibit 40)

104.    Denver Health Medical Center Physician Order Sheet, Ongoing Orders, 03/08/2003 (Deposition Exhibit 41)

105.    Denver Health Medical Center Physician Order Sheet, Ongoing Orders, 03/09/2003 (Deposition Exhibit 42)

106.    Denver Health Medical Center Progress Record, 03/09/2003) (Deposition Exhibit 43)

107.    Letter from William Trine, Esq. to Dr. Douglas, 03/21/2006 (Deposition Exhibit 45)

108.    Expert File and Billing Records of Plaintiff's expert Helen Woodard [Woodard 00001-00313, 00417-00423] (Deposition Exhibit 49)

109.    Handwritten Notes of Woodard Telephone Conversation with Moises Carranza-Reyes, 05/13/2006 (Deposition Exhibit 50)

110.    Expert File of Plaintiff's expert Patricia Pacey [Pacey 00001-00403]

111.    InternationalLiving.com article re Mexico healthcare, undated (Deposition Exhibit 52)

112.    LA Times Article: "Healthcare is Migrating South of the Border," printed from the internet 05/17/2006 (Deposition Exhibit 53)

113.    Washington Post Article: Passport to Health Care at Lower Cost to Patient," 11/05/2005 (Deposition Exhibit 54)

114.    Comparison of average medical costs in the U.S. versus Mexico City by Woodard, undated; Services Survey Form for Mr. Carranza-Reyes by Woodard, 04/2006; Services Survey Form for Mr. Carranza-Reyes by Woodard, 03/2006 (Deposition Exhibit 56)

115.    Table PINC-04, undated (Deposition Exhibit 57)

116.    U.S. Census Bureau Historical Income Tables–People, printed 07/05/2006 (Deposition Exhibit 58)

117.    Expert File of Plaintiff's expert Manuel Romero [Romero 00001-01193]

118.    Handwritten Notes of Manuel Romero (Deposition Exhibit 63)

119.    Deposition Outlines of James Bachman/ handwritten notations (Deposition Exhibits 62 and 64)

120.    Expert File of Plaintiff's expert Catherine Knox, R.N. [Knox 00001-01002]

121.    Electronic Correspondence from Catherine Knox to William Trine, Esq., 05/11/2005 (Deposition Exhibit 88)

122.    Time and Expense Report of Catherine Knox, R.N. (Deposition Exhibit 89)

123.    Selected pages from APIC Text of Infection Control and Epidemiology re Group A Streptococcus (Deposition Exhibit 92)

