IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES,

    Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his official capacity as Captain of Park County Sheriff's Department; and
VICKIE PAULSEN, individually, and in her official capacity as Registered Nurse for Park County, Colorado;

    Defendants.

**MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT FROM DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

Defendants the Park County Board of County Commissioners, Fred Wegener, and Monte Gore, by and through their counsel, Andrew D. Ringel, Esq. and Jennifer L. Veiga, Esq. of Hall & Evans, L.L.C., pursuant to this Court's Order of March 13, 2007, hereby submit this Motion for Leave to Submit Supplemental Motion for Summary Judgment, and as grounds therefore state as follows:

    1.    The Final Pretrial Conference in this matter was held on March 13, 2007, before United States Magistrate Judge Boyd N. Boland. During the preparation of the Final Pretrial Order, the Plaintiff's Statement of Claims included the following language: "Each of the Defendants' conduct constitutes cruel and unusual punishment and a violation of the due process

and equal protection under the law." [*See* Final Pretrial Order, at 5]. Defendants objected to the Plaintiff's inclusion of due process and equal protection theories in his Statement of Claims contained in the Final Pretrial Order, on the basis the Plaintiff never earlier asserted such claims against the Defendants. [*See* Final Pretrial Order, at 50-51]. Magistrate Judge Boland did not strike the references to due process and equal protection in Plaintiff's Statement of Claims in the Final Pretrial Order because of one sentence contained in the Plaintiff's Second Amended Complaint. [*See* Second Amended Complaint, ¶47].[1]

2.  Based on Magistrate Judge Boland's determination, counsel for these Defendants requested the opportunity to determine whether additional discovery on the Plaintiff's new equal protection and due process theories was needed and to file a supplemental motion for summary judgment. Magistrate Judge Boland issued an Order directing these Defendants to file any such motion requesting such relief for a determination by this Court. Counsel for these Defendants analyzed the Plaintiff's putative equal protection and due process theories, as articulated in the Second Amended Complaint as well as the Final Pretrial Order, and determined additional discovery is not necessary. However, these Defendants request the opportunity to submit a supplemental motion for summary judgment to address the fundamental legal deficiencies in the Plaintiff's equal protection and due process claims, within fifteen (15) days following an order from this Court granting leave for these Defendants to do so.

---

[1] Paragraph 47 of Plaintiff's Second Amended Complaint appears in the Plaintiff's First Claim for Relief. Plaintiff's First Claim for Relief is brought against Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore. [*See* Second Amended Complaint, ¶¶ 40-49]. As such, the Plaintiff's equal protection and due process claims cannot be considered to exist with respect to Defendant Vicki Paulsen.

3. A multitude of reasons support granting these Defendants' request for leave to file a supplemental motion for summary judgment on the Plaintiff's newly identified equal protection and due process theories. First, the reference in the Plaintiff's Second Amended Complaint to equal protection and due process is exclusively confined to a single sentence and nowhere in the Second Amended Complaint does Plaintiff allege sufficient facts to actually state any cognizable equal protection or due process claim. Second, the Plaintiff's statement of claims contained in the Final Pretrial Order is also limited to the identical single sentence. Moreover, allegations concerning any of the required elements of either an equal protection or due process claim are entirely absent. Third, nowhere in the briefing on these Defendants' pending Motion for Summary Judgment did Plaintiff ever reveal the purported existence of any equal protection or due process claim. Fourth, the individual Defendants' assertion of qualified immunity, repeatedly and consistently in this case, would be undermined if these Defendants are not afforded an opportunity to address Plaintiff's claims in a supplemental dispositive motion. Fifth, the trial in this matter is scheduled for April 14, 2008—more than one year from now—eliminating any prospect of prejudice arising by allowing these Defendants leave to submit a supplemental motion for summary judgment under these circumstances.

