IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES

       Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado; MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado,

       Defendants.

---

**PLAINTIFF'S RESPONSE TO MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT FROM DEFENDANTS PARK COUNTY BOARD OF COUNTY COMISSIONERS. FRED WEGENER AND MONTE GORE**

---

       Plaintiff, through his counsel, Bill Trine and Cheryl Trine of Trine & Metcalf, P.C., hereby respond to Defendants' Motion for Leave to Submit Supplemental Motion for Summary Judgment, and requests that the Motion be denied for the reasons hereinafter stated:

**I.**      **Defendants' claim of surprise is not justified or supported by the pleadings, documents, and evidence.**

       During the final Pretrial Conference, the Park County Defendants expressed surprise that the Plaintiff is asserting claims for violations of equal protection and due process of law and asserted that Plaintiff had never made these claims previously.  To the contrary, Plaintiff alleged that the Park County Defendants' conduct constituted, "a violation of due process and equal protection under the

law" in the original Complaint in Paragraph 49, in the Amended Complaint in Paragraph 47, and in the Second Amended Complaint in Paragraph 47. The Park County Defendants then filed an Answer to Plaintiff's Second Amended Complaint and in Paragraph 47 of the Answer, the Defendants specifically denied Plaintiff's allegation of a violation of due process and equal protection. When this claim was again asserted in the Final Pretrial Order, the Park County Defendants could not have been surprised and if they were, the surprise was not justified.

II.   **Defendants also claim surprise, arguing that the factual allegations of the Amended Complaint do not support an equal protection or due process violation. This claim of surprise is also not justified or supported by the pleadings and the evidence.**

First, it should be noted that Plaintiff's factual allegations contained in the Second Amended Complaint in Paragraphs 7 through 36[1] do support the elements of a violation of equal protection and due process. All of these factual allegations, which also support deliberate indifference, are supported by deposition testimony and documents as described in Plaintiff's Response to the Park County Defendants' Motion for Summary Judgment on file with the Court. (Paras. 1 through 82 of Plaintiff's Response).

A.   **Failure to provide qualified Spanish/English interpreter violates due process.**

The Second Amended Complaint alleges that, "At the Park County Jail, there was no translator available with proper knowledge of Spanish to provide translation. . ." (Para. 7). Defendants assert there are no cases regarding interpreters outside the disciplinary hearing context. However, Defendants deposed Plaintiff's expert, Dr. Robert Greifinger, who was a defendant in a class action in which a federal court held the failure to provide interpreters to hearing-impaired inmates seeking medical treatment violated the Due Process Clause of the

Fourteenth Amendment.  *Clarkson v. Coughlin,* 898 F.Supp. 1019, 1033 (S.D.N.Y. 1995).

**The *Clarkson* Court granted summary judgment to the plaintiffs because, "Defendants' failure to provide qualified interpreters and/or other assistive devices during medical and mental health treatment violates class members' constitutional due process and privacy rights, and in those cases in which communication between patient and medical personnel is essential to the efficacy of treatment, the Eighth Amendment's proscription against cruel and unusual punishment." *Id.* at 1034.**

The Court in *Clarkson* found that because one of the inmates "does not write English well and was not given access to a qualified sign language interpreter, he was unable to explain his medical condition during doctor's appointments…." *Id.* at 1030.  Regarding another inmate, the *Clarkson* Court noted:

> Instead of access to a qualified sign language interpreter, Bedford Hills identified two inmates to translate for Ripic when needed.  They are not certified interpreters, and they are not always available.  They are sometimes unable to translate such that Ripic can understand and be understood.  Ripic has several serious medical conditions, including congenital heart failure, and during medical appointments, she is unable to comprehend doctor's medical recommendations and is unable to ask follow-up questions about treatment options and medications….  Ripic is similarly forced to depend on other inmates to communicate with DOCS personnel in the medical and mental health context. *Id.* at 1032.

