IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES,

    Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his official capacity as Captain of Park County Sheriff's Department; and
VICKIE PAULSEN, individually, and in her official capacity as Registered Nurse for Park County, Colorado;

    Defendants.

---

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT FROM DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

---

    Defendants the Park County Board of County Commissioners, Fred Wegener, and Monte Gore, by and through their counsel, Andrew D. Ringel, Esq. and Jennifer L. Veiga, Esq. of Hall & Evans, L.L.C., hereby submit this Reply in Support of Motion for Leave to Submit Supplemental Motion for Summary Judgment, as follows:

    1.    Pursuant to this Court's Minute Order of March 13, 2007, on March 22, 2007, Defendants Park County Board of County Commissioners, Fred Wegener and Monte Gore submitted a Motion for Leave to Submit Supplemental Motion for Summary Judgment ("Defendants' Motion"). On March 29, 2007, Plaintiff filed his Response to Motion for Leave to File Supplemental Motion for Summary Judgment ("Plaintiff's Response"). Now, these

Defendants respectfully submit their Reply in Support of Motion for Leave to Submit Supplemental Motion for Summary Judgment.  None of the arguments or authorities contained in the Plaintiff's Response establishes any legitimate basis for this Court to deny these Defendants' request for supplemental summary judgment briefing on the Plaintiff's due process and equal protection theories.  Plaintiff's Response ignores many of the arguments raised by the Defendants in support of their Motion and fails to adequately and appropriately analyze the arguments it does address.  Fundamentally, this Court must allow these Defendants the opportunity to demonstrate the fundamental legal and factual deficiencies in the Plaintiff's purported due process and equal protection theories on summary judgment.  Failing to allow these Defendants to do so would result in a manifest injustice to these Defendants, and particularly to Defendants Wegener and Gore who have asserted qualified immunity from the Plaintiff's 42 U.S.C. § 1983 claims against them in their individual capacities.  Accordingly, these Defendants respectfully request the opportunity to submit a supplemental motion for summary judgment to address Plaintiff's equal protection and due process claims within fifteen (15) days following an order from this Court granting leave for these Defendants to do so.

2. First, Plaintiff's Second Amended Complaint's reference to any equal protection and due process theory is limited to a single sentence.  [*See* Defendants' Motion, ¶ 4].  Plaintiff attempts to avoid this reality by making reference to the Plaintiff's earlier complaints filed in this matter.  [*See* Plaintiff's Response, at 1-2].  However, all of the references in *any* of the Plaintiff's three complaints filed in this case contain only the same single sentence reference to any due process or equal protection theory being advanced here.  [*See* Plaintiff's Complaint and Jury Demand, ¶ 49; Plaintiff's Amended Complaint and Jury Demand, ¶ 47; Plaintiff's Second

2

Amended Complaint and Jury Demand, ¶ 47]. Nowhere else in any of the Plaintiff's three complaints is there any other reference whatsoever to either "due process" or "equal protection." Any suggestion by the Plaintiff to the contrary is not supported by the actual complaints filed by the Plaintiff in this case.

        3.      Second, none of the allegations contained in the Plaintiff's Second Amended Complaint actually state any cognizable equal protection or due process claim. [*See* Defendants' Motion, ¶¶ 5-8]. Initially, Defendants pointed out in their Motion that Plaintiff had failed to allege the essential elements of an equal protection claim anywhere in the Plaintiff's Second Amended Complaint. [*See* Defendants' Motion, ¶ 5]. Plaintiff responds to this argument by asserting that his equal protection claims are based on an alleged deprivation of fundamental rights and therefore it is unnecessary for Plaintiff to allege he was treated differently because of his membership in a suspect class. [*See* Plaintiff's Response, at 5-8]. Plaintiff's analysis of the elements of an equal protection claim is both wrong and incomplete. To begin, Plaintiff mischaracterizes the Defendants' argument. Defendants clearly and distinctly pointed out Plaintiff could state an equal protection claim based on the exercise of a fundamental right. [*See* Defendants' Motion, ¶ 5 ("Initially, Plaintiff must establish the Defendants treated him differently because of his status as a member of a discrete and insular minority on the basis of his race, gender, religion, ***exercise of fundamental rights***, or other impermissible classification based on the Fourteenth Amendment Equal Protection Clause's mandate to treat similarly situated individuals alike."; emphasis added)]. However, contrary to the Plaintiff's assertions, to state any viable equal protection theory on the basis of one's exercise of fundamental rights still requires a plaintiff to demonstrate he was treated differently than other similarly situated

