IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-377-WDM-BNB

MOISES CARRANZA-REYES,

    Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his capacity as sheriff of Park County, Colorado;
MONTE GORE, individually and in his capacity as captain of Park County Sheriff's Department; and
VICKI PAULSEN, individually and in her official capacity as registered nurse for Park County, Colorado,

    Defendants.

---

## DECLARATION OF ELIZABETH KRAFT, M.D., M.H.S.

---

I, Elizabeth Kraft, M.D., M.H.S., in accordance with the requirements of 28 U.S.C. § 1746, under penalty of perjury, hereby declare:

1. I am a physician specializing in the fields of family medicine and administrative medicine.

2. I prepared a report providing my expert opinion regarding James Bachman, M.D.'s role in supervising of Nurse Vicki Paulsen at the Park County Jail, including an evaluation of the course of treatment of Plaintiff Moises Carranza-Reyes. My report contains an assessment of Mr. Carranza-Reyes's condition while at the Park County Jail and is a correct representation of my expert opinion concerning Mr. Carranza-Reyes.

Ex A-27

3.  A copy of my evaluation and my curriculum vitae are attached to this Declaration.

Dated this 22 day of February, 2007.

_Elizabeth Kraft_
Elizabeth Kraft, M.D., M.H.S.

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street  
Denver, Colorado 80210

Office: 303.758.2452  
Cell: 303.895.7242

Email: ekraft@medicalcareconsultants.com

Mr. Sargent,

At your request, I have prepared the following assessments as related to the Reyes Bachman case. Based upon my experience in the areas of utilization and quality management, and utilization and quality policies and procedures, the issues are outlined below. During the time I worked at Colorado Access, I had oversight responsibilities for administrative and medical policies and procedures of their managed correctional care program. Recently, I have performed audits of city and state correctional facilities as related to quality of care and utilization.

Contract Issues

The "Agreement for Professional Services" between Park County and Dr Bachman outlines the scope of duties; the payment structure more typically reflects a capitated clinical contractual arrangement- a specific set fee on a monthly basis to cover seeing patients, regardless of how many or how often:

- "Exhibit A" Section 1 (1.1) speaks to Dr Bachman's responsibilities to keep his medical license current. (1.3) speaks to medical decisions. "Exhibit A" Section I (1.4) speaks to advising the nurse or supervisor regarding availability but not any specific administrative oversight responsibilities nor any description of responsibilities of oversight/performance review of the health services administrator (HSA);
- An administrative contract typically states financial arrangements as specifically describing what percentage of time is dedicated to administrative duties, specifically state what percentage of hours are set aside for administrative duties, define a specific number of hours, or state a different administrative reimbursement per hour that would separate administrative duties from clinical duties.
- The Park County Policies and Procedures (Park 0555) states the "RESPONSIBLE PHYSICIAN: a physician who supervises the medical judgments regarding the care provided to patients at the facility. The role is also known as the medical director." "When the responsible health authority is other than a physician, all final medical judgments will rest with a single designated, licensed responsible physician." "The HSA in cooperation with the responsible physician is responsible for the development and implementation of all programs and practices related to jail medical services."
    - The policy limits the physician role to an advisory one related to administrative duties but direct for medical oversight.
    - The HSA (per PARK 0555) is routinely on site at least 40 hours per week. This would exclude Dr Bachman from being defined as the HSA.



MEDICAL CARE CONSULTANTS

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street
Denver, Colorado 80210

Office: 303.758.2452
Cell: 303.895.7242

Email: ekraft@medicalcareconsultants.com

---

The oversight and management of the HSA does not appear to be included in the job description of the Medical Director.
- The Agreement for Professional Services Exhibit A Section 1 (1.4) speaks to advising the nurse or supervisor regarding availability ("whenever CONTRACTOR is not available for on-call consultation") but not any specific administrative oversight responsibilities nor any description of responsibilities of oversight/performance review of the HSA.

