IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES

      Plaintiff,

v.

PARK COUNTY, a Public Entity of the State of Colorado and Its Governing Board; and

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; and

PARK COUNTY SHERIFF'S OFFICE, a Public Entity of the State of Colorado; and

FRED WEGENER, Individually and in His Capacity as Sheriff of Park County, Colorado; and

MONTE GORE, Individually and in His Capacity as Captain of Park County Sheriff's Department; and

VICKI PAULSEN, Individually and in Her Official Capacity as Registered Nurse for Park County, Colorado,

      Defendants.

---

**DEFENDANT PAULSEN'S MOTION TO EXCLUDE TESTIMONY OF
CATHERINE KNOX AND ANTHONY VOLZ UNDER FED. R. EVID. 702**

---

      Defendant Vicki Paulsen, by and through her undersigned counsel, and pursuant to this

Court's Minute Order dated April 12, 2007 (Doc. 187),[1] hereby submits this Motion to Exclude

---

[1]      In a Minute Order, the Court set a hearing on any Rule 702 motions for July 18, 2007, and established a deadline of June 18, 2007 by which the parties may file any further motions.

Testimony of Catherine Knox and Anthony Volz Under Fed. R. Evid. 702, and as grounds therefore states as follows:

<h2 style="text-align:center">I.      INTRODUCTION</h2>

Certain aspects of expert testimony from two of Plaintiff's nursing experts, Catherine Knox, R.N., and Anthony Volz, MSN, RNC, ANP, must be excluded under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  Plaintiff offers the opinions of Knox and Volz to establish his two claims against Vickie Paulsen, R.N., for violation of his Eighth Amendment rights[2] and for nursing negligence.  As detailed below, Knox is not qualified to testify regarding the standard of care for nurses in Colorado because she is not licensed in Colorado and has no nursing experience or training in Colorado.  Thus, for this reason alone, her opinions should be excluded.

In addition, the majority of the opinions offered by Knox and Volz fail either the relevance or the reliability prongs of *Daubert*.  To the extent the experts opine on whether Paulsen violated the Eighth Amendment, such opinions are inadmissible as irrelevant and unreliable.  Further, several of the opinions of both experts regarding Paulsen's purported breaches of the standard of nursing care are either unreliable or irrelevant, and must be excluded.

---

[2]      Although pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases in determining whether a detainee's rights were violated.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)).  Thus, this Motion references the standards under the Eighth Amendment, even though Plaintiff was not convicted of a crime.

## II.    ARGUMENT

**A.    *DAUBERT* REQUIRES THE COURT TO EVALUATE THE RELIABILITY AND RELEVANCE OF KNOX'S AND VOLZ'S OPINIONS.**

According to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), Rule 702 imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Expert testimony is only admissible if it will assist the trier of fact and if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  *Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.*, 311 F.Supp.2d 1048, 1120 (D. Colo. 2004); *see also* F.R.E. 702.

To fulfill its gatekeeping role, "[f]irst, a district court must determine if the expert's proferred testimony – whether it concerns scientific, technical or other specialized knowledge – has a 'reliable basis in the knowledge and experience of his [or her] discipline." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232-1233 (10th Cir. 2004).  Making this determination "requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts" *Goebel v. Denver and Rio Grande Western RR Co.*, 346 F.3d 987, 991 (10th Cir. 2003).

To assist in the assessment of reliability, *Daubert* suggested four factors that the trial judge may consider:  (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing;  (2) whether the opinion has been subjected to peer review;  (3) whether there is a known or potential rate of error associated with the methodology used and

whether there are standards controlling the technique's operation;  and (4) whether the theory has been accepted in the scientific community.  *Id.* at 593-94.  "While these factors are most relevant in the context of a new and novel scientific theory … they do provide examples of the general kinds of issues a trial court need probe in light of its purpose of ensuring that an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Bitler*, 400 F.3d at 1233 (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).  Accordingly, this list of factors is neither definitive nor exhaustive, and the Court has wide discretion to decide how to assess an expert's reliability and how to determine that reliability.  *Id.*   The Court may find that "an impermissible analytical gap exists between premises and conclusion" when the conclusion does not follow from the data on which the expert relied.  *Id.*

