IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES,

    Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS;
FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado;
MONTE GORE, individually and in his official capacity as Captain of Park County Sheriff's Department; and
VICKIE PAULSEN, individually, and in her official capacity as Registered Nurse for Park County, Colorado,

    Defendants

---

**REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

---

Defendants Park County Board of County Commissioners, Fred Wegener, and Monte Gore, by and through their counsel, Andrew D. Ringel, Esq. and Jennifer L. Veiga, Esq. of Hall & Evans, L.L.C., hereby submit this Reply in Support of Supplemental Motion for Summary Judgment, as follows:

**REPLY CONCERNING PLAINTIFF'S RESPONSE TO
DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1-138.  Pursuant to Fed. R. Civ. P. 10(c), Defendants incorporate herein by reference their Response Concerning Plaintiff's Statement of Additional Disputed and Undisputed Facts, ¶¶ 1-152.  [*See* Defendants' Reply MSJ, at 5-34].

139-140.  Plaintiff disputes the facts in Defendants' ¶¶ 139-140 by reference to the ¶¶ 11-12, 15-16, 20-24 & 28 in the Plaintiff's Statement of Disputed and Undisputed Material

Facts. [*See* Plaintiff's Response to Supplemental MSJ, at 3]. Accordingly, Defendants incorporate herein by reference their Response Concerning Plaintiff's Statement of Additional Disputed and Undisputed Material Facts, ¶¶ 11-12, 15-16, 20-24 & 28 below.

## RESPONSE CONCERNING PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED AND UNDISPUTED FACTS

1. Defendants admit in March 2003 the Park County Jail did not employee an interpreter and utilized Spanish-speaking inmates and detainees to facilitate communication. However, the Jail provided a Handbook in Spanish for the INS Detainees that provided appropriate information according to the INS. [*See* Statement of Undisputed Material Facts contained in Defendants' MSJ ("DSUMF"), ¶¶ 11 & 38].

2. Defendants admit Plaintiff so testified. *See* Response to ¶ 1 above.

3. Duplicative. [*See* Plaintiff's Statement of Disputed and Undisputed Material Facts contained in Plaintiff's Response to MSJ ("PSDUMF"), ¶ 54; Defendants' Response Concerning Plaintiff's Statement of Additional Disputed and Undisputed Facts contained in Defendants' Reply MSJ ("DRPF"), ¶ 54].

4. Defendants admit Plaintiff so testified.

5. Defendants admit Deputy Don Frye testified he did not recall any specific kite from D-Pod from March 1-8, 2003. [*See* Frye Dep., at 129-130, Pl. Exh. 4].

6. Plaintiff mischaracterizes Sergeant Daniel Muldoon's testimony. Sergeant Muldoon testified he might advise medical of an issue with a detainee and the detainee could also notify medical himself during medication rounds. [*See* Muldoon Dep., at 29-30, Pl. Exh. 5].

7. Defendants admit Captain Gore testified he was not sure that any kite forms were in Spanish in March 2003. Defendants admit Captain Gore testified detainees could request to

see the nurse during medical call three times daily pursuant to Jail policy. [*See* Gore Dep., at 68, Pl. Exh. 3; DSUMF, ¶¶ 24-25].

8.   Defendants admit Nurse Paulsen did not speak any Spanish and communicated with the Plaintiff through an interpreter. [*See* Brief in Support of Defendant Vicki Paulsen's MSJ, Statement of Undisputed Material Facts ("Paulsen SUMF"), ¶¶ 16-27].

9.   Denied. Captain Gore and Sergeant Muldoon both testified whether Nurse Paulsen participated in a medication round would not be reflected in the Master Control Log. [*See* Gore Dep., at 89, Pl. Exh. 3; Muldoon Dep., at 30-32, Pl. Exh. 5]. Nurse Paulsen testified she participated in medication rounds twice daily. [*See* Paulsen SUMF, ¶ 4]. The Master Control Log reveals between March 2, 2003, and March 8, 2003, medication rounds occurred at least 14 times. [*See* DSUMF, ¶¶ 74, 79, 84, 92, 99, 106].

