**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 2005-WM-377 (BNB)

MOISES CARRANZA-REYES

      Plaintiff,

vs.

PARK COUNTY, a public entity of the State of Colorado and its governing board, THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; PARK COUNTY SHERIFF'S OFFICE, a public entity of the State of Colorado; FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado; MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado,

      Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT PAULSEN'S MOTION TO EXCLUDE
TESTIMONY OF CATHERINE KNOX AND ANTHONY VOLZ UNDER
FED. R. EVID. 702**

_____

      Plaintiff, Moises Carranza-Reyes, by and through his counsel, Bill Trine and Cheryl Trine of

Trine & Metcalf, P.C., hereby responds to Defendant Paulsen's Motion To Exclude Testimony Of

Catherine Knox And Anthony Volz Under Fed.R.Evid.702 (hereinafter referred to as "Motion to

Exclude"), and requests that the Motion be denied for the reasons hereinafter stated.

**I.      INTRODUCTION**

**A.  Plaintiff Has Asserted Four Claims Against Paulsen.**

      Defendant Paulsen asserted that Plaintiff offers the opinions of Knox and Volz to establish

his two claims against Paulsen. ("Motion to Exclude" at 2).  However, Plaintiff has asserted four

1

claims against Paulsen[1] and offers the opinions of Knox and Volz to all claims as they are relevant to those claims, including Plaintiff's due process and equal protection claims under the Fourteenth Amendment.

**B.      The Tenth Circuit Has Not Decided To Ignore U.S. Supreme Court Precedent Followed By The Majority Of Circuits.**

In addition, Paulsen asserted that Plaintiff's Fourteenth Amendment claims must be analyzed under the Eighth Amendment ("Motion to Exclude" at 2, FN 2).  However, deliberate indifference is not applied to equal protection claims.[2]  As for due process, the plaintiffs in the decisions cited by Paulsen[3] claimed that their rights were violated due to the deliberate indifference and did not raise due process claims under *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) and its progeny.  As a result, the Tenth Circuit applied a deliberate indifference analysis without ruling to ignore the clear mandate of *Bell v. Wolfish*, which is followed by the majority of circuits.[4]  *Bell v. Wolfish* is applicable to both

---

[1] In the Final Pretrial Order, Plaintiff asserted the following claims against Paulsen:
"(a) Each of the Defendants' conduct constitutes deliberate indifference to Plaintiff's serious medical needs and inhumane conditions of Plaintiff's confinement in violation of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments.
(b) Each of the Defendants' conduct constitutes cruel and unusual punishment and a violation of due process and equal protection under the law….
(f) The Defendant, Vicki Paulsen, R.N., was negligent in her care and treatment of the Plaintiff while he was incarcerated in the Park County Jail…"  (Final Pretrial Order at 5-6).  If Paulsen was not included in "each of the Defendants," then no constitutional claims would be asserted against her.
[2] Plaintiff's equal protection claim based upon the denial of the fundamental right to safe and humane confinement would be analyzed under a "rationally related to a legitimate penological purpose" standard.  *Washington v. Harper*, 494 U.S. 210, 224-26 (1990).  Plaintiff is not asserting discrimination based on suspect class.
[3] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)).
[4] *See Lyons v. Powell*, 838 F.2d 28, 29 (1st Cir. 1988) (applying *Bell v. Wolfish*); *Lareau v. Manson*, 651 F.2d 96, 103 (2nd Cir. 1981) (same); *Hubbard v. Taylor*, 399 F.3d 150, 159 (3rd Cir.2005) (following two-part test in applying *Bell v. Wolfish* by asking first, whether any legitimate purposes are served by the conditions, and second, whether the conditions are rationally related to those purposes); *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984); *Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir. 1987) (applying *Bell v. Wolfish* entitles pretrial detainees to reasonable medical care unless the failure to supply it is reasonably related to a legitimate governmental objective); *Hare v. City of Corinth*, 74 F.3d 633, 644-45 (5th Cir. 1996) (*Bell v. Wolfish* applied to pervasive conditions of confinement, including medical care, and deliberate indifference applied to "episodic acts or omissions"); *Campbell v. Cauthron*, 623 F.2d 503, 505-07 (8th Cir. 1980) (applying *Bell v. Wolfish*); *Fischer v. Winter*, 564 F.Supp. 281, 302 (N.D. Cal. 1983) (in absence of ruling by Ninth Circuit, assessing conditions of confinement and failure to provide medical care against a "genuine privations and hardship" standard by requiring showing of serious health problems and the failure to take effective

prison conditions and the provision of medical as the Supreme Court has ruled that "the medical care a prisoner receives is just as much a condition of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

