1

**EXHIBIT**
A-59

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF COLORADO

3   Case No. 05-CV-00377

4   _____

5   MOISES CARRANZA-REYES,

6      Plaintiff,

7   vs.

8   PARK COUNTY BOARD OF COUNTY COMMISSIONERS, et al,

9      Defendants.

10   _____

11      Proceedings before BOYD N. BOLAND, United States

12   Magistrate Judge, United States District Court for the

13   District of Colorado, commencing at 9:05 a.m., March 13,

14   2007, in the United States Courthouse, Denver, Colorado.

15   _____

16      WHEREUPON, THE ELECTRONICALLY RECORDED

17   PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18   _____

19                          APPEARANCES
20      MR. BILL TRINE, ESQ. and MS. CHERYL TRINE, ESQ.
           Appearing on behalf of the Plaintiff.
21                  MR. ANDREW RINGEL, ESQ.
        Appearing on behalf of Defendants Park County,
22              Fred Wegner and Monty Gore.
                 MS. MELANIE LEWIS, ESQ.
23              For Defendant Vicki Paulson

24   _____
                 FINAL PRETRIAL CONFERENCE

25


                 AVERY/WOODS REPORTING SERVICE, INC.
        455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
              303-825-6119        FAX 303-893-8305

P R O C E E D I N G S

(Whereupon, within the electronically recorded proceedings are herein transcribed, pursuant to order of counsel.)

THE COURTROOM DEPUTY:   (Inaudible)

THE COURT:  Thank you, please be seated. We're here this morning in case 05-CV-377, Carranza-Reyes against Park County for a final pretrial conference.  May I have appearances, please.

MR. TRINE:  Yes, Bill Trine and Cheryl Trine for the plaintiff.  And Your Honor, Lloyd Kordick was tied up in traffic and is probably running a little late and so is Joe Archuletta but they indicated we could go ahead and get started.

THE COURT:  Okay.  Thank you.

MR. RINGEL:  Good morning, Your Honor, Andrew Ringel on behalf of the Board of County Commissioners of Park County, Fred Wegner and Monty Gore.

THE COURT:  Thank you.

MS. LEWIS:  Good morning Melanie Lewis on behalf of defendant Vicki Paulson.

THE COURT:  Thank you.  I've been through the proposed final pretrial order.  There are a few things that I want to talk about.  If I skip over anything that any of you wants to discuss, please jump in at an

1    appropriate time and we'll do that.

2              (Whereupon, there was a pause in the

3    proceedings at this time.)

4              THE COURT:  We're just getting started.  Good

5    morning.  This doesn't seem to have my notations on it.

6    I'm just looking, hold on, please.  So I'm looking at

7    the list of witnesses, pretty extensive.  Any problems

8    with anybody's list of witnesses?  Mr. Trine?

9              MR. TRINE:  No, Your Honor.

10             THE COURT:  Mr. Ringel?

11             MR. RINGEL:  No, Your Honor.

12             THE COURT:  Okay.  Ms. Lewis?

13             MS. LEWIS:  No.

14             THE COURT:  Okay.  I see on part 9, special

15   issues, the problem about an interpreter.  In a civil

16   case how does one address that and have you figured that

17   out?  Does the court supply it?  Do you have to supply

18   it and pay for it?  Does the court supply it and you

19   have to pay for it?

20             MR. RINGEL:  I don't know, Your Honor, I put

21   that in because I knew that it was an issue and I cited

22   the rule.  I know that the court supplies them in

23   criminal cases.

24             THE COURT:  Right.

25             MR. RINGEL:  And I know that there is people

1      that are federally certified interpreters.

2              THE COURT:  Right.

3              MR. RINGEL:  But, you know, we can work

4      together and potentially file an appropriate motion with

5      Judge Miller once we get a trial date, I assume.

6              MR. TRINE:  Yeah, I would think -- and, Your

7      Honor, we haven't discussed this at all but I think

8      ultimately we could probably agree upon an interpreter

9      that's certified and perhaps split the cost.

10             THE COURT:  There are -- the court has

11     certified interpreters but they're under great demand in

12     the criminal arena.  So you should do some research on

13     it I guess.  You can talk to Charlotte Hoard who is the

14     person in the clerk's office who handles interpreters

15     for us and she may be able to help you identify

16     available interpreters.

