IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00377-WDM-BNB

MOISES CARRANZA-REYES

      Plaintiff,

v.

THE PARK COUNTY BOARD OF COUNTY COMMISSIONERS; FRED WEGENER, individually and in his official capacity as Sheriff of Park County, Colorado; MONTE GORE, individually and in his capacity as Captain of Park County Sheriff's Department; VICKIE PAULSEN, individually and in her official capacity as Registered Nurse for Park County, Colorado,

      Defendants.

---

### PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORAL RULING RE: MICHAEL NIEDERMAN, MD. AND ROBERT GREIFINGER, M.D.

---

Plaintiff, through his counsel, William Trine of Trine & Metcalf, P.C., respectfully requests that the Court reconsider its oral ruling made in open court on September 28, 2007, on Defendants' Motion in Limine to Limit Expert Testimony by Michael Niederman, M.D., and Robert Greifinger, M.D. (Doc. 127) filed 1/2/07, and as grounds for this Motion it is stated as follows:

1.      On 9/28/07, the Court ruled that Plaintiff's expert witnesses, Michael Niederman, M.D., and Robert Greifinger, M.D., would not be permitted to render opinions that the unsanitary conditions at the jail caused Plaintiff to become infected or triggered the infection.  See Reporter's Transcript of Oral Ruling attached as **Exhibit 1**, pp. 4-9.  The Court ruled that in considering F.R.E. 702, it is unclear whether the proffered testimony is based upon sufficient facts or data (**Exhibit 1,** p. 6) and that neither expert went through a careful differential diagnosis procedure in order to conclude

that Plaintiff was either infected at the jail or that his condition worsened because of the jail conditions, and that the opinions are therefore not reliable in that regard (**Exhibit 1,** p. 8).

2.      A Rule 702 hearing was held on 7/18/07 and at that time testimony was presented by Dr. Greifinger and Dr. Niederman, but the testimony had not been transcribed at the time of the Court's oral ruling on 9/28/07, although the Court took copious notes during the hearing and referred to those notes in making oral rulings.  The relevant portions of the reporter's transcript of that hearing regarding Dr. Greifinger and Dr. Niederman are attached as **Exhibit 2,** pp. 1-33 and 107-136.

3.      The transcript of testimony (**Ex. 2**) and the deposition testimony and documents relied upon by Dr. Niederman and Dr. Greifinger provide facts and data to support their respective opinions on causation which may have been overlooked by the Court in its oral ruling, although the Court did not have the benefit of the reporter's transcript at the time of the ruling.

For example, in the Court's oral ruling, the Court states that, "one of the issues of the case is whether he (Plaintiff) was infected coming into the prison or was he entirely free of disease. . ." (**Ex. 1,** p. 6).  The Court states that neither expert interviewed the Plaintiff, his brother, or his brother's wife who were part of the traveling party, in determining this issue (**Ex. 1,** p. 6).

However, the Plaintiff, his brother (Abraham Carranza-Reyes), and sister-in-law (Briselda Gomez-Villalobos) were extensively interviewed by deposition on this issue and Dr. Niederman and Dr. Greifinger relied upon this deposition testimony, in part, in rendering their opinions.  For example:

(a)      Plaintiff described his trip from Mexico to the U.S. in great detail, explaining that after crossing the border and traveling by vehicle to Phoenix where they stayed for four