124.    State of Colorado Nurse Practice Act (Deposition Exhibit 93)

125.    Expert File of Plaintiff's expert Anthony Volz, R.N. [Volz 00001-00440]

126.    File of Plaintiff's expert Robert Greifinger, M.D. [Greifinger 00001-00691]

127.    Additional File materials of Plaintiff's expert Robert Greifinger (Deposition Exhibit 78)

128.    Invoices of Dr. Greifinger (Deposition Exhibit 94)

129.    Letters from Dr. Greifinger to William Trine, Esq. (Deposition Exhibit 95)

130.    Expert File of Plaintiff's expert Michael Niederman, M.D. [Niederman 00001-00322]

131.    Deposition Outlines for Dr. Ivor Douglas and Edward Allen (Deposition Exhibit 82)

132.    Park County Jail Cleaning Policies [PARK 0416]

133.    Deputy Thomas Memorandum to Captain Gore, 3/13/03 [PARK 0136]

134.    Order to Detain or Release Aliens, 3/1/03 [PARK 0138]

135.    Corporal J. Bellantonio Memorandum to Captain M. Gore, 3/12/03 [PARK 0137]

136.    INS Detainee Intake Form for Moises Carranza-Reyes [PARK 0139]

137.    Park County Jail Reporte Para El Doctor for Moises Carranza-Reyes [PARK 0140]

138.    Park County Jail Count Sheets, 3/1/03 to 3/8/03 [PARK 2796-2868]

139.    Park County Pod Walk Log Sheets, 3/2/03 to 3/7/03 [PARK 0119, 0102, 0090, 0074, 0069].

140.    Sgt. Flint Memorandum to Sgt. Muldoon/Day Shift, March 4, 2003 [PARK 3517]

141.    Park County Jail Nursing Notes for Moises Carranza-Reyes [PARK 3525, 3528 & 3542-3543].

142.    Deputy Don Frye Incident Report, March 8, 2003 [PARK 0155-0156].

143.    Sgt. Muldoon Memorandum to Capt. Gore, March 8, 2003 [PARK 3530-3531].

144.    Sgt. Muldoon Memorandum to Capt. Gore, March 12, 2003 [PARK 0148-0149].

145.    Corporal Crawford Memorandum to All Staff, March 8, 2003 [PARK 3529].

146.    Special Systems Plan Second Floor—The Western Corrections Group [PARK 2278].

147.    Bibliography of General Economic Sources of Patricia L. Pacey, Ph.D.

148.    English Language Proficiency and Wage Rates of Mexican Immigrants by Jeremy Sandford

149.    English Language Ability and the Labor Market Opportunities of Hispanic and East Asian Immigrant Men by Sherrie A. Kossoudji

150.    The Role of Immigrants in the U.S. Labor Market by the Congressional Budget Office

151.    Life and Worklife Expectancies by Hugh Richards, M.S. and Jon R. Abele, Esq.

152.    The New Worklife Expectancies Tables by A.M. Gamboa Jr., Ph.D. and David S. Gibson, MBA, CPA

153.    Data from International Monetary Fund Web Site, Government Bond Yields, 2/9/07

154.     Pneumonia Outbreak Associated with Group A Streptococcus Species at Military Training Facility by Nancy F. Crum et. al.

155.     Joseph J. Archuleta Letter to Vanessa Calva Ruiz, June 8, 2005

156.     Invoice from Hanger Prosthetics and Orthotics, June 9, 2005

157.     Receipt from Hanger Prosthetics and Orthotics, June 27, 2005

158.     Joseph J. Archuleta Letter to Vanessa Calva Ruiz, November 1, 2005

159.     Invoice from Hanger Prosthetics and Orthotics, October 23, 2005

160.     Vanessa Calva Ruiz Email to Joseph Archuleta, November 2, 2005

161.     Joseph Archuleta Letter to United States of America et. al., July 7, 2003

162.     Invoice from Hanger Prosthetics and Orthotics, November 22, 2005

163.     State of Colorado Proof of Insurance for Moises Carranza

164.     Identification Record for Moises Carranza-Reyes

165.     La Comandancia De Law IRM Exteinda la Presente Constancia to Moises Carranza-Reyes, June 23, 2001

166.     Secretaria De La Defensa Nacional Records for Moises Carranza-Reyes, July 23, 2001

167.     Ejercito Mexicano Unidad De Especialisadas Medics for Moises Carranza-Reyes, June 2001

168.     Secreteria De La Defensa National Certica for Moises Carranza-Reyes

169.     Distrito Federal Secretaria de Seguridad Publica Records for Moises Carranza-Reyes

170.     Eljercito Mexicano Service Militar Nacional Records for Moises Carranza-Reyes

171.     Solictud de Empleo Records for Moises Carranza-Reyes, July 19, 2002

172.     Departamento Del Distrito Federal Secretaria General de Proteccion y Vialidad Records for Moises Carranza-Reyes

173.    Estados Unidos Mexicanos Registro Civil for Moises Carranza-Reyes

174.    Acta de Nacimiento for Moises Carranza-Reyes

175.    Laboratorio San Pedro Records for Moises Carranza-Reyes

176.    Statement of Moises Carranza-Reyes, June 22, 2005

177.    Juan Marcos Guttierez Gonalez Letter to Moises Carranza-Reyes and Abraham Carranza-Reyes, August 20, 2005

178.    Moises Carranza-Reyes Application for Assistance to Friends of Man, March 18, 2004

179.    All exhibits identified by the Plaintiff.

180.    All exhibits necessary for impeachment.

181.    All exhibits necessary for rebuttal.

182.    All exhibits necessary to establish foundation or authenticity.

183.    All exhibits necessary to refresh recollection

184.    Demonstrative exhibits