4. First, Plaintiff's Second Amended Complaint's reference to any equal protection and due process theory is limited to a single sentence. The only reference contained anywhere in the Plaintiff's Second Amended Complaint to either equal protection or due process is contained in the last sentence of Paragraph 47 of Plaintiff's Second Amended Complaint. In its entirety, Paragraph 47 provides:

> 47. That the Defendants and each of them established and permitted and acted with deliberate indifference to the serious health needs protected

> generally by the 8th and 14th Amendments to the United States Constitution and subjected the Plaintiff with deliberate indifference to dangerous and debasing conditions of confinement and violated basic fundamental rights to safe and humane confinement. The inhumane conditions of confinement caused Plaintiff's medical injuries as alleged in this Complaint. The conduct was cruel and unusual punishment *and a violation of due process and equal protection under the law*.

[*See* Second Amended Complaint, ¶47 (emphasis added)]. Nowhere else in the entirety of the Plaintiff's Second Amended is there any other reference whatsoever to either "due process" or "equal protection." [*See* Second Amended Complaint, at 1-21]. Presumably, Plaintiff's due process and equal protection theories are premised on the Fourteenth Amendment. However, nowhere in the Plaintiff's Second Amended Complaint do the words "Equal Protection Clause" or "Due Process Clause" even appear. [*See* Second Amended Complaint, at 1-21].

5.      More importantly, none of the allegations contained in the Second Amended Complaint actually state any cognizable equal protection or due process claim. A viable equal protection theory requires the Plaintiff to establish a variety of different elements that are nowhere alleged in the Plaintiff's Second Amended Complaint. Initially, Plaintiff must establish the Defendants treated him differently because of his status as a member of a discrete and insular minority on the basis of his race, gender, religion, exercise of fundamental rights, or other impermissible classification based on the Fourteenth Amendment Equal Protection Clause's mandate to treat similarly situated individuals alike. *See, e.g., **City of Cleburne v. Cleburne Living Center,*** 473 U.S. 432, 439 (1985); ***Buckley Construction, Inc. v. Shawnee Civic & Cultural Developmental Authority,*** 933 F.2d 853, 859 (10th Cir. 1991); ***Esmail v. Macrane,*** 53 F.3d 176, 178-179 (7th Cir. 1995). No specific allegation in the Plaintiff's Second Amended Complaint even suggests he was treated differently because of his membership in a suspect class. [*See* Second Amended Complaint, at 1-21]. Further, Plaintiff must also demonstrate he was

4

treated differently than other non-suspect class members who were similarly situated to him based on the challenged actions of the Defendants having both a discriminatory effect and an underlying motivation of a discriminatory intent. *See, e.g.,* **United States v. Armstrong,** 517 U.S. 456, 466 (1996); **Tonkovich v. Kansas Bd. of Regents,** 159 F.3d 504, 532 (10th Cir. 1998). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others similarly situated to her." **Klinger v. Department of Corrections,** 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied,* 513 U.S. 1185 (1995). However, a discriminatory effect of a particular policy is insufficient because disparate impact only suggests rather than proves discriminatory intent. "A discriminatory purpose is more than mere 'awareness of the consequences.' The law or custom must be found to have been implemented 'at least in part 'because of,' not merely 'in spite of,' its adverse consequences upon an identifiable group." **Ricketts v. City of Columbia, Mo.,** 36 F.3d 775, 781 (8th Cir. 1994), *cert. denied,* 514 U.S. 1103 (1995) (quoting **Personnel Admin. of Mass v. Feeney,** 442 U.S. 256, 279 (1979)). Here, no allegations contained in the Plaintiff's Second Amended Complaint even allege Plaintiff was treated differently than others similarly situated to him. [*See* Second Amended Complaint, at 1-21]. And no allegations found in the Second Amended Complaint even allege any of the Defendants made any decision respecting the Plaintiff or any suspect class of which Plaintiff was a member based on any discriminatory intent. [*See* Second Amended Complaint, at 1-21]. In the absence of specific allegations contained in the Plaintiff's Second Amended Complaint to state any viable equal protection theory against the Defendants, it is no wonder that the Defendants did not perceive the Plaintiff as attempting an equal protection theory in the Second Amended Complaint.