"Prisoners claiming a procedural due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by governmental action." *Clarkson* at 1039.  "These interests may arise from the Constitution, *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493-94 100 S.Ct. 1254, 1263-54, 63

---

[1] These same paragraphs are set forth in Plaintiff's original Complaint and First Amended Complaint.

L.Ed.2d 552 (1980), from state statutues… or from administrative regulations and procedures…" *Clarkson* at 1039. "Courts have identified specific liberty interests of inmates upon which a state cannot impinge without due process." *Id. See Washington v. Harper,* 494 U.S. 210, 221-222 (1990) (liberty interest in freedom from unwanted administration of medication).

In this case, it is undisputed that Plaintiff is not bilingual and speaks only Spanish, and that Park County failed to hire or provide a qualified translator that would permit the Plaintiff to communicate his symptoms and medical problems to the guards and the nurse. This failure supports a due process violation claim under the Fourteenth Amendment.

**B.     The failure to provide medical care violates substantive due process.**

In arguing that Plaintiff has not alleged a substantive due process claim, Defendants rely on *Rector v. City and County of Denver,* 348 F.3d 935, 948 (10th Cir. 2003), a parking ticket case contesting the imposition of late fees by the City of Denver . (Defendants' Brief, Para. 6)  The court in *Rector* articulated the rule that executive policymaking actions or legislative acts constitute substantive due process violations only if plaintiffs show that rights are rooted in our nation's history and describe the asserted fundamental liberty interest.  *Id.* The court explained that specific uses of executive power violate substantive due process only when they 'shock the conscience."  *Id.*  It was not contested in *Rector* that promulgation of parking fines is a legislative act or that enforcement of fines is an executive action to which the rules applied.  The present case does not involve a challenge to legislative acts or executive action, and the specific test cited by defendants for substantive due process within that narrow framework is inapplicable.

4

The applicable rule requires the provision of adequate medical care to those citizens taken into police custody or otherwise restrained.  **"The Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."** *Schnurr v. Board of County Com'rs of Jefferson County,* 189 F.Supp.2d 1005, 1134 (D.Colo. 2001), citing *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992).  "When the state takes custody of a person, 'the Constitution imposes upon it a corresponding duty for his protection.'"  *Schnurr* at 1134.

Plaintiff's inadequate medical care is alleged in the Second Amended Complaint and documented in the deposition testimony contained in Plaintiff's Response to Park County Defendants' Motion for Summary Judgment.

**C.**      **Plaintiff's equal protections claims are based on deprivation of fundamental rights, and it is not necessary that Plaintiff allege that he was "treated differently because of his membership in a suspect class."**

Defendants incorrectly summarized *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985) as requiring Plaintiff to establish membership in a discrete and insular minority in order to claim the violation of a constitutional right.  In contrast, the Supreme Court in *Cleburne* stated, "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest....  The general rule gives way, however, when a statute classifies by race, alienage, or national origin. . . these laws are subjected to a strict scrutiny. . . .  **Similar**

**oversight by the courts is due when state laws impinge on personal rights protected by the Constitution."** (emphasis added). *Cleburne* at 439-40. Similarly, the *Buckley* court decided, "[B]ecause neither a suspect class nor fundamental right is involved, the classification need only have 'a reasonable basis to withstand constitutional challenge.'" *Buckley Construction, Inc. v. Shawnee Civic & Cultural Development Authority,* 933 F.2d 853, 859 (10th Cir. 1991).

The cause of Defendants' confusion is likely their failure to accurately and clearly state legal rules. Defendants cite "selective prosecution" cases for a general rule that Plaintiff must show he is a member of a suspect class and must also demonstrate he was treated differently than other non-suspect class members who were similarly situated to him, establishing discriminatory effect and intent.