3

individuals and demonstrate discriminatory intent on the part of the Defendants. Fundamentally, Plaintiff ignores the fact that equal protection protects only against governmental distinctions between similarly situated persons. The Tenth Circuit has described the scope of an equal protection claim as follows:

> Because their substantive analyses converge, often the differences between equal protection and substantive due process are not fully appreciated. The Equal Protection and Due Process clauses protect distinctly different interests. On the one hand, the substantive component of the Due Process Clause provides heightened protection against government interference with certain fundamental rights and liberty interests, even when the challenged regulation affects all persons equally. In contrast, the essence of the equal protection requirement is that the state treat all those similarly situated similarly, with its central purpose being the prevent of official conduct discriminating on the basis of race or other suspect classifications. As such, equal protection only applies when the state treats two groups, or individuals, differently.

*Powers v. Harris,* 379 F.3d 1208, 1215 (10th Cir. 2004), *cert. denied,* 544 U.S. 920 (2005) (citations, internal quotation marks and internal alteration marks omitted); *see also* ***Henigh v. City of Shawnee,*** 155 F.3d 1249, 1257 (10th Cir. 1998) ("The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action;"); ***Campbell v. Buckley,*** 11 F.Supp.2d 1260, 1269 (D. Colo. 1998), *aff'd,* 203 F.3d 738 (10th Cir.), *cert. denied,* 531 U.S. 823 (2000) ("Plaintiffs' equal protection claim, however, fails for an even more fundamental reason. A threshold requirement for challenging a state's decision to treat different people differently is that those people are similarly situated. Otherwise, there is no basis for comparison and the state's action cannot be said to be discriminatory."; citation omitted). Under equal protection law, even if the Plaintiff alleges an equal protection violation based on an alleged violation of a fundamental right, the Plaintiff must still allege he was treated differently than others similarly situated to him and that the differences in his treatment were

4

based on discriminatory intent by the Defendants. *See, e.g.,* **Attorney General of New York v. Soto-Lopez,** 476 U.S. 898, 904-905 (1986) (applying similarly situated analysis in case involving the fundamental right to travel); **Eisenstadt v. Baird,** 405 U.S. 438, 453-55 (1972) (applying similarly situated analysis in case involving fundamental right to privacy in the area of procreation and sexuality); **Gehl Group v. Koby,** 63 F.3d 1528, 1538 (10th Cir. 1995) (applying similarly situated analysis in case involving fundamental right to engage in political solicitation activities). Here, nowhere in the Plaintiff's Second Amended Complaint are there any allegations Plaintiff was treated differently than others similarly situated to him or that the Defendants made any decision respecting the Plaintiff because of a discriminatory intent directed at the Plaintiff's exercise of any fundamental right. [*See* Plaintiff's Second Amended Complaint, at 1-21]. The absence of any such allegations in the Second Amended Complaint demonstrates the reasonableness of the Defendants not perceiving Plaintiff actually was attempting an equal protection theory here.