There are no state or national standards for medical protocols that would have required Dr. Bachman to have any written medical protocols in place at the Park County Jail. The education and experience of the nurse in providing direct healthcare to patients and the level of interaction that Dr. Bachman, as physician and Medical Director, had with Nurse Paulsen during the time that they worked together at the Park County Jail could, and in this case, did obviate the need for specific medical protocols. It is evident from the depositions of both Dr. Bachman and Nurse Paulsen, that they had open lines of communication, where Nurse Paulsen knew and understood under what circumstances she should contact Dr. Bachman for either medical questions related to inmate care or to refer inmates to Dr. Bachman's office for evaluation. Dr. Bachman was personally present at the Jail every other week and would review medical charts of patients seen by Nurse Paulsen. This frequency is above and beyond any standards required for chart review. It is also evident from these depositions that Dr. Bachman spent a significant amount of time when he was at the jail conversing with Nurse Paulsen, reviewing medical charts, directly supervising her and providing training to her with regard to various medical conditions. It is clear from Nurse Paulsen's deposition that she was a very experienced nurse with a number of years of clinical care experience and was well qualified to provide initial patient care and available treatments to inmates. Further, Nurse Paulsen was more than qualified to know what the scope of her responsibilities were in terms of her abilities, limitations and restrictions as a nurse. It is clear from the depositions of both Nurse Paulsen and Dr. Bachman that Nurse Paulsen recognized these restrictions and limitations and that she had, on a number of occasions in the past, made telephone calls to Dr. Bachman to involve Dr. Bachman in medical decision making for inmates. From this history and practice and routine, it is clear that Dr. Bachman's level of supervision and training as Medical Director was appropriate and reasonable, and consistent with physicians and medical directors in his position when supervising a registered nurse at correctional facilities like the Park County Jail.

It is also evident from this information that Dr. Bachman did not need to have written medical protocols or written nursing protocols in place with regard to specific medical conditions that may arise at the Park County Jail. Here again, Nurse Paulsen was more than experienced enough to know and understand initial triage, care and evaluation of patients presenting with various medical conditions. Written medical protocols or nursing protocols are not required by any state or national standard and in fact the Park

2


MEDICAL CARE
CONSULTANTS

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street
Denver, Colorado 80210

Office: 303.758.2452
Cell:   303.895.7242

Email: ekraft@medicalcareconsultants.com

County Jail Policies and procedures do not require any written medical protocols or nursing protocols be established. Instead, the Policies and Procedures refer to either written or verbal orders based on the level of supervision and nurse experience. In this case Nurse Paulsen testified that she did not need any additional policies, procedures or protocol to advise her how to evaluate Mr. Carranza-Reyes. She was a very experienced nurse who was exercising her nursing judgment in evaluating and determining the most appropriate level of care and available treatment options for Mr. Carranza-Reyes.

Dr. Bachman did not know that Mr. Carranza-Reyes was an inmate at the Park County Jail. He did not know that Mr. Carranza-Reyes had requested medical care. Dr. Bachman did not know that Mr. Carranza-Reyes had been seen by Nurse Paulsen and did not know what medical evaluation or care Nurse Paulsen had provided. As a result, it is clear that Dr. Bachman did not exhibit a deliberate indifference to a serious medical need. Clearly, if Dr. Bachman was not aware that Mr. Carranza-Reyes was even in the Park County Jail and was not aware that he had requested medical care and was not aware of any medical need by Mr. Carranza-Reyes, it is clear that Dr. Bachman was not aware of any serious medical need and therefore, could not be deliberately indifferent to any serious medical need of Mr. Carranza-Reyes.

More generally, Dr. Bachman testified that he is not aware of any over-crowding in Pod D. Dr. Bachman testified that he was not aware of any unsanitary conditions at the Park County Jail, including specifically Pod D, where Mr. Carranza-Reyes was being held. Because Dr. Bachman had no information that would allow him to conclude that there was overcrowding, or that there was unsanitary conditions within the jail, he can not be said to have been deliberately indifferent to a serious medical need.