To fulfill the second prong of its *Daubert* gatekeeping obligation, the Court must further determine whether the proposed testimony is a relevant "fit", that is, whether it is sufficiently relevant to the issue at hand.  *Daubert*, 509 U.S. at 591-592; *Bitler*, 400 F.3d at 1234.  To be relevant, evidence must have a tendency to make the existence of a fact more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  To determine whether evidence meets the relevance prong of the *Daubert* analysis, "[a] trial court must look at the logical relationship between the evidence proferred and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact."  *Bitler*, 400 F.3d at 1234.  "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *Daubert*, 509 U.S. at 591-92.

Under *Daubert*, "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir.1999) (upholding district court's exclusion of testimony by plaintiff's four medical experts and one industrial hygiene expert on the basis (among others) that the information relied upon by the experts was "so sadly lacking as to be mere guesswork"). "[T]he purpose of the *Daubert* inquiry is always the same: to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1206 (10th Cir. 2002) (citation and internal quotation marks omitted).

"The analysis outlined in *Daubert* is extensive, requiring the district court to carefully and meticulously review the proffered scientific evidence" supporting an expert's opinion. *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1335 (10th Cir. 2004) (finding that district court dd not err in excluding plaintiff's expert testimony where expert did not rely on proper scientific evidence and used improper methodology). "The principle of *Daubert* is merely that if an expert witness is to offer an opinion based on science, it must be real science, not junk science." *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (Studies upon which the experts relied were not sufficient to support their conclusions that plaintiff's exposure to PCB's contributed to his

cancer).  "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Id.*

### B.    KNOX'S AND VOLZ'S OPINIONS THAT PAULSEN ACTED WITH DELIBERATE INDIFFERENCE ARE INADMISSIBLE UNDER FED. R. EVID. 702.

Both Knox and Volz opine that Paulsen violated Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs.  Knox states that, in her opinion, Paulsen acted with deliberate indifference to Plaintiff's medical needs.  (*See* Report of Catherine Knox, attached hereto as Exhibit A, at p. 4-5).  Volz provides an opinion that Paulsen violated Plaintiff's constitutional rights.  (*See* Report of Anthony Volz, attached hereto as Exhibit B, at pp. 9, 10, 11).  These opinions must be excluded under Fed. R. Evid. 702 because (1) they do not assist the trier of fact, and (2) they are based on flawed methodology.

### 1.    Opinions Regarding Deliberate Indifference Do Not Assist the Trier of Fact

Expert testimony on the issue of deliberate indifference is inadmissible.[3]  In *Sellers v. Butler*, No. 02-3055-DJW, 2006 WL 2714274 (D. Kan. Sept. 22, 2006), the plaintiff moved to exclude the testimony of an expert ophthalmologist who testified regarding his "belief" that no one who treated the plaintiff was deliberately indifferent to his medical needs and care.  The magistrate granted the motion, holding that such testimony was inadmissible under Fed. R. Evid. 702, focusing on both the language of the rule as well as the advisory committee notes to Rule 704.  Essentially, the court determined that such testimony would not be helpful to the trier of

---

[3]      Defendant also raised this issue in response to Plaintiff's heavy reliance on expert testimony regarding deliberate indifference in the briefing on her summary judgment motion, the relevant portion of which is adopted and incorporated as is fully set forth herein.  (*See* Defendant Paulsen's Reply in Support of Mot. for S.J., at pp. 11-14).

fact and, instead, was effectively a legal conclusion "that encompasses the entirety of plaintiff's burden of proof on an essential element of his claim."