10.   Defendants admit Plaintiff so testified. However, Plaintiff also testified he was asleep at the time Nurse Paulsen made her morning medication rounds on March 7, 2003. [*See* Plaintiff Dep., at 273, Pl. Exh. 1].

11.   Defendants admit Plaintiff so testified.

12.   Defendants admit Nurse Paulsen so testified.

13.   Defendants admit Plaintiff so testified. However, the policy of the Park County Jail was to provide cleaning supplies to the detainees in D-Pod. [*See* DSUMF, ¶¶ 17-20]. Deputies provided cleaning supplies to D-Pod on at least nine occasions during Plaintiff's detention. [*See* DSUMF, ¶¶ 76, 81, 86, 94, 101 & 108]. Finally, Nurse Paulsen specifically treated Plaintiff's vomiting. [*See* DSUMF, ¶¶ 96-97, 104-105, 116 & 118].

14.   Defendants admit Plaintiff so testified.

3

15. Defendants deny that Nurse Paulsen did not explain to Plaintiff what the medication she gave him on March 7, 2003, was for. [*See* DSUMF, ¶ 105].

16. Defendants admit Nurse Paulsen so testified.

17-18. Defendants admit Deputy Allen so testified.

19. Defendants admit Plaintiff so testified.

20. Defendants admit Plaintiff so testified. However, at no time did Plaintiff suggest he had any difficulty communicating with Nurse Paulsen or anyone else about his medical condition. [*See* Moises Carranza-Reyes Dep., at 263-264, 278-279 & 297-298, Exh. A-52].

21. Defendants admit Plaintiff so testified. However, *see* Response to ¶ 20 above.

22. Defendants admit Deputy Greg Flint so testified.

23. Defendants admit Deputy Frye so testified.

24. Plaintiff's recitation of Deputy Frye's care for the Plaintiff is incomplete. [*See* DSUMF, ¶¶ 113-115, 117 & 119].

25. Defendants admit Deputy Frye so testified.

26. Defendants admit Nurse Paulsen so testified.

27. Defendants admit Deputy Frye testified that during the night he was "allowed to give ibuprofen, Pepto-Bismol, nonprescription type of meds during the night to those upon request." [*See* Frye Dep., at 69, Pl. Exh. 4].

28. Defendants admit at 8:50 a.m. on March 8, 2003, Corporal Crawford sent Deputy Scott Theobald out for cranberry juice for Plaintiff because of a possible kidney stone and the cranberry juice was provided to Plaintiff. [*See* DSUMF, ¶ 124].

29. Defendants admit Plaintiff so testified. However, Sergeant Muldoon testified he communicated with the Plaintiff during the transport by asking him whether he was doing all right and Plaintiff responded he needed to vomit. [*See* Muldoon Dep., at 59, Exh. A-55].

30-31. Admitted

32. Defendants admit Nurse Paulsen so testified.

33. Defendants admit Sheriff Wegener's office is in the same building as the Park County Jail and he walked through the Jail approximately once every two weeks. [*See* DSUMF, ¶ 31; DRSF, ¶ 5]. Sheriff Wegener has access to the total number of inmates housed in the Jail from his computer, but was not aware of the daily inmate population of D-Pod. [*See* DRSF, ¶ 5].

34. Defendants admit Sheriff Wegener is statutorily responsible for overseeing the operations of the Jail. [*See* DSUMF, ¶ 3]. Defendants admit Captain Gore, as Jail Administrator, is responsible for the Jail's daily operations. [*See* DSUMF, ¶ 6].

35. Duplicative. [*See* PSDUMF, ¶ 15; DRPF, ¶ 15].

36-38. Admitted.

39. Denied. Captain Gore testified he was aware some inmates were experiencing flu-like symptoms and were monitored by Nurse Paulsen. [*See* Gore Dep., at 141, Pl. Exh. 3].