> **C.      Only Testimony That Fails Daubert Is Excluded, And Admissibility Rulings Are Afforded Wide Discretion.**

Courts exclude only that testimony that fails to meet *Daubert's* standards. *Cochrane v. Schneider Nat. Carriers, Inc.*, 980 F.Supp. 374, 378-80 (D.Kan. 1997) (excluding only those parts that were based on unreasonable assumptions or on a novel methodology).  *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244-1245 (10th Cir. 2000) (excluding monetized portion of expert's testimony while allowing testimony concerning the concept of hedonic damages).  The Tenth Circuit will not disturb a district court's ruling unless it is "arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  *Daubert* does not require a district court to linger at the "gate" in fulfilling its gate keeping role, unable to proceed to trial without first conducting a series of mini-trials regarding every objection raised. *Id.* at 1234-35.

## II.      ARGUMENT

### A.  Location Of License To Practice Nursing Is Not A *Daubert* Criterion.

Defendant Paulsen asserted that the opinions of Catherine Knox, R.N. should be excluded under Fed. R. Evid. 702 because she is not licensed in Colorado and has no nursing experience or training in Colorado. ("Motion to Exclude" at 2, 9-11).   To support her argument, Paulsen cited a

---

measures to counter them); *Magluta v. Samples*, 375 F.3d 1269, 1276 (11th Cir. 2004) (applying *Bell v. Wolfish* standard of "reasonably related to legitimate governmental goal").

Colorado Supreme Court case that discussed Colorado law,[5] and a Seventh Circuit opinion that discussed expert witness qualification requirements under Fed. R. Evid. 702.[6]

Fed. R. Evid. 702 does not require that a nurse be licensed to practice in the same state as the defendant.   Fed. R. Evid. 702 permits the testimony of a witness qualified as an expert by knowledge, skill, experience, training, or education if his expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) (internal quotations omitted).   "The notion that [Daubert] requires particular credentials for an expert witness is radically unsound."   *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (holding that accountant did not have to have a degree in an academic field in order to testify to discounted present value of lost future earnings because calculation was within competence of C.P.A.).   "Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Id*. "The proffered physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline." *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004).   An expert is one who qualifies as such by reason of special knowledge and experience, whether or not he is authorized to practice in his special field under licensing requirements imposed by statute. *Id*. (rejecting argument that physician experts could not comment on standard of care of nurses and delay in transport to hospital because experts did not practice in jails.) The standard of care applicable to nurses is universal, and does not diminish when the setting is a jail rather than hospital. *Id*. at 1296.  Knox testified that the nursing process is consistent across the nation and that she is qualified to testify as an expert regarding a Colorado nurse (Knox Depo. at 107, **attached as Exh. 1**).

---

[5] *Jordan v. Bogner*, 844 P.2d 664 (Colo. 1993).

**B.  State Law Does Not Require Nursing Expert To Be From Same Or Similar Locality.**

Plaintiff brought claims against Paulsen under federal question jurisdiction and under diversity jurisdiction. (Second Amended Complaint at 1-2).  In federal diversity actions, state law governs substantive issues and federal law governs procedural issues. *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002).  The Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings.  *Id.*  Some circuits recognize an exception to this general rule in Fed. R. Evid. 601, which states that where state law supplies the rule of decision, the competency of a witness shall be determined in accordance with state law.  *Id*. at 290.   While Colorado has established statutory requirements for expert witnesses testifying against physicians,[7] Colorado has not set forth statutory requirements for nurse experts or experts testifying against nurses.

Paulsen cited *Jordan v. Bogner*, 844 P.2d 664 (Colo. 1993), to support her argument that medical expert witnesses must be from the same or similar locality as the defendant ("Motion to Exclude" at 10).   In contrast, the "locality rule" in *Jordan* distinguished the standard of care a physician defendant must meet, and was not an expert witness qualification.  The issue in *Jordan* was whether jury instructions containing both nonspecialist and specialist standards of care constituted reversible error, not whether the "locality rule" applied to expert witnesses.  *Id*. at 668.  In contrast, the applicable standard of care for the practice of nursing in Colorado is that of a "reasonable professional."  *Wood v. Rowland*, 592 P.2d 1332, 1335 (Colo.App. 1978).