17             MR. RINGEL:  Just so Your Honor knows, we used

18     two different federally certified interpreters to take

19     some depositions --

20             THE COURT:  Oh, good.

21             MR. RINGEL:  -- in this case.  So we're

22     familiar with some of those people and I know some of

23     them work in this courthouse, but we at some point we're

24     going to talk about a trial date but it would be my

25     assumption we're looking at some time in 2008 and if

1    that's the case we should have plenty of time to deal

2    with that issue.

3              THE COURT:  I think you're right on both

4    points.  You should be looking for trial in 2008, and

5.   that ought to give you plenty of time.

6              I'm going to ask you when we're done here to

7    go to Judge Miller's chambers on the ninth floor and ask

8    his secretary for a trial date.  I think she'll give you

9    one.

10             MR. RINGEL:  If we're nice to her, Your Honor?

11             THE COURT:  Pardon me?

12             MR. RINGEL:  If we're nice to her, Your Honor.

13             THE COURT:  If you're real nice, that's right.

14             Also, under special issues, equal protection

15   and due process violations.  Are there new claims not

16   asserted in the complaint?

17             MR. TRINE:  Your Honor, I know that we

18   asserted those claims in the first amended complaint and

19   I didn't bring the second amended complaint with me.  I

20   assume they're in there.  If not it was an oversight.

21             MR. RINGEL:  Your Honor, I reviewed the second

22   amended complaint this morning and the words "equal

23   protection" and "due process" don't appear in it at all.

24   It's a Fourteenth Amendment and an Eighth Amendment

25   cruel and unusual punishment and medical care case pled

1    and negligence.

2              In addition, we clearly in our respective

3    motions for summary judgment set out what we believed

4    that the claims were and in the responses filed by the

5.   plaintiff there's no indication that there was any due

6    process or equal protection claim.  So, you know, we

7    don't think they're properly pled and if this court

8    would like to amend the complaint in the final pretrial

9    order we would ask leave of the court to file new

10   dispositive motions on what we believe are these new

11   claims.

12             THE COURT:  Mr. Trine?

13             MR. TRINE:  Your Honor.

14             THE COURT:  What I hear Mr. Ringel at least --

15   I don't here Ms. Lewis's thundering in her silence, but

16   anyway what I heard them say is that they are not going

17   to resist too much if I allow the claims to be asserted

18   through amendment through the final pretrial order but

19   if that happens then they want to have the right to file

20   motions for summary judgment and address them as claims

21   because they didn't think they were in the suit and so

22   their presently pending motions don't address them.

23             MR. RINGEL:  Not entirely correct.  We object

24   vigorously, Your Honor, and would file an appropriate

25   objection if this court is going to allow them to be in

1    the final pretrial order, but as a fall-back position we

2    would also like -- if they are ever ultimately allowed

3    by the district court we would like the opportunity to

4    file dispositive motions on these new claims.

5              MS. LEWIS:  And since Andrew -- Mr. Ringel --

6    said it so articulately, we just join in what he said.

7              MR. TRINE:  And Your Honor, we would like the

8    pretrial order approved which includes those claims and

9    in the second amended complaint we also allege the

10   failure of the jail to provide an interpreter which is a

11   due process claim, if we didn't use that language.

12             But in any event, we would like this pretrial

13   order approved and if they want leave to file a motion

14   with regard to due process we'll just respond to that.

15             THE COURT:  Do you know the reception number

16   of the second amended complaint, Mr. Ringel?

17             MR. RINGEL:  I do, Your Honor, it's Document

18   No. 14.

19             (Whereupon, there was a pause in the

20   proceedings at this time.)

21             THE COURT:  Do you need additional discovery

22   if the due process and equal protection claims are

23   permitted?

24             MR. RINGEL:  Well, since I didn't know that

25   they existed before getting the final pretrial order, I

1    would potentially need limited discovery.  I don't even

2    know who they're brought against, Your Honor.  But

3    assuming they're brought against my clients, we would

4    request the opportunity for five interrogatories, one

5.   request for production of documents, and depending on

6    what the response for those would be potentially a

7    limited deposition of the plaintiff.