or five days (**Exhibit 3,** pp. 80-89), they were well-fed with food and water, bathed every day and had clean clothing (**Ex. 3,** pp. 90-94). He testified that none of the people he crossed the border with were ill (**Ex. 3,** p. 95) and none of the people staying at the house in Phoenix were sick and everyone he had crossed the border with stayed at the house in Phoenix (**Ex. 3,** p. 96). Further, none of the people who were in the pickup truck leaving Phoenix for Chicago were ill (**Ex. 3,** p. 97). During this journey from Mexico until he was picked up in Colorado, he had no body rashes, pimples, or a bug bite on his skin, nor did he observe anyone he was traveling with who had a rash, pimples, or bug bites, and no one complained of such problems during their travel (**Ex. 3,** pp. 97-98). Further, Plaintiff testified that he had no pre-existing medical conditions and his only medical treatment since 1995 in Mexico was for hemorrhoid surgery in Mexico City at the Central Military Hospital in 2001 where he had out-patient surgery and was released in a few hours (**Ex. 3,** p. 193). Other than the hemorrhoid surgery, he never sought medical treatment for any health condition after 1995 and was never diagnosed with or treated for cancer in his lifetime (**Ex. 3,** pp. 193-4). He was healthy on arrival at the Park County Jail on March 1 and was not sick and he felt fine on March 2 and was not sick (**Ex. 3,** p. 152). However, many other detainees were sick when he arrived and he described the filthy conditions in Pod D on his arrival and in the days that followed and he described his exposure to the illness of others (**Ex. 3,** pp. 132-33; 141; 143; 159; and 184-5). The other detainees who were sick on Plaintiff's arrival and in the days that followed had flu-like symptoms, coughing, sweating, shaking and shivering, and in pain (**Ex. 3,** pp. 208-209) and Plaintiff then began developing similar symptoms together with a sore throat on March 4 (**Ex. 3,** pp. 212-214; 218).

(b)     Plaintiff's brother, Abraham Carranza-Reyes, likewise testified that Plaintiff was in good health in Mexico and except for knee surgery when Plaintiff was a child and hemorrhoid surgery when he was in the military, Plaintiff had no other medical treatment in Mexico (**Exhibit 4,** pp. 49-54).  Growing up as children, they had yearly checkups and vaccines at the Children's Hospital (**Ex. 4,** pp. 54-5).  When they traveled across Mexico to cross the border into the U.S., no one was sick on the bus (**Ex. 4,** p. 68); no one walking with them was sick when they crossed the border (**Ex. 4,** p. 77); and when they arrived in Phoenix and spent a few days in a house, no one was sick and the house was clean (**Ex. 4,** p. 85).  Plaintiff was not sick when he arrived at the jail on March 1, but many in the cell were sick with coughing, mucus and vomiting, and Plaintiff slept on the floor next to one of the sickest detainees (**Ex. 4,** pp. 133-34).  Moises then became sick on March 4 with similar symptoms including headaches and a sore throat (**Ex. 4,** pp, 137-38).  Plaintiff then developed a fever, pain in the low back, was shaky and had cold sweats (**Ex. 4,** pp. 142-44).

(c)     Plaintiff' sister-in-law, Briselda Gomez-Villalobos, also verified that no one on the bus trip in Mexico appeared to be sick or was coughing (**Exhibit 5,** p. 17).  They stayed in a hotel in a border town for three-four days before crossing the border and while walking, no one in the group was coughing or sick (**Ex. 5,** pp. 19 and 23).  They traveled from Phoenix in a van with six or seven people until they were stopped in Colorado and she, her husband Abraham, and the Plaintiff were all in good health when the van was stopped in Colorado and they were taken to the Park County Jail (**Ex. 5,** pp. 33-38).

4.      Dr. Niederman then testified at the hearing on 7/18/07 that based on all the information provided to him, including the depositions of the Plaintiff and his brother, there was no

indication that Plaintiff was in close proximity to another sick person who might have had Strep A on his travels to the United States and before he arrived at the jail (**Ex. 2,** p. 115). He testified that he had no reason to believe that the conditions that Plaintiff was exposed to before arrival at the jail "had any bearing on his development of this infection" (**Ex. 2,** p. 115, l. 14-15). Further, there was no evidence in any of the records that Dr. Niederman reviewed that would indicate that Plaintiff was colonized with Strep A before arriving at the jail (**Ex. 2,** p. 115, l. 16-20). Although there was no evidence that Plaintiff was colonized with an infection before arriving at the jail, Dr. Niederman was asked to speculate and assume, without such evidence, that he somehow became colonized before he arrived at the jail and was asked whether the stress of a crowded, unsanitary jail can reduce the immune system and allow an infection to then occur and he explained that that was certainly possible (**Ex. 2,** p. 115, l. 21-25 and p. 116, l. 1-5).