5

6. Similarly, none of the allegations contained in the Plaintiff's Second Amended Complaint state any viable due process claim. Initially, nothing contained in the Plaintiff's Second Amended Complaint reveals whether Plaintiff attempts a substantive or a procedural due process claim. [*See* Second Amended Complaint, at 1-21]. Assuming Plaintiff alleges a violation of substantive due process, Plaintiff would be required to demonstrate some liberty interest allegedly violated by the Defendants that is protected by the substantive component of the Fourteenth Amendment's Due Process Clause. *See, e.g.,* **Rector v. City & County of Denver,** 348 F.3d 935, 948 (10th Cir. 2003) ("Consequently, substantive due process claims are subject to heightened standards. Executive policymaking actions or legislative acts constitute due process violations only if plaintiffs objectively show that such rights are rooted in our nation's history and provide a careful description of the asserted fundamental liberty interest. Specific uses of executive power violate substantive due process only when they 'shock the conscience.'") (citations omitted). No allegations contained in Plaintiff's Second Amended Complaint demonstrate any invocation of a fundamental liberty interest protected by substantive due process. [*See* Second Amended Complaint, at 1-21]. Alternatively, if Plaintiff attempts a procedural due process claim, Plaintiff would be required to establish either a protected property or liberty interest and that the Defendants deprived him of that property or liberty interest without due process of law by failing to give him notice and an opportunity to be heard. *See, e.g.,* **Schulz v. City of Longmont,** 465 F.3d 433, 443 (10th Cir. 2006); **Copelin-Brown v. N.M. State Personnel Office,** 399 F.3d 1248, 1254 (10th Cir. 2005). Again, no allegations contained anywhere in Plaintiff's Second Amended Complaint even allege Plaintiff possessed a protected

property or liberty interest that was deprived by the Defendants without due process. [*See* Second Amended Complaint, at 1-21].

7. Moreover, Paragraph 47 of the Plaintiff's Second Amended Complaint appears under the Plaintiff's First Claim for Relief. Under the First Claim for Relief, Plaintiff alleges a variety of different specific actions taken by these Defendants violated his constitutional rights. However, nowhere in those alleged constitutional violations does any indication appear the specific actions Plaintiff alleges these Defendants did or failed to do that violated his constitutional rights constituted a violation of either the Equal Protection Clause or the Due Process Clause. None of Plaintiff's allegations against these Defendants are framed in either equal protection or due process terms in any fashion whatsoever. [*See* Second Amended Complaint, ¶ 41(a)-(f)]. The sum total of the Plaintiff's allegations contained in the Second Amended Complaint provide no viable equal protection or due process claim of any kind. As a result, it was eminently reasonable for the Defendants not to recognize Plaintiff was attempting such claims here.

8. During the Final Pretrial Conference, counsel for the Plaintiff asserted Plaintiff's due process theory was based at least in part on the failure by the Defendants to provide him with a Spanish-English translator during his detention in the Park County Jail. However, counsel for these Defendants located no precedent from the United States Supreme Court, the United States Court of Appeals for the Tenth Circuit, or this Court outlining any due process theory premised on a failure to provide an interpreter or a translator outside of a criminal or official immigration proceeding context. No allegations contained in the Plaintiff's Second Amended Complaint allege the Defendants failed to provide Plaintiff with an appropriate Spanish-English translator in

7

any criminal or immigration proceeding. [*See* Second Amended Complaint, at 1-21]. As such, nothing contained in Plaintiff's Second Amended Complaint could provide these Defendants with any indication Plaintiff attempted any such theory in this litigation.

9. Second, the Plaintiff's statement of claims contained in the Final Pretrial Order related to any equal protection and due process claim is also limited to the same single sentence found in the Second Amended Complaint. In this Motion, these Defendants identify a variety of different allegations missing from the Plaintiff's Second Amended Complaint necessary to state any viable due process or equal protection theory. Plaintiff's statement of claims contained in the Final Pretrial Order contains the identical single-sentence reference to claims of due process and equal protection violations against the Defendants. [*See* Final Pretrial Order, at 5]. Notably absent from the Plaintiff's statement of claims in the Final Pretrial Order are any actual facts demonstrating *how* the Defendants allegedly violated the Plaintiff's due process and equal protection constitutional rights. The deficiencies of the Second Amended Complaint respecting any equal protection or due process theory are not cured by the Final Pretrial Order. [*See* Final Pretrial Order, at 2-6].