Defendants mixed the rules. While claiming Plaintiff must show suspect class and discriminatory effect/intent (which receives heightened scrutiny), Defendants quoted the requirement that persons be similarly situated in order to receive rational basis scrutiny, without differentiating between the different rules. Defendants cited a case involving quality of programs in prison, *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (1994), but nowhere did Defendants cite a case dealing with a **fundamental constitutional right** or any of the issues in the present case, including medical care, overcrowding, unsanitary conditions or the lack of an interpreter.

The Tenth Circuit has ruled that where a plaintiff was not a member of a suspect class and did not allege being deprived of a **fundamental right**, the equal protection challenge was subject to only a rational basis review. *Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10th

6

Cir. 1996) (denying Plaintiffs' equal protection claim because prison classifications further

New Mexico's legitimate penological goals).  "Unless [the inmate] is a member of a suspect

class **or a fundamental right** is at stake….  Disparate treatment need only be rationally

related to a legitimate governmental purpose to satisfy the Equal Protection Clause." *Treff v.*

*Lott,* 149 F.3d 1191, 2 (10th Cir. 1998), UNPUBLISHED OPINION (attached as Exhibit A).

Inmates have a **fundamental right** to receive health care.  *Ramos v. Lamm,* 485

F.Supp. 122, 158 (D.C.Colo. 1979), rev'd in part on other grounds.  *See Estelle v. Gamble,*

429 U.S. 97 (1976) at 103-05, ("An inmate must rely on prison authorities to treat his

medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases,

such a failure may actually produce physical 'torture or a lingering death…."  In less serious

cases, denial of medical care may result in pain and suffering which no one suggests would

serve any penological purpose.")  The *Ramos* court found due process and equal protection

violations became deliberate indifference where the large scale failure to provide health care

was evidence by grossly inadequate staffing with no provision for qualified care on a 24-hour

a day, 7-day a week basis.  *Id.* at 158.  "The overall shortage of qualified staff endangers the

health of the inmate population and is of constitutional magnitude."  *Id.*

Prisoners are protected by the Due Process and Equal Protection Clauses from

"arbitrary and capricious treatment" by prison officials.  *Barnes v. Government of Virgin*

*Islands,* 415 F.Supp. 1218, 1225 (D.C. Virgin Island 1976).  The *Barnes* court ordered that,

to protect inmates' constitutional rights under due process and equal protection, "medical

care must be comparable in quantity and availability to that obtainable by the general public."

*Id.* at 1234-35.  In addition, the *Barnes* court ordered that a physician should maintain

regular hours known to the inmates and must be available on call at all times; emergency medical treatment should be available on a 24-hour basis; a thorough medical examination should be given as part of each prisoner's intake and classification; medical services should be performed only by persons with appropriate training under the supervision of a licensed physician; and complete and accurate medical records should be maintained, with a complete record of an inmate's physical condition being made at the time the inmate requires medical attention. *Id.* at 1235.

The conditions of confinement for detainees violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment where conditions are worse for detainees than for inmates incarcerated in the state penitentiary. *Ahrens v. Thomas,* 34 F.Supp. 873, 897-98 (W.D. Missouri 1977). The *Ahrens* court concluded that "the lack of any substantial medical facilities" at the jail violates due process, equal protection and the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 898.

Plaintiff need not be a member of a suspect class in order to pursue a claim for violation of equal protection when he is deprived of his fundamental right to receive health care.

**D.     The facts asserted in the Second Amended Complaint, supported by deposition testimony, support Plaintiff's due process conditions of confinement claim.**