      4.      Similarly, the allegations contained in the Plaintiff's Second Amended Complaint also do not state any viable due process claim. [*See* Defendants' Motion, ¶ 6]. Plaintiff responds to this argument by alleging the Defendants' failure to provide a Spanish/English interpreter violates due process and the failure to provide adequate medical care to the Plaintiff violates his substantive due process rights. [*See* Plaintiff's Response, at 2-5]. Initially, Plaintiff's Response fails to demonstrate how the allegations contained in the Plaintiff's Second Amended Complaint actually demonstrate any attempt by the Plaintiff to invoke a fundamental liberty or property interest protected by substantive due process. Defendants' argument at this stage is not that the Plaintiff cannot now attempt a due process theory based on arguments and case law provided by

counsel for the Plaintiff. Instead, Defendants' argument is that nothing contained in the Plaintiff's Second Amended Complaint provided any specific allegations that would have provided Defendants with any understanding Plaintiff attempted a substantive due process claim here. Nothing contained in Plaintiff's Response address this issue which is fundamental to this Court's determination whether to allow Defendants to file a supplemental motion for summary judgment in this case.

5. Moreover, Plaintiff's reliance on *Clarkson v. Coughlin,* 898 F.Supp. 1019, 1033 (S.D.N.Y. 1995), is unavailing. Plaintiff's Second Amended Complaint does make the following allegation:

> 7. In the evening of March 1, 2003, Plaintiff was transported in custody by Park County sheriffs at the direction of the INS to the Park County Jail. At the Park County jail, there was no translator available with proper knowledge of Spanish to provide translation, but rather a prisoner trustee who spoke broken Spanish and who was apparently an American by birth. This translator, in broken Spanish, told Plaintiff and other detainees being admitted that they should immediately contact the Mexican Consulate because of deplorable and inhumane conditions that were present in the Park County jail.

[*See* Plaintiff's Second Amended Complaint, ¶ 7]. However, unlike in *Clarkson,* nowhere in the Plaintiff's Second Amended Complaint does Plaintiff actually allege the lack of a Spanish/English interpreter rendered him unable to effectively communicate with medical providers to receive appropriate medical care. Indeed, Plaintiff's descriptions of his encounters with Nurse Paulsen and Deputies concerning his medical needs are devoid of any allegation of inadequate Spanish/English translation despite the fact repeated references to the presence of an interpreter are alleged. [*See* Plaintiff's Second Amended Complaint, ¶¶ 28-36]. Further, none of the allegations against these Defendants under the First Claim for Relief alleging unconstitutional medical care in the Park County Jail mention any issue respecting inadequate

Spanish/English translation. [*See* Plaintiff's Second Amended Complaint, ¶ 41(a)-(f)]. Therefore, nothing about the actual allegations contained in the Plaintiff's Second Amended Complaint demonstrates he was attempting a claim of denial of access to medical care based on inadequate Spanish/English translation as was the case in ***Clarkson.***

6.      Further, Plaintiff's argument that his due process claim is really a claim that the failure to provide him with adequate medical care violated his substantive due process rights also does not state any viable claim. Initially, it is clear that any Fourteenth Amendment Due Process claim advanced by the Plaintiff as an immigration detainee challenging the conditions of his confinement in the Park County Jail is properly analyzed under the Eighth Amendment cruel and unusual punishment standard. *See, e.g.,* ***Block v. Rutherford,*** 468 U.S. 576, 583-85 (1984); ***Bell v. Wolfish,*** 441 U.S. 520, 536-37 & n. 16 (1979); ***Ledbetter v. City of Topeka, Kan.,*** 318 F.3d 1183, 1188 (10th Cir. 2003); ***Craig v. Eberly,*** 164 F.3d 490, 495 (10th Cir. 1998); ***Okocci v. Klien,*** 270 F.Supp.2d 603, 610 n. 3 (E.D. Pa. 2003). As such, the non-prisoner and non-detainee cases relied upon by the Plaintiff are inapposite. [*See* Plaintiff's Response, at 5].