In addition, the inspection reports conducted by the INS and the Colorado Department of Corrections, all suggest that the medical care and medical services provided by Dr. Bachman as Medical Director at the Park County Jail, all received acceptable and satisfactory evaluations indicating that Dr. Bachman was appropriately doing his job as the Medical Director. It is clear from the inspection reports that from a systems standpoint, the medical services aspect of the jail appeared to running very smoothly and complied with INS and Department of Corrections standards and requirements. These inspection reports are very telling of the job Dr. Bachman was doing as Medical Director because they involve a more system-wide review, which would directly evaluate Dr. Bachman's job as Medical Director. Clearly there was no system-wide deficiency or breakdown in the system. From a system wide stand point, there is no evidence that would allow anyone to conclude that Dr. Bachman was showing a deliberate indifference to a serious medical need.

The policies and procedures do call for the Health Services Administrator, Nurse Paulsen in the case, to conduct various periodic meetings of the Quality Control Committee and the Infectious Disease Committee. Dr. Bachman was never asked to

3


MEDICAL CARE
CONSULTANTS

ELIZABETH KRAFT, M.D., M.H.S.

2247 South Madison Street
Denver, Colorado 80210

Office: 303.758.2452
Cell:    303.895.7242

Email: ekraft@medicalcareconsultants.com

---

participate in these committees and certainly never refused to participate in any such committees. In any event, the fact that Dr. Bachman did not participate in any of these committee meetings or in various internal reporting policies and procedures, did not cause or contribute to the injuries or damages claimed by Mr. Carranza-Reyes in ther case. Participation in an infectious disease committee or a quality control committee, would not have prevented Mr. Carranza-Reyes from contracting streptococcus pneumonia.

Unfortunately in this case, Mr. Carranza-Reyes contracted streptococcus pneumonia. Unfortunately inmates and prisoners in correctional facilities can and do become sick, some seriously sick, requiring emergency medical attention, and even some inmates and prisoners go on to die even though the health care providers in the correctional facilities themselves, do everything appropriately. The fact that Mr. Carranza-Reyes got sick, required transportation to Summit Medical Center, eventually to Denver Health Medical Center, and ultimately had to have his leg amputated, does not indicate that Dr. Bachman as Medical Director was negligent in his role or duties as Medical Director. Mr. Carranza-Reyes simply got sick with a disease that can begin in a relatively benign fashion that can and does present as a common cold or with flu-like symptoms, until it progresses to a more emergent level. Diseases such as streptococcus pneumonia are often difficult to diagnose and appreciate until such time as the disease has progressed sufficiently in order to declare itself as an urgent or emergent condition. Unfortunately, often times by that time, the patient is critically ill simply as a result of the natural progression of the disease. The fact that Mr. Carranza-Reyes did not die from his illness, speaks to the efficiency and experience of Nurse Paulsen. From the timeline of events on March 7 and March 8, 2003, it is evident that the deputies and the nurse were aware of and appreciated the fact that Mr. Carranza-Reyes needed medical attention. The timeline shows multiple contacts with Mr. Reyes throughout this time frame and supports the conclusion that the policies and procedures in place resulted in Mr. Carranza-Reyes receiving access to medical care. These multiple contacts with Mr. Carranza-Reyes also show that the health care providers were not deliberately indifferent to a serious medical need, and that the medical service system in place at Park County Jail, reasonably and appropriately did its' job to obtain the needed health care for Mr. Carranza-Reyes in a reasonable, appropriate and timely manner.

Mr. Sargent, thank you for the opportunity to comment on the circumstances in this case. Should you have additional questions, please do not hesitate to contact me.