A number of cases involve the analogous issue of whether the appointment of an expert by the court under Rule 706 is necessary to establish deliberate indifference in the context of an Eighth Amendment claim for inadequate medical care.  A leading case on this issue is *Ledford v. Sullivan*, 105 F.3d 354 (7th Cir. 1997), in which the plaintiff appealed the district court's failure to appoint such an expert.  The court of appeals affirmed, noting that, because the deliberate indifference test is a subjective one, determining deliberate indifference "was not so complicated that an expert was required to establish [the plaintiff's] case."  *Id.* at 359.  The court stated:

> Because the test for deliberate indifference is more closely akin to criminal law rather than to tort law, the question of whether the prison officials displayed deliberate indifference toward [plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment.  The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.

*Id.*  Several district courts have cited *Ledford* for the above proposition in similarly declining to appoint an expert in the context of an Eighth Amendment inadequate medical care claim.  *E.g.*, *Levi v. Director of Corrections*, No. CIVS020910LKKKJMP, 2006 WL 845733 (E.D. Cal. 2006); *Pabon v. Goord*, No. 99CIV5869WHPTHK, 2001 WL 856601 (S.D.N.Y. 2001).

The inadmissibility of expert testimony on deliberate indifference is highlighted by Volz's explanation of how he reached his conclusion that Paulsen violated the Eighth Amendment.  Volz explained that to make that opinion, he merely read the language of the Eighth and Fourteenth Amendments, which were the first time he had read them, and tried to discern whether the facts showed there was a violation of those amendments.  (Exhibit C, Volz

Depo., at 97:16-99:13).  He admitted that this is the exact same exercise a jury would have to undergo to determine whether a violation of the law occurred, and that he had no specialized expertise or training in making such a determination and that he was in no better of a position than a jury to decide whether a constitutional violation occurred.  (*Id.*).  Because it would not assist the trier of fact to hear expert testimony regarding whether a constitutional violation occurred, both Volz's and Knox's opinions on violations of the Fourteenth and Eighth Amendments, and deliberate indifference, should be excluded.

### 2.   Knox's and Volz's Opinions on Deliberate Indifference Are Not Reliable.

Even assuming *arguendo* that opinions regarding deliberate indifference are admissible under the first prong of the Fed. R. Evid. 702 analysis, both Knox and Volz relied on either no understanding of "deliberate indifference" or an incorrect definition of those terms in formulating their opinions, making them inadmissible as unreliable.

Volz expressed no understanding of the terms deliberate indifference.  At the time of Volz's deposition, he testified that he had read the Eighth and Fourteenth Amendments before preparing his expert report.  (Exhibit C, Volz Depo., at 97:16-98:25).  When asked whether he was opining on deliberate indifference, however, he stated he did not understand what that was. (*Id.* at 97:9-15).  Because Volz did not understand the standard under with Eighth Amendment claims are judged, his opinions that Paulsen violated the Eighth Amendment must be excluded.

Although Knox testified that she understood the meaning of "deliberate indifference," the definition she provided was not a correct statement of that standard but instead was a negligence definition.  Knox defined "deliberate indifference" as follows:

> I believe that deliberate indifference is when a person, in this case a registered nurse, had ***reason to know*** or knew of something that caused grave danger or the

> potential for medical harm and did not act to either prevent the harm or to mitigate the risk.

(Exhibit D, Knox Depo., at 84:20-25 (emphasis added)).   Contrary to Knox's definition that deliberate indifference occurs when an official *should have known* of a risk of harm, deliberate indifference requires that a prison official be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that the official also draw the inference that a substantial risk of serious harm exists.  *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (citing *Farmer*, 511 U.S. at 833-34).  For deliberate indifference, it is not enough to show that prison officials failed "to alleviate a significant risk that [they] should have perceived but did not." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 838).  Because Knox relied on a definition of deliberate indifference that is not correct, her statements regarding Paulsen's alleged deliberate indifference are unreliable and must be excluded.

For these reasons, the opinions of Knox and Volz that Paulsen violated the Eighth Amendment or acted with deliberate indifference must be excluded under Fed. R. Evid. 702.