40. Admitted.

41. Denied. Captain Gore was Nurse Paulsen's supervisor for operations, but Dr. Bachman supervised her nursing care. [*See* Gore Dep., at 284, Pl. Exh. 3].

42-43. Admitted.

44. Defendants admit Nurse Paulsen so testified.

45. Admitted. Captain Gore testified he did so because of the need for Nurse Paulsen to exercise her own medical judgment. [*See* Gore Dep., at 284-85, Pl. Exh. 3].

46. Incomplete. Captain Gore testified: "She may not have been under a contractual agreement, but I know that as far as the way the operation went, I know she was called a lot, and there were times when she did come in." [*See* Gore Dep., at 258-59, Pl. Exh. 3].

47. Defendants admit Captain Gore testified, "I would not have an issue with the officer putting the inmate on oxygen." [*See* Gore Dep., at 167, Pl. Exh. 3].

48. Admitted.

49. Plaintiff mischaracterizes Captain Gore's deposition testimony. Captain Gore testified the Park County Jail has not enacted any specific policy restricting the number of people in Pod D because it would be left to the discretion of the on-duty supervisor who might need to work with INS under particular circumstances. [*See* Gore Dep., at 250-51, Pl. Exh. 3].

50. Denied. Captain Gore testified based on a standard of 80 square feet per person a total of 61 detainees in D-Pod would have violated that policy, not that D-Pod was "overcrowded." [*See* Gore Dep., at 24-25, Pl. Exh. 3].

51. Plaintiff does not have a paragraph 51.

52. Denied. Captain Gore testified ACA standards represent guidelines and the Jail adopted only certain ACA standards. [*See* Gore Dep., at 49, Pl. Exh. 3].

53. Plaintiff's reference to Sergeant Muldoon's testimony is misleading. Sergeant Muldoon was shown Deposition Exhibit 4 which was the Park County Jail Policies and Procedures Establishment of Health Care Unit Policy and Procedure Manual. [*See* Muldoon

Dep., at 66, Pl. Exh. 5; Health Care Unit Policy and Procedure Manual, Exh. A-56]. As such, it is not surprising that Sergeant Muldoon might not have reviewed the Manual.

54. Defendants admit Deputy Bellantonio testified he had never previously seen the Communicable Disease Policy. [*See* Bellantonio Dep., at 96-97, Pl. Exh. 7].

55. Plaintiff's reference to Deputy Bellantonio's testimony is also misleading. Deputy Bellantonio was also shown Deposition Exhibit 4 which was the Park County Jail Policies and Procedures Establishing of Health Care Unit Policy and Procedure Manual. [*See* Bellantonio Dep., at 172-74, Pl. Exh. 7; Health Care Unit Policy and Procedure Manual, Exh. A-56]. It is not surprising Deputy Bellantonio may not have reviewed the Manual either.

56-57. Defendants admit Deputy Allen so testified.

58. Denied. Deputy Bellantonio actually testified he never reported to Captain Gore the conditions in the Jail were substandard. [*See* Bellantonio Dep., at 143, Pl. Exh. 7].

59-61. Defendants admit Dr. Griefinger so testified.

62. Defendants admit Deputy Allen so testified.

63. Denied. Deputy Allen testified the only Colorado Department of Corrections ("DOC") facility he worked at in housing and security was the Buena Vista Correctional Facility ("BVCF"). [*See* Allen Dep., at 9, Exh. A-57]. Plaintiff's only evidence is Deputy Allen's personal opinion about the medical care he observed as correctional officer at BVCF. Plaintiff's assertion Deputy Allen can somehow testify about state prisons or at DOC facilities generally is not supported by the actual evidence. [*See* Allen Dep., at 161-162, Pl. Exh. 8].

64. *See* Response to ¶ 63 above. Moreover, Deputy Allen actually testified there were also problems of overcrowding at the BVCF. [*See* Allen Dep., at 190, Pl. Exh. 8].