**C.  Catherine Knox, R.N. is Qualified To Testify.**

Knox is qualified by knowledge, skill, experience, training, or education because she has attained a Master of Nursing degree in addition to a Bachelor of Science in nursing, a degree in psychiatric mental health nursing, and post graduate study in Public Administration. ("Motion to

---

[6] *Carroll v. Otis Elevator Co*., 896 F.2d 210, 212 (7th Cir. 1990).

Exclude," Exh. A at 1). Knox has experience in corrections work as the Director of Nursing for the Washington Department of Corrections since 2004, and as Health Services Administrator to the Oregon DOC from 1984 to 2001. (*Id*. at 1-2). In addition, she has consulted on health care in the correctional setting since 2001 with many states including New Mexico. (*Id*. at 1).

### D. Testimony on Ultimate Issues Is Admissible If Helpful.

Paulsen asserted that Knox and Volz cannot testify to "deliberate indifference" because (1) it is a legal conclusion; (2) it is not so complicated that an expert is required; and (3) Knox and Volz do not understand it. ("Motion to Exclude" at 6-9). Paulsen asserts that for the medical testimony of Knox and Volz to be reliable, they must understand "deliberate indifference." ("Motion to Exclude" at 9).

Paulsen cited *Sellers v. Butler* to support her assertion that expert testimony on the issue of deliberate indifference is inadmissible. Slip Copy, 2006 WL 2714274 (D.Kan. 2006), **attached as Exh. 2**. In contrast, the *Sellers* Court explained that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id*. at 5, **Exh. 2**. The Court in *Sellers* set forth the rule that an expert "may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id*. Additionally, the *Sellers* Court quoted *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) for the rule that testimony on "ultimate factual questions" aids the jury in reaching a verdict, while testimony which "articulates and applies the relevant law circumvents the jury's decision-making function by telling it how to decide the case." *Id*. at 6.

---

[7] C.R.S. § 13-64-401,

In the Present Case, Plaintiff's experts do not propose to tell the jury what result it should reach without providing any explanation of the criteria upon which their opinions are based.  Knox mentioned the words "deliberate indifference" once in her five page report ("Motion to Exclude," Exh. A at 10).  Volz mentioned the words "violated the Eighth and Fourteenth Amendment" in some form three times in his twelve page report. ("Motion to Exclude," Exh. B at 8-11).   Neither Knox nor Volz stated the two-part test for deliberate indifference, and neither applied the facts to the rule in order to tell the jury how to decide.  Knox and Volz both expressed their opinions in terms of underlying facts and reasoning.  During their depositions when Knox and Volz were asked about "deliberate indifference," they explained their reasoning and the factual basis of their opinions. See discussion *Infra*.

### E.   The Opinions of Knox and Volz Are Helpful.

Paulsen asserted that the opinions of Knox and Volz on violations of the Fourteenth and Eighth Amendments and deliberate indifference must be excluded because they do not assist the tier of fact. ("Motion to Exclude" at 6).  Paulsen based her argument on a Seventh Circuit decision rejecting the appointment of an expert for a plaintiff based upon its finding that the question of deliberate indifference "did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment." *Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997).

  First, a decision concerning appointment of an expert is separate and distinct from the question of admissibility under Fed. R. Evid. 702.  Second, Paulsen's inference that there are no complex questions concerning medical diagnosis and judgment in the Present Case is belied by the complex issues raised in "Defendants' Motion to Limit Expert Testimony by Michael S. Niederman, M.D. and Robert B. Greifinger, M.D,"

Fed. R. Evid. 702 defines "helpfulness" as assisting the trier-of-fact "to understand the evidence or decide a fact in issue." "Helpfulness" is a condition that goes primarily to relevance. *Miller v. Heaven*, 922 F.Supp. 495, 501 (D.Kan. 1996). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02], p. 702-18. An unhelpful opinion is one that is superfluous and a waste of time. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) (finding opinion as to matters about which jurors have general knowledge to be admissible). In his concurrence in *Carroll*, Judge Easterbrook explained that the testimony was admissible because the field was not "junk science," the expert was not a quack, and the expert offered a reasoned basis for his opinion. *Id*. at 214. Judge Easterbrook further observed that just because the subject of expert testimony lies within the ken of laymen does not make it unhelpful. *Id*.