8         MS. LEWIS:  Your Honor, and we would join in

9    that.  Mr. Trine said that the allegation supporting

10   that claim was a failure to provide an interpreter and

11   I'm unsure if that means that the claims are brought

12   against the nurse, Vicki Paulson, who is our client and

13   what the scope of that claim is, so it seems appropriate

14   to us as well to engage in some limited discovery to try

15   to explore those issues since the scope of the claim is

16   not laid out in the second amended complaint.

17        MR. TRINE:  Your Honor, we by no means attempt

18   to limit a claim of violation of due process to a lack

19   of an interpreter.  All I was saying is that we have

20   alleged a lack of an interpreter as a constitutional

21   violation and that can only be a due process claim.

22        THE COURT:  Well, where is it alleged?

23        MR. TRINE:  Your Honor, I didn't -- I -- I

24   don't have a copy of the second amended complaint with

25   me but -- Your Honor, I want point out though, the only

1    complaint that -- unfortunately that we brought with us,

2    the original complaint --

3              THE COURT:  Twice superseded.

4              MR. TRINE:  -- clearly alleges the conduct was

5    cruel and unusual punishment and a violation of due

6    process and equal protection under the law.  The first

7    amended complaint as I understand contain that language

8    that was in paragraph 49 of the first complaint.  I -- I

9    assume it's pretty much in the same location in the

10   first amended, and I'd be very surprised if we left that

11   out of paragraph 49 of the second amended complaint but

12   apparently we did according to the --

13             THE COURT:  Well, yeah, 49 isn't right.  The

14   conduct of each of the defendants constitutes a reckless

15   or callous disregard of the constitutional rights

16   entitling them to punitive damages.

17             MR. TRINE:  Okay.

18             MR. RINGEL:  Your Honor, I apologize.  If

19   Mr. Trine is referring to the last sentence of paragraph

20   47 it does say the conduct was cruel and unusual

21   punishment and a violation of due process and equal

22   protection under the law.

23             MR. TRINE:  Yeah, I thought we had alleged

24   that, Your Honor.

25             THE COURT:  I see it.  Okay.

1          MR. RINGEL:  But you know --

2          MR. TRINE:  And if not it had been an

3    oversight on our part.

4          MR. RINGEL:  I mean I'm at a loss to

5    understand how either of those claims are cognizable in

6    this case and -- you know, if Your Honor wants to allow

7    at this late date to proceed on those claims that's

8    fine, Your Honor has the authority to do that, but we

9    would at least request limited discovery and the

10   opportunity for a dispositive motion because we don't

11   see how there's any allegations of similarly situated

12   persons let alone any proof, and despite what Mr. Trine

13   is saying I don't see how the failure to provide an

14   interpreter is some kind of substantive due process

15   allegation, particularly given the Supreme Court's

16   jur -- juris prudence that the explicit textual source

17   of claims needs to govern and clearly that's the --

18   Fourteenth Amendment here adopting the Eighth Amendment

19   standard because this person is a pretrial detainee and

20   not a convicted individual, Your Honor.

21         THE COURT:  Well, I mean I think that -- I

22   mean hasn't the guts -- part of the guts of the claim

23   have been that ICE detainees are put in Pod 2 and Pod 2

24   -- or 4 or one of them -- and it's just disgusting.  I

25   mean, you disagree, I understand that, but their claim

1    has been that this is a third world prison cell.

2         MR. RINGEL:  But there's no allegations that

3    it's any different from anything else.  There's no

4    evidence that it's any different than anything else.

5.   And so, I mean, you know, Your Honor is going to do what

6    Your Honor is going to do and I don't need to --

7         THE COURT:  Well, I'm trying to do the right

8    thing here, and I'm trying to get guidance.

9         MR. RINGEL:  Well, here's the bottom line,

10   Your Honor.  When I file a 50-plus page motion for

11   summary judgment and say these are the remaining claims

12   and sight the Eighth Amendment standard and the

13   Fourteenth Amendment standard for conditions of

14   confinement and medical care and Ms. Lewis does the same

15   thing on behalf of her client, and then the response

16   contains not one iota of information alleging, oh, by

17   the way, you forgot this due process claim.  Oh, by the

18   way you forgot this equal protection claim.  What are we

19   supposed to do in thinking that all the claims are

20   encompassed by what we argued on the summary judgment?