5.       In its oral ruling, the Court was critical of Dr. Niederman and Dr. Greifinger not following the process of a differential diagnosis in resolving the causation issue (**Ex. 2,** p. 7). More specifically, the Court noted that these experts failed to identify possible causes of the infection and eliminating causes until the most probable cause remained (**Ex. 2,** p. 8). However, Dr. Niederman testified that in concluding that the overcrowding and unsanitary conditions in the jail caused Plaintiff to develop a Strep A infection, he arrived at that conclusion, "based on the way I would make any kind of a medical conclusion. I reviewed the records. I used my experience and my knowledge of disease and disease-pathophysiology, and as I would with any clinical situation, used those facts to reach the conclusions that I did" (**Ex. 2,** p. 108). He explained that from reading the depositions and the available information, Plaintiff had no symptoms and no respiratory complaints when he arrived at the jail, but was then exposed to other detainees who had symptoms and were

sick, and that several detainees from Mexico with similar symptoms were then treated with antibiotics after Plaintiff went to the hospital (**Ex. 2,** pp. 111-12).

Dr. Niederman made it clear that the most probable cause of Plaintiff's infection was the unsanitary and filthy conditions at the jail coupled with many other detainees who were already sick with infectious symptoms when Plaintiff arrived. He made it clear that any supposition that Plaintiff arrived at the jail with bacterial colonization which later developed into an infection was only a remote possibility in the sense that "anything is possible" (**Ex. 2,** p. 130, l. 16).

6.      Dr. Niederman did follow a differential diagnostic procedure by identifying possible causes of Plaintiff's infection and then arriving at the most probable cause. In addition to considering the fact that Plaintiff was not exposed to an infection before arrival at the jail, thus eliminating that as a possible cause of his developing symptoms of an infection several days later, he also testified, by deposition, that other possible predisposing factors were eliminated (**Exhibit 6,** p. 68). He explained that Plaintiff was not taking chronic medications, did not have a chronic illness and was not diabetic, and those predisposing factors as a cause of infection were not present. Likewise, there was no evidence of genetic variations in the immune system that might make some people more predisposed to infection (**Ex. 6,** pp. 68-69). He explained that his methodology in arriving at his causation conclusion is very similar to reviewing available data retrospectively to form such conclusions and he must do this all the time in the hospital for quality assurance purposes. Retrospective examination of records is a common method of determining the cause of illness (**Ex. 6,** pp. 106-07).

7.      Dr. Greifinger relied on the same medical records, jail records, and deposition testimony that Dr. Niederman reviewed, in arriving at his opinion that Plaintiff developed strep

6

throat as a result of the conditions at the Park County Jail (**Ex. 2,** pp. 5-7).  He explained that Plaintiff was healthy on arrival, was exposed to the bacteria of other sick detainees while lying on the floor between triple bunk beds used by sick detainees (**Ex. 2,** p. 7), that the usual incubation period for developing symptoms once you become exposed to Strep A is one to three days (**Ex. 2,** p. 9), and that Plaintiff developed symptoms on March 4, one to three days after his exposure to other sick detainees.  In order for him to be colonized with Strep A infection before arriving at the jail, there would have to be evidence he was subjected or exposed to someone else who had Strep A infection, and there was no such evidence (**Ex. 2,** p. 16, l. 11-25).  He testified that with reasonable medical probability, the crowded conditions with sick inmates caused Plaintiff to develop strep throat which, when not treated, progressed to pneumonia, sepsis, and eventually septic shock (**Ex. 2,** p. 17, l. 1-5).  There is no dispute that Plaintiff became symptomatic with a Strep A infection while in the jail which was first diagnosed on March 8 when the infection had spread to his lungs and other vital organs resulting in pneumonia, sepsis, and septic shock.