10. Third, these Defendants litigated the Plaintiff's claims and filed their Motion for Summary Judgment based on the Plaintiff's well-plead claims in the Second Amended Complaint. Plaintiff offered nothing in the briefing on these Defendants' pending Motion for Summary Judgment even remotely suggesting the existence of any equal protection or due process theory here. These Defendants filed their Motion for Summary Judgment on December 13, 2006. [*See* Motion for Summary Judgment from Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore ("Defendants' MSJ")]. The Motion for

Summary Judgment was directed at all of the Plaintiff's remaining claims. [*See* MSJ, at 1-2 & 54]. The Motion for Summary Judgment articulated the Plaintiff's 42 U.S.C. § 1983 claims as arising under the Eighth and Fourteenth Amendments to the United States Constitution. [*See* MSJ, at 1-2]. Specifically, the Motion for Summary Judgment described Plaintiff's Eighth and Fourteenth Amendment claims as alleging violations of his constitutional rights due the conditions of his confinement at the Park County Jail and based on the medical care provided to the Plaintiff during his detention. [*See* MSJ, at 29-33]. The Motion for Summary Judgment described Plaintiff's claims as arising under the Eighth and Fourteenth Amendment because Plaintiff's status as an INS detainee, and not a convicted felon, means the Fourteenth Amendment applies to his conditions of confinement and denial of medical care claims. However, under existing law, the Fourteenth Amendment borrows the Eighth Amendment standards for evaluating conditions of confinement and denial of medical care claims. [*See* MSJ, at 29-30 & n. 6]. These Defendants did not raise any argument concerning any claim advanced by Plaintiff under the Equal Protection or Due Process Clauses of the Fourteenth Amendment because these Defendants did not believe Plaintiff attempted any such claim in the Second Amended Complaint.

      11.     Plaintiff filed his Response to Motion for Summary Judgment from Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore on January 11, 2007. [*See* Plaintiff's Response to Motion for Summary Judgment from Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore ("Plaintiff's Response")]. Despite these Defendants' clear characterization of the Plaintiff's Eighth and Fourteenth Amendment claims as limited to claims alleging unconstitutional conditions of confinement and

9

unconstitutional denial of adequate medical care, absolutely nowhere in the Plaintiff's Response is any mention made of the Plaintiff also pursuing equal protection and due process claims in the Second Amended Complaint. [*See* Plaintiff's Response, at 1-51]. Nowhere in Plaintiff's Response does Plaintiff suggest these Defendants' Motion for Summary Judgment did not address all of the Plaintiff's claims, argue a violation of his equal protection or due process rights occurred, or otherwise provide any indication whatsoever that Plaintiff's claims also included an equal protection and a due process theory. [*See* Plaintiff's Response, at 1-51]. Counsel for the Plaintiff claimed during the Final Pretrial Conference that it was not the Plaintiff's responsibility to point out that the Defendants did not address all of the Plaintiff's putative claims in their Motion for Summary Judgment. Such a suggestion is disingenuous at best, considering that the Motion for Summary Judgment here is clearly and unambiguously directed at the entirety of the Plaintiff's remaining claims and specifically characterized what those remaining claims were from these Defendants' perspective. [*See* Defendants' MSJ, at 1-2 & 54]. Under such circumstances, it was incumbent on the Plaintiff to reveal the alleged deficiency of the Motion for Summary Judgment of not addressing Plaintiff's putative equal protection and due process theories. Indeed, because the Second Amended Complaint is not evidence for summary judgment purposes, in the absence of this issue being raised before this Court now, this Court would undoubtedly consider the Motion for Summary Judgment based on the claims as characterized by the Defendants. If this Court then accepted the Defendants' arguments, all of the Plaintiff's claims against these Defendants in their entirety would be dismissed. After all, based on the Plaintiff's Response, this Court would possess no basis to know that Plaintiff contends additional claims existed in the Second Amended Complaint.