With respect to medical care, pretrial detainees retain "at least" those constitutional rights enjoyed by convicted prisoners, and that applies as well to claims regarding jail conditions. *Alexis v. U.S. Dep't of Homeland Security,* Not Reported in F.Supp.2d, 2005 WL 1502068, 10 (D.N.J. 2005) (attached as Exhibit B). "A constitutional violation exists if the

court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective." *Id.*

*Alexis* involved an illegal immigrant being detained in a county jail in which he alleged triple bunked beds were jammed together with limited space to walk; new detainees had to sleep on the floor; detainees had to eat on their beds because there were only two tables; tables were next to the urinals and toilets; unsanitary conditions existed without adequate cleaning agents provided; and there was improper ventilation. *Id.* at 1 (attached as Exhibit B). All of these allegations are made in the instant case and supported by deposition testimony (see Plaintiff's Response to Park County Defendants' Motion for Summary Judgment, paras. 6-11, 15-18, 15-42, and 47-51). The *Alexis* court found that the plaintiff's allegations of severe overcrowding, sleeping and eating in close proximity to dirty toilets and urinals, and poor ventilation asserted unconstitutional conditions of confinement in violation of the Fourteenth Amendment because "these unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective." *Id.* at 10 (attached as Exhibit B).

The *Alexis* court refused to grant summary judgment to the county on the plaintiff's due process conditions of confinement claim. *Id.* at 12 (attached as Exhibit B). In addition, the *Alexis* court refused to grant Defendant's summary judgment motion on the failure of jail supervisors to train and supervise with respect to the egregious conditions in the jail where liability is based on a showing "that a need for more or different training or supervision is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to

train or supervise can fairly be said to represent official policy." *Id* (attached as Exhibit B). See *City of Canton v. Harris,* 489 U.S. 378, 388-89 (1989).

E.    **Overcrowding violates fundamental rights.**

In *Alexis,* the plaintiff's equal protection claim based on overcrowding and unsanitary conditions failed because he did not allege that he was singled out for discriminatory treatment different from other similarly situated prisoners, he is not a member of a suspect class, and he "was not denied a fundamental right." *Alexi v. U.S. Dep't of Homeland Security,* Not Reported in F.Supp.2d, 2005 WL 1502068, 11 (D.N.J. 2005) (attached as Exhibit B).

However, other courts have recognized overcrowding beyond rated capacity to be an equal protection violation. "Overcrowding of prisons or local detention facilities violates the due process and equal protection rights of the inmates therein." *Cooper v. Morin,* 398 N.Y.S.2d 36, 71 (N.Y.S. 1977). See also *Detainees of Brooklyn House of Detention for Men v. Malcolm,* 520 F.2d 392, 399 (2nd Cir.); *Costello v. Wainwright,* 397 F.Supp. 20 (M.D., Fla.), aff'd (5th Cir.), 525 F.2d 1239, vac., 539 F.2d 547, revd., ---U.S. ---, 97 S.Ct. 1191 (1977). The Court in *Cooper* found that the "rated" maximum cell capacity was 26 prisoners, but the population exceeded this capacity on 176 of 365 days, reading a high of 51 on one day, and there were occasions when inmates were forced to sleep on mattresses on the day room floors. *Id.* at 71-72. "Confinement of prisoners in excess of a facility's rated capacity is a violation of inmates' constitutional rights." *Id.* at 72. See also, *Ambrose v. Malcolm,* 414 F.Supp. 485 (S.D.N.Y.); *Pugh v. Locke,* 406 F.Supp. 318 (M.D.Ala.); *Miller v. Carson,* 401 F.Supp. 835 (M.D.Fla.); *Costello v. Wainwright,* supra. The *Cooper* court held

that "it shall be violative of the Due Process and Equal Protection clauses of the United States Constitution" to confine female prisoners overnight in excess of the design or "rated" capacity for such facility.  *Id.* at 73.