7.      Third, Plaintiff's statement of claims contained in the Final Pretrial Order related to any equal protection and due process claim is also limited to the same single sentence found in the Second Amended Complaint. [*See* Defendants' Motion, ¶ 9]. Nowhere in the Plaintiff's Response does Plaintiff address this reality. [*See* Plaintiff's Response, at 1-12]. Moreover, despite the Plaintiff's arguments in the Plaintiff's Response concerning the alleged existence of an equal protection and a due process theory in the Second Amended Complaint, the Plaintiff's statement of claims contained in the Final Pretrial Order does not allege with any precision whatsoever how the Defendants violated Plaintiff's equal protection or due process rights.

7

Plaintiff's focus in the Plaintiff's Response on the notion that he states an equal protection claim based on his exercise of a fundamental right and that he states a substantive due process claim based on the denial of medical care or the overall conditions of confinement during his detention in the Park County Jail are nowhere alleged in the Final Pretrial Order. [*See* Final Pretrial Order, at 2-6]. Because the Second Amended Complaint has now merged into the Final Pretrial Order, Plaintiff's failure to allege any specificity concerning his alleged due process and equal protection theories at this late date provides further justification for allowing the Defendants to brief these claims on summary judgment. [*See* Final Pretrial Order, 3/13/07, at 52].

8. Fourth, Plaintiff offered nothing in the briefing on these Defendants' pending Motion for Summary Judgment suggesting in any fashion whatsoever the existence of any equal protection or due process theory existed in this case. [*See* Defendants' Motion, ¶¶ 10-12]. The only response Plaintiff now offers is that it would somehow be malpractice for counsel for the Plaintiff to have responded to these Defendants' Motion for Summary Judgment by revealing the existence of due process and equal protection theories here. [*See* Plaintiff's Response, at 11-12]. Plaintiff's assertion is nonsensical. Plaintiff fails to address the fundamental problem that because the Plaintiff did not assert any due process or equal protection theory in response to these Defendants' Motion for Summary Judgment, in the absence of the instant dispute, this Court would have had no idea that Plaintiff attempted these additional claims in the Second Amended Complaint and if this Court granted the pending Motion for Summary Judgment it would undoubtedly have dismissed the Plaintiff's claims in their entirety. [*See* Defendants' Motion, ¶ 11]. For Plaintiff to suggest that somehow to avoid malpractice counsel for the Plaintiff needs to have hidden the ball in this fashion is patently absurd. Counsel for the Plaintiff

has a duty to this Court not to hide the existence of purported equal protection and due process claims until after this Court resolves a summary judgment motion that was clearly and unambiguously intended to address all of the Plaintiff's remaining claims. [*See generally* MSJ, at 1-2 & 54; Plaintiff's Response, at 1-51].

9. Fifth, the assertion of qualified immunity by Defendants Fred Wegener and Monte Gore from the Plaintiff's 42 U.S.C. § 1983 claims against them in their individual capacities further supports allowing supplemental summary judgment briefing here. [*See* Defendants' Motion, ¶¶ 13-14]. Again, Plaintiff never addresses this argument in the Plaintiff's Response. [*See* Plaintiff's Response, at 1-12]. Instead, Plaintiff complains of the Defendants' alleged sense of entitlement to file a supplemental motion for summary judgment. [*See* Plaintiff's Response, at 12]. However, the assertion of qualified immunity by Defendants Wegener and Gore provides exactly an entitlement to have it resolved prior to standing trial. *See, e.g.,* **Mitchell v. Forsyth,** 473 U.S. 511, 526-27 (1985); **Harlow v. Fitzgerald,** 457 U.S. 800, 817-18 (1982); **Workman v. Jordan,** 958 F.2d 322, 336 (10th Cir. 1992). As a result of their qualified immunity, Defendants Wegener and Gore do in fact have an entitlement to a pretrial resolution of their qualified immunity. No basis exists to suggest a supplemental motion for summary judgment does not represent the most expedient method of the parties and this Court to address the qualified immunity issue under the present circumstances of this case.