Cordially,

Elizabeth Kraft, MD

4


MEDICAL CARE
CONSULTANTS

# ELIZABETH KRAFT, M.D., M.H.S.

| | |
|---|---|
| 2247 South Madison Street | Office: 303.758.2452 |
| Denver, Colorado 80210 | Cell:    303.895.7242 |
| Email: ekraft@medicalcareconsultants.com | Home: 303.758.0725 |

## SENIOR HEALTH CARE EXECUTIVE

Senior Medical Executive and NCQA surveyor with proven success in medical management, quality improvement program design and implementation, and client support. High energy presentation expertise, strong interpersonal communication skills, and a holistic approach to integrating clinical programs across a matrix business environment resulting in industry leading outcomes. Professional scope includes:

- Quality improvement
- Clinical guidelines
- Disease management
- Client support
- Utilization/Case management
- Provider relations
- NCQA ROC (Review Oversight Committee) member

## PROFESSIONAL EXPERIENCE

CCGC (Colorado Clinical Guidelines Collaborative)                              2006 – present
***Medical Director for provider tobacco education and cessation***
Created unique tobacco cessation education programs for physicians, published a resource manual of tobacco support programs and staff in Colorado, and created content of a provider specific website.

ANTHEM WELLPOINT, Denver Colorado                                              2006 – present
***Associate Medical Director, Utilization Management***
Developed key strategies to inpatient utilization to decrease days per thousand metric, crafted critical reports to reflect case management work effort, lead team of nurses to address contract and utilization management using Milliman guidelines.

MEDICAL CARE CONSULTANTS                                                      1995 - present
- Principle Investigator for Colorado Preferred Physicians Organization, development of specialty physician ambulatory clinical quality measures, ongoing.
- Partner in consulting organization assisting small businesses in Colorado in selection of health care coverage, ongoing.
- Principle Investigator on grant for utilization/contracting audit for the City of Denver Sheriff Department, December 2005.
- Lead consultant to develop comprehensive medical/occupational health wellness program with Exempla Lutheran Medical Center, October 2005.

NCQA (National Committee on Quality Assurance)                                 1995 - present
NCQA ROC (Review Oversight Committee) - 2002 to present
NCQA Surveyor - 1995 to present
NCQA physician surveyor and team lead for over nine years with experience in QP, MCO, PPO, new health plan, and POC surveys. One of two ROC members to review physician electronic medical record readiness (Physician Practice Connections) as part of the *Bridges to Excellence* program. Instrumental in the development of the new NCQA PPO accreditation and certification programs. Served as educational faculty for NCQA national conferences to introduce the PPO standards. Served as faculty and trainer for the 2005 Surveyor Update Training.

CIGNA HEALTHCARE, Denver, Colorado                                             2001 - 2005
***Regional Senior Market Medical Executive*** (2003-2005)

Direct responsibility for medical management utilization and financial results, quality program accreditation, and provider satisfaction for four regional markets.
- Achieved excellent NCQA accreditation in 2003 and 2004 through leadership and direct participation in the local and regional quality management programs.
- Exceeded competitive cost and utilization targets within a matrix department environment.
- Supported contracting and provider relations as the clinical liaison through outreach presentations gaining enhanced relationships with physicians and hospitals.
- Maintained client relations through interpretation of predictive model and disease management reports resulting in a high closure success rate in finalist presentations.

***Associate Medical Director*** (2001-2003)
Supported the strategic management of health plan operations as liaison with external providers and constituencies. Provided front line utilization review of ambulatory, inpatient and pharmacy operations. Directed the quality management program.
- Developed and implemented an email communications program targeting diabetics and new enrollees with a greater than 50% decrease in requests for prior authorized medications.
- Designed beta blocker program with matrix partners resulting in the first health plan in the country to achieve HEDIS EOC 100% beta blocker.

SLOANS LAKE MANAGED CARE, Denver, Colorado                                    1998 - 2001
***Interim Chief Medical Officer*** (2000-2001)
Involved in closing health plan operations after company buy-out to include transition of staff and programs.

***Associate Medical Director*** (1998-2000)
Managed implementation of innovative services such as the full spectrum of alternative care and spirituality in a boutique HMO.
- Completed a successful URAC accreditation for Health Plan, UM and Credentialing.
- Formulated credentialing standards for alternative practitioners.
- Created and implemented high risk prenatal program with an emerging trend of increased birth weights of premature infants.
- Led project teams for pediatric immunization mail and flu shot campaigns.
- Developed and integrated clinical criteria into disease and case management programs.