**C.    KNOX'S OPINIONS FAIL TO PASS MUSTER UNDER FED. R. EVID. 702.**

**1.    Knox's Opinion That Paulsen's Conduct Fell Below the Standard of Care Must Be Excluded Because Knox Is Not Qualified to Opine on the Standard of Care for Nurses in Colorado.**

Knox has no qualifications that enable her to provide a reliable opinion regarding the standard of nursing care in Colorado, rendering her opinions regarding Paulsen's alleged negligence inadmissible.  Determining whether an expert witness is qualified to give expert opinions requires a comparison of the area in which the witness has superior knowledge, skill,

experience or education with the subject matter of the witness's testimony. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

Under Colorado law, an element of a medical negligence case, such as the Plaintiff brings against Paulsen here, is a breach of the standard of care. *See* CJI:Civ 15:2 (4th Ed.). For non-specialist medical professionals, the standard of care is based on the standard employed by other medical professionals in the same or similar locality. *See id.; see also Jordan v. Bogner*, 844 P.2d 664, 666 (Colo. 1993) (discussing the "locality rule" with respect to physicians). The locality rule was based on the idea that it was unfair to hold physicians practicing in rural areas, who have less access to facilities and educational opportunities, to the same standard as physicians practicing in metropolitan areas, which provide greater access to educational opportunities and facilities. *Jordan*, 844 P.2d at 666 n.5. To safeguard against such unfairness, Colorado requires that the conduct of non-specialist medical professionals be compared to the standards employed by those working in the same or similar area. Medical professionals who hold themselves out as specialists in a particular field of medicine, on the other hand, are judged by the standard of care commensurate with that of a reasonable professional practicing in that specialty, regardless of where that practitioner works. *Id.*

Here, Paulsen was a registered nurse working at the Park County Jail. (Exhibit E, Paulsen Depo., at 5:15-16). As a non-specialist medical professional, her treatment of Plaintiff must be compared to the standard of care employed by registered nurses in the same or similar locality as where Paulsen practiced. *See Jordan*, 844 P.2d at 666.

Knox has no experience with nursing in Colorado. (Exhibit D, Knox Depo., at 20:23 - 21:5). She has not practiced nursing in Colorado, is not licensed to practice nursing in Colorado,

and has not supervised any nurses practicing in Colorado.  (*See id.*).  Instead, her experience has primarily been with large departments of corrections in the Pacific Northwest.  (*See* Exhibit H, Knox C.V. at p. 1-2 (showing Knox's current position with the Washington Department of Corrections and past position at the Oregon Department of Corrections)).  Accordingly, Knox lacks any experience or training that could qualify her as an expert on the standard of care for registered nurses in Colorado.

As a result, Knox's opinions that Paulsen breached the standard of care must be excluded as unreliable and irrelevant.  Knox's lack of training, licensing or work experience in Colorado renders her unqualified to testify on the Colorado standard of care.  Thus, any testimony she attempts to offer regarding the standard of care in Colorado is not reliable.  Additionally, to the extent Knox offers expert testimony on the nursing standard of care in other states where she does have licensing, work experience and training, such testimony is not relevant to the Plaintiff's claim against Paulsen because the only standard that can be considered for that claim is the standard of care for registered nurses practicing in the same or similar locality as Paulsen. *See Jordan*, 844 P.2d at 666.

### 2.	Alternatively, Knox's Opinion That Paulsen Was Negligent Is Unreliable.

Alternatively and assuming *arguendo* that Knox is qualified to testify as an expert on the Colorado standard of nursing care, some of her expert opinions must be excluded because they are either not relevant, i.e., they do not have a relevant "fit" to the issue at hand, or they are not reliable.

>    a.    **Certain of Knox's Opinions Are Not Reliable Because Her Reasoning and Methodology Are Flawed.**

Knox opines that Paulsen was negligent in her treatment of Plaintiff and that her negligence resulted in Plaintiff experiencing a deterioration in health that he otherwise would not have experienced.  Knox's testimony that Paulsen's failure to meet the standard of nursing care resulted in harm to Plaintiff is not based on sufficient facts or data, is not the product of reliable principles and methods, and does not result from a reliable application of the principles and methods to the facts of the case.  As a result, Knox's opinions – to the extent they conclude that Plaintiff would have experienced a different outcome if Paulsen had acted within the standard of care – must be excluded as inadmissible under Fed. R. Evid. 702 and *Daubert*.