65. *See* Response to ¶ 63 above.  Defendants admit Deputy Allen so testified.

66. Defendants admit Sheriff Wegener so testified.  However, Sheriff Wegener also testified that additional detainees being housed in the Jail would result in additional costs.  [*See* Wegener Dep., at 27, Exh. A-58].

67. Defendants admit Deputy Bellantonio so testified.

68. Defendants admit Captain Gore testified he may have been aware of the number of detainees in D-Pod on March 6, 2003.  Captain Gore also testified the Park County Jail was offsetting costs in March 2003 not making a profit.  [*See* Gore Dep., at 21-22, Pl. Exh. 3].

## ARGUMENT

### I. PLAINTIFF NEVER PREVIOUSLY ATTEMPTED ANY DUE PROCESS OR EQUAL PROTECTION CLAIM AGAINST DEFENDANT VICKI PAULSEN

First, Plaintiff disputes the reality the Second Amended Complaint does not assert a claim of violation of due process and equal protection against Defendant Paulsen.  [*See* Plaintiff's Response to Supplemental MSJ, at 1-2].  Plaintiff's Second Amended Complaint's only reference to the Plaintiff's due process and equal protection theories appears in the First Claim for Relief, which does not attempt a claim against Defendant Paulsen.  [*See* Plaintiff's Second Amended Complaint, ¶ 47].  Plaintiff does not dispute this reality.  Instead, Plaintiff contends the Plaintiff's Complaint for Damages brought due process and equal protection claims against all of the Defendants.  [*See* Plaintiff's Response to Supplemental MSJ, at 2].  However, the Second Amended Complaint, not the Plaintiff's original Complaint, is the operative complaint here.  *See, e.g.*, **Murray v. Archambo,** 132 F.3d 609, 612 (10th Cir. 1998); **Davis v. TXO Production Corp.,** 929 F.2d 1515, 1517 (10th Cir. 1991).

Second, Plaintiff asserts the Final Pretrial Order's reference to all of the Defendants violating the Plaintiff's due process and equal protection rights is sufficient to encompass Defendant Paulsen. [*See* Plaintiff's Response to Supplemental MSJ, at 2]. Plaintiff is correct as a general rule the Final Pretrial Order supersedes earlier pleadings. However, here, Defendants objected to the Plaintiff's inclusion of due process and equal protection theories in the Final Pretrial Order. [*See* Final Pretrial Order, at 50-51]. The issue was also addressed at the Final Pretrial Conference and counsel for these Defendants and counsel for Defendant Paulsen both specifically recall reference being made to the Second Amended Complaint and the fact that the Plaintiff's due process and equal protection theories could therefore not be against Defendant Paulsen. In fact, counsel for the Defendants believes counsel for the Plaintiff specifically represented during the Final Pretrial Conference that Defendant Paulsen was not a defendant for the Plaintiff's equal protection and due process claims.[1] As a result, only counsel for these Defendants requested leave of this Court to file a supplemental summary judgment motion because Defendant Paulsen did not need to do so.

Third, Plaintiff suggests his failure to contest these Defendants' representation the Plaintiff's equal protection and due process claims were not against Defendant Paulsen was "an oversight." [*See* Plaintiff's Response to Supplemental MSJ, at 2]. However, the Defendants' representation was unequivocal and should have resulted in some response from the Plaintiff. [*See* Motion for Leave to Submit Supplemental Motion for Summary Judgment, at 2 n.1]. Because Plaintiff's Second Amended Complaint does not allege a due process or equal

---

[1] Counsel for the Defendants has ordered a transcript of the Final Pretrial Conference. As soon as it is available it will be submitted to this Court.

protection claim against Defendant Paulsen, and because Plaintiff did not state such a claim existed at the Final Pretrial Conference or in response to the Motion for Leave, Plaintiff should not be allowed to proceed on such a theory against Defendant Paulsen now, or at least Defendant Paulsen should be allowed to file a supplemental summary judgment motion herself.