Testimony of Knox and Volz will aid the jury in understanding the evidence and in deciding issues in the case. In order to decide whether Paulsen was deliberately indifferent, the jury must decide whether Paulsen knew of a serious risk of harm and ignored that risk, which may be inferred from circumstantial evidence and from the fact that the risk was obvious. *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001). See also *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) (jury may infer conscious disregard when a prison doctor "responds to an obvious risk with treatment that is patently unreasonable"). The testimony of Knox and Volz will aid the jury in understanding what Paulsen "knew" based on the evidence and her training, and what actions she would be expected to take based on nursing standards of care, policies and procedures so that the jury can decide whether Paulsen knew of a serious risk of harm and ignored that risk by failing to take reasonable actions to abate it. Furthermore, the testimony of Knox and Volz will aid the jury in

understanding medical records and nursing standards of care in order to decide the issues of negligence, due process and equal protection.

### F.  Knowledge of Ultimate Legal Issues is Not a Requirement for Admissibility of Medical Testimony by Medical Experts.

Paulsen asserted that the opinions of Knox and Volz are unreliable because they lack an understanding of the term "deliberate indifference." ("Motion to Exclude" at 8).  However, Fed. R. Evid. 702 does not require medical experts to have knowledge on ultimate legal issues in order for them to offer medical opinions within their areas of expertise.  Knox's and Volz's knowledge of "deliberate indifference" goes to the weight, not admissibility of their opinions.

Moreover, Knox and Volz have a sufficient understanding of deliberate indifference.  Knox testified during her deposition, "I believe that deliberate indifference is when a person…had reason to know or knew of something that caused grave danger or potential for medical harm and did not act to either prevent the harm or to mitigate the risk ("Motion to Exclude" at 8-9).  Paulsen asserted that "had reason to know" is the same as "should have known" (*Id*.).  In contrast, "had reason to know" is more similar to the Tenth Circuit definition of deliberate indifference as, "aware of facts from which the inference could be drawn."  *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001).  The *Garrett* Court also noted that whether the inference was drawn may be concluded from the fact that the risk was obvious.  *See* also *Kikumura v. Osagie*, 461 F.3d at 1294 (well established that knowledge of a substantial risk may be concluded from the very fact that the risk was obvious).

Further, Knox testified during her deposition consistently with that definition of deliberate indifference as follows.  Knox testified Paulsen had reason to know or knew at 3:00 a.m. that Moises was at risk for grave harm because she had already seen Moises twice, had left general instructions for guards to call her if he worsened and they did because he was worse, and the guards gave her a

description of symptoms that verified Plaintiff's condition was worse. (Knox Depo. at 85, **Exh. 1**). She testified that as a result of knowing this information, Paulsen knew Plaintiff's condition had worsened yet again, and she did not act. *Id.* All the directions provided to nurses about patients who present with Plaintiff's conditions for that length of time required Paulsen to call a provider. (*Id.* at 102, **Exh. 1**). Knox testified that the deputy reported to Paulsen that Plaintiff was having trouble breathing, had respirations of about 36 a minute, and urgently complained of chest pain, which in the context of the third day, middle of the night suggested he had the potential to be really ill and it was highly likely he would need intervention that exceeded the capacity of the nurse or jail (Knox Depo. at 86-87, **Exh. 1**). Paulsen had actual knowledge, Knox testified because the facts were there (Knox Depo. at 91-92, **Exh. 1**).

Similarly, Volz correctly identified that delay in transport may constitute a constitutional violation when he opined that Paulsen violated Plaintiff's constitutional rights by delaying transporting him to the hospital on March 8, 2003 (See Volz Depo. at 96-97, attached as **Exh. 3**). Volz testifed that Paulsen knew Plaintiff had a life-threatening condition at 3:45 a.m. based on being told of Plaintiff's respirations (*Id.* at 99-100, **Exh. 3**). Volz stated the correct legal standard when he testified that Paulsen actually knew Plaintiff was in a life-threatening state or condition and he agreed that by not transporting Plaintiff, Paulsen disregarded the risk (*Id.* at 113-14, Exh. 3).

**G. Knox's Opinion That Paulsen Was Negligent Is Reliable And Relevant.**

Paulsen criticized Knox's opinion concerning Paulsen's failure to gather historical information, and failure to examine Plaintiff's throat because Knox did not show that had Paulsen done these things, it would have changed Plaintiff's outcome, and because Knox allegedly admitted her opinions were speculative. ("Motion to Exclude" at 13, 15). In contrast, Knox wrote in her report that Paulsen's interview with and examination of Plaintiff were inadequate both to establish a