21   That's my fundamental problem, Your Honor.

22         MR. TRINE:  My only response to that, Your

23   Honor, we have to assume when someone files a motion for

24   summary judgment on a particular point that that's the

25   only point we have to address, and they're obviously not

1   filing a summary judgment on other matters not contained

2   in the summary judgment.

3          MR. RINGEL:  But it's not a partial summary

4   judgment, it's global and that's clearly the case.  The

5.  other point I would make, Your Honor, is we've asserted

6   qualified immunity here on behalf of the individual

7   defendants, and that's wrapped up in this as well.  We

8   think they're entitled to qualified immunity.  It's pled

9   in the answer, it's pled in the final pretrial order,

10  it's argued in summary judgment, and we would continue

11  to assert that to these new claims as well.

12         THE COURT:  So, it's here.  It's in the

13  complaint.  Maybe not as fully as you'd like it but I do

14  see it there.  It's here in the pretrial order.  In

15  discussions which we've had I think that part of the

16  proof that the defendants -- that the plaintiff has

17  presented is that this pod is particularly filthy, which

18  sounds in equal protection, so I'm going to -- I'm not

19  going to strike that claim.

20         Then maybe we're here too early.  I don't want

21  to have piecemeal motions for summary judgment that

22  Judge Miller has to work through.  Should I allow some

23  more discovery, limited; ask that you withdraw the

24  pending motions for summary judgment and allow you time

25  to submit global ones that include all of the claims or

1   should I do something different than that?

2         MR. RINGEL:   I don't think it makes sense to

3   resubmit summary judgment, Your Honor.   I think that we

4   could do narrow summary judgment on these remaining

5   claims as a supplemental briefing on summary judgment

6   rather than -- the problem, Your Honor, is, under Judge

7   Miller's rules there are real specific requirements

8   about what you need to do with factual aversions and the

9   summary judgments take up this much and to -- the

10   logistics in refiling everything doesn't make a lot of

11   sense if the only issues are whether there's a

12   cognizable due process and a cognizable equal protection

13   claim.

14         MS. LEWIS:   And, Your Honor, the only point of

15   clarification that we would request is to know whether

16   these -- whether these claims are brought against the

17   nurse also, because what we're talking about seems to be

18   the jail conditions, and we're still unclear what the

19   claim is against her.

20         THE COURT:   Well, it's in the first claim for

21   relief and it says against Park County, Gore,

22   individually, and the sheriff's department -- Park

23   County, Gore individually and in his capacity as a

24   captain; is that right?   Is it just against --

25         MR. TRINE:   That's correct, Your Honor.

1    MS. LEWIS:  And given that then the nurse

2  wouldn't need to refile her motion for summary judgment

3  but the only difficulty is is that our motion for

4  summary judgment incorporates parts of the county's

5.  factual statements and the response -- the plaintiff's

6  response likewise kind of incorporates both the facts in

7  Paulson's summary judgment and the county's and so they

8  are intertwined.  So if the county was to file a new

9  brief then we would have to look at how that impacts our

10  brief whether it makes sense to refile it if they refile

11  something new, or if it would make sense just to keep it

12  as is.

13      I would say we might have to file some sort of

14  clarification depending on if they have to withdraw and

15  file something new.  I don't know how that impacts our

16  summary -- summary judgment motion.

17      MR. TRINE:  Your Honor, I don't feel there's

18  any need for reopening discovery in this case.  This

19  issue's been in the case since we filed the first

20  amended complaint.  We have had over 30 depositions.  We

21  have had extensive discovery, I don't know how many

22  thousands of documents.  I think that all of the

23  testimony that can be derived out of this case has been

24  derived.

25      With regard -- with regard to filing an

1     additional motion if this was an oversight on defense

2     counsel's part in failing to address this issue in the

3     motion for summary judgment then I -- I guess we'd have

4     to say whether there's excusable mistake or error

5     involved and they're not including it before deciding

6     that we're going to go through another brief writing

7     session.