8.       With the additional information identified in this Motion, it is evident that the testimony of Dr. Greifinger and Dr. Niederman on the causation issue is not unscientific speculation, but is based on adequate data to support their conclusions which were reached using methodology customarily used by physicians to arrive at a most probable diagnosis after ruling out other possible causes or determining that a possibility is based on speculation.  Hence, both expert witnesses have satisfied the criteria of *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, (10th Cir., 2004); *Goebel v. Denver & Rio Grande,* 346 F.3d 987, 999 (10th Cir., 2003); and *Dodge v. Cotter Corp.,* 328 F.3d 1212 (10th Cir., 2003).

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO. L.CIV.R. 7.1(A)

Pursuant to D.C.COLO. L.CIV.R. 7.1(A), prior to submitting the instant Motion, the undersigned counsel for Plaintiff contacted counsel for Defendants, Andrew David Ringel and Josh Adam Marks. Mr. Ringel and Mr. Marks indicated that Defendants oppose this Motion.

## CONCLUSION

In summary, the reporter's transcript of the hearing on Defendants' Motions was not available to the Court at the time of the Court's oral ruling on those Motions, although the Court took copious notes during the hearing. Likewise, Plaintiff's response to Defendants' Motions with references to deposition testimony was not again referred to by counsel during the 7/18/07 hearing on Defendants' Motions. The reporter's transcript of testimony, together with previous deposition testimony of Dr. Greifinger and Dr. Niederman, established that these expert witnesses did utilize the same retrospective analysis of records to arrive at an opinion on causation that they use in their medical practice and that Dr. Niederman uses in doing hospital case reviews to determine causation. Other possible causes of the infection were identified and either eliminated or reduced to remote possibilities. They both concluded that the most probable cause was the overcrowding and unsanitary conditions at the jail. Sufficient data was identified to support the conclusions reached on proper methodology.

For all of the above-stated reasons, Plaintiff requests that the Court reconsider that portion of its oral ruling previously identified, and further rule that sufficient data has now been identified to support the conclusions reached and that proper methodology was utilized in arriving at the most probable cause of Plaintiff's infection.

DATED this 26 th day of October, 2007.

8

Respectfully submitted,



By:  s/ William A. Trine, Esq.

William A. Trine, #577
Cheryl L. Trine, #38150
Trine & Metcalf, PC
1435 Arapahoe Avenue
Boulder Colorado 80302-6390
(303) 442-0173

Joseph J. Archuleta, #19426
Joseph J. Archuleta and Associates
1724 Ogden Street
Denver Colorado 80218
(303) 837-1642

Lloyd C. Kordick, #6298
Lloyd C. Kordick & Associates
805 S. Cascade Avenue
Colorado Springs Colorado 80903
(719) 475-8460

Adele Kimmel, Esq.
Trial Lawyers for Public Justice
1717 Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20030
(202) 797-8600

Attorneys for Plaintiff

9

## CERTIFICATE OF MAILING/SERVICE

The undersigned hereby certifies that on this _26_ th day October, 2007, a true and correct copy of the foregoing pleading was e-served via Electronic Case Filing and/or placed in the United States Mail, postage prepaid, and properly addressed to:

Joseph Archuleta
Attorney at Law
1724 Ogden Street
Denver, Colorado 80218-1018
*Co-Counsel for Plaintiff*

Lloyd C. Kordick,
Attorney at Law
805 S. Cascade
Colorado Springs, CO 80903
*Co-Counsel for Plaintiff*

Adele P. Kimmel
Trial Lawyers for Public Justice
1717 Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20030
*Co-Counsel for Plaintiff*

Andrew Ringel
Jennifer L. Veiga
Hall & Evans
1125 17th Street, Suite 600
Denver, CO 80202-2052
*Counsel for Defendant Park County, Park County Board of County Commissioners, Park County Sheriff's Office, Fred Wegener, and Monte Gore*

Josh A. Marks
Berg, Hill, Greenleaf & Ruscitti
1712 Pearl Street
Boulder, CO  80302
*Counsel for Defendant Vicki Paulsen*

s/ Elizabeth Peach_____