12. Furthermore, these Defendants' specifically addressed the issue of whether Plaintiff received a Spanish-English translator in their Motion for Summary Judgment. In their Motion for Summary Judgment, Defendants addressed the seven different allegations raised by the Plaintiff in the Second Amended Complaint concerning the conditions of confinement in the Park County Jail. [*See* Defendants' MSJ, at 39]. Specifically addressed by these Defendants was the Plaintiff's claim that no Spanish-English translator was available. [*See* Defendants' MSJ, at 45]. Given counsel for the Plaintiff's representation at the Final Pretrial Conference that the Plaintiff's due process claim involves the alleged failure to provide a translator for the Plaintiff, it defies logic to suggest that the Plaintiff need not raise the existence of a due process claim in response to this specific argument. Indeed, nowhere in the Plaintiff's Response does Plaintiff mention the issue of the absence of an appropriate Spanish-English translator at all. [*See* Plaintiff's Response, at 1-61]. In sum, based on the Plaintiff's Response to these Defendants' Motion for Summary Judgment, there is no way the Defendants could know the Plaintiff attempted any equal protection or due process claim here. As such, it is appropriate to allow the Defendants to submit a supplemental summary judgment motion to address these claims now advanced by the Plaintiff.

13. Fourth, Defendants Fred Wegener and Monte Gore asserted their entitlement to qualified immunity from the Plaintiff's 42 U.S.C. § 1983 claims against them in their individual capacities. Defendants Wegener and Gore asserted qualified immunity from the Plaintiff's § 1983 claims against them in their Answer to the Plaintiff's Second Amended Complaint, in their Motion for Summary Judgment, and in the Final Pretrial Order. [*See* Answer to Plaintiff's Second Amended Complaint and Jury Demand from Defendants Park County Board of County

11

Commissioners, Fred Wegener and Monte Gore, at 12; Defendants' MSJ, at 33-37 & 50-54; Final Pretrial Order, at 6-8]. The doctrine of qualified immunity was created to permit the resolution of many claims against government officials before "'subject[ing] government officials to either the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." ***Mitchell v. Forsyth***, 473 U.S. 511, 526 (1985) (quoting ***Harlow v. Fitzgerald***, 457 U.S. 800, 817-18 (1982) (alteration in original)). "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties, and from potentially disabling threats of liability." ***Elder v. Holloway***, 510 U.S. 510, 513 (1994) (quoting ***Harlow***, 457 U.S. at 806). Qualified immunity is not only a mere defense to liability; it is an immunity to suit. ***Mitchell***, 473 U.S. at 526-27. Qualified immunity an entitlement not to stand trial. ***Workman v. Jordan***, 958 F.2d 332, 336 (10th Cir. 1992).

14. As a result of the underlying purposes of the qualified immunity doctrine, the United States Supreme Court repeatedly stressed the "importance of resolving immunity questions at the earliest possible stage in the litigation." ***Hunter v. Bryant***, 502 U.S. 224, 227 (1991) (per curiam) (collecting cases). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." ***Saucier v. Katz***, 533 U.S. 194, 197 (2001). The affirmative defense of qualified immunity may be raised either with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or a motion for summary judgment pursuant to Fed. R. Civ. P. 56. ***Behrens v. Pellitier***, 516 U.S. 299, 300-5 (1996). Any adverse district court qualified immunity decision raising a

legal question may be appealed on an interlocutory basis pursuant to the collateral order doctrine. *See* **Johnson**, 520 U.S. at 915 ("a Federal District Court order rejecting a qualified immunity defense on the ground that the defendant's actions--if proven—would have violated clearly established law may be appealed immediately as a 'final decision' within the meaning of the general federal appellate jurisdiction statute, 28 U.S.C. §1291."); **Johnson v. Jones**, 515 U.S. 304, 309-11 (1995). Further, in **Behrens**, the Supreme Court specifically held that an individual defendant could raise the affirmative defense of qualified immunity at both the motion to dismiss and summary judgment stages and initiate an interlocutory appeal from the denial of the defendant's entitlement to qualified immunity by a district court on multiple occasions both before and after discovery has occurred. *Id.* at 306-7. The important purposes of the qualified immunity doctrine further support this Court allowing these Defendants to file a supplemental motion for summary judgment to address the Plaintiff's equal protection and due process theories. Indeed, this Court's denial of these Defendants' instant request is tantamount to a denial of Defendants Wegener's and Gore's qualified immunity from these claims of the Plaintiff.