**III.    The Park County Defendants are not prejudiced by the denial of their motion.**

Defendants state that they have analyzed Plaintiff's equal protection and due process theories, "and determined additional discovery is not necessary." (Motion for Leave, Para. 2).  Plaintiff agrees that no additional discovery would be necessary and, in fact, Plaintiff has identified sufficient evidence in Plaintiff's Response to Defendants' Motion for Summary Judgment to support Plaintiff's equal protection and due process claims.  The evidence to support both claims is set forth in the deposition testimony, expert witness reports, and other documents specifically identified in Plaintiff's Response to Defendants' Motion for Summary Judgment.  The basis for the interpreter claim is clearly set forth in Dr. Greifinger's expert report as well as in other documents and depositions.  Defendants admit they specifically addressed the issue of a translator in their Motion for Summary Judgment for deliberate indifference, which Plaintiff responded to accordingly. Permitting the Defendants to now file another Motion for Summary Judgment would be a useless, time-consuming act.  Plaintiff is prejudiced when Defendants file numerous rounds of summary judgment motions that all vastly exceed the page limits and require large expenditures of time and money to defend.  Another lengthy round of summary judgment motions will only waste judicial resources and cause Plaintiff hardship.

Defendants did not cite any authority for their request to file additional summary judgment motions past the deadline, or for their assertion that Plaintiff bears the burden to inform Defendants when Defendants fail to move for summary judgment on all the Plaintiff's claims.  Defendants'

claim that Plaintiff should have raised his due process and equal protection arguments to counter motions on deliberate indifference is unsupported and unfounded. It is not "disingenuous" of Plaintiff's counsel to fail to inform Defendants of issues they might raise or of arguments they might make; it could be malpractice to do otherwise. Because Defendants express a sense of entitlement to file motions for summary judgment past established deadlines, unsupported by reference to any case law, Defendants may ask leave to file additional motions for summary judgment in the future when they discover they missed something else.

In summary, Defendants have not shown excusable neglect, good cause or convincing rationale for now filing an additional motion for summary judgment which, based on the evidence, in all probability would be denied. Defendants are not prejudiced by the denial of their Motion because the evidence identified by Plaintiff supports due process and equal protection claims. The Final Pretrial Order can only be amended permitting additional summary judgment motions "to prevent manifest injustice." Defendants have not demonstrated manifest injustice.

For all of the above reasons, Defendants' Motion should be denied.

DATED this 29th day of March, 2007.

Respectfully submitted,


By:  s/ William A. Trine, Esq.

William A. Trine, #577
Cheryl L. Trine, #38150
Trine & Metcalf, PC
1435 Arapahoe Avenue
Boulder Colorado 80302-6390
(303) 442-0173

Joseph J. Archuleta, #19426
Joseph J. Archuleta and Associates
1724 Ogden Street
Denver Colorado 80218
(303) 837-1642

Lloyd C. Kordick, #6298
Lloyd C. Kordick & Associates
805 S. Cascade Avenue
Colorado Springs Colorado 80903
(719) 475-8460

Adele Kimmel, Esq.
Trial Lawyers for Public Justice
1717 Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20030
(202) 797-8600

Attorneys for Plaintiff

## CERTIFICATE OF MAILING/SERVICE

The undersigned hereby certifies that on this 29th day March, 2007, a true and correct copy of the foregoing pleading was e-served via Electronic Case Filing and/or placed in the United States Mail, postage prepaid, and properly addressed to:

Joseph Archuleta
Attorney at Law
1724 Ogden Street
Denver, Colorado 80218-1018
*Co-Counsel for Plaintiff*

Lloyd C. Kordick,
Attorney at Law
805 S. Cascade
Colorado Springs, CO 80903
*Co-Counsel for Plaintiff*

Adele P. Kimmel
Richard H. Frankel
Trial Lawyers for Public Justice

1717 Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20030
*Co-Counsel for Plaintiff*

Andrew Ringel
Jennifer L. Veiga
Hall & Evans
1125 17th Street, Suite 600
Denver, CO 80202-2052
*Counsel for Defendant Park County, Park County Board of*
*County Commissioners, Park County Sheriff's Office,*
*Fred Wegener, and Monte Gore*

Josh A. Marks
Berg, Hill, Greenleaf & Ruscitti
1712 Pearl Street
Boulder, CO  80302
*Counsel for Defendant Vicki Paulsen*

s/ Elizabeth Peach