10. Sixth, this matter is scheduled for a four-week jury trial to commence on April 14, 2008, meaning that no prejudice can result from allowing these Defendants to submit a supplemental motion for summary judgment to address the Plaintiff's equal protection and due process arguments. [*See* Defendants' Motion, ¶ 15]. Plaintiff argues in conclusory fashion that

9

Plaintiff would be prejudiced by allowing Defendants to file a supplemental motion for summary judgment. However, Plaintiff never explains exactly how the Plaintiff would be prejudiced given that the scheduled trial in this matter remains one year away. [*See* Plaintiff's Response, at 11]. Indeed, Plaintiff also ignores the very real prospect that any of the three individual Defendants may seek interlocutory appellate review of any adverse decision by this Court on the qualified immunity issue. *See, e.g.,* **Johnson v. Jones,** 515 U.S. 304, 309-11 (1995); **Behrens v. Pellitier,** 516 U.S. 299, 300-5 (1996). Thus, the scheduled trial in this matter may not take place in the face of a potential interlocutory appeal on qualified immunity grounds. Plaintiff's failure to recognize this reality combined with the practical impact of any denial by this Court of the individual Defendants' request here to file a supplemental motion for summary judgment being tantamount to a denial of qualified immunity on the Plaintiff's due process and equal protection claims. Under these circumstances, any prejudice by not allowing a supplemental motion for summary judgment is to the Defendants, not the Plaintiff.

11.     Seventh, and finally, Plaintiff asserts the Final Pretrial Order can only be amended to permit additional summary judgment motions to prevent manifest injustice. [*See* Plaintiff's Response, at 12]. Plaintiff's assertion the Final Pretrial Order need be amended to allow these Defendants to file a supplemental motion for summary judgment is mistaken. Nothing contained in the Final Pretrial Order established any deadline for motions for summary judgment. Instead, the Scheduling Order and subsequent extensions granted by this Court established the dispositive motions deadline in this case. [*See* Scheduling Order, 9/16/05, at 13; Minute Order, 11/18/06]. As such, these Defendants must only demonstrate "good cause" within the meaning of Fed. R. Civ. P. 16(b). Furthermore, the fact that this issue was raised at the Final Pretrial Conference

10

and this Court directed these Defendants to raise the issue of a supplemental motion for summary judgment in a separate motion demonstrates that the manifest justice standard for amending the Final Pretrial Order is inapplicable here.

WHEREFORE, for all of the foregoing reasons, as well as based on all of the arguments and authorities contained in their original Motion for Leave to File Supplemental Motion for Summary Judgment, Defendants Park County Board of County Commissioners, Fred Wegener, and Monte Gore, respectfully request this Court grant them leave to submit a supplemental motion for summary judgment to address the Plaintiff's equal protection and due process claims within fifteen (15) days after this Court grants such leave, and for all other and further relief as this Court deems just and appropriate.

Dated this 12th day of April, 2007.

Respectfully submitted,

s/ Andrew D. Ringel
_____
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, Colorado 80202-2052
(303) 628-3300
ringela@hallevans.com

**ATTORNEYS FOR BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, FRED WEGENER, AND MONTE GORE**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 12th day of April, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph J. Archuleta, Esq.
archuletalaw@qwest.net

William A. Trine, Esq.
btrine@trine-metcalf.com

Josh A. Marks, Esq.
jam@bhgrlaw.com

Melanie B. Lewis, Esq.
mbl@bhgrlaw.com

Lloyd C. Kordick, Esq.
lloyd@kordicklaw.com

Adele P. Kimmel, Esq.
akimmel@publicjustice.net

s/Loree Trout,   Secretary
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3300
Fax: 303-293-3238
ringela@hallevans.com

**ATTORNEYS FOR DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

H:\Users\RINGELA\park\Carranza-Reyes\Reply to mot leave to supplement MSJ.doc