COLORADO ACCESS, Denver, Colorado                                             1995 - 1998
***Associate Medical Director***
Involved in start-up operations for a Medicaid HMO and for the Colorado Department of Corrections. Coordinated the development of the Quality Improvement, medical and pharmacy management programs, and compliance with State regulations.

COLORADO PERSONALIZED EDUCATION FOR PHYSICIANS, Denver, Colorado              1995 - 1999
***Medical Director***
Managed the evaluation process of physicians referred for assessment of clinical competency with timely production of final reports and a critical judgment.

PRUCARE OF COLORADO, Denver, Colorado                                         1991 - 1995
***Medical Director***
Managed the Quality Improvement and Utilization Management programs.

ACCORD MEDICAL GROUP, Denver, Colorado                                        1987 - 1993
***Family Physician***

# ADDENDUM

## EDUCATION
M.D.: University of Texas Medical School at Houston, Houston, Texas, 1983
M.H.S.: (Masters of Health Care Systems): University of Denver, Denver, Colorado 1993
Family Practice Residency, Brackenridge Hospital. Austin, Texas
Flexible/Transitional Internship, Brackenridge Hospital, Austin, Texas
B.A.: Rice University, Houston, Texas

## PROFESSIONAL ASSOCIATIONS AND POSITIONS
Colorado Clinical Guidelines Collaborative, Vice President, 2004 - present
Colorado Clinical Guidelines Collaborative, Executive Board member, 2003 – present
Colorado Academy of Family Physicians Foundation, President, 2004 - present
Colorado Academy of Family Physicians Foundation, Board member, 1997 – present
Colorado Medical Society, Health Affairs Committee, 2005- present
Colorado Tar Wars Advisory Board member, 2001 – 2003
Colorado Foundation for Medical Care, Technical Advisory Committee, 1990 – 1996
Colorado Academy of Family Physicians, Board Member, 1990 - 1992

## PROFESSIONAL AFFILIATIONS
The American Academy of Family Physicians
Texas Medical Society
Arapahoe-Douglas-Elbert Medical Society
Colorado Medical Society
Colorado Academy of Family Physicians
American College of Physician Executives

## CERTIFICATION AND LICENSURE
American Academy of Family Practice, Board Certified, July 1986, Re-certified July, 1993, 2000
Colorado State License, current
Texas State License, current
Missouri State License, current
Illinois State License, current

## PROFESSIONAL ACTIVITIES
Collaborator on grant of a quality audit of the Colorado Department of Corrections, May 2005
Selection committee participant for HCPF of QIRO vendor for the Colorado Medicaid program, April 2005
Member, Colorado Medical Society task force on Alternative Medicine, 2004
Colorado Patient Safety Coalition, annual conference planning committee, 2003
Channel 9 morning show presentation, "Anniversary of 9/11, Workplace Stress", September 2002
Moderator for Asthma CME program, "Practical Approaches to Asthma Using Case Studies", April 19, 2001
Faculty for NCQA PPO accreditation and certification programs, 2000, 2001
Presenter, "Saving Time and Expense in NCQA Accreditation", July 1997
Organizer and presenter, "Leaving the Bedside, Yes or No?", seminar for doctors and health professionals, underwritten by COPIC and CMS, June 1997
Presenter, "Bringing Baby Home", University Healthtalk radio program, December 1996
Presenter, "Managed Medicaid", The Colorado Managed Care Representative Association, Fall, 1996
Presenter, "Capitated Eye Care With An Integrated Network Delivery System", <u>Managed Vision and Eye Care</u> conference, July, 1996
Presenter, University of Colorado Denver at Denver Graduate Program in Health Administration, Managed Care, Controlling Utilization", April 1995, 1996
Presenter, Department of Family Medicine of the University of Colorado School of Medicine, Conference on Patient Centered Family Practice, "The A to Z of UR", March 1995