Knox opines that Paulsen's alleged breach of the standard of care impacted the progression of Plaintiff's illness.  This opinion, however, is based on flawed reasoning and methodology.  Knox opines that had Paulsen obtained medical historical information regarding Plaintiff, she may have treated him differently, which presumably could have resulted in a better outcome for Plaintiff.  Knox's report criticizes Paulsen for the following:  (1) allegedly not gathering historical information regarding the length of Plaintiff's symptoms or examining Plaintiff's ears, nose and throat (Exhibit A, Knox Report, at p. 1, ¶1(A), p. 2, ¶ 1(B)); (2) allegedly failing to obtain orders from a physician prior to giving Plaintiff over-the-counter medications, namely Motrin for body aches and headache, CTM for nasal congestion, Pepto-Bismol for nausea; and (3) leaving the Park County Jail at 9:00 a.m. on March 8, 2003, with deputies being delegated the task of continuing to monitor Plaintiff's condition until he was

transported (*id.* at p. 3, ¶ 1(E)).[4]   Knox opines that if Paulsen obtained historical information from Plaintiff, it "would have guided her examination to determine the nature and urgency of [his] condition" (*see id.* at p. 1, ¶1(A)), and that had Paulsen called a physician for orders before administering over-the-counter medication to Plaintiff, then "at least there would have been consideration of whether or not to do any lab work at this point to try to identify the cause of the sore throat, whether he had influenza" (Exhibit D, Knox Depo., at 44:12-24).   Knox also opines that Paulsen's decision to leave the jail at 9:00 a.m. "contributed to the delay in the patient's transport to Summit Medical Center."   (Exhibit A, Knox Report, at p. 3, ¶ 1(E)).   These conclusions are speculative, however.

With regard to her conclusion that obtaining more historical information would have made a difference in Paulsen's treatment plan, and Plaintiff's outcome, Knox admits that "[i]t's hard for [her] to speculate what [Paulsen] would have done differently had she asked these questions." (Exhibit D, Knox Depo., at 41:5-20).   Although she opines that more historical information might have resulted in Paulsen drawing a different conclusion regarding Plaintiff's condition on March 6 (*id.* at 42:4-15), as she admits, this opinion is purely speculative. Additionally, with regard to the purported failure to visually examine the throat, the evidence shows that even at the time Plaintiff arrived to Summit Medical Center, his throat was benign and demonstrated none of the typical signs of a strep infection.   (*See* Dep. of Timothy Keeling, M.D., attached as Exhibit G, at 49:18-50:5).   Accordingly, Knox's opinion that Paulsen's failure to examine the throat somehow changed her treatment plan of Plaintiff is not supported by the

---

[4]     Knox also opines that Paulsen's failure to obtain historical information or contact Dr. Bachman on March 7 and 8 (but not March 6) violated Plaintiff's Eighth Amendment rights.  For the reasons set forth in Argument A, *supra*, however, those conclusions must be excluded.  If not excluded on the grounds in Argument A, however, those conclusions regarding deliberate indifference fail for the same reasons as stated here in relation to Knox's negligence conclusions.

evidence.   For these reasons, Knox's opinion that obtaining a complete medical history on Plaintiff, and examination of his throat would have affected his outcome fail the reliability prong of *Daubert*.