## II.  PLAINTIFF STATES NO VIABLE DUE PROCESS CLAIM AGAINST THESE DEFENDANTS

First, Plaintiff contends the Fourteenth Amendment Due Process Clause provides greater protection than the Eighth Amendment. [*See* Plaintiff's Response to Supplemental MSJ, at 10-11]. Plaintiff's argument is unavailing. Under Tenth Circuit law, a Fourteenth Amendment Due Process claim brought by a pretrial detainee challenging his conditions of confinement in a jail is analyzed under the Eighth Amendment. ***Ledbetter v. City of Topeka, Kan.,*** 318 F.3d 1183, 1188 (10th Cir. 2003); ***Craig v. Eberly,*** 164 F.3d 490, 495 (10th Cir. 1998). Any Due Process conditions of confinement claim is therefore subject to the Eighth Amendment standard previously analyzed in detail by these Defendants. [*See* Defendants' MSJ, at 29-54; Defendants' Reply MSJ, at 46-60]. Further, even assuming *arguendo* the Due Process Clause of the Fourteenth Amendment protects detainees to a greater extent than the Eighth Amendment, Plaintiff offers no precedent or analysis demonstrating how the Plaintiff states a Due Process claim if the Plaintiff does not state a viable Eighth Amendment claim. [*See* Plaintiff's Response to Supplemental MSJ, at 10-11].

Second, Plaintiff suggests a Due Process claim might exist based on pain and suffering that lacks any penological purpose. Plaintiff cites ***Ramos v. Lamm,*** 485 F.Supp. 122, 158 (D.Colo. 1979), *aff'd in part, rev'd in part,* 639 F.2d 539 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981), for this proposition. [*See* Plaintiff's Response to Supplemental MSJ, at 11].

10

However, the language cited by Plaintiff from *Ramos* consists of a quotation from *Estelle v. Gamble,* 429 U.S. 97, 103-104 (1976), which is indisputably an Eighth Amendment case..[2] Similarly, Plaintiff's reliance on *Alexis v. U.S. Dept. of Homeland Security,* 2005 WL 1502068 (D.N.J. 2005) (unpublished disposition attached as Pl. Exh. 11), is also misplaced.  Plaintiff apparently cites *Alexis* for the proposition that an Eighth Amendment deliberate indifference analysis is not required in a Due Process conditions of confinement claim.  [*See* Plaintiff's Response to Supplemental MSJ, at 11].  However, *Alexis* cannot alter Tenth Circuit law**.**

Third, Plaintiff misunderstands the Defendants' argument concerning the caution the United States Supreme Court has demonstrated in recognizing other substantive due process rights.  [*See* Plaintiff's Response to Supplemental MSJ, at 11-12].  Defendants argued other than the conditions of confinement, medical care and interpreter claims, no other substantive due process right was even potentially available to Plaintiff.  [*See* Supplemental MSJ, at 9].  Plaintiff offers no other potential substantive due process theory.  [*See* Plaintiff's Response to Supplemental MSJ, at 10-15].  Thus, the only new issue raised by the Plaintiff's Due Process claim is the availability of an employee interpreter for his visits with Nurse Paulsen.

Fourth, Plaintiff argues he had a due process right to a qualified interpreter.  [*See* Plaintiff's Response to Supplemental MSJ, at 12-14].  Multiple fundamental barriers exist with

---

[2] Plaintiff also relies on *Ramos* for the proposition a denial of medical care that violates due process may rise to an Eighth Amendment violation.  [*See* Plaintiff's Response to Supplemental MSJ, at 11].  In contrast to Plaintiff's earlier argument, Plaintiff here appears to agree the Eighth Amendment standard governs the Plaintiff's denial of medical care claim.  Defendants have made this point throughout the summary judgment briefing and have previously analyzed Plaintiff's denial of medical care under the Eighth Amendment standard.  [*See* Supplemental MSJ, at 6; Defendants' MSJ, at 31-33, 37, 47-49 & 50-51; Defendants' Reply MSJ, at 50-51-56-57 & 58-59].