baseline to compare subsequent findings and to establish a more definitive diagnosis. ("Motion to Exclude," Exhibit 12 at 7). Knox refused to speculate during her deposition, stating that she could not speculate what specifically Paulsen would have done differently had she asked those questions because the information would have guided her overall assessment. (Knox Depo. at 41-42, **Exh. 1**). Far from being speculative, Knox testified with a reasonable degree of certainty that knowing how long Plaintiff had been experiencing symptoms would have changed Paulsen's conclusion on March 7th because, Knox explained, by telling Plaintiff to let medical know if he did not improve, Paulsen treated his illness as if it was a recent complaint rather than a two-day-old complaint that had not improved. (See Knox Depo. at 42-44, **Exh. 1**). Knox is not speculating because she drew a conclusion from a set of observations based on extensive and specialized experience. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). The Supreme Court has held that experts may testify based on experience alone, or on experience in conjunction with other knowledge, skill, training or education where the methodology used is explained in detail. *Id.* Personal experience, training, method of observation, and deductive reasoning may be sufficiently reliable to constitute a scientifically valid methodology. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2005). Knox relied on her experience, training, skill and education; and she explained the basis of her opinions and her reasoning.

Further, Knox is not required to prove causation in order to testify to a standard of care. Where the reliability of the science is not in dispute, then causation in a specific case goes to the sufficiency of the evidence. *Bitler* at 1236 (where copper sulfide particulate contamination was known to cause propane gas leaks, the question of whether the copper sulfide and grease caused "this accident" goes to the sufficiency of the evidence, not its scientific reliability).

Paulsen asserted that Knox can not reliably opine that Paulsen should have examined Plaintiff's throat because by the time Plaintiff arrived at Summit Medical Center, his throat no longer demonstrated the typical signs of a strep infection ("Motion to Exclude" at 13). In contrast, Dr. Niederman testified as an infectious disease expert that a prior exam might have indicated the presence of infection, exudate or tonsil hypertrophy because with strep A, it is possible for someone's throat to be red, and have exudate, and then not to be red or with exudate (Niederman Depo. at 171-72, attached as **Exh. 4**). Similarly in *Bitler*, the defendant argued that the theory did not fit the facts because the valve functioned properly when tested after the accident. *Bitler v. A.O. Smith Corp.*, 400 F.3d at 1238. The *Bitler* Court ruled that this argument confused *Daubert* with the jury question of which theory, plaintiff's or defendant's, best captured the truth of the matter at issue, and was a factual dispute not a reliability determination. *Id*. The *Bitler* Court emphasized that an impermissible analytical gap exists where the conclusion simply does not follow from the data. *Id.* at 1233-34. Here, Knox's conclusion that Paulsen should have examined Plaintiff's throat in order to establish a baseline and obtain a more definitive diagnosis is based on evidence in the record that Paulsen did not examine Plaintiff's throat. Knox testified that she based her opinion on Plaintiff's deposition in which he testified that Paulsen did not examine his throat, and on the failure of Paulsen to make a record of the results (Knox Depo. at 38-39, **Exh. 1**). Because Knox based her opinion on her experience, skill, education and training as well as facts in the record, her opinion is admissible.

Paulsen is in essence asking this Court to require Knox to conclusively prove her opinions before they are admissible. Plaintiffs "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3rd Cir. 1994), citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (the

inquiry made by a court is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied). See also *Bitler* at 1236, FN 2 (expert's testimony not required to reach absolute certainty, and alleged shortcomings go to the weight of the evidence).   "The judge might think there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result." *Id*. at 1232.  Testimony must only be supported by good grounds based on what is known.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993).

Paulsen asserted that Knox's testimony on Paulsen's failure to examine Plaintiff's throat is unreliable because Dr. Bachman testified he would have assessed Plaintiff as having a viral infection had Paulsen consulted him.  However, Dr. Bachman testified he ordered antibiotics for detainees who likely reported only that they had sore throats, and did not order antibiotics for detainees who had cold symptoms or congestion without the presence of a sore throat (Bachman Depo. at 109-14, attached as **Exh. 5**).  Knox explained her reasoning when she testified that more often than not, the physician does additional workup or examination when contacted by the nurse (Knox Depo. at 106, **Exh. 1**).  Further, Knox's testimony supports the evidence in the record because Knox opined that a provider would "to a probability" have ordered a lab or throat culture, if not antibiotics because some providers treat on symptoms alone (Knox Depo. at 132, **Exh. 1**).