8           THE COURT:  Okay.  Well, here's what I'm going

9     to do.  I'm going to leave that claim in the pretrial

10    order as it's asserted here, finding that it is alleged

11    in the second amended complaint.  I will entertain a

12    motion to reopen discovery and for leave to file

13    supplemental dispositive motions, and any such motion to

14    reopen discovery and file an additional or supplemental

15    motion should be submitted, if at all, by March 30 --

16    March 23rd.

17           MR. KORDICK:  Judge, could I ask for a

18    clarification?  This is Lloyd Kordick for the record.

19           THE COURT:  Yes.

20           MR. KORDICK:  Are you saying that's a motion

21    for them to ask the court to reopen discovery?

22           THE COURT:  Correct.

23           MR. KORDICK:  Or is it -- okay.

24           THE COURT:  I hear Mr. Ringel saying, and

25    Ms. Lewis joining in, that they didn't recognize that

1    there were equal protection and due process claims in

2    this case.  That they didn't recognize that because of

3    the manner in which the complaint is drafted, but more

4    to the point in view of the way that the initial summary

5.   judgment motions were briefed.  So, I'm going to allow

6    them to seek leave to reopen discovery and to file

7    supplemental summary judgment briefs and they'll have to

8    persuade me that their failure to see those claims

9    justifies reopening, and if -- me or Judge Miller, I'm

10   not sure who will make the decision -- and if they

11   persuade the appropriate judge then I guess they'll get

12   to do it and if they don't then they won't.

13            MR. KORDICK:  Thank you.

14            (Whereupon, there was a pause in the

15   proceedings at this time.)

16            THE COURT:  At the very end of part 9 the

17   defendants say here -- and then it appears a couple of

18   other times -- but they haven't gotten certain documents

19   that they think -- that they've tried to obtain through

20   immigration and customs enforcement and maybe from the

21   Republic of Mexico and that they are reserving their

22   right to file a motion to amend the final pretrial

23   order.

24            I am striking that language not because you

25   don't have the right to file a motion to amend the final

1   pretrial order, you do, and in order to amend the final

2   pretrial order you'll have to show the necessity to

3   avoid manifest injustice.  I'm striking the language

4   because I don't want you to think that somehow you have

5.   some different or other right than that.

6           So when you -- I'm now at part 13 concerning

7   the trial.  Jury trial, 15 trial days.  So when you go

8   to Judge Miller's chambers and ask for a trial date

9   that's what you're going to ask for, right?

10           MR. TRINE:  Yes, Your Honor.

11           MS. LEWIS:  The only concern from our side is

12   that given the number of witnesses involved in the case

13   and the addition of these new claims or -- of the equal

14   protection and due process claims that three weeks might

15   seem conservative.  And it's not in the pretrial order

16   but sitting here now it looks like we might need a

17   little more time.

18           THE COURT:  Well, I'll tell you given the list

19   of witnesses and exhibits you'd need three years to try

20   this case, so I agree with you.  Given what you've given

21   me here, this case is not a 15-day trial, but usually

22   lawyers then say well out of an abundance of caution

23   we've included lots of witnesses we won't call and lots

24   of exhibits we're sure we won't use, but you never know.

25   Okay.

1          So if you think 15 days is not long enough,

2     how much time do you think you'll need?

3          MS. LEWIS:  Um, four weeks, so maybe 20 days.

4          THE COURT:  Okay.  What do you think,

5     Mr. Ringel?

6          MR. RINGEL:  I would say that if the plaintiff

7     is limited to seven and a half days of trial testimony

8     we can put our case on in seven and a half days, but you

9     have more experience with Judge Miller and how he runs

10    his trial docket than we do.  If the time is not going

11    to be equal and the plaintiff is allowed to do their

12    case, my suspicion is given what I understand from

13    plaintiff's case is that it will take longer than seven

14    and a half days for them to put their testimony in.

15         THE COURT:  Well, at least a day will be used

16    up in choosing a jury and charging a jury.  Don't you

17    all agree with that?  So that takes 15 trial days to 14.

18    Can you put your case on in seven days?

19         MR. TRINE:  Your Honor, we can if we don't

20    call any of the defendants for cross-examination in our

21    case.  If we do it will take more than seven days, it

22    will probably take eight, eight and a half days.

23         THE COURT:  So I think maybe Ms. Lewis is

24    right, you ought to ask for four weeks.