15. Fifth, Motions for Summary Judgment are currently pending before this Court and this matter is set for a four-week jury trial to commence on April 14, 2008. As a result, no prejudice will result in allowing these Defendants to submit a supplemental motion for summary judgment to address the Plaintiff's equal protection and due process arguments. The Motions for Summary Judgment filed by these Defendants and Defendant Vicki Paulsen are fully briefed and await disposition by this Court. [*See* Final Pretrial Order, at 11-12]. All three individual Defendants asserted their qualified immunity from the Plaintiff's 42 U.S.C. § 1983 claims

against them in their individual capacities. [*See* Defendants' MSJ, at 33-37 & 50-54; Brief in Support of Defendant Vicki Paulsen's Motion for Summary Judgment, 12/15/06, at 13-30]. Accordingly, under the applicable qualified immunity precedent outlined above, the individual Defendants may seek interlocutory appellate review of any adverse decision by this Court on the qualified immunity issue. Further, this Court set this matter for a four-week trial to commence on April 14, 2008. [*See* Minute Order, 3/13/07]. Therefore, there will be more than ample time for the parties to brief the additional summary judgment issues raised by the Plaintiff's equal protection and due process theories and for them to be determined by this Court in conjunction with this Court's determination of the pending Motions for Summary Judgment.

16. Pursuant to D.C.Colo.L.Civ.R. 7.1(A) counsel for these Defendants contacted counsel for all other parties. Counsel for the Plaintiff, William A. Trine, Esq., represented at the Final Pretrial Conference held on March 13, 2007, that the Plaintiff would oppose any effort by these Defendants to seek leave from this Court to either engage in supplemental discovery or supplemental summary judgment briefing. Therefore, it is clear Plaintiff opposes this Motion. Prior to filing this Motion, counsel for these Defendants contacted counsel for Defendant Vicki Paulsen, Melanie Lewis, Esq. on March 21, 2007. Ms. Lewis indicated Defendant Paulsen does not oppose the instant Motion.

WHEREFORE, for all of the foregoing reasons, Defendants Park County Board of County Commissioners, Fred Wegener, and Monte Gore, respectfully request this Court grant them leave to submit a supplemental motion for summary judgment to address the Plaintiff's equal protection and due process claims within fifteen (15) days after this Court grants such leave, and for all other and further relief as this Court deems just and appropriate.

Dated this 22nd day of March, 2007.

    Respectfully submitted,

    s/ Andrew D. Ringel
    _____
    Andrew D. Ringel, Esq.
    Jennifer L. Veiga, Esq.
    Hall & Evans, L.L.C.
    1125 17th Street, Suite 600
    Denver, Colorado 80202-2052
    (303) 628-3300
    ringela@hallevans.com

    **ATTORNEYS FOR BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, FRED WEGENER, AND MONTE GORE**

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 22nd day of March, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph J. Archuleta, Esq.
archuletalaw@qwest.net

William A. Trine, Esq.
btrine@trine-metcalf.com

Josh A. Marks, Esq.
jam@bhgrlaw.com

Melanie B. Lewis, Esq.
mbl@bhgrlaw.com

Lloyd C. Kordick, Esq.
lloyd@kordicklaw.com

Adele P. Kimmel, Esq.
akimmel@publicjustice.net

s/Loree Trout,  Secretary
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3300
Fax: 303-293-3238
ringela@hallevans.com

**ATTORNEYS FOR DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

H:\Users\RINGELA\park\Carranza-Reyes\Motion leave to supplement MSJ.doc