Further, Knox's opinion that Paulsen breached the standard of care by not calling a physician for orders before administering over-the-counter medications to Plaintiff on March 6 must be excluded as based on faulty data and unreliable.   Knox opines that if Paulsen called for orders before administering over-the-counter medications to Plaintiff on March 6, then it would be more likely that a physician would have ordered additional testing for Plaintiff to rule out a strep infection or influenza.  (Exhibit D, Knox Depo., at 44:12-24).  Knox admits, however, that in her opinion the symptoms with which Plaintiff presented on March 6 did not suggest a strep infection.  (*Id.* at 59:3-21).  Also, Knox testified that in her experience in nursing, when a nurse calls a physician for orders, the physician sometimes orders additional testing and treatment, and sometimes does not.  (*Id.* at 104:8-25).  Finally, Knox stated that she was not sure whether, had Paulsen called a physician, there would have been any different treatment of Plaintiff.  (*Id.* at 118:17-119:12).  Indeed, Dr. James Bachman, the physician who served as the medical director of the Park County Jail and who Paulsen was to call for consultation, testified that based on Plaintiff's symptoms, he would not have suspected a strep infection because some of the symptoms, such as diarrhea and body aches, were not consistent with strep but rather were consistent with a viral infection.   (Exhibit F, Bachman Depo., at 93:3-13; 94:15-95:9).   In addition, Dr. Bachman testified that, given Plaintiff's symptoms and vital signs, he would not have ordered further diagnostic testing because he would assessed Plaintiff as having a viral illness.  (*See id.* at 95:11-16).  Accordingly, Knox's opinion that Plaintiff would have been more

likely to receive testing for strep if Paulsen had called a physician (i.e., Dr. Bachman) to describe Plaintiff's symptoms is based on faulty data.

Additionally, Knox's opinion that Plaintiff would have been transported earlier if Paulsen had stayed at the jail on the morning of March 8 instead of leaving at 9 a.m. is not based on any evidence. There is no evidence that a transport occurred any later than it otherwise would have merely because of Paulsen's presence, or absence, from the jail.

Because no reliable methodology supports Knox's opinions that Paulsen's reported failure to obtain a medical history, to consult with a physician, or to stay at the jail, would have changed Plaintiff's outcome, they must be excluded.

> **b.    Knox's Opinions Do Not Have a Relevant "Fit" to the Issues at Hand**

Additionally, Knox's opinions that certain of Paulsen's actions fell below the standard of care do not have a relevant "fit" to the issues at hand. As stated above, to determine whether evidence meets the relevance prong of the *Daubert* analysis, "[a] trial court must look at the logical relationship between the evidence proferred and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler*, 400 F.3d at 1234. Knox's opinions regarding certain conduct that fell below the standard of care do not advance the purpose of aiding the trier of fact on Plaintiff's negligence claim against Paulsen because that conduct is not alleged to have made any difference in Plaintiff's outcome.

Although Knox opines that Paulsen's treatment of Plaintiff fell below the standard of care, there is no evidence connecting the supposed inadequate conduct with any damage to Plaintiff. Knox opines that Paulsen's treatment fell below the standard of care because she reportedly did not take complete vital signs or examine Plaintiff's ears, nose and throat, and she

purportedly did not consider the possibility that Plaintiff had an infectious or communicable illness, the type of living conditions in which he was housed and whether Plaintiff's request for medical attention was delayed.  (Exhibit A, Knox Report, at p. 1, ¶1(A); p. 2, ¶ 1(B)).  Knox also contends that Paulsen breached the standard of care by allegedly not instructing the deputies what specific symptoms to watch for and which ones warranted a call to her when she was absent from the jail; by not copying her notes to accompany Plaintiff to Summit Medical Center; and by failing to ascertain the extent to which Plaintiff's condition changed when she was contacted at 3:00 a.m. on March 8.  (*See id.* at p. 2, ¶ 1(C)).  These opinions do not survive the relevance prong of the *Daubert* analysis, however, because there is no evidence that these purported breaches of the standard of care would have made any difference in Plaintiff's condition.

For example, according to Knox, had Paulsen obtained complete vital signs or examined Plaintiff's ears, nose and throat, there would have been "a more definitive diagnosis or at least a clear baseline which could have been used to compare subsequent findings" (Exhibit A, at p. 1, ¶1(A)).  The vital sign that Knox says is missing is Plaintiff's blood pressure reading.  (Exhibit D, Knox Depo., at 55:2-6).  Knox does not know whether the blood pressure would have been normal or abnormal, however (*id.* at 121:23-122:17), and therefore Paulsen's failure to take a blood pressure reading does not make any fact of consequence more or less likely.  Knox does not opine how, or even whether, a "clear baseline" of this information would have had any impact on Plaintiff.