respect to the Plaintiff's claim. Initially, as a factual matter, Plaintiff ignores he was provided with a detainee Spanish-English interpreter during Nurse Paulsen's care for him. [¶¶ 96-98, 104-105, 121 & 139-140]. Further, while the Plaintiff's factual recitations represent an effort to suggest he and Nurse Paulsen had difficulty communicating, review of their deposition testimony demonstrates neither assert any difficulty communicating. Specifically, Plaintiff never asserts he had trouble understanding Nurse Paulsen or that he received any allegedly inadequate medical care because of any language barrier or inadequate interpretation. Plaintiff asserts in conclusory fashion that he was unable to communicate effectively with Nurse Paulsen, but the actual facts do not support any such assertion. Moreover, even assuming *arguendo* Plaintiff did have difficulty communicating with Nurse Paulsen, there is absolutely no evidence to even suggest any such communication barrier caused Plaintiff any injury. Causation is an essential element of a § 1983 claim, and the Plaintiff simply cannot establish that "but for" any alleged interpretation failure he would have received different nursing care from Nurse Paulsen and therefore would not have been injured. *See, e.g.*, **Crawford-El v. Britton**, 523 U.S. 574, 598 (1998) (discussing causation as an element of a § 1983 claim); **Warth v. Seldin**, 422 U.S. 490, 509 (1975) (same); **Scott v. Hern**, 216 F.3d 897, 911 (10th Cir. 2000) (same). If Nurse Paulsen made any errors respecting her nursing assessment of Plaintiff, it had nothing to do with the fact they spoke different primary languages.

Fifth, Plaintiff asserts Sheriff Wegener and Captain Gore are not entitled to qualified immunity. [*See* Plaintiff's Response to Supplemental MSJ, at 14]. The decisions cited by the Plaintiff to support the conclusion that a detainee has any due process right to an interpreter are decisions from the Seventh, Eighth and Ninth Circuits and the Southern District of New York.

None of the other cases relied upon by the Plaintiff have anything whatsoever to do with providing an interpreter to a detainee in conjunction with the provision of medical care. [*See* Plaintiff's Response to Supplemental MSJ, at 12-14]. The decisions from three Circuit Courts of Appeal and one district court are simply not enough to constitute the overwhelming weight of authority required under Tenth Circuit law for a right to be clearly established for qualified immunity purposes. **Wilson v. Meeks,** 52 F.3d 1547, 1552 (10th Cir. 1995); **Medina v. City & County of Denver,** 960 F.2d 1493, 1498 (10th Cir. 1992).

### III. PLAINTIFF ALSO STATES NO COGNIZABLE EQUAL PROTECTION CLAIM AGAINST THESE DEFENDANTS

First, Plaintiff questions the applicability of traditional equal protection principles. Plaintiff suggests the type of equal protection claim he advances here makes a different analysis applicable. [*See* Plaintiff's Response to Supplemental MSJ, at 15-16]. Tenth Circuit law holds the equal protection principles of intentional differential treatment from those similarly situated from the Plaintiff apply to *all* equal protection theories. *See, e.g.,* **Powers v. Harris,** 379 F.3d 1208, 1215 (10th Cir. 2004), *cert. denied,* 544 U.S. 920 (2005); **Henigh v. City of Shawnee,** 155 F.3d 1249, 1257 (10th Cir. 1998); **Campbell v. Buckley,** 11 F.Supp.2d 1260, 1269 (D. Colo. 1998), *aff'd,* 203 F.3d 738 (10th Cir.), *cert. denied,* 531 U.S. 823 (2000). No precedent holds there are different types of equal protection claims with different applicable legal principles. Plaintiff also relies on a variety of different cases from other jurisdictions to support the notion a different equal protection analysis applies and that Plaintiff does not have to meet the similarly situated and intentional discrimination requirements. [*See* Plaintiff's Response to Supplemental MSJ, at 16-17]. However, simply because other federal courts do not follow the Tenth Circuit does not mean the Plaintiff is not required to do so here.