Similarly, Paulsen asserted that Knox must be able to prove that Plaintiff's treatment would have been different had Paulsen called a physician before administering over-the-counter medications to Plaintiff before opining that this conduct violated of the standard of care ("Motion to Exclude" at 14).  This argument must fail for the reasons stated *supra*.  Further, Knox's opinion that Paulsen should have contacted a physician despite lacking knowledge of a strep infection on March

13

6, is based on sufficient evidence in the record.  Knox testified that a registered nurse would know that strep throat is one possibility for a sore, red throat (Knox Dep. at 143, **Exh. 1**), and that Paulsen should have done more to track down the cause of Plaintiff's injury (Knox Depo. at 64, **Exh. 1**).  No matter what particular interventions might have been initiated, Knox testified that Paulsen was obligated to initiate what she could by contacting a provider even prior to transport on March 8 (Knox Depo. at 69-70, **Exh. 1**).  The typical instructions Knox testified she has seen for fever, nausea and vomiting instruct to contact a medical provider for more specific orders if the patient presents a second time or the fever continues for a period of 48 hours (Knox Depo. at 61**, Exh. 1**). Plaintiff's fever persisted for more than 48 hours (*Id.*).  Thus, the evidence supports an opinion that had Paulsen taken a thorough history of Plaintiff, she would have known on March 6 to call a doctor even if she could not at that point diagnose strep throat.

Paulsen asserted there is no evidence that transport to the hospital occurred any later merely because of Paulsen's absence from the jail ("Motion to Exclude' at 15).  Knox wrote in her report that Paulsen's decision to leave the jail at 9:00 a.m. contributed to the delay in Plaintiff's transport to the hospital. ("Motion to Exclude" at 13).  There is evidence in the record to support that opinion. Knox testified that Paulsen left Plaintiff at 9:00 a.m. and he was not transported until 12:45 p.m. (*Id.* at 91).  Knox's opinion is not speculative because there is evidence in the record that Paulsen abdicated her responsibilities to Plaintiff to ensure his timely transport by delegating the assessment and care of Plaintiff to deputies ("Motion to Exclude," Exh. A, Knox Report at 3 (E)), and because her opinion that this contributed to the delay is based on her experience, skill, training and education

Finally, Knox reported that had Paulsen called Dr. Bachman or another provider, it was more likely that Plaintiff would have been treated with appropriate antibiotics, been hydrated and been provided supportive medical convalescence.  *Id*.  Knox testified that if Paulsen had called Bachman,

he more than likely would have treated Plaintiff with antibiotics and supportive medical convalescence (See Knox Depo. at 98, **Exh. 1**).  Knox based her opinion " to a reasonable degree of medical probability" on Knox's experience with the relationship between nurses and providers in a correctional health care setting, review of other cases, nursing protocols for things like sore throat and vomiting that say to contact the doctor after 48 hours if no improvement and that give specific directions about labs (See Knox Depo. at 103-05, **Exh. 1**).  Finally, Knox noted that some providers treat with antibiotics based on symptoms alone without doing lab work (See Knox Depo. at 132, **Exh. 1**).

**H.      Opinions On Deliberate Indifference Reliable Where Basis And Reasoning Explained.**

Paulsen asserted that Knox's opinion that Paulsen was reckless for failing to take Plaintiff's complete history and for failing to contact Dr. Bachman must be excluded as speculative.  However, Knox explained the basis and reasoning of her opinion in her report when she wrote that Paulsen was reckless and callous for not asking Plaintiff how long he had had symptoms, knowing detainees had no access to medical care on March 4, 2003, and knowing there were sick detainees. ("Motion to Exclude," Exhibit A at 11).  Knox further explained that Paulsen was reckless for failing to contact Dr. Bachman despite Plaintiff's worsening condition as he entered the weekend with no medical care when Paulsen was not qualified to independently order treatment, which resulted in Plaintiff being denied medical treatment by a qualified provider ("Motion to Exclude," Exhibit A, Knox Report at 5(C)).  In addition, Knox explained her reasoning in her deposition testimony, *Supra*.  Because Knox based her opinions on her skill, training, experience and education; and on sufficient facts and data in the record; and because she explained her reasoning, her methodology is reliable.

**I.      Knox's Opinions Have A Relevant "Fit."**

To be relevant, evidence must have a tendency to make the existence of a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. The fit requirement means that "the scientific knowledge must be connected to the question at issue" and it does not concern the standard for evaluating that connection. *Paoli* at 745, FN 13.