25         MR. RINGEL:  The other concern that I would

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119          FAX 303-893-8305

1  just raise, as I suspect that will be enhanced jury

2  issues given the nature of the allegations in this case

3  and both sides probably wanting to explore the

4  immigration issue, particularly if we're having a trial

5  in the fall of 2008.  I can imagine that there will be

6  significant political discourse about that and that's a

7  central issue (inaudible)

8          THE COURT:  I think your trial will be the

9  spring of 2008.

10         MR. RINGEL:  Okay.

11         THE COURT:  It's about a year from the

12  pretrial conference to his trial date.

13         MR. RINGEL:  Okay.

14         THE COURT:  Approximately.  And interpreters

15  tend to slow things down a little bit.

16         MR. TRINE:  To be on the safe side I'd have to

17  agree, we probably should have 20 days, don't you think

18  Lloyd?

19         MR. KORDICK:  Yes.

20         THE COURT:  Okay.

21         MR. RINGEL:  And I don't have any objection to

22  that, Your Honor.

23         THE COURT:  All right.  I'll make that change

24  then.  So about exhibits.  Anybody have problems with

25  anybody else's exhibits?  There are a lot of them.

1          MR. TRINE:  Well, Your Honor, I didn't review

2     their exhibit list for the purpose of objections at this

3     time I thought we'd --

4          THE COURT:  No, that's all right.  I'm not

5     looking for those objections, I'm -- I'm looking for --

6     you know, maybe you would say, gosh, there are 145

7     exhibits and I've never seen a hundred of them or -

8          MR. TRINE:  Oh, I see.

9          THE COURT:  -- something like that.  Well,

10    here are my problems.  One is, there are a lot.  Two is,

11    in a number of instances, they're not Bates numbered.

12    So, for example, I'm looking at plaintiff's Exhibit 42.

13    I think it's plaintiff's -- yeah, Plaintiff's Exhibit

14    42.  You've got 32 photographs.  Now -- and this is

15    probably a bad example, but at trial the photographs

16    that they try to introduce may not be the same

17    photographs you've ever seen before and how is Judge

18    Miller supposed to know?

19          Or I think in some more down later on there's

20    something about medical records.  Those are even more

21    difficult because you say, gosh, we saw a lot of medical

22    records but we never saw these.  And how is Judge Miller

23    to know whether they were previously disclosed or not?

24          Well, the way I try to address that is by

25    requiring that you Bates number them.  And here the

1    Bates numbers have been used differently.  You've Bates

2    numbered them -- Exhibit 65, for example, is Bates

3    numbered 1 through 12 -- I just made that up, but for

4    example.  Usually they are serially Bates numbered so

5    that you -- the first exhibit is 1 and the last exhibit

6    is, in this case, 175,214 or something like that.  And

7    so there's an ability to determine whether the document

8    previously was disclosed or not.

9            The other thing I didn't see in here is the

10   language about when the exhibits are going to be

11   exchanged and when the objections that Mr. Trine

12   mentioned under the rules are going to be made.

13           MR. RINGEL:  That's on page 46.

14           THE COURT:  It is.  Okay.  I just missed it.

15           MR. RINGEL:  And we -- to give ourselves some

16   leeway we gave ourselves some more time than the

17   presumptions given the volume of exhibits.

18           THE COURT:  Okay.  See I went and renumbered

19   or double spaced --

20           MR. RINGEL:  It's paragraph -- Section 7

21   subparagraph 3, Your Honor.

22           THE COURT:  Oh, there it is.  Copies of

23   exhibits must be exchanged by the 27th and objections by

24   April 13th, and that's fine.

25           MR. RINGEL:  And it -- just so Your Honor

1   understands, I mean to save trees, typically what we do

2   in these kind of cases is talk to the other side and

3   make sure we have copies of everybody's exhibits and

4   what we -- that we know what each of them are and if not

5.  we exchange those copies rather than, you know, redoing

6   every single page of discovery.

7          THE COURT:  All right.  That's -- that sounds

8   fine.  What you should do is between now and the

9   deadline to file objections is make sure, as Mr. Ringel

10  says, that you have the other side's exhibits; that you

11  know what they are; that they've been previously

12  disclosed, and if there's any problem you bring it to my

13  attention or to Judge Miller's attention sooner rather

14  than later so that that can be addressed.