Similarly, there is no evidence that Paulsen's alleged failure to consider the living conditions had any impact on Plaintiff.  With regard to the supposed inadequate instructions to

the deputies, there is no evidence that different instructions would have resulted in the deputies providing any different information to Paulsen in the early morning hours of March 8.  Also, there is no evidence that Plaintiff's treatment was hindered, or that he suffered any harm whatsoever, as a result of the failure to send a copy of Paulsen's nursing notes with Plaintiff to Summit Medical Center.

In sum, Knox's opinions do not tend to make Plaintiff's damages claims against Paulsen any more or less likely.  Instead, her opinions essentially boil down to either an "earlier the treatment the better" or even a "more treatment the better" reasoning.  At least one other court has found that the relevance prong of *Daubert*, i.e., whether the scientific testimony assists the trier of fact, is not met by expert testimony that merely applies a common sense "earlier the better" theory.  *See McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).  In *McDowell*, the Eleventh Circuit excluded expert testimony that the earlier the treatment, the better off the patient would have been, because such conclusions were within the average juror's knowledge and therefore not appropriate for expert testimony.  *Id.* Because they do not meet the "fit" test of *Daubert*, Knox's opinions must be excluded under Fed. R. Evid. 702.

### D.    VOLZ'S OPINIONS REGARDING CAUSATION FAIL *DAUBERT*.

#### 1.    Volz Is Not Qualified to Opine on the Source of Plaintiff's Illness

Volz is not qualified as an expert in infectious disease, and therefore is not qualified to testify regarding the source, incubation or typical progression of Plaintiff's illness.  In his report, Volz opines that the conditions in the Park County Jail created a health hazard that caused or contributed to Plaintiff acquiring a bacterial infection.  (*See* Exhibit B, Volz Report, at p. 3 (stating that "[s]uch conditions are an obvious set up to even the medically untrained to produce

an environment highly conducive to the transmission of communicable diseases"), 4, 6, 10, 11 ("It is my opinion that MCR acquired his infection while in the jail under extremely crowded and filthy conditions.")).   In his deposition, however, Volz acknowledged that he does not hold himself out as an expert on infectious disease transmission, and that his conclusion that a dirtier facility was more likely to cause illness than a clean one was based on mere common sense. (Exhibit C, Volz Depo., at 26:18-27:21).   Because Volz has no specialized training or expertise in the spread of streptococcus A infections, he is not qualified to testify regarding the source of Plaintiff's infection, and his opinion regarding the same must be excluded.

### 2. Volz's Ultimate Opinion That Paulsen Was Negligent By Not Transporting Sooner Is Based on Flawed Data

Volz's conclusions that Paulsen was negligent, and violated the Eighth Amendment, by not transporting Plaintiff to an emergency room at 3:00 a.m. on March 8, 2003, rests on several incorrect facts, making his opinion unreliable.  Volz opines that during the morning of March 8, 2003, Paulsen was negligent, and violated Plaintiff's constitutional rights, by failing to recognize that Plaintiff was in need of urgent care and by "delaying care" to Plaintiff.  (Exhibit B, Volz Report, at 8 ("Review of Summary #8")).  In formulating this opinion, Volz emphasizes as a key fact that Plaintiff had blood in his urine and that blood was observed in Plaintiff's spittle the morning of March 8.  (*Id.* at 6, "Review of Summary #4" and p. 8, "Review of Summary #8")).  Volz admitted in his deposition, however, that no one informed Paulsen that Plaintiff had blood in his urine or that he had blood in his spittle.  (Exhibit C, Volz Depo., at 68:17-69:3, 82:13-17).

Additionally,  Volz  considers  in  reaching  his  opinion  the  conclusion  that  Paulsen significantly delayed Plaintiff's transport even though "she was given permission by Ben Baca [of INS] to go ahead and coordinate transport earlier if she felt necessary."  (Exhibit B, Volz

Report, at 8 ("Review of Summary #8")).  In his deposition, however, Volz acknowledged that this statement is incorrect because Baca told Paulsen she could transport before INS arrived only if Plaintiff's condition worsened before then.  (Exhibit C, Volz Depo., at 90:2-18).  Because Volz's opinion is based on incorrect facts, it fails the reliability prong of *Daubert*.