Second, Plaintiff contends the Defendants' analysis of the similarly situated requirement is "drawn to narrowly." [*See* Plaintiff's Response to Supplemental MSJ, at 16]. Plaintiff fundamentally misunderstands the nature of any equal protection claim. The Equal Protection Clause provides no substantive rights. Instead, it precludes government from making an improper differentiation between persons on improper grounds. ***Powers,*** 379 F.3d at 1215. Liability for an equal protection violation requires evidence the Defendants made an inappropriate distinction and therefore treated Plaintiff differently from others similarly situated to him. None of the Defendants can be held liable under an equal protection theory unless they treated Plaintiff differently from someone else. As such, the only possible comparators for the Plaintiff are others in custody in the Park County Jail because those others are the only persons who the Defendants could treat differently than the Plaintiff.

Third, Plaintiff relies on the testimony of Deputy Allen for the proposition that Plaintiff was treated differently than inmates in the custody of the DOC at BVCF. [*See* Plaintiff's Response to Supplemental MSJ, at 16]. None of the Defendants have any authority to impact the conditions of confinement of anyone incarcerated at BVCF. Therefore, such individuals cannot be considered similarly situated to the Plaintiff. Moreover, Deputy Allen was testifying about the conditions of confinement during his prior employment with the DOC. This different time frame also makes the Plaintiff's attempted comparison inappropriate. Finally, Plaintiff was a detainee assigned to the Park County Jail by the INS and the DOC does not house INS detainees. This difference also renders the Plaintiff's offered comparison inapposite.

Fourth, Plaintiff suggests discriminatory intent can be demonstrated by the alleged profit motive of the Defendants. [*See* Plaintiff's Response to Supplemental MSJ, at 17]. Even

assuming *arguendo* the Defendants had a profit motive, which Defendants categorically deny, Plaintiff's evidence establishing such a motive does not demonstrate Plaintiff was treated differently than anyone else. If Defendants did in fact have a profit motive and therefore wanted to house additional persons in the Jail, such a motive applied to all persons incarcerated in the Jail and no basis exists to suggest any such motive resulted in disparate treatment of the Plaintiff.

## CONCLUSION

In conclusion, for all of the foregoing reasons, as well as based on all of the arguments and authorities previously presented, Defendants Board of County Commissioners of Park County, Fred Wegener and Monte Gore respectfully request this Court grant them summary judgment on all of the Plaintiff's claims against them, dismiss the Plaintiff's claims against them in their entirety with prejudice, and for all other and further relief as this Court deems just and appropriate.

Dated this 27th day of June, 2007.

Respectfully submitted,

s/ Andrew D. Ringel_____
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, Colorado 80202-2052
ringela@hallevans.com
Tel: (303) 628-3300
Fax: (303) 293-3238
**ATTORNEYS FOR DEFENDANTS
BOARD OF COUNTY
COMMISSIONERS OF PARK
COUNTY, FRED WEGENER
AND MONTE GORE**

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 27th day of June, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph J. Archuleta, Esq.
archuletalaw@qwest.net

William A. Trine, Esq.
btrine@trine-metcalf.com

Josh A. Marks, Esq.
jam@bhgrlaw.com

Melanie B. Lewis, Esq.
mbl@bhgrlaw.com

Lloyd C. Kordick, Esq.
lloyd@kordicklaw.com

Adele P. Kimmel, Esq.
akimmel@publicjustice.net

s/Loree Trout,  Secretary
Andrew D. Ringel, Esq.
Jennifer L. Veiga, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3300
Fax: 303-293-3238
ringela@hallevans.com
veigaj@hallevans.com

**ATTORNEYS FOR DEFENDANTS PARK COUNTY BOARD OF COUNTY COMMISSIONERS, FRED WEGENER AND MONTE GORE**

H:\Users\RINGELA\park\Carranza-Reyes\reply to suppl.msj-2.doc