Paulsen claims there is "no evidence" connecting Paulsen's substandard care with any damage to Plaintiff, and thus Knox's opinions that Paulsen's treatment fell below the standard of care because (1) she did not take complete vital signs or examine Plaintiff's ears, nose and throat; (2) she did not consider the possibility Plaintiff had an infectious or communicable disease; (3) she did not consider Plaintiff's living conditions; and (4) she did not instruct the deputies sufficiently or send a copy of her nursing notes with Plaintiff to Summit Medical Center must be excluded because there is "no evidence" connecting them to any damage to Plaintiff and so they do not tend to make any fact of consequence more or less likely ("Motion to Exclude" at 16-17). In contrast, the quality of Paulsen's examination of Plaintiff is relevant as tending to make it more likely that Paulsen's conduct fell below the standard of care and that she consequently was both negligent and violated Plaintiff's constitutional rights. Similarly, Paulsen's failure to consider the living conditions in the jail is relevant because it tends to make it more likely that Paulsen was deliberately indifferent to a serious risk of injury to Plaintiff, denied him equal protection and due process under the Fourteenth Amendment, and was negligent in her duty to Plaintiff as a nurse and as the jail's Health Services Administrator. For the same reason, Knox's opinions regarding Paulsen's instructions before delegating duties to deputies, and her failure to send nursing notes with Plaintiff to the hospital is relevant to deciding whether Paulsen breached the applicable standards of care and tends to make it more likely that Paulsen was negligent and violated Plaintiff's constitutional rights. Paulsen provided no authority for her assertion that damages must be proven for each piece of evidence for it

to be relevant, and such a rule would be contrary to the present rule that evidence must only tend to prove or disprove any fact of consequence to be relevant and admissible.

### J.   Knox Is Not Expressing An "Earlier The Better" Opinion Because Her Opinions Are Supported By Data.

Finally, Paulsen asserted that Knox's opinions boil down to an "earlier the better" or "more treatment the better" reasoning ("Motion to Exclude" at 17).  Paulsen cited an Eleventh Circuit decision which found the expert's opinion that a four-hour delay on the part of defendants caused his paralysis to be based on one study that analyzed the effects of a 48-hour delay, and thus the Court found there was no support addressing anything less than a 48-hour delay. *McDowell v. Brown*, 392 F.3d 1283, 1299-1300 (11th Cir. 2004).  As a result, the *McDowell* Court found the expert's theory to be "earlier the better" because it drew conclusions on causation where there was no existing data. *Id.* at 1301.

In the Present Case, Knox based her opinions on existing data.  Paulsen does not dispute in her "Motion to Exclude" that she failed to send her nursing notes to the hospital, failed to conduct an adequate exam, failed to consider living conditions, and failed to adequately instruct deputies.  Paulsen's actions, and the applicable standards of care and jail policies are documented in the record. Knox's opinions that Paulsen's actions violated standards of care and jail policies is consequently based on existing data or evidence, and are not "earlier the better" opinions.

### K.   Volz Is Qualified To Opine on the Source of Plaintiff's Illness.

Paulsen stated that Volz is not qualified to testify regarding the source, incubation or typical progression of Plaintiff's illness because he is not an infectious disease expert ("Motion to Exclude" at 18).  Volz is licensed as an Advanced Practice Nurse in the state of Colorado, which includes prescriptive authority and has received a Masters of Science in Nursing and Post Masters Certificate

as an Adult Nurse Practitioner in addition to a Bachelor of Science in Nursing ("Motion to Exclude," Exhibit B at 2). Volz testified in his deposition that as a registered nurse with a bachelor's degree in nursing, he has been taught basic infectious disease, transmission of infectious diseases, and evaluation and prevention (Volz Depo. at 24-25, **Exh. 3**). He testified he would not necessarily defer to an infectious disease expert on issues such as incubation periods because some of that is basic knowledge in nursing, and he holds himself out as competent as a registered nurse in the prevention and spread of infectious diseases, but he would defer if an infectious disease physician had an opinion that transmission would occur in a certain way (Volz Depo. at 26-27, **Exh. 3**). He testified that nurses practice infection control and prevention of communication of infectious disease in daily practice (Volz Depo. at 26, **Exh. 3**). Volz is eminently qualified through skill, experience, education and training to express the opinion that the conditions in Park County Jail produced an environment "highly conducive to the transmission of communicable diseases" ("Motion to Exclude" Exhibit B at 3, Summary #1).

### L.   Volz's Opinions Are Relevant And Reliable.

Paulsen's criticisms of Volz's testimony must fail for the same reasons expressed in regards to Knox's testimony, *Supra*. Volz based his opinions on sufficient facts which were stated accurately in his report. Volz stated in his report that Plaintiff obtained a sample of his urine containing blood and showed it to a deputy, but this "very important piece of information that should have been passed along to the nurse" never was ("Motion to Exclude," Exh. B at 6, # 4). Volz did not assert during his deposition that anyone told Paulsen about blood in Plaintiff's urine or spittle (Volz Depo. at 68, 82, **Exh. 3**), and he did not base his opinions incorrectly on Paulsen being informed of blood in Plaintiff's urine and spittle.

In addition, Volz based his opinion on the correct information on transport in his report. Volz correctly stated that the INS told Paulsen it would be at least three hours before transport could be arranged, but "gave Nurse Paulsen permission to transport MCR if his symptoms worsened" ("Motion to Exclude," Exh. B at 8).  Volz concluded that rather than waiting 3-4 hours to arrange transport, Paulsen should have gone ahead and coordinated transport at that moment as she was given permission by INS to go ahead "if she felt necessary" (*Id*.).  Volz did not acknowledge in his deposition that the preceding statement about transport was incorrect, as Paulsen asserted. (Volz Depo. at 90, **Exh. 3**).  Further, Volz testified that Paulsen had the right independent of the INS to transport if she felt it was an emergency (Volz Depo. at 166, **Exh. 3**).

Plaintiff disputes Paulsen's claim that several of Volz's opinions are irrelevant.   Dr. Niederman testified that just because Dr. Keeling at Summit Medical Center did not observe signs of strep does not mean those signs did not exist earlier or that Dr. Keeling did not miss the signs of strep (Niederman depo. at 171-73, **Exh. 4**).  Paulsen's nursing notes are relevant to establishing a baseline and accurate diagnosis, and are relevant as tending to prove Paulsen's care was negligent and violated Plaintiff's constitutional rights.  Volz was not offering his opinion to prove that Plaintiff was dehydrated.  Instead, Volz wrote in his report, "In light of his ongoing nausea and vomiting and inability to hold down fluids, he should have been examined more closely for dehydration…this examination would have more accurately reflected his level of illness in light of his symptoms. ("Motion to Exclude," Exh. B at 5).  Volz testified that Plaintiff was highly likely dehydrated on March 7th if apply the nursing process, knowing Plaintiff had been ill for three days assuming the 4th was the first time he reported fever and nausea, and had been vomiting with diarrhea for 2-3 days (Volz Depo. at 65-66, **Exh. 3**).  Dr. Timothy Keeling testified that Plaintiff could have been dehydrated when he was admitted to Summit Medical Center because he could not void (Keeling

Depo. at  88, **Exh. 6**).  Paulsen's alleged failure to check for dehydration is relevant as tending to prove her care was negligent and that it violated Plaintiff's constitutional rights.  Similarly, Volz's opinion that Paulsen's negligence and failure to transport sooner resulted in Plaintiff's injury is well supported by facts in the evidence that Paulsen violated standards of care and jail policies, and is not an "earlier the better" theory ("Motion to Exclude," Exh. B at 3-12).

## CONCLUSION

In conclusion, for all of the foregoing reasons, DEFENDANT PAULSEN'S MOTION TO EXCLUDE TESTIMONY OF CATHERINE KNOX AND ANTHONY VOLZ UNDER FED. R. EVID. 702 should be denied.

Dated this 2nd day of July, 2007.

Respectfully submitted,

By:    /s/ William A. Trine, Esq.
          William A. Trine, #577
          Cheryl L. Trine, #38150
          Trine & Metcalf, PC
          1435 Arapahoe Avenue
          Boulder Colorado 80302-6390
          (303) 442-0173

          Joseph J. Archuleta, #19426
          Joseph J. Archuleta and Associates
          1724 Ogden Street
          Denver Colorado 80218
          (303) 837-1642

          Lloyd C. Kordick, #6298
          Lloyd C. Kordick & Associates
          805 S. Cascade Avenue
          Colorado Springs Colorado 80903
          (719) 475-8460

          Adele Kimmel, Esq.
          Trial Lawyers for Public Justice

1717 Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20030
(202) 797-8600

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 2nd day of July, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Joseph J. Archuleta, Esq.
archuletalaw@qwest.net

Adele P. Kimmel, Esq.
akimmel@publicjustice.net

Josh A. Marks, Esq.
jam@bhgrlaw.com

Lloyd C. Kordick, Esq.
lloyd@kordicklaw.com

Andrew D. Ringel, Esq.
ringela@hallevans.com

Melanie B. Lewis, Esq.
mbl@bhgrlaw.com

/s/ Elizabeth Peach, Legal Assistant
Cheryl Trine
Trine & Metcalf, P.C.
1435 Arapahoe Ave.
Boulder, CO   80302-6390
303-442-0173
Fax: 303-443-7677
cltrine@trine-metcalf.com
ATTORNEYS FOR PLAINTIFF