15         Number 48 of the -- again, I think it's the

16  plaintiffs exhibits, let me look.  Number 48 of the

17  defendants exhibits it says that you want to have as an

18  exhibit the responses to interrogatories and requests

19  for production.  I don't have a problem with that if

20  you're using it for purposes of the interrogatories.  If

21  you are by doing that saying every document produced in

22  response to the first set of production requests is

23  incorporated by reference I don't allow that .

24         MR. RINGEL:  No.  It's just the pleading

25  itself, Your Honor.

1        THE COURT:  Okay.

2        MR. RINGEL:  Yeah.

3        THE COURT:  Do you agree with that Mr.  Trine?

4        MR. TRINE:  Yes, that's fine, Your Honor.

5.       THE COURT:  Okay.

6        MR. RINGEL:  That's the title of the pleading

7 and the date and that's what the purpose of that

8 reference is.

9        THE COURT:  And that's great.  You're not --

10 that's not the only view of that.  I have had people

11 say, no, no, we incorporated every document.

12       MR. RINGEL:  I wouldn't make that argument

13 having listed more than 184 exhibits, Your Honor.  I

14 think that would be hard to swallow for Judge Miller.

15       THE COURT:  I think it would be.  Again, I've

16 struck footnotes one and two, again, not because you

17 can't amend but because I don't want you to think that

18 I've created some greater right than the law allows.

19 You may amend to avoid manifest injustice.

20       What about these expert files?  What are you

21 doing there, Mr. Ringel?  No. 91, 92, 94.  Are you

22 trying to -- again, I'm just nervous that you're saying,

23 well, by doing that every document in his file, even if

24 we forgot to specifically list it in our hundred and

25 some exhibits is incorporated.

1          MR. RINGEL:  It's only for the purpose of the

2    expert potentially explaining his or her opinion by

3    reference to documents that he or she reviewed.  It's

4    not intended to be broader than the documents but to the

5    extent that there's something that the expert put in the

6    expert's file that is unique to that expert, a study,

7    something along those lines, that's -- that's the

8    purpose of that.

9          THE COURT:  Okay.

10          MR. RINGEL:  But it's not a back door way to

11  not list an exhibit with specificity.

12          THE COURT:  Right.  184.  Demonstrative

13  exhibits.  Do you want a deadline for exchanging

14  demonstrative exhibits?

15          MR. RINGEL:  That seems reasonable, Your

16  Honor.

17          MR. TRINE:  Yes, that sounds --

18          MR. RINGEL:  How about, just off the top of my

19  head, 45 days before trial.

20          MR. TRINE:  Yeah, that will be fine, Your

21  Honor.

22          THE COURT:  All right.  So under part 7 where

23  you talk about the exchange of exhibits I'll provide

24  that demonstrative exhibits must be exchanged 45 days

25  before trial.

1          MR. RINGEL:  Just so I understand, Your Honor,

2    so that there's clarity in the record, I assume that

3    includes any blown-up version of any other exhibit.  Is

4    that right?

5          THE COURT:  Well, does it?  Do you have to say

6    I'm going to put this one on the Elmo, which is the --

7          MR. RINGEL:  No, no not like that, but if for

8    example you wanted to blow up an exhibit that was -- the

9    plans, for instance, of the jail there's going to be a

10   demonstrative exhibit about that, that's larger in size,

11   I assume that that demonstrative exhibit deadline is

12   inclusive of that.  Is that a fair assumption?

13         THE COURT:  Any objection to that, Mr. Trine?

14         MR. TRINE:  Well, that's a little ambiguous.

15   I assume that what Andrew is talking about is having one

16   of the exhibits that's -- that's introduced as evidence

17   blown up.  But as you pointed out if it's put on an

18   overhead for the jury to see we wouldn't want to be

19   precluded from that because we didn't list it as a

20   demonstrative exhibit.

21         MR. RINGEL:  And that's entirely fair.  I

22   mean, I don't know --

23         THE COURT:  So how about this:  Demonstrative

24   exhibits must be exchanged at least 45 days before trial

25   including enlargements of exhibits.

1          MR. TRINE:  That's including --

2          MR. RINGEL:  Physical enlargement.

3          MR. TRINE:  Physical enlargement of exhibits.

4          THE COURT:  Okay.

5          MR. RINGEL:  Is that fair?

6          THE COURT:  All right.

7          MR. TRINE:  That will cover it.

8          MR. RINGEL:  Because -- in Judge Miller's

9    courtroom I understand the jury has monitors.

10         THE COURT:  Right.

11         MR. RINGEL:  And so if you just put something

12   up on the Elmo and they're looking at the monitor, I

13   don't mean to suggest that you have to disclose to the

14   other side that you're going to do that, I just mean if

15   you're going to make one 12 feet by 24 feet and put it

16   in the courtroom they need to have to do that.

17         MR. TRINE:  That's fine.

18         THE COURT:  Okay.  Any reason to have another

19   settlement conference?  Mr. Trine?

20         MR. TRINE:  Well, I understood from the last

21   settlement conference that defendant said that there was

22   absolutely no way they'd ever get into the seven --

23   seven figure category, and if that's their position I

24   don't think a settlement conference would be helpful.

25         THE COURT:  Mr. Ringel, any reason to have a

1    settlement conference, another one?

2            MR. RINGEL:  I don't -- I think that there

3    would be two reasons to have a settlement conference;

4    one, after rulings on dispositive motions and motions

5    that are pending under Federal Rule of Evidence 702 to

6    change the dynamic of the case one way or the other, and

7    the other is if, you know, that representation made by

8    Mr. Trine is correct, but, you know, as the court

9    recalls there was a rather large seven figure number

10   above that that the plaintiff refused to come down below

11   and if the -- if there's movement on the plaintiff's

12   part, you know, Mr. Trine and I can communicate and if

13   we think that collectively there's worthwhile to have

14   another settlement conference under your auspices we'll

15   call your chambers.

16           THE COURT:  Any different thought, Ms. Lewis?

17           MS. LEWIS:  No, we join.

18           THE COURT:  Okay.  All right.  Well, then I

19   will not set another settlement conference at this time.

20   If there comes a time when you think one would be of

21   some use and you want me to participate, call my

22   secretary and I'll be happy to set something up.

23           That's everything I wanted to talk about.

24   Mr. Trine, anything else this morning?

25           MR. TRINE:  No, Your Honor.  Except what was

1    the name again of the person in Judge Miller's clerk's

2    office that is familiar with the certified interpreters.

3              THE COURT:  Charlotte Hoard, H-O-A-R-D, but

4    she's in the clerk's office not in Judge Miller's

5.   chambers.

6              MR. TRINE:  Oh, the clerk's office?

7              THE COURT:  Uh-huh.

8              MR. TRINE:  Okay.

9              THE COURT:  Is that right Madam Deputy,

10   Charlotte Hoard?  Did I get the right person?

11             THE COURTROOM DEPUTY:  Uh-huh.

12             MR. TRINE:  Thank you, Your Honor.  And so

13   we're to now go to Judge Miller's clerk and to obtain

14   the trial date?

15             THE COURT:  Correct.  Mr. Ringel, anything

16   else?

17             MR. RINGEL:  No, Your Honor.

18             THE COURT:  Ms. Lewis?

19             MS. LEWIS:  Nothing from us, thank you.

20             THE COURT:  All right.  I have served the

21   final pretrial order electronically.  It should be in

22   your offices later today.  Be sure to stop by Judge

23   Miller's chambers for a trial date.  Thank you very

24   much.

25             MR. RINGEL:  And he's on the ninth floor, Your

1   Honor?

2            THE COURT:  Ninth floor.

3            MR. RINGEL:  Okay.  Thank you.

4            THE COURTROOM DEPUTY.  Court is in recess.

5.

6            (Whereupon, the within hearing was then in

7   conclusion on this date.)

8

9            I certify that the foregoing is a correct

10   transcript, to the best of my knowledge and belief

11   (pursuant to the quality of the recording) from the

12   record of proceedings in the above-entitled matter.

13

14

15

16   *Kelly A. Main*            7-13-07

17   Signature of Transcriber         Date

18

19

20

21

22

23

24

25

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO 80203
303-825-6119        FAX 303-893-8305