> ### 3.    Several of Volz's Opinions Are Irrelevant

Like Knox, Volz offers several criticisms of Paulsen's conduct that have no relevance to the claims against her.  For example, Volz opines that Paulsen breached the standard of care by failing to examine Plaintiff's throat or nose.  (Exhibit B, Volz Report, at p. 5).  As stated with regard to Knox, however, testimony from the physician who examined Plaintiff on his arrival at Summit Medical Center established that the throat did not display signs of a strep infection.  (*See* Exhibit G, Deposition of Timothy Keeling, M.D., at 49:18-50:5).  Because it is undisputed that Plaintiff's throat was benign on visual inspection, Volz's opinion that Paulsen should have visually inspected Plaintiff's throat is irrelevant.

Additionally, Volz offers opinions regarding the adequacy of Paulsen's note-taking.  (See Exhibit B, Volz Report, at 4 ("Review of Summary #2").  Volz's observations regarding the alleged inadequacies in Paulsen's nursing notes, however, have no relationship to whether Paulsen's actions in treating Plaintiff were negligent.  Paulsen's ability to take good nursing notes is not at issue in either of Plaintiff's claims against her.

Further, Volz opines that Paulsen did an incomplete examination of Plaintiff by failing to check for signs of dehydration.  (*Id.* at 5 ("Review of Summary #5")).  Although Volz states that he "suspects" that Plaintiff was suffering from dehydration while at the jail (*see id.*), there is no

evidence showing that Plaintiff was dehydrated at the time he was at the Park County Jail, making Paulsen's alleged failure to check for dehydration irrelevant.

Also, similar to Knox, Volz's ultimate opinion that Paulsen was negligent and that her failure to transport sooner "resulted in [Plaintiff's] acquiring the illness and progressing to a critical state where he had loss of limb and near loss of life," is based on a mere "more the better" or "earlier the better" theory. As set forth above, such a common sense approach, when not based on scientifically tested methodology, fails to survive *Daubert*.

## III.    CONCLUSION

Several aspects of the opinions of Knox and Volz, as discussed in detail in the Argument Section of this Motion, *supra*, should be excluded under Fed. R. Evid. 702 and *Daubert*. The deficiencies with Knox's and Volz's opinions can be further explored in the Court's upcoming hearing set for July 18, 2007.

Respectfully submitted:  June 18, 2007

s/ Melanie B. Lewis

_____

Josh A. Marks
Melanie B. Lewis
BERG HILL GREENLEAF & RUSCITTI LLP
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com
mbl@bhgrlaw.com
*Attorneys for Defendant Paulsen*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2007, I electronically filed the foregoing **DEFENDANT PAULSEN'S MOTION TO EXCLUDE TESTIMONY OF CATHERINE KNOX AND ANTHONY VOLZ UNDER FED. R. EVID. 702** with the Clerk of the Court using the CM/ECF system which will send notification to such filing to the following e-mail addresses,

Joseph Archuleta
Law Offices of Joseph Archuleta
1724 Ogden Street
Denver, CO  80218
archuletalaw@qwest.net

Lloyd Kordick
Lloyd C. Kordick & Associates
805 S. Cascade Avenue
Colorado Springs, CO  80903
lloyd@kordicklaw.com

William Trine
Trine & Metcalf PC
1435 Arapahoe Avenue
Boulder, CO  80302
btrine@trine-metcalf.com

Adele P. Kimmell
Trial Lawyers for Public Justice, PC
1825 K Street, N.W.
Suite 200
Washington, D.C. 20006
akimmell@tlpj.org

Andrew Ringel
Hall & Evans LLC
1125 17th Street, Suite 600
Denver, CO  80202
ringela@hallevans.com

s/ Julie Bozeman

_____